WILLIAM BLUMENTHAL
General Counsel

JOHN F. DALY
Deputy General Counsel - Litigation

JOHN ANDREW SINGER
Attorney - Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC  20580
Telephone:  (202) 326-3234
Facsimile:   (202) 326-2447
Email: jsinger@ftc.gov

MICHAEL MORA
JULIE MACK
Attorneys - Division of Enforcement
Bureau of Consumer Protection

ATTORNEYS FOR FEDERAL
TRADE COMMISSION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| THE BILLING RESOURCE d/b/a INTEGRETEL, | ) |
| | ) |
| Debtor-Plaintiff-Appellee, | ) No. 5:07-CIV-5758-RMW |
| | ) |
| | ) Date:   December 21, 2007 |
| v. | ) Time:  9:00 a.m. |
| | ) Place: 280 S. First Street |
| FEDERAL TRADE COMMISSION et al., | ) San Jose, CA |
| | ) Judge: Hon. Ronald M. Whyte |
| Defendant-Appellant. | ) Courtroom: 6 - 4th Floor |
| | ) |

On Appeal from the United States Bankruptcy Court for the Northern District
of California, No. 07-52890, Adversary Proceeding No. 07-5156 (Weissbrodt)

**DEFENDANT-APPELLANT FEDERAL TRADE COMMISSION'S MEMORANDUM
IN SUPPORT OF ITS COMBINED MOTIONS FOR  STAY PENDING APPEAL
AND FOR CHANGE OF VENUE PURSUANT TO 28 U.S.C. § 1412**

# TABLE OF CONTENTS

N.D. CAL. L. R. 7-1(b) STATEMENT.................................................................1

STATEMENT OF ISSUES TO BE DECIDED......................................................2

INTRODUCTION..............................................................................................2

STATEMENT OF FACTS...................................................................................3

ARGUMENT.....................................................................................................7

    I.      JURISDICTION.......................................................................7

    II.     STAY MOTION.......................................................................8

         A.     Standard for a Fed. R. Bankr. P. 8005 Injunction Pending Appeal.............8

         B.     Salient Factors.................................................................9

                1.     The Commission is likely to succeed on the merits in its appeal....9

                        a.     Enjoining law enforcement actions is highly disfavored.....9

                        b.     Integretel is unlikely to be able to reorganize successfully......................................................10

                2.     The Commission and the public will be irreparably harmed absent a stay....................................................................12

                3.     Integretel will not be substantially harmed by a stay....................14

                  4.     The public interest mandates a stay..............................16

          C.     Analysis.......................................................................17

    III.    CHANGE OF VENUE MOTION.......................................................17

         A.     This Court has the authority to change the venue of this adversary proceeding pursuant to 28 U.S.C. § 1412..................................................17

         B.     Standards for change of venue under 28 U.S.C. § 1412...........................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.    Analysis...................................................................................20

    1.    Interest of justice.........................................................20

    2.    Convenience of the parties..........................................24

CONCLUSION..........................................................................................25

**TABLE OF AUTHORITIES**

**CASES**

*Blanton v. IMN Financial Corp.*, 260 B.R. 257 (M.D.N.C. 2001)...........................................19,20

*In re Brennan*, 198 B.R. 445 (D.N.J.1996)...........................................................................16

*CFTC v. Co-Petro Mrktng Group*, 700 F.2d 1279 (9th Cir. 1983)...........................................10

*Compton Corp. v. Department of Energy*, 90 B.R. 798 (N.D.Tex. 1988)...................................10

*Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora*, 805 F.2d 440 (1st Cir.1986)...........................................................................................................................9

*In re Dolen*, 265 B.R. 471 (M.D. Fla. 2001)..........................................................................9

*In re Donald*, 328 B.R. 192 (9th Cir. BAP 2005)..................................................................20

*In re Dudley*, 2006 WL 862932 (N.D. Cal. 2006)...................................................................8

*In re Emerald Casino, Inc.*, 334 B.R. 378 (N.D. Ill. 2005)......................................................14

*In re Enron Corp.*, 317 B.R. 629 (Bankr. S.D.N.Y. 2004).......................................................19

*EEOC v. Consolidated Freightways Corp. of Delaware*, 312 B.R. 657 (W.D. Mo. 2004)......16,17

*EEOC v. Rath Packing Co.*, 787 F.2d 318 (8th Cir. 1986).......................................................14

*In re Excel Innovations, Inc.*, 2007 WL 2555941 (9th Cir. 2007)...........................................7,10

*FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006)..............................................................5

*In re First Alliance Mortgage Co.*, 264 B.R. 634 (C.D. Cal. 2001)..............................8,9,14,16

*Hawkins v. Risley*, 984 F.2d 321 (9th Cir.1993)...................................................................15

*Javens v. City of Hazel Park*, 107 F.3d 359 (6th Cir. 1997).....................................................9

*Lands Council v. Martin*, 479 F.3d 636 (9th Cir. 2007)...........................................................8

*Lynch v. Cal. Pub. Util. Comm'n*, 2004 WL 793530 (N.D.Cal. 2004)........................................8

*In re Manville Forest Products Corp.*, 896 F.2d 1384 (2d Cir. 1990).....................................19,20

*Marquette Transp. Co. v. Trinity Marine Products, Inc.*, 2006 WL 2349461 (E.D.La. 2006)......19

*In re McMullen*, 386 F.3d 320 (1st Cir. 2004)..................................................................9

*In Re One Times Square Assocs Ltd Partnership*, 159 B.R. 695, (S.D.N.Y. 1994), *aff'd without op.*, 41 F.3d 1502 (2d Cir. 1994)...............................................................................................9

*In re Oxford Management, Inc.*, 4 F.3d 1329 (5th Cir. 1993)........................................9

*In re PMI-DVW Real Estate Holdings, LLP,* 240 B.R. 24 (Bankr. D. Ariz. 1999)......................10

*Robi v. Five Platters, Inc.*, 838 F.2d 318 (9th Cir.1988)............................................15

*In re PTI Holding Corp.*, 346 B.R. 820 (D. Nev. 2006)..............................................16

*Raytech Corp. v. White*, 54 F.3d 187 (3rd Cir. 1995)...............................................18

*SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.D.C. 2001)................................................23

*SenoRX v. Coudert Bros. LLP,,* 2007 WL 2470125 (N.D. Cal. 2007).....................................19,20

*Shared Network Users Group, Inc. v. Worldcom Tech., Inc.*, 309 B.R. 446 (E.D. Pa. 2004).......19

*Shavers v. Dale*, 182 Fed. Appx. 316 (5th Cir. 2006)..............................................18

*Southwest Voter Registration Education Project v. Shelley*, 344 F.3d 914 (9th Cir. 1998).......8,17

*United States v. Sutton*, 786 F.2d 1305 (5th Cir. 1986)..........................................10

*Universal Life Church, Inc. v. United States*, 191 B.R. 433 (E.D. Cal. 1995)..........................8

*In re Wymar*, 5 B.R. 802 (9th Cir. 1980)..........................................................8

*In re Yagenah*, 2006 WL 1310447 (N.D. Cal. 2006)..................................................8

## STATUTES AND RULES

11 U.S.C. § 105.................................................................................*passim*

11 U.S.C. § 362(b)(4)...........................................................................*passim*

15 U.S.C. § 45(a)................................................................................3,4

15 U.S.C. § 53(b)..................................................................................................3,13

28 U.S.C. § 157(b)(1)..............................................................................................16

28 U.S.C. § 157(c)(1)..............................................................................................16

28 U.S.C. § 158........................................................................................................7

28 U.S.C. § 158(a)..................................................................................................18

28 U.S.C. § 1404....................................................................................................18

28 U.S.C. § 1412................................................................................................*passim*

Fed. R. Bankr. P. 8005........................................................................................8,18

**OTHER**

Collier, *Bankruptcy Manual* ¶ 4.05[2] (3rd ed. rev. 2007)...........................................18

Collier, *Bankruptcy Practice Guide* ¶ 17.07[2] (2007)................................................19

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963.............................9

1

2

### N.D. CAL. L. R. 7-1(b) STATEMENT

3

Defendant-appellant the Federal Trade Commission ("Commission" or "FTC") believes its

4

motions for a stay pending appeal and for a change of venue can be briefed in the ordinary course. But,

5

once briefed, the Commission respectfully requests that these motions be resolved as expeditiously as

6

possible. Trial in the Commission's civil law enforcement action (in which debtor-plaintiff-appellee

7

The Billing Resource dba Integretel ("Integretel") is one of fourteen remaining defendants), which has

8

been pending since February 2006, *FTC v. Nationwide Connections, Inc.*, No. 06-CV-80180-

9

Ryskamp/Vitunac (S.D. Fla.) (the "Enforcement Action"), is set to begin on February 25, 2008. Should

10

this Court decide to issue a stay pending appeal of the November 8, 2007, preliminary injunction of the

11

bankruptcy court enjoining the Commission from pursuing its Enforcement Action as to Integretel, the

12

Commission requests that the Court issue the stay promptly so that Integretel has adequate time to

13

prepare for the trial without the need to delay the trial. The Commission also moves that venue for this

14

15

bankruptcy adversary proceeding be moved, pursuant to 28 U.S.C. § 1412, to the Southern District of

16

Florida (the "Florida District Court"), so that it can be resolved by the court hearing the Enforcement

17

Action. The Florida District Court is the *only* court that has the authority to hear both the Enforcement

18

19

Action and this adversary proceeding -- transfer is the best way to promote judicial economy and to

20

avoid the increasing number of decisions in which the bankruptcy court directly contradicts (and

21

22

effectively overrules) prior decisions effecting this adversary proceeding made by the Florida District

23

Court and the Eleventh Circuit in the Enforcement Action.[1]

24

25

26

[1]    Should this Court choose to grant the Commission's motion to change the venue

27

of this adversary proceeding to the Southern District of Florida, a prompt transfer order would

permit this Court to defer to the transferee court the decision whether to grant the Commission's

28

motion for a stay pending appeal.

1

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether to grant a stay, pending appeal, of the bankruptcy court's November 8, 2007, preliminary injunction order enjoining the Commission from prosecuting its Enforcement Action as to Integretel.

2.      Whether this bankruptcy adversary proceeding should be transferred, pursuant to 28 U.S.C. § 1412, to the United States District Court for the Southern District of Florida.

## INTRODUCTION

Integretel is a defendant in the Enforcement Action pending in the Florida District Court because it was an instrumental player in a telephone billing "cramming" scheme that bilked consumers over $30 million for bogus long distance charges.  Integretel aggregated approximately $5 million of these charges and placed them on consumers' monthly telephone bills.  Facing probable contempt, an imminent summary judgment motion by the Commission and, if necessary, a February 25, 2008, trial date, Integretel voluntarily filed for bankruptcy and initiated an adversary proceeding against the Commission and the Receiver appointed by the Florida District Court.  Based upon Integretel's motion under 11 U.S.C. § 105(a), the bankruptcy court, through its November 2, 2007, memorandum decision and its November 8 written preliminary injunction order, enjoined the Commission from pursuing its Enforcement Action through March 14, 2008, thereby prohibiting the Commission from filing for summary judgment (on November 6, 2007) against Integretel and endangering the trial date as to Integretel (and possibly the other defendants).  This preliminary injunction is the subject of the Commission's motion for stay pending appeal.

A second order from the bankruptcy court, a November 5, 2007, temporary restraining order, enjoining both the Receiver and the Commission from pursuing a contempt proceeding against

Integretel ancillary to the Enforcement Action, has bearing on the change of venue motion. In the contempt proceeding, Integretel was ordered either to turn over to the Receiver approximately $1.7 million in funds that the Florida District Court expressly held was part of the receivership estate (and *not* part of Integretel's bankruptcy estate) or show cause why it should not be held in contempt for failing to turn over these funds since first required to do so in March 2006. The bankruptcy court has set a hearing for November 16, 2007, to determine whether to issue a preliminary injunction concerning the contempt proceeding. The funds which are the subject of the contempt proceeding are, by order of the bankruptcy court, in a blocked account through December 14, 2007. But, it appears that the bankruptcy court presently will release these funds to Integretel, since it has represented that without the use of these funds it will not have sufficient cash to continue in business after the week ending December 21, 2007. A change of venue to the Southern District of Florida is required in the interest of justice. This change will promote judicial economy because the Florida District Court is the only court that can exercise jurisdiction over both this adversary proceeding and the Enforcement Action and thereby assure consistent rulings between these proceedings. Also, after presiding over the Enforcement Action for 21 months, the Florida District Court already is intimately familiar with this matter and faces no learning curve to be able to resolve it.

## STATEMENT OF FACTS

The genesis of Integretel's September 2007 bankruptcy petition and the instant adversary proceeding began in February 2006, when the Commission commenced its Enforcement Action in the Southern District of Florida. An understanding of aspects of the Enforcement Action as well as the bankruptcy proceeding are critical to understanding the basis for the Commission's motions.

The Commission commenced the Enforcement Action on February 27, 2006, pursuant to

§§ 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b). (Federal Trade Commission Exhibit ("FTCX") 1 -- Florida District Court Docket Entry ("FD") 3).[2] The complaint alleged that, *inter alia*, two former clients of Integretel, defendants Access One and Network One, engaged in a massive telephone billing scam in which more than $30 million in phony collect call charges were "crammed" onto consumers' telephone bills. The Florida District Court entered an *ex parte* Temporary Restraining Order ("TRO") (FTCX 2 -- FD 18), appointing David R. Chase, P.A. as the temporary receiver (the "Receiver") over, *inter alia*, Access One and Network One. The receivership encompasses "all assets of the Defendants as of the time this Order was entered" including funds "owned or controlled by any Defendant, in whole or in part, for the benefit of any Defendant." (*Id.* at 5-6: TRO ¶ 2).

Upon service of the TRO, all entities holding assets of an Enforcement Action defendant (including Access One and Network One) were required to turn over to the Receiver "immediately upon service of this Order * * * or within such time period permitted by the Receiver * * * all assets of the Receivership Defendants" in their possession. (FTCX 2 at 15-16: TRO ¶ X). "[T]hird party billing agents" (such as Integretel) specifically were ordered to "cooperate with all reasonable requests of the FTC and the Receiver relating to the implementation of this Order, including the transfer of funds at the Receiver's direction." (FTCX 2 at 17: TRO ¶ XI). On March 6, 2006, in response after service of the TRO, Kenneth Dawson, the president of Integretel, submitted to the Commission an unsworn statement claiming that "no amounts are currently due and owing" to defendants Access One and Network One. (FTCX 3). The receivership and turnover provisions were continued in a March 8, 2006, preliminary injunction (FTCX 4 – FD 29), and a September 25, 2006, amended preliminary injunction (FTCX 5 –

---

[2]     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

FD 223).

On September 21, 2006, the Commission filed an amended complaint in the Enforcement Action adding Integretel as a defendant. (FTCX 6 – FD 255).[3]  Shortly thereafter, the Receiver learned that Integretel had been holding, as a reserve against claims by consumers duped by Access One and Network One, funds that were property of the receivership estate ( the "Reserve Funds") and that should have been turned over to the Receiver in March 2006, after service of the TRO on Integretel.  On October 16, 2006, after Integretel refused to turn over the Reserve Funds, the Receiver filed a motion in the Enforcement Action for an order to show cause why Integretel should not be held in contempt, on grounds of its noncompliance with the turn over provisions of the district court's injunctive orders. (FTCX 7– FD 246).

On September 14, 2007, the Florida District Court entered an Omnibus Order (FTCX 8 – FD 610) (the "September 14 Order").  Of importance to this appeal, this order granted the Receiver's motion for an order to show cause why Integretel should not be held in contempt for not turning over the Reserve Funds (FTCX 21).  In direct reaction, on September 16, 2007, Integretel filed a voluntary petition under Chapter 11 of Bankruptcy Code, *In re The Billing Resource d/b/a Integretel*, No. 07-52890 (Bankr. N.D. Cal.)  (FTCX 9 – Bankruptcy Docket Entry ("BDE") 1), and the next day Integretel filed a Notice of Bankruptcy in the Enforcement Action claiming that all proceedings against it were automatically stayed.  (FTCX 10 – FD 612).

---

[3]      Integretel has a history of involvement in similar schemes.  In October 2000, the Commission sued Integretel and its subsidiary, eBillit, for their role in a scheme that charged consumers for Internet pornography that the consumers never purchased or authorized.  Integretel agreed to a Stipulated Final Order by which it released all claims to the $1.6 million in consumer payments that it then held and transferred these monies to the Commission for consumer redress. *See FTC v. Verity Int'l, Ltd.,* 443 F.3d 48 (2d Cir. 2006).

5

On September 19, 2007, Integretel commenced the instant adversary proceeding. *David Chase and the Federal Trade Commission*, No. 07-AP-5156. (FTCX 11 – BDE 27; Adversary Proceeding Docket Entry ("APDE") 1). Through this proceeding, Integretel sought, pursuant to 28 U.S.C. § 105(a), a temporary restraining order and preliminary injunction enjoining: (1) the Commission from continuing its Enforcement Action against Integretel; and (2) the Receiver and the Commission from pursuing the contempt proceeding against Integretel. The parties to this adversary proceeding briefed these motions: Integretel (FTCX 12-14 – APDE 6, 13, 23), the Commission (FTCX 15-17 – APDE 9, 17, 29), and the Receiver (FTCX 18-19 – APDE 10, 28).

On September 20, 2007, the Florida District Court entered an order staying the proceedings before it as to Integretel. (FTCX 20 – FD 617). The Commission filed an emergency motion for clarification (FTCX 21 – FD 618), and, on September 21, the Florida District Court entered a Clarification Order (the "September 21 Order") (FTCX 22 – FD 619), holding that, under the regulatory exception to the automatic bankruptcy stay, 11 U.S.C. § 362(b)(4), and its inherent civil contempt powers, neither the Commission's Enforcement Action nor the Receiver's contempt proceeding were stayed. It also reiterated that the Reserve Funds were part of the receivership estate and must be turned over to the Receiver and held that the Reserve Funds remain within its jurisdiction and are not part of Integretel's bankruptcy estate.

On September 24, 2007, Integretel noted its appeal from the September 14 and 21 Orders to the Eleventh Circuit. (FTCX 23 – FD 620). That appeal was docketed as No. 07-14531-EE. On October 10, 2007, Integretel filed an emergency motion for a stay pending appeal regarding the contempt proceeding only. On October 17, 2007, the Eleventh Circuit temporarily granted a stay, (FTCX 24), and, separately ordered Integretel to file its opening brief on November 26, 2007.

On November 2, 2007, the bankruptcy court issued a memorandum decision, (FTCX 25 – APDE 41 at 61), and on November 8, 2007, issued the written preliminary injunction order on appeal enjoining the Commission from pursuing the Enforcement Action (FTCX 26 – APDE 49). The bankruptcy court declined to enjoin the Receiver or Commission from pursuing the contempt proceeding citing to the Eleventh Circuit's temporary stay. (FTCX 25 – APDE 41 at 58:13-18, 61:13-19; FTCX 26 – APDE 49). The bankruptcy court also refused to release the $1.7 million in the Reserve Funds for use by Integretel and ordered them held in a blocked account, but scheduled a hearing to revisit this issue on December 7, 2007, just before Integretel has represented it will need these funds in order to remain in business – the bankruptcy court also invited Integretel to request that this hearing be accelerated if it believes it needs them sooner . (FTCX 25 – APDE 41 at 59:16-62:2; FTCX 12 – APDE 49).

On November 5, 2007, the Eleventh Circuit denied Integretel's motion for a stay pending appeal and terminated its temporary stay. (FTCX 27). Within 3.5 hours of this termination, the bankruptcy court, by telephone, orally announced a temporary restraining order enjoining the Receiver and the Commission from pursuing the contempt proceeding. The bankruptcy judge further enjoined the Receiver from providing any status reports to the Florida District Court that appointed him unless Integretel joined in such reports. While a formal written temporary restraining order has yet to be entered, a hearing on whether to issue a preliminary injunction concerning the contempt proceedings is set for November 16.

## ARGUMENT

### I. JURISDICTION

Pursuant to 28 U.S.C. § 158, this Court has jurisdiction over an appeal of a preliminary

7

injunction issued by a bankruptcy court pursuant to 11 U.S.C. § 105. *In re Excel Innovations, Inc.*,

2007 WL 2555941 at *5 (9th Cir. 2007); *In re First Alliance Mortgage Co. ("FAMCO")*, 264 B.R. 634,

644 and nn.9 and 10 (C.D. Cal. 2001).

## II.     STAY MOTION

### A.     Standard for a Fed. R. Bankr. P. 8005 Injunction Pending Appeal[4]

To prevail in a motion for a stay pursuant to Fed. R. Bankr. P. 8005, an appellant must show:

(1) a likelihood of probable success on the merits and the possibility of irreparable injury; *or* (2) that

serious questions going to the merits are raised and the balance of the hardships tips sharply in its favor.

*Lands Council v. Martin*, 479 F.3d 636, 639 (9th Cir. 2007); *Southwest Voter Registration Education*

*Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 1998) (*en banc*); *In re Dudley*, 2006 WL 862932 at *2

(N.D. Cal. 2006). "This analysis creates a continuum: the less certain the district court is of the

likelihood of success on the merits, the more [the appellant] must convince the district court that the

public interest and balance of hardships tip in their favor." *Southwest Voter*, 344 F.3d at 917. This

Court also has enunciated an alternative stay standard: (1) the appellant is likely to succeed on the

merits of the appeal; (2) the appellant will suffer irreparable injury; (3) no substantial harm will come to

the appellee; and (4) the stay will do no harm to the public interest. *In re Yagenah*, 2006 WL 1310447

at *4 (N.D. Cal. 2006) *citing In re Wymar*, 5 B.R. 802, 806 (9th Cir. 1980); *Lynch v. Cal. Pub. Util.*

*Comm'n*, 2004 WL 793530 at *2 (N.D.Cal. 2004) *citing Universal Life Church, Inc. v. United States*,

191 B.R. 433, 444 (E.D. Cal. 1995).

---

[4]     As a predicate to its stay motion, *see* Fed. R. Bankr. P. 8005, the Commission orally moved for and was denied a stay pending appeal by the bankruptcy court at the November 2, 2007, hearing where the bankruptcy court announced its preliminary injunction decision. FTCX 26 -- APDE 49.

B.    **Salient Factors**

1.    **The Commission is likely to succeed on the merits in its appeal**

a.    **Enjoining law enforcement actions is highly disfavored**

Congress specifically recognized the vital nature of the Commission's consumer protection work through its enactment of the 28 U.S.C. § 362(b)(4) exemption for law enforcement actions from the otherwise automatic bankruptcy stay. The legislative history of this provision indicates a clear Congressional intent that consumer protection law enforcement actions should especially not be hampered by a defendant filing for bankruptcy. H.R. Rep. No. 95-595, at 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299; *In re McMullen*, 386 F.3d 320, 324-25 (1st Cir. 2004) (the exemption is intended to discourage debtors from filing for bankruptcy "either primarily or solely" to evade a law enforcement action which would "seriously threaten the public safety and welfare" such as a consumer protection action); *In re Dolen*, 265 B.R. 471, 481 (M.D. Fla. 2001); *FAMCO*, 264 B.R. at 645-51. This undoubtedly is why courts have found that a § 105 injunction against a government agency is necessary to carry out the Code's provisions only in exceptional circumstances. *E.g., Javens v. City of Hazel Park*, 107 F.3d 359, 366 (6th Cir. 1997) (§ 105 can be used to enjoin "enforcement of local regulation which is shown to be used in bad faith."); *In Re One Times Square Assocs Ltd Partnership*, 159 B.R. 695, (S.D.N.Y. 1994), *aff'd without op.*, 41 F.3d 1502 (2d Cir. 1994) (§ "105 should be used sparingly and then only to supplement the Bankruptcy Code, not supplant the Code"); *In the Matter of Oxford Management, Inc.*, 4 F.3d 1329, 1335 (5th Cir. 1993) ("The powers granted by" §105 "must be exercised in a manner that is consistent with the Bankruptcy Code"); *Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora*, 805 F.2d 440, 449 n. 14 (1st Cir.1986) (§ 105 can be used to enjoin proceedings that are exempt from the automatic stay pursuant to section 362(b)(4) only in "exceptional

9

circumstances"); *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) (§ 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity"); *In re PMI-DVW Real Estate Holdings, LLP,* 240 B.R. 24, 32 (Bankr. D. Ariz. 1999) (§ 105 can be used to enjoin "bad faith" law enforcement actions); *Compton Corp. v. Department of Energy*, 90 B.R. 798, 807 (N.D.Tex. 1988) (injunction against Energy Department's action not necessary to carry out Code's provisions).

Here, Integretel does not face an exceptional circumstance. Rather, it is in the same situation as every other debtor that is attempting to reorganize under the bankruptcy code while simultaneously defending a law enforcement action. While, as indicated above and in §B.3, *infra*, it unquestionably would be easier for Integretel if it could avoid the expense and distraction of defending against the Enforcement Action, courts repeatedly have held that this is not a sufficient basis for enjoining a law enforcement action. Indeed, if a debtor such as Integretel routinely could escape or even just delay a pending law enforcement action through the simple act of filing for bankruptcy, doubtless every defendant in a law enforcement action would attempt to do so, trying to turn bankruptcy into little more than a vehicle for vitiating the specific intent of Congress that defendants should not be able to avoid or delay consumer protection law enforcement actions. To the contrary, the Ninth Circuit made clear that bankruptcy is not to be "a haven for wrongdoers." *CFTC v. Co-Petro Mrktng Group*, 700 F.2d 1279, 1283 (9th Cir. 1983). For these reasons the Commission is likely to succeed on the merits on its appeal.

### b.    Integretel is unlikely to be able to reorganize successfully

When a debtor seeks a preliminary injunction under 11 U.S.C. § 105(a), a court must consider whether the debtor demonstrates a reasonable likelihood of a successful reorganization. *Excel*

*Innovations*, 2007 WL 2555941 at *6-*7.  A stay is further justified here because the bankruptcy court

erred in finding that Integretel met this standard.  In support of its conclusion, the court found:  (1) the

creditors of Integretel view it as a viable business through their agreements to permit Integretel to use

its cash collateral for routine operations (FTCX 25 – ADPE 41 at 20:13-16); (2) the continued

forwarding, "for the most part," of funds to Integretel from the local telephone companies whose

consumers Integretgel billed (FTCX 25 – ADPE 41 at 20:17-27); (3) a change in Integretel's

disbursements to customers, with the support of its creditors, that allows a 50% payment of receivables

up front rather  than having them held for 90 days as reserves against consumer claims (FTCX 25 –

ADPE 41 at 20:18-22); (4) a projected positive cash flow over the next six months (FTCX 25 – ADPE

41 at 21:14); and (5) an assumption that Integretel will be able to raise significant funds for use towards

reorganization from the sale of its 97%-owned subsidiary, PaymentOne (FTCX 25 – ADPE 41 at 21:1-

4).

        The bankruptcy court's analysis was fundamentally flawed because:  (1) the creditors only

approved the use of cash collateral by Integretel after obtaining liens on other assets of Integretel; (2)

Integretel's creditors have taken the unusual step of keeping Integretel on a short cash collateral leash,

approving Integretel's use of its cash collateral only in two or three week long interim periods – the

creditors clearly lack the confidence to approve a permanent cash collateral order which would permit

Integretel to use its remaining cash without strict supervision by the creditors; (3) Integretel's overall

projected "positive cash flow" may not be realistic given that Integretel is paying out more monies than

ever before through its unprecedented and untested elimination of reserves for consumer claims; (4) the

bankruptcy court overstated the import of Integretel's creditors' continuing to do business with it post-

petition – it is to a creditor's advantage to continue to do business with a debtor because post-petition

payments to the creditor receive priority treatment as administrative claims; and (5) no firm buyer for Integretel's PaymentOne subsidiary has materialized post-petition and the Commission's understanding is that PaymentOne was up for sale long before Integretel filed for bankruptcy.

The bankruptcy court's errors go beyond mere unjustified inferences from the limited facts available to it. The bankruptcy court further erred because it failed to consider the significance of Integretel's having yet to file any comprehensive financial statements or its mandatory Schedules of Assets and Liabilities and Statement of Financial Affairs. (*See* FTCX 25 – APDE 41 at 32-33). In the absence of this financial information, the bankruptcy court's conclusion that Integretel is likely to reorganize successfully is based upon nothing more than self-serving declarations and projections from Integretel's president and its reorganization consultant. Additionally (and not even addressed in the bankruptcy court's memorandum decision), Integretel's landlord has filed a motion to evict Integretel as a holdover tenant. (FTCX 28 – BDE 226). Since the hearing on this motion is scheduled for November 21, 2007, (FTCX 29 – BDE 227), Integretel, its substantial cache of computer equipment, and its business operations could very shortly be left without a home. Even if Integretel can find other satisfactory office space on short notice, it seems doubtful that it could survive the relocation process given all of the other uncertainties it faces.

### 2.    The Commission and the public will be irreparably harmed absent a stay

Trial of the Enforcement Action (without Integretel absent the requested stay) is set for February 25, 2008. But, several of the defendants have moved to postpone the trial as to all defendants until at least June 22, 2008. (FTCX 33 – FD 667). A delay of the trial against just Integretel *or* the trial against all fourteen defendants (including Integretel) will irreparably harm the Commission and the public and mandate issuance of a stay.

12

If the trial goes forward in February 2008 without Integretel, the Commission and the public will suffer irreparable harm. The Commission's ability and the public's interest in having Integretel promptly placed under a permanent injunction will be denied. As discussed above, the clear intent of Congress in enacting § 326(b)(4) of the Bankruptcy Code and specifically exempting consumer protection law enforcement actions from the otherwise automatic stay of bankruptcy mandates that the Commission's prosecutorial power must not be deterred, delayed or avoided by a defendant filing for bankruptcy – the bankruptcy court's preliminary injunction improperly frustrates this Congressional intent and not granting the Commission's motion for a stay pending appeal would only compound this error.

Moving back the trial date as to all fourteen remaining defendants would only compound the harm to the Commission and the public. A postponed trial would result in justice being delayed as to all of the defendants in the Enforcement Action – the Commission would be foreclosed from seeking the entry of a permanent injunction (including a monetary redress award) against the thirteen defendants that are not in bankruptcy as well as from beginning to provide redress to the thousands of duped consumers. Additionally, delay of the trial as to all of the defendants would create the dangerous precedent – in a multiple defendant case (which is typical for the Commission) a single defendant filing for bankruptcy could be used by the defendants not in bankruptcy to delay a Commission enforcement action as to all of the defendants. Certainly if Congress intended that a single defendant should not be able to deter or delay a consumer law enforcement action against just itself by filing for bankruptcy, Congress did not intend to permit non-bankruptcy defendants to latch on to another defendant's bankruptcy and bring an entire enforcement action to a halt. This possibility of justice delayed also mandates the issuance of a stay.

13

The public interest also demands a stay because not permitting the Commission to go forward with its trial against all fourteen defendants in February 2008 would, in effect, reward Integretel for blatantly gaming the legal system. As discussed in greater detail below, Integretel has used its bankruptcy filing primarily to attempt to circumvent the Commission's Enforcement Action. It already has avoided being included within the Commission's November 6, 2007, summary judgment motion and, unless the preliminary injunction is stayed, it will also avoid the February 2008 trial. This, too, this violates the clear intent of Congress that consumer protection law enforcement actions should not be deterred, delayed or avoided by filing for bankruptcy.

There are no public interests favoring not issuing a stay. All benefits from a denial of a stay would accrue solely to the private interests of Integretel and its creditors.

### 3.    Integretel will not be substantially harmed by a stay

The bankruptcy court found that Integretel would be substantially harmed absent a preliminary injunction because of the expense of opposing the Commission's summary judgment motion and, if necessary, trial and because of the diversion of its employees' attention away from bankruptcy and towards litigation. FTCX 25 – APDE 41 at 11, 26-33. Both of these conclusions are erroneous and should not deter this Court from entering a stay pending appeal.

Litigation costs generally are not an irreparable harm that would prevent the entry of a stay. "If litigation costs constituted a sufficient threat to the estate's assets to justify an injunction, the regulatory and police powers exception to the automatic stay would be, for all practical purposes, a nullity." *E.E.O.C. v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1986); *FAMCO*, 264 B.R. at 654, 656 (C.D. Cal. 2001). *See also In re Emerald Casino, Inc.*, 334 B.R. 378, 390 (N.D. Ill. 2005) (since Congress gave an express priority to law enforcement actions through the enactment of § 362(b)(4), a law

enforcement proceeding should not be stayed under § 105 even if going forward would deplete the debtor's assets). Though decided in the context of the law enforcement exemption from the otherwise automatic bankruptcy stay, *FAMCO* teaches that the purpose of repose from litigation provided by bankruptcy with regard to law enforcement actions "is to stop actual collection or foreclosure efforts, not the determination of liability, and to assure that similarly situated creditors are treated fairly." 264 B.R. at 654. Here, since the Commission has yet to even file for summary judgment against Integretel, the Commission has no judgment on which it can make "collection or foreclosure" efforts.[5] To the extent Integretel's purported litigation costs are a factor to be considered, they are not supported by evidence sufficient to create a colorable a claim of substantial harm. The evidence before the bankruptcy court concerning Integretel's purported litigation costs through trial was nothing more than a single conclusory declaration by Integretel's Enforcement Action counsel. (FTCX 30 – APDE 6 - Attch. 3). In less than three double-spaced pages the declaration summarily asserts that Integretel faces litigation expenses between $920,000 and $1,200,000. But, while the declaration baldly asserts the aggregate number of hours that various defense counsel team members purportedly will work through trial, it does so without providing any specific indication of what each individual will do or how costs will be divided into the various tasks leading up to trial. The declaration also assumes trial costs based on a four-week trial, double the length of the seven to nine day trial projected by the Commission and

_____

[5]    The bankruptcy court found that the Commission and Receiver have "at most, nothing more than a money judgment determining Debtor's purported liability to the receiver." FTCX 25 – APDE 41 at 46. This conclusion is clearly erroneous since the Commission has no judgment against Integretel and is not its creditor with regard to the $1.7 million of Reserve Funds. Rather, the September 14 and 21 Orders simply establish that the Reserve Funds are the property of the receivership estate, not Integretel or its bankruptcy estate. The pendency of the appeal of these Orders does not affect their validity. *Hawkins v. Risley,* 984 F.2d 321, 324 (9th Cir.1993); *Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir.1988).

the Receiver. A more detailed analysis of the weaknesses in this declaration is set forth in two

declarations submitted by counsel for the Commission, (FTCX 31 – APDE 17- Attch. 1; FTCX 32 –

APDE 29 Attch. 1). *FAMCO* directs that a conclusory declaration by counsel of projected litigation

costs, such as the one submitted by Integretel, does *not* suffice to create possible substantial harm to a

debtor. 264 B.R. at 656. Thus, the costs of defending the Enforcement Action in a February 2008 trial

are not a substantial harm for Integretel.[6]

Integretel's relatively small staff size does not create an irreparable harm for Integretel if a stay

is granted and it goes to trial in the Enforcement Action in February 2008. *In re Brennan*, 198 B.R.

445, 451 (D.N.J.1996) (debtor's lack of repose from a regulatory proceeding does not constitute a

serious conflict between the regulatory action and the bankruptcy process and a bankruptcy court

abused its discretion by granting a § 105 stay in order to prevent the distraction of the regulatory

action). More specifically, Integretel has 34 employees. In a situation of a debtor with an even smaller

staff (only 24 people), a district court vacated a bankruptcy court injunction and required the debtor to

continue its defense of a large governmental discrimination law enforcement action while reorganizing.

*EEOC v. Consolidated Freightways Corp. of Delaware*, 312 B.R. 657 (W.D. Mo. 2004); *cf. In re PTI*

---

[6]     Moreover, if the bankruptcy court takes jurisdiction over the Enforcement Action
as to Integretel, *see* FTCX 25 – APDE 41 at 27, n.17, 36, any cost savings to Integretel resulting
from enjoining the Commission from pursuing the Enforcement Action in the Florida District
Court will be, at most, offset. Integretel would still need to defend against the Commission's
claims and, given the bankruptcy court's lack of experience and expertise in the area of federal
consumer protection law enforcement and that Integretel would be defending the case by itself,
without the assistance of its co-defendants, this proceeding may well be expensive more than if
Integretel participated in the Florida District Court's trial. Certainly it would be more
procedurally cumbersome (and expensive) since while the bankruptcy court may hear a
proceeding that is "related to" to a bankruptcy case, *see* 28 U.S.C. § 157(b)(1), absent the
Commission's consent (which will not be forthcoming) the bankruptcy court may not enter a
final order and must submit proposed findings of fact and conclusions of law to the district court
for *de novo* review. 28 U.S.C. § 157(c)(1).

*Holding Corp.*, 346 B.R. 820 (D. Nev. 2006) (injunction issued where debtor had only two principals). As the court observed in *Consolidated Freightways,* though the burden of bankruptcy "is a mighty chore, fortunately it is not one that Consolidated Freightways employees [we]re bearing alone" since it had the considerable assistance of competent counsel. 312 B.R. at 661. Equally true here, Integretel's staff has competent counsel and a reorganization consultant helping it bear the burden of both defending the Enforcement Action and orchestrating its attempt at reorganization.[7]

### C.    Analysis

On the continuum referred to in *Southwestern Voter*, 344 F.3d at 917, the balance weighs heavily in favor of granting a stay pending appeal. The Commission is likely to prevail on appeal. Injunctive relief under § 105 may be granted only in exceptional circumstances. Here, there is nothing exceptional about Integretel's circumstances -- it faces the same situation and difficulties as any debtor that is seeking to reorganize while also defending a law enforcement action. Moreover, even in the absence of the Enforcement Action, there are serious questions as to whether Integretel could reorganize successfully. Beyond these factors, the Commission readily demonstrates that the balance of hardships and public interest weigh heavily in favor of granting a stay pending appeal and permitting the Commission to prosecute its Enforcement Action against Integretel without delay.

## III.    CHANGE OF VENUE MOTION

### A.    This Court has the authority to change the venue of this adversary proceeding pursuant to 28 U.S.C. § 1412

---

[7]    The bankruptcy court expressed particular concern that its failure to enjoin the Enforcement Action could interfere with Integretel's preparation of its complex Schedules and Statement of Financial Affairs over the "next few months," apparently forgetting that just a few paragraphs earlier the bankruptcy court noted this Schedule and Statement are due on November 15, 2007, FTCX 25 – APDE 41 at 32-33, the day this motion was filed.

17

The plain language of 28 U.S.C. § 1412 provides, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." *Id.* The statutory language does not require that a party seeking a change of venue initially seek the change in bankruptcy court, *cf.* Fed. R. Bankr. P. 8005 (indicating a stay pending appeal to be initially sought in the bankruptcy court), and in other cases parties have initiated venue change in the district court. *E.g., Shavers v. Dale*, 182 Fed. Appx. 316, 317 (5th Cir. 2006) (district court transferred bankruptcy appeal to the district court where the underlying bankruptcy case previously had been transferred);[8] *Raytech Corp. v. White*, 54 F.3d 187, 190 (3rd Cir. 1995) (district court transferred adversary proceeding to another district court). *See also* Collier, *Bankruptcy Manual* ¶ 4.05[2] (3rd ed. rev. 2007) (indicating that a district court can decide to change venue in the first instance).[9]

## B.    Standards for change of venue under 28 U.S.C. § 1412

Section 1412, unlike the general change of venue statute, 28 U.S.C. § 1404, is stated in the

---

[8]    The procedural posture of *Shavers* also illustrates the relationship between 28 U.S.C. § 158(a) (which states, "An appeal * * * shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving,") and § 1412: Once an appeal is taken to the district court where the bankruptcy judge sits, then that district court "may transfer a * * * proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

[9]    The Commission requests that venue for this entire adversary proceeding be transferred to the Southern District of Florida. In the alternative, the Commission requests that the instant appeal be transferred. As indicated above, a second appeal concerning the other aspect of this adversary proceeding – the ability of the Receiver and Commission to pursue the contempt proceeding against Integretel in the Enforcement Action – is likely imminent since the hearing on the preliminary injunction concerning the contempt proceeding is set for November 16. As a result, as practical matter it appears likely that this adversary proceeding presently will be on an entirely appellate posture appropriate for transfer to the Southern District of Florida for resolution.

disjunctive.  A change of venue under § 1412 may be ordered because of "the interest of justice" *or* "for

the convenience of the parties"  A movant need *not* demonstrate that a proposed venue change is both

in the interest of justice and more convenient for the parties – either factor alone independently can

justify a change of venue.  *Marquette Transp. Co. v. Trinity Marine Products, Inc.*, 2006 WL 2349461

at *5 (E.D.La. 2006); *In re Enron Corp.*, 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004); *Blanton v. IMN*

*Financial Corp.*, 260 B.R. 257, 266 (M.D.N.C. 2001).

Judicial economy is a critical factor to be considered in the interest of justice.  *In re Manville*

*Forest Products Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990); *Shared Network Users Group, Inc. v.*

*Worldcom Technologies, Inc.*, 309 B.R. 446, 451(E.D. Pa. 2004).  *See also* Collier *Bankruptcy Practice*

*Guide* ¶ 17.07[2] (2007).  A significant gain in judicial economy can, by itself, almost wholly justify a

change of venue under § 1412.  *Shared Network Users Group*, 309 B.R at 451.  In *Shared Network*, a

district court granted a § 1412 motion almost exclusively based on the judicial economy "to be achieved

in having the entire controversy decided in one forum," where a significant related proceeding already

was pending before the transferee district.  309 B.R at 451.  *See also SenoRX v. Coudert Bros. LLP,*,

2007 WL 2470125 at *1-*2 (N.D. Cal. 2007) (claims transferred to a venue where other claims were

already pending to promote judicial economy); *Blanton*, 260 B.R. at 266-67 (claims transferred to a

venue where court already had invested significant resources into related matter).  Economic and

efficient resolution of an adversary proceeding also is a critical interest of justice factor.  *SenoRX*, 2007

WL 2470125 at *1 (N.D. Cal. 2007).  The intimate familiarity of the Florida District Court with the

numerous issues of law and fact common to the Enforcement Action, the ancillary contempt proceeding

by the Receiver against Integretel, and the instant adversary proceeding also weigh heavily in favor of a

change of venue.  *See Manville Forest Products*, 896 F.2d at 1391 (need for substantial "learning

19

curve" can be factor in determining whether to change venue).

The "convenience of parties" test includes: (1) proximity of creditors to court; (2) proximity of debtor to court; (3) proximity of witnesses necessary to administration of estate; (4) location of assets; and (5) need for further administration if liquidation ensues. *In re Donald,* 328 B.R. 192, 204 (9th Cir. BAP 2005); *see also SenoRX v. Coudert Bros. LLP,* 2007 WL 2470125 at *1 (N.D. Cal. 2007).

Ultimately, whether considering the "interest of justice" or the "convenience of parties," the Court must apply § 1412 flexibly and on a case-by-case basis, based upon the specific facts presented. *Manville Forest Products,* 896 F.2d at 1391; *SenoRX,* 2007 WL 2470125 at *1. The Court must strike a balance of due process concerns, assuring appropriate access to the courts for all parties in interest, against the economic and efficient administration of the case. *Donald,* 328 B.R. at 204.[10]

## C.     Analysis

### 1.     Interest of justice

A change of venue will serve the interest of justice in two critical ways. First, significant judicial economy will be served due to the extensive knowledge of this matter already possessed by the Florida District Court from the Enforcement Action. Second, unifying the Enforcement Action and the instant adversary proceeding in the sole forum that can have jurisdiction over both proceedings will stem the flood of rulings by the bankruptcy court that directly contradict (and effectively overrule) prior decisions in the Enforcement Action by the Florida District Court and the Eleventh Circuit that effect this adversary proceeding.

As the Statement of Facts, *supra,* demonstrates, since its commencement in February 2006 the

---

[10]     This motion is timely since this Court has not yet had to extend any resources concerning the adversary proceeding.

Enforcement Action (with approximately 700 docket entries as of the date of this filing) has been a contentious and intensively litigated case that has required significant judicial intervention. After presiding over the Enforcement Action for 21 months, the District Court for the Southern District of Florida is intimately familiar with the facts and law of the case. As a result, the Florida District Court is uniquely situated to resolve this adversary proceeding efficiently and faces no learning curve. The Florida District Court also is in the best position to be able to balance the public interest and Congressional mandate for permitting the Commission to continue its prosecution of the Enforcement Action against Integretel's interest in repose from litigation while it pursues its bankruptcy.

The Southern District of Florida is the sole venue that can exercise jurisdiction over both the Enforcement Action and this bankruptcy adversary proceeding. With the Enforcement Action and the adversary proceeding in separate jurisdictions, fundamentally inconsistent rulings on critical issues are occurring with increasing frequency. One example is the contrast between the bankruptcy court's November 2, 2007, memorandum decision (FTCX 25 – ADPE 41) and subsequent preliminary injunction order (FTCX 26 – ADPE 49) and the September 14 and 21 Orders (FTCXs 8 and 21) of the Florida District Court. The September 14 and 21 Orders unambiguously held that the Reserve Funds are the property of Access One and Network One and are to be turned over to the Receiver. The September 21 Order reiterates these holdings and further held that the Reserve Funds are *not* part of Integretel's bankruptcy estate (and, therefore, cannot be within the bankruptcy court's control or jurisdiction). In direct contradiction, the bankruptcy court's memorandum decision and subsequent preliminary injunction (inexplicably acknowledging but then ignoring the principle of collateral estoppel), held that the Reserve Funds are the property of Integretel (not the receivership estate); that they are part of the bankruptcy estate and are subject to the control of the bankruptcy court; that the

21

Receiver is nothing more than a mere unsecured judgment creditor of Integretel; and that the Florida District Court no longer has jurisdiction over the Reserve Funds.

Another example of directly conflicting orders is the Eleventh Circuit's November 5, 2007, denial of a stay pending appeal on the Receiver's ability to pursue his contempt proceeding against Integretel in the Enforcement Action and the bankruptcy court's almost immediate entry of a temporary restraining order enjoining the Receiver and the Commission from doing precisely what the Eleventh Circuit had 3.5 hours earlier held they could do. Only by placing both the Enforcement Action and this adversary proceeding before the Florida District Court, can the interest of justice be served -- by avoiding any additional opportunities for anomalous situations such as a single bankruptcy judge effectively reversing the decision of a unanimous panel of a United States Court of Appeals.

A prompt change of venue also will prevent an imminent and irreparable anomaly relating to the Reserve Funds. While the bankruptcy court has yet to release these funds, its November 2, 2007, memorandum decision and preliminary injunction order certainly suggests that it may do so at its December 7, 2007, hearing, if not earlier should Integretel so request. Once these funds are spent by Integretel, the Commission (and the consumers who would receive these funds as redress) will be irreparably harmed.

Driving these anomalies is Integretel's efforts to game the legal system by pitting the bankruptcy court against the Florida District Court and the Eleventh Circuit. Integretel further games the system by making fundamentally inconsistent representations to these different courts. For example, in its motion seeking a stay pending appeal from the Eleventh Circuit regarding the Receiver's contempt proceeding and the Reserve Funds Integretel stated that a stay would maintain the status quo, specifically, "The status quo is that enforcement of the [September 14] Order and that Integretel still *holds* the disputed

[reserve] funds." (FTCX 34 – October 16, 2007, Letter from Neal Goldfarb to Thomas K. Kahn (11th Cir. Clerk) at 4). In direct contradiction of this representation to the Eleventh Circuit, Integrel told the bankruptcy court on October 30, 2007, that, "The status quo is and was Debtor's *possession* and *use* of all of its money and nothing the Debtor said to the Eleventh Circuit is inconsistent with the Debtor using its money." (FTCX 35 – BDE 211 at 7). Integretel is further gaming the system by using bankruptcy as a sword selectively to litigate only the matters that it affirmatively chooses, such as its appeal to the Eleventh Circuit and this adversary proceeding, and as a shield to circumvent the matters it wants to avoid, such as the Enforcement Action and the contempt proceedings. The interest of justice is best served by not permitting a debtor to manipulate the judicial system to its advantage – transferring venue of this adversary proceeding to the Florida District Court so that all matters involving Integretel, the Commission and the Receiver are before and subject to the supervision of a single court is the best way to serve that end.

The Florida District Court is best situated to determine if its need to vindicate its authority and enforce its several turnover orders through contempt proceedings outweighs the need for repose from the concerns of litigation during the pendency of bankruptcy sought by Integretel. *SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.D.C. 2001). In *Bilzerian*, the defendant Bilzerian (as has Integretel here) had "not even minimally complied with the Court's" prior orders. The court found that Congress could not have intended to "permit a party to blatantly violate direct orders of a court and then seek shelter" through bankruptcy stay and held that a "court must retain the ability to compel compliance with its orders," and bankruptcy is not a "free [pass] to run rampant in flagrant disregard to the powers of the court." *Id*. at 15. Though *Bilzerian* was addressing the § 362(b)(4) exemption, its conclusions concerning Congress' intent concerning the effect of bankruptcy on law enforcement actions is equally

23

1   applicable to § 105.

2          The bankruptcy court's November 5, 2007, temporary restraining order improperly intrudes on

3   the relationship between the Florida District Court and its Receiver.  The order *prohibits* the Receiver

4
    from giving status reports to the Florida District Court unless Integretel joins in the report.  The
5
6   bankruptcy court thereby effectively gave Integretel absolute control over communications between the

7   Florida District Court and its appointed Receiver.  Transfer of the adversary proceeding will serve the

8   interest of justice by having a single court – the Florida District Court that appointed the Receiver –
9
10  determine precisely how the Receiver should exercise his obligations.

11         Transfer to the Southern District of Florida also would mean that any appeal of the transferee

12  court's appellate decision(s) would go the Eleventh Circuit, rather than the Ninth Circuit.  Since the

13
    Eleventh Circuit already has Integretel's appeals of the September 14 and 21 Orders before it, the
14
15  Eleventh Circuit will be familiar with the facts of this case.  Also (assuming transfer and then an appeal

16  of the Florida District Court's adversary proceeding appellate decision(s)), the Eleventh Circuit is the

17  sole Circuit Court of Appeals with the ability to consolidate all of the appeals relating to the $1.7

18
    million in Reserve Funds and to assure consistent rulings.
19
20         **2.      Convenience of the parties**

21         The convenience of the parties is roughly at equipoise.  Most importantly, it creates no issues

22  that would countermand a change of venue in the interest of justice.  Florida is a more convenient venue

23
    for the Florida-based Receiver and the District of Columbia-based Commission while California is
24
25  more convenient for Integretel.  No witnesses are necessary to resolve the adversary proceeding and the

26  expense of filing memoranda and briefs are not affected a change of venue.  Nor is there any advantage

27  to a California-based federal court hearing this matter since it involves no local assets or state law

28

                                                    24

1    issues.[11]

2                                   **CONCLUSION**

3          For the reasons set out above, the Commission's motions for a stay pending appeal and  for a

4
5    change of venue to the Southern District of Florida, pursuant to 28 U.S.C. § 1412 , should be granted.

6                                   WILLIAM BLUMENTHAL
                                     General Counsel
7
8                                   JOHN F. DALY
                                     Deputy General Counsel - Litigation
9
10                                  _____

11                                  JOHN ANDREW SINGER
                                     Attorney - Office of the General Counsel
12                                  Federal Trade Commission
                                     600 Pennsylvania Ave., NW
13                                  Washington, DC  20580
                                     Telephone:  (202) 326-3234
14                                  Facsimile:   (202) 326-2447
                                     Email: jsinger@ftc.gov
15
16
17                                  MICHAEL MORA
                                     JULIE MACK
18                                  Attorney - Division of Enforcement
                                     Bureau of Consumer Protection
19
20                                  ATTORNEYS FOR FEDERAL
                                     TRADE COMMISSION
21

22

23

24

25

26

27    _____

28          [11]       While the Reserve Funds are located in California bank accounts, their location is
      irrelevant since funds can be wire transferred virtually instantaneously.

                                          25