UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC.,
ACCESS ONE COMMUNICATIONS, INC.,
NETWORK ONE SERVICES, INC.,
WILLOUGHBY FARR,
MARY LOU FARR,
YARET GARCIA,
ERIKA RIABOUKHA,
QAADIR KAID,

        Defendants,
_____/

**RECEIVER'S REVISED MOTION FOR AN ORDER TO SHOW CAUSE WHY THE BILLING RESOURCE, D/B/A INTEGRETEL, SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THIS COURT'S TEMPORARY RESTRAINING ORDER AND AMENDED PRELIMINARY INJUNCTION ORDER**

    David R. Chase, not individually, but solely in his capacity as receiver (the "Receiver") for Nationwide Connections, Inc. ("Nationwide"), Access One Communications, Inc. ("Access One"), Network One Services, Inc. ("Network One"), 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC (collectively, the "Receivership Entities"), files this Revised Motion for an Order to Show Cause why The Billing Resource, d/b/a Integretel ("Integretel"), should not be held in contempt for violating this Court's February 27, 2006 Temporary Restraining Order (the "TRO") (D.E. 18) and September

22, 2006 Amended Preliminary Injunction Order (the "Preliminary Injunction") (D.E. 233).

### Background Facts

As this Court knows, the Federal Trade Commission (the "FTC") charges Nationwide, Access One, and Network One, along with their principals, with deceptive and unfair billing practices for "cramming" – the unauthorized billing of charges on phone bills – in violation of Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b). For that reason, this Court issued the TRO and the Preliminary Injunction and placed Nationwide, Access One, and Network One into receivership.[1]

As this Court also knows, Nationwide, Access One, and Network One did not act alone. All three entities used the services of what is called a billing aggregator, which is the entity that actually caused Nationwide's, Access One's, and Network One's fraudulent charges to be placed on the end user's phone bill. For that reason, the FTC recently filed a First Amended Complaint in which it included all of the aggregators as additional defendants in this action.

The aggregator that Nationwide used was BSG Clearing Solutions, Inc. and/or certain entities affiliated with it ("BSG"). The aggregator that both Access One and Network One used was Integretel, against which the Receiver brings this Motion. Although the Receiver's analysis is not yet complete, the Receiver believes, based on the records that he and his professionals have reviewed and analyzed thus far, that approximately $30 million in charges were placed on phone bills through the use of BSG and approximately $5 million in charges were placed on phone bills through the use of Integretel.

---

[1] The receivership has twice been expanded: once to include affiliated entities and entities into which the Defendants placed title to various properties that they purchased with the fruits of the fraud; and then to include the assets of defendants Willoughby and Mary Lou Farr.

Both BSG and Integretel had agreements in place with Nationwide and Access One/Network One that permitted them to withhold monies that were *"owed to"* Nationwide and/or Access One/Network One as "reserves," just in case end users complained about the charges and requested refunds and/or credits directly from the aggregators. Shortly after this receivership was initiated, BSG advised the Receiver and the FTC of the reserves that it was holding relating to Nationwide as of the commencement of the receivership (slightly over $1 million). BSG promptly turned that money over to the Receiver, as it was required to do under the TRO.

Integretel, however, did not advise either the Receiver or the FTC that it, too, was holding reserves. To the contrary, Integretel's president wrote the FTC on March 6, 2006, in direct response to this Court's TRO. In that letter, a copy of which is attached as Exhibit 1, Integretel's president stated that "no amounts are currently due and owing" to Access One or Network One. Integretel's president's exact words are telling:

> We have a service contract with a Florida corporation called Access One Communications ("AOC"). Pursuant to this contract, AOC would be entitled to certain proceeds from billing transactions. However, AOC is in default of this contract and, therefore, **no amounts are currently due and owing.**
>
> ***
>
> We have a service contract with a Florida corporation called Network One Services, Inc. ("NOSI"). Pursuant to this contract, NOSI would be entitled to certain proceeds from billing transactions. However, NOSI is in default of this contract and, therefore, **no amounts are currently due and owing.**

*See* Exhibit 1 (Emphasis added).

Integretel's president's letter nowhere mentions the word "reserves" for either Access One or Network One. Integretel's president's letter nowhere mentions that the reserves that it is holding are, by definition, comprised of funds that are *"owed to"* Access One and Network One. And

3

Integretel's president's letter nowhere mentions what the Receiver has just learned – that, as of August 25, 2006, Integretel was holding $1,186,430.36 in reserves for Access One and $173,918.66 in reserves for Network One.[2] In other words, Integretel has been holding over $1.35 million of monies "owed to" Access One and Network One and, despite the clear requirements of the TRO, Integretel *never* even advised the Receiver or the Court of this fact.

It is important to note that Section VI(C) of the TRO specifically required any business entity served with a copy of the TRO to:

> Provide the Commission's counsel, within five (5) business days of receiving a copy of this [TRO], a sworn statement setting forth:
>
> 1. The identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, **or held on behalf of, or for the benefit of a Defendant;**
>
> 2. The balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this [TRO] is served ...

*See* TRO at Section VI(C)(1) and (2) (Emphasis added).

Integretel's president's letter was, indeed, written in response to the TRO and was, in fact, served five business days after the TRO was issued. Integretel's president's March 6th letter to the FTC was not "sworn" – which is now telling – but the FTC nevertheless believed it to be truthful.

As stated above, the Receiver has just learned (*i.e.*, on October 11, 2006) that Integretel is holding over $1.35 million in what are known as "IGT Reserves" for both Access One and Network One. Under the agreements between Integretel and each of Access One and Network One, copies

---

[2] The Receiver learned about the amount of the reserves because Integretel's counsel wrote the Receiver's counsel on October 11, 2006 (*see, infra*, page 5 and Exhibit 4), to which he attached an October 5, 2006 letter that he wrote to the FTC, in which he confirmed the reserve amounts. *See* Composite Exhibit 4.

4

of which are attached as Exhibits 2 and 3, respectively, the "IGT Reserves" are, *by definition*, amounts "owed to" Access One and Network One.

Indeed, Exhibit A to the Integretel/Access One Master Services Agreement (Page 5) defines the IGT Reserve as follows:

> "IGT Reserve" shall mean **an amount withheld, from the amount otherwise owed to Client** with respect to Billing Transactions, to protect IGT from credit losses or otherwise to cover other reserves or offsets, other than Uncollectables imposed by a Telco.

*See* Exhibit 2 at 5 (and Exhibit A attached thereto) (Emphasis added). The Integretel/Network One Master Services Agreement (Page 5) contains an identical definition of IGT Reserves. *See* Exhibit 3 at 11 (and Exhibit A attached thereto).

As a result, there is no conceivable reason for Integretel's president to have told the FTC that "no amounts are currently due and owing," as he did on March 6th in response to having received the TRO. By definition, the $1.35 million that Integretel is now holding as a "reserve" is comprised of funds that were – and still are – *"owed to"* Access One or Network One. That is why BSG, the aggregator that Nationwide used, disclosed that it was holding over $1 million in reserves and transferred that money to the Receiver shortly after the TRO was issued. The TRO required nothing less.

### Integretel's "arguments" and the TRO and Preliminary Injunction

After learning about the "reserves" on October 11, 2006, the Receiver received a call – and then a letter – from Integretel's counsel. A copy of the letter, to which Integretel's counsel attaches earlier letters to the FTC and copies of the agreements, is attached as Composite Exhibit 4. In Integretel's counsel's letter, Integretel makes a series of "arguments" attempting to justify its failure to transfer the reserve monies to the Receiver over the last seven months.

5

As discussed more fully below, each of Integretel's "arguments" is unavailing given the clear language in this Court's TRO and Preliminary Injunction. At a minimum, however, Integretel should have disclosed that there was a reserve, the amount of the reserve, and the circumstances under which it came into possession of the reserve, so that this Court – rather than Integretel – could have decided the issue of whether the reserve should have been immediately transferred to the Receiver. Integretel's failure to do that is inexcusable and justifies a finding of contempt.

By way of example, Integretel argues that "the reserves do not take the form of any actual funds that [Integretel] has segregated or otherwise set aside ..." *See* Exhibit 4 at 3. Integretel seems to be arguing that, rather than having deposited the reserves in a separate account titled in Access One's or Network One's names, it kept the reserves in a pooled account and kept track of them through an internal accounting entry. This is a distinction without a difference, since the TRO captures funds "held on behalf of, or for the benefit of, a Defendant." *See* TRO at Section VI(C)(1). The Preliminary Injunction contains an identical provision. *See* Preliminary Injunction at Section VII(C)(1).

Integretel argues that, under the agreements, it was not Access One's or Network One's "agent, partner, joint venturer, trustee, fiduciary, or legal representative," so it was not "in any way acting 'on behalf' of the two clients." *See* Exhibit 4 at 3. This is nonsensical. It goes without saying that one need not be an agent, partner, joint venturer, trustee, fiduciary, or legal representative to come into possession of funds that one is holding "on behalf of" another person or entity. This is a truly strained – and, perhaps, sanctionable – reading of this Court's Orders.

Integretel argues that it was entitled, under the agreements, to withhold these reserves "from payments otherwise due to Access One and Network One ..." *See* Exhibit 4 at 2. This may be true, but that does not mean that Integretel was entitled to *continue to hold* those reserves after the

6

issuance of this Court's TRO and Preliminary Injunction. To the contrary, the TRO and the Preliminary Injunction make it clear that Integretel could not continue to do so. But at a minimum, this Court's orders required Integretel to disclose what it was doing so this Court – rather than Integretel – could make an independent determination about whether its actions were appropriate.

Integretel argues that "[t]hese reserves have been set to account for, among other things, any liability that might be claimed against [Integretel] for any improper billings by Access One or Network One such as alleged by the FTC in the First Amended Complaint." *See* Exhibit 4 at 3. The First Amended Complaint is the recently-filed FTC pleading that joins Integretel (and the other aggregators) as defendants in this action, so Integretel is really arguing that it can use the "reserves" to fund the indemnification provision contained in the agreements with Access One and Network One <u>and</u> to fund its own exposure in this action for its own independent wrongdoing. Integretel is wrong in both respects.

Under the agreements between Integretel and each of Access One and Network One (Exhibits B and C, respectively), the indemnified party (*i.e.*, Integretel) has two options if it wishes to enforce the indemnification provision against the indemnifying party (*i.e.*, Access One or Network One): notify the indemnifying party of the request to be indemnified and turn over the defense of the action to the indemnifying party <u>or</u> defend itself and seek reimbursement of its attorneys' fees and costs from the indemnifying party. <u>The agreements do not give Integretel the right to use the IGT Reserves to fund the indemnity.</u> *See* Exhibit B at 2, Section 11 (Access One Master Services Agreement); and Exhibit C at 4, Section 11 (Network One Master Services Agreement).

In addition, the FTC has sued Integretel for its own independent violations of the Federal Trade Commission Act, 15 U.S.C. § 53(b). If the FTC succeeds, Integretel itself will be financially

7

responsible for its actions and it will not be able to look to Access One or Network One for indemnification under the operative agreements.

Finally, Integretel argues that "Access One and Network One failed to provide proof of their compliance with contract requirements ..." *See* Exhibit 4 at 3. In other words, Integretel seems to be arguing that, *since it is of the opinion that* Access One and Network One breached the agreements, it was entitled to keep the $1.35 million in reserves. The agreements do not, however, contain a liquidated damages provision that would permit Integretel under these circumstances to retain a $1.35 million reserve, and the agreements do not give Integretel the right to make an independent, unilateral decision about Access One's or Network One's breach of the agreements without court involvement.[3] More importantly, the TRO specifically precludes contracting parties from engaging in such acts of "self-help" without first obtaining leave from this Court. Section XX(A)(2) of the TRO provides as follows:

> **Except by leave of this Court**, during pendency of the receivership ordered herein, Defendants ... and other **persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Defendants ... are hereby stayed from**:
>
> 2. Accelerating the due date of any obligation or claimed obligation against a Receivership Defendant; filing or enforcing any lien against a Receivership Defendant; taking or attempting to take possession, custody, or control of any asset of a Receivership Defendant; **attempting to foreclose, forfeit, alter, or terminate any interest in any asset of a Receivership Defendant, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise**.

---

[3] Integretel's president concedes as much in his March 6th letter, in which he also says that "[t]o the extent proceeds become due to [Access One or Network One] in the future, we will establish a separate bank account into which such funds will be deposited and notify your office accordingly." *See* Exhibit 1. If, as Integretel is now arguing, Access One's and Network One's breach of the agreements entitled Integretel to keep the reserves, then how could proceeds ever become due to Access One or Network One in the future?

*See* TRO at Section XX(A)(2) (Emphasis added). The Preliminary Injunction contains an identical provision. *See* Preliminary Injunction at Section XIX(A)(2.

In short, there is simply no basis – contractual or otherwise – on which Integretel can justify having made the determination to keep this money without so much as advising the Court that it was doing so. Integretel's actions are unquestionably violative of the TRO and the Preliminary Injunction.

Other provisions of the TRO and the Preliminary Injunction that the Receiver would like to highlight are (1) Section II(A) of the TRO, which precludes those who receive actual notice of the TRO from "concealing" assets held for the benefit of any Defendant[4]; (2) Section IX, which requires those who receive a copy of the TRO to "fully cooperate and assist the Receiver," including by "advising [of] all persons who owe money to the Receivership Defendants[5]; and (3) Section IX(F), which precludes those who have received a copy of the TRO from "[d]oing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possessions of, the assets or documents subject to this receivership.[6]

Finally, the Receiver would like to highlight Section VIII(F) of the TRO, which prevents the "inequitable distribution of assets" of the receivership.[7] Even if Integretel had a contractual right to these funds, or a contractual right to seek indemnification from Access One or Network One, there are insufficient funds in the receivership estate to satisfy *all* of the contractual claims that

---

[4] The companion provision in the Preliminary Injunction is Section III(A).

[5] The companion provision in the Preliminary Injunction is Section X.

[6] The companion provision in the Preliminary Injunction is Section X(F).

[7] The companion provision in the Preliminary Injunction is Section IX(F).

9

could be brought against the Receivership Entities. As the Court knows, the millions of victims in this case also have contractual claims that they could bring against the Receivership Entities. By keeping this money, Integretel is essentially recovering one-hundred-cents-on-the-dollar on its alleged breach of contract claim, even though it has yet to file that claim and even though the victims of this fraud, as the Court knows, will not enjoy that kind of recovery. As a result, Integretel's unilateral act of self-help caused it to receive exponentially more on its alleged breach of contract claim than the millions of victims in this case will receive on their claims. This is yet another violation of the TRO and the Preliminary Injunction.

The Receiver respectfully requests that this Court issue an Order to Show Cause as to why Integretel should not be held in contempt of court.

## MEMORANDUM OF LAW

Courts have inherent power to enforce compliance with their lawful orders by contempt. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987); *Shillitani v. United States*, 382 U.S. 364, 370 (1966). The existence of this power is essential to the proper administration of justice, and without it, a court would be incapable of sustaining decorum or asserting its authority by order or decree. *See Young*, 481 U.S. at 796, 798. Indeed, Congress codified the court's contempt powers in 18 U.S.C. § 401 (2005), which provides:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority and none other, as...
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Courts have concluded that a party has committed "contempt" when that party willingly disregards the court's authority. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002)

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

(citing *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)); *see also United States v. KKS&W Offshore Eng'g, Inc,.* 932 F.2d 906, 909 (11th Cir. 1991) (stating elements of contempt include "a lawful and reasonably specific order of the court and a willful violation of that order.") To prove contempt, the Receiver has the burden to show that "(1) the court entered a lawful order of reasonable specificity; (2) the order was violated; and (3) the violation was willful." *United States v. Bernardine*, 237 F.3d 1279, 1282 (11th Cir. 2001); *see also Riccard*, 307 F.3d at 1296.

The Receiver has met this burden. As more fully discussed above, the TRO and the Preliminary Injunction were lawful orders that were incredibly specific. There can be no question that, for the reasons stated above, they were violated. Even if Integretel believed that its "arguments" were correct, it should have – at a minimum – advanced those arguments before this Court so that this Court, rather than Integretel, could have decided the issue. Finally, there can be no question that the violation was willful. Integretel's president's March 6th letter is evasive, incomplete, and disingenuous, and to this day, Integretel refuses to transfer the reserves to the Receiver while this Court has an opportunity to decide the issue.

## CONCLUSION

Based on the foregoing, the Receiver respectfully requests that this Court order Integretel to show cause why it should not be held in contempt and for such other relief as is just and proper. In addition, Integretel should be ordered to provide a <u>sworn statement</u>, as was required under Section VI(C)(1) and (2) of the TRO and Section VII(C)(1) and (2) of the Preliminary Injunction, identifying the amount of reserves as of the issuance of the TRO (*i.e.*, February 27, 2006). And if the reserves have been depleted since the initiation of the receivership, Integretel should be ordered to immediately fund the depletion of the reserves from its own funds.

11

## CERTIFICATION

Pursuant to Local Rule 7.1.A.3, counsel for the Receiver has conferred with Integretel's Washington, D.C. counsel (Steven Lancellotta of Tighe Patton Armstrong Teasdale) and local counsel (Scott Newman of Holland & Knight), but the parties were unable to resolve the issues raised in this Motion.

Dated: October 16, 2006

Respectfully submitted,

**TEW CARDENAS LLP**
Counsel for the Receiver
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131
Telephone: (305) 536-1112
Facsimile: (305) 536-1116

By: _____
JEFFREY C. SCHNEIDER, P.A.
Florida Bar No. 933244
Email: jcs@tewlaw.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was served via Electronic Mail (unless otherwise indicated) on this 16th day of October, 2006 on the attached service list.

_____
JEFFREY C. SCHNEIDER, P.A.

@PFDesktop\::ODMA/MHODMA/DMS_NT;Miami;472255;1