UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC., et al.,

    Defendants.
_____/

## **OMNIBUS ORDER**

THIS CAUSE comes before the Court pursuant to a series of motions:

- The Receiver's Revised Motion for Order to Show Cause Why Integretel Should Not Be Held in Contempt of Court, filed October 16, 2006 **[DE 246]**;

- Integretel's Motion to Modify Prior Injunctive Orders, filed October 30, 2006 **[DE 294]**;

- Integretel's Motion to Stay Contract Claims, filed December 29, 2006 **[DE 363]**; and

- The Receiver's Motion Requesting BSG Defendants To Transfer Additional Reserves, filed January 12, 2007 **[DE 371]**.

The Court held a hearing on these motions on April 12, 2007. These motions are fully briefed and are ripe for adjudication.

Both BSG and Integretel had agreements in place with Nationwide and Access One/Network One that permitted them to withhold monies that were "owed to" Nationwide and/or Access One/Network One as "reserves," in the event that any users complained about

2

charges and requested refunds and/or credits directly from the Aggregators. Shortly after this receivership was initiated, BSG advised the Receiver and the FTC of reserves that it was holding relating to Nationwide as of the commencement of the receivership (slightly over $1 million). BSG turned that money over to the Receiver.

Integretel did not advise either the Receiver or the FTC that it was holding reserves. Rather, its president informed the FTC on March 6, 2006 that "no amounts are currently due and owing" to Access One or Network One. As of August 26, 2006, Integretel was holding $1,186,430.36 in reserves for Access One and $173,918.66 in reserves for Network One. These amounts have increased, and as of June 30, 2007, the reserve amount being held by Integretel (and/or its affiliates) is $1,762,762.56. As of August 6, 2007, the reserve amount being held by BSG (and/or its affiliates) is $930,052.99.

The Receiver notes that the temporary restraining order required any business entity served with a copy thereof to:

> provide to the Commission's counsel, within five (5) business days of receiving a copy of this [TRO], a sworn statement setting forth:
>
> 1.  The identification number of each such account or asset titled in the name, individually or jointly, of a Defendant, or held on behalf of, or for the benefit of a Defendant;
>
> 2.  The balance of each such account, or description of the nature and value of each such asset as of the close of business on the day on which this [TRO] is served...

Exhibit A to the Integretel/Access One Master Services Agreement defines the reserve as follows:

3

>an amount withheld, from the amount otherwise owed to Client with respect to Billing Transactions, to protect IGT for credit losses or otherwise to cover other reserves or offsets, other than Uncollectibles imposed by a Telco.

The Integretel/Network One Master Services Agreement contains an identical definition of the reserves.

Integretel maintains that "the reserves do not take the form of any actual funds that [Integretel] has segregated or otherwise set aside..." and maintains that it keeps the reserves in a pooled account it tracks via an internal accounting entry. Such is a distinction without a difference, since the TRO captures funds "held on behalf of, or for the benefit of, a Defendant."

Integretel also maintains that it was not Access One's or Network One's "agent, partner, joint venturer, trustee, fiduciary, or legal representative," and so was not "in any way acting 'on behalf of' of the two clients." An entity need not be an agent, partner, joint venturer, trustee, fiduciary, or legal representative to possess funds that one is holding "on behalf of" another person or entity, however.

Integretel also maintains that the "reserves have been set to account for, among other things, any liability that might be claimed against [Integretel] for any improper billings by Access One or Network One such as alleged by the FTC in the First Amended Complaint." The Court has reviewed the agreements in question. The agreements between Integretel and each of Access One and Network One allow Integretel either to notify the indemnifying party of the request to be indemnified and turn over the defense of the action to the indemnified party or defend itself and seek reimbursement of its attorneys' fees and costs from the indemnifying party. The agreements did not give it the right to use the reserves to fund the indemnity. Furthermore, the FTC has sued

4

Integretel for its own independent violations of the Federal Trade Commission Act. If the FTC succeeds, Integretel itself will be financially responsible for its actions and will not be able to look to Access One or Network One for indemnification under the operative agreements.

Finally, Integretel argues that "Access One and Network One failed to provide proof of their compliance with contract requirements..." Integretel evidently maintains that since it is of the opinion that Access One and Network One allegedly breached the agreements, it was entitled to keep the reserve monies. The agreements do not, however, contain a liquidated damages provision that would permit retention of those funds under the circumstances, nor do the agreements give it the right to make an independent, unilateral decision about Access One's or Network One's breach of the agreements without court involvement.

Integretel also moves to stay litigation of the aforementioned contract claims pending arbitration thereof, maintaining that the Receiver stands in the shoes of Access One and Network One and may assert only those rights and remedies that those entities themselves could have asserted. In particular, the Receiver is supposedly bound by the arbitration clause in each company's contract. The Receiver's claim is not a claim at law governed by pre-receivership contracts, however, but one governed by this Court's jurisdiction over receivership property based on the TRO and Amended Preliminary Injunction. The Receiver does not claim that the funds must be turned over according to, or by adopting, a contract signed between Integretel and Access One/Network One. The Receiver is seeking to recover the reserve funds pursuant to the Court's in rem jurisdiction over receivership property, as memorialized in the TRO and the Amended Preliminary Injunction. A federal court possesses broad authority to issue various ancillary relief measures in enforcing actions brought by federal agencies. See FTC v.

5

Productive Mktg., Inc., 136 F. Supp. 2d 1096, 1104 (C.D. 2001); SEC v. Wenke, 622 F.2d 1363, 1371 (9th Cir. 1980) ("the Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest."). A receivership order issued to preserve the assets of the receivership estate is a classic example of a district court's exercise of in rem jurisdiction over receivership property. See Productive Mktg., 136 F. Supp. 2d at 1105; Wenke, 622 F.2d at 1369 (stating that a federal district court's power to issue a stay against all persons concerning all proceedings against the receivership entities "rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action"). "[R]eceivers are not bound by the contracts of the entity that they are appointed to protect. The receiver becomes bound only when it affirmatively adopts the obligations of the entity that it is protecting." City Bank, NA v. Nyland (CF8) Ltd., 839 F.2d 93, 98 (2d Cir. 1987). The Court declines to stay adjudication of the contract claims.

Integretel argues that the TRO and Amended Preliminary Injunction would be invalid if they enabled the Court to determine Integretel's ownership interest (or lack thereof) in the reserve funds without first requiring the Receiver to institute a new, separate legal proceeding. Issues concerning entitlement to disputed receivership property, in fact, are the types of issues typically determined via summary proceedings in the federal court equity receivership context. See Wenke, 783 F.2d at 837-38 (stating that claims of nonparties to property claimed by receivers can be resolved via summary proceedings, which reduced the time necessary to settle disputes, decrease litigation costs and prevent dissipation of receivership assets, as long as there is notice to the non-party and an opportunity to be heard, thereby satisfying due process).

6

Integretel maintains that the Court deprived it of due process when it issued the TRO and Amended Preliminary Injunction without previously providing notice and an opportunity to be heard. A temporary restraining order or injunction is properly issued and binding so long as the party against whom it is being issued had a chance to defend fully the legitimacy of the eventual claim. Accordingly, it is irrelevant whether the party had been given a chance to oppose the order prior to its issuance. See FTC v. Assail, Inc., 410 F.3d 256, 268 (5th Cir. 2005) (finding that attorney for non-parties to receive fees that resulted from fraud had opportunity to defend self at hearing to determine whether disputed funds were subject to turnover order and thus had adequate notice and opportunity to be heard). Here, Integretel has briefed these issues in three separate briefs, its response, its motion to modify, and its motion to stay. It has, without question, had an opportunity to be heard on this issue.

Integretel argues that the TRO and Amended Preliminary Injunction are invalid because the FTC and the Receiver thereby have unbridled discretion to decide what cooperation is required and from whom, which is allegedly further compounded by the fact that the FTC and Receiver are interested in maximizing the amount of money, and subsequent recovery, in the receivership estate. While Integretel has accurately pinpointed the Receiver's and the FTC's goals, its attacks on the Court's orders fail. That cooperation clauses are standard in federal court receivership orders goes without saying. In Productive Mktg., when a non-party argued it was not bound by the cooperation clause, the district court disagreed because the injunction, as a receivership order, was required to be read reasonably in light of its stated purpose, to account for and preserve the assets of the receivership estate. 136 F. Supp. 2d at 1109-10. Otherwise stated, the receiver could not unreasonably use the cooperation clause for whatever purpose he wished.

Rather, the only reasonable interpretation of the clause was for it to be used consistently with the objective of the injunction, to require non-parties (and parties) that hold assets of the receivership estate to disclose information to the receiver relating to those assets and, if necessary, turn over such assets to the receiver. See id. at 1110. Cooperation clauses are enforceable, even against non-parties.

Integretel concedes that it was bound by the TRO if it acted in concert or participated with Access One and/or Network One, but Integretel claims that no such allegation has been made (or could be made, for that matter). The FTC has made such allegations in its First Amended Complaint, alleging that Integretel participated and acted in concert with Access One and Network One in the alleged fraud. (See First Amended Complaint, Paragraphs 24, 27, 28, 30, 37.)

Integretel also argues that the TRO is overbroad because it allows the Receiver to demand a turnover of disputed funds. To that end, Integretel posits that in rem jurisdiction only applies to undisputed receivership property and does not apply when funds are disputed and not in the possession of the Court. District courts have in rem jurisdiction over disputed receivership property and therefore can bind non-parties (such as Integretel), through orders to protect and preserve disputed receivership property, and district courts have jurisdiction to enforce orders against non-parties concerning ownership of disputed funds, whether or not such funds are in the non-parties' possession. See Productive Mktg., 136 F. Supp. 2d at 1106 ("if the Court cannot compel [the non-party] to turn over assets in its possession belonging to the receivership estate, the receiver will be unable to provide adequate redress to consumers who have been defrauded by

Case 9:06-cv-80573-KLR Document 58 When Entered on FLSD Docket 09/14/2007 Page 8 of 11
Case 9:06-cv-80573-KLR Document 68 Entered on FLSD Docket 05/06/2009 Page 8 of 11

8

Defendants because [the non-party's] conduct imperiled the Court's ability to render an effective judgment, the Court may properly enjoin it, even though it is not a party to the action.").

Integretel also maintains that the turnover clause is invalid and, in any event, was never triggered, because the Receiver never made a "formal" demand for the reserve funds. The purpose of a federal district court's jurisdiction over receivership property via a preliminary injunction (or similar order) is to preserve the assets resulting from the improper actions of the receivership defendants, whether held by parties or non-parties, to provide redress for the legitimately defrauded investors. See Productive Mktg., 136 F.Supp. 2d at 1105-1106. Thus, it is not reasonable to expect the Receiver to know about the reserves, and thereafter make a "formal" demand for them if it had not been previously informed of their existence.

Integretel, as a party, also argues that the Amended Preliminary Injunction is invalid under Rule 65 because it did not receive notice of its issuance. Integretel also maintains that neither the FTC nor the Receiver has made the requisite showing in their unverified papers to enforce an injunction against it. An injunction is properly issued and binding so long as the party opposing it is given a chance to defend the legitimacy of the claim being made under it. It is of no consequence whether the party has been given a chance to oppose the injunction prior to its issuance. See SEC v. Elfindepan, S. A., 2002 WL 31165146 at*5 (finding that party in the context of contempt motion had been given full opportunity to defend ownership interest in disputed funds; that party did not have opportunity to defend itself prior to issuance of the injunction did not render the injunction invalid).

Integretel believes it has acted properly from "day one" and had no reason to ask for clarification of the subject Orders until the Receiver filed its show cause motion because it

9

believed that its interpretation of the Orders was proper, or at least in good faith. One's state of mind is irrelevant for purposes of unilateral interpretation of court orders, however. See Goya Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 75-76 (1st Cir. 2002) ("When a legitimate question exists as to the scope or effectiveness of the court's order, those who know of the decree, yet act unilaterally, assume the risk of mistaken judgments. Adhering to this principle, the appellants could have asked the district court for clarification…but they eschewed that course….They chose instead to rely on their own judgment as to whether the orders remained in effect. In so doing, the appellants acted at their peril.").

Integretel also seeks to modify the TRO, Preliminary Injunction and Amended Preliminary Injunction. Because the subject Orders are valid for the reasons stated herein, there is no reason to modify them. Furthermore, the requested modifications would unnecessarily increase litigation costs by forcing the Receiver to obtain an extra precondition order by litigating every potential act that constitutes proper cooperation and affect every potential target of such corporation, thereby exponentially increasing the amount of time it would take for the Receiver to obtain receivership property. The proposed modifications would also be unwieldy because they would make pre-receivership contracts that the Receiver does not ratify nevertheless binding on him, and would require separate, plenary proceedings when a summary proceeding can adequately account for determination of these issues.

The Receiver also moves to request that the BSG Defendants transfer additional reserves in the amount of $328,050.83 as of December 8, 2006, and, as noted $930,052.99 as of August 6, 2007. These Defendants previously transferred $952,045.67 in reserves to the Receiver on or about March 24, 2006. The Receiver requests that these Defendants transfer these additional

10

reserves, produce all documents relating to the reserves withheld since March 24, 2006, and to produce any future reserves that they collect to the Receiver along with any documents relating thereto.

The BSG Defendants join in Integretel's arguments as to the validity of the TRO and the Amended Preliminary Injunction. Additionally, the BSG Defendants request modification of the injunctive orders and request a stay of the underlying contract claims. The Court has already rejected these arguments. As to the contract claims, the contracts the BSG Defendants attach in support of their argument to retain the Reserves are incomplete, undated, unsigned and do not reflect the parties thereto. The Court, based on these incomplete documents, cannot say that the BSG Defendants are entitled to retain the reserves. It is hereby

ORDERED AND ADJUDGED that the Receiver's Revised Motion for Order to Show Cause Why Integretel Should Not Be Held in Contempt of Court, filed October 16, 2006 **[DE 246]**, is GRANTED. Integretel shall show cause in writing within 10 days of the date of this Order why it should not be held in contempt for failure to turn over the reserves. In addition, Integretel shall provide a sworn statement identifying the amount of reserves as of the issuance of the TRO. The Court further orders that these funds shall be placed in a segregated Receivership account. It is further

ORDERED AND ADJUDGED that Integretel's Motion to Modify Prior Injunctive Orders, filed October 30, 2006 **[DE 294]**, is DENIED. It is further

ORDERED AND ADJUDGED that Integretel's Motion to Stay Contract Claims, filed December 29, 2006 **[DE 363]**, is DENIED. It is further

11

ORDERED AND ADJUDGED that the Receiver's Motion Requesting BSG Defendants To Transfer Additional Reserves, filed January 12, 2007 **[DE 371]**, is GRANTED. The BSG Defendants are ordered to transfer the additional reserves they have withheld since their initial transfer of reserves to the Receiver on or about March 24, 2006. The BSG Defendants shall also produce any future reserves they collect so as to avoid future motions to this effect. The BSG Defendants shall also produce all documents relating to the reserves held since March 24, 2006. The Court requests that this money be placed in a segregated receivership account.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 13th day of September, 2007.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE