SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
STEVEN B. SACKS, Cal. Bar No. 98875
JEFFREY K. REHFELD, Cal. Bar No. 188128
ORI KATZ, Cal. Bar No. 209561
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone:   415-434-9100
Facsimile:   415-434-3947
email: mahrens@sheppardmullin.com

Proposed Attorneys for The Billing Resource, dba Integretel

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

[SAN JOSE DIVISION]

| | |
|---|---|
| In re<br><br>THE BILLING RESOURCE, dba INTEGRETEL, a California corporation,<br><br>        Debtor.<br><br>Tax ID: 33-0289863 | Case No. 07-052890<br><br>Chapter 11 |
| THE BILLING RESOURCE, dba INTEGRETEL, a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>FEDERAL TRADE COMMISSION, and DAVID R. CHASE, not individually, but solely in his capacity as receiver for Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., CELL-INFO-USA, INC., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC,<br><br>        Defendant. | Adv. Proc. No. _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION** |

The Billing Resource, dba Integretel, a California corporation, plaintiff herein (the "Debtor"), alleges as follows:

1. This is an adversary proceeding seeking declaratory and injunctive relief, pursuant to 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. §§ 105, 108(b) and 362(a); Federal Rule of Bankruptcy Procedure Rules 7001(7) and (9); and Federal Rule of Civil Procedure 65 incorporated by Federal Rule of Bankruptcy Procedure 7065.

## THE PARTIES

2. The Debtor is a corporation organized and existing under the laws of the State of California with its principal place of business in San Jose, California. The Debtor performs data processing, account reconciliation, customer service and related services in the telecommunications industry. The Debtor is the debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Bankruptcy Case"), to which this adversary proceeding "relates" pursuant to Federal Rule of Bankruptcy Procedure 7008(a). The Debtor commenced this Bankruptcy Case by filing a voluntary petition under chapter 11 of the United States Code (i.e., the "Bankruptcy Code"). The Bankruptcy Case is pending in the United States Bankruptcy Court for the Northern District of California, San Jose Division.

3. Defendant the Federal Trade Commission (the "FTC") is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41, *et. seq.*

4. David R. Chase (the "Receiver" and the Receiver and the FTC each a "Defendant" and together the "Defendants") is the receiver for the following entities Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., CELL-INFO-USA, INC., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC, appointed by the United States District Court for the Southern District of Florida in the lawsuit captioned Federal Trade Commission v. Nationwide Connections, Inc., et al., Case No. 06-80180-Civ-Ryskamp. The Debtor has brought this action against the Receiver, not individually, but solely in the Receiver's capacity as receiver for the foregoing entities.

-1-

## JURISDICTION AND VENUE

5. This adversary proceeding arises under title 11, or arises in or is related to the Bankruptcy Case, within the meaning of 28 U.S.C. Section 1334(b). This Court therefore has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Sections 157(a), 157(b), 1334(b) and 1334(e) and Rule 5011-1 of the Bankruptcy Local Rules of the United States District Court for the Northern District of California.

6. This Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202.

7. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. Sections 157(b)(2)(A), (G), & (O).

8. Venue is proper in this district pursuant to 28 U.S.C. Section 1409(a).

9. The FTC is subject to the jurisdiction of this Court.

10. The Receiver is subject to the jurisdiction of this Court.

## GENERAL FACTUAL ALLEGATIONS

**A.   The Debtor's Background and the Debtor's Business.**

11. The Debtor was formed in 1988 based on a need for aggregators to facilitate billing and collections on behalf of smaller telecommunications companies that provided "alternative operator services" ("AOS") which otherwise could not afford to compete with the larger local exchange carriers ("LECs" or "Telcos") such as AT&T.

12. AOS involves providing long-distance calling on an occasional or as-needed basis in situations where often the consumer uses the service provider's assets or services without the consumer or the service provider knowing each other's identity. For example, a service provider owning the service contract for a hotel chain has no idea as to the identity of the consumer using its phones. If an AOS provider facilitates a collect call it needs a way to bill the consumer for that call.

13. The Debtor addressed a significant industry void by creating a service bureau focused entirely on billing-related services for AOS providers and others needing a means of billing consumers for their services. As the cornerstone to its billing capability, the Debtor maintains a full complement of billing and collection agreements with an estimated 1,400 or more

-2-

1  LECs and independent service providers so that it can place calls made through an AOS on a LEC
2  bill. This infrastructure enables telecommunication service providers to incorporate their charges
3  within the phone bills of greater than 90% of business and residential consumers throughout the
4  United States and Canada. By using a billing aggregator like the Debtor, the fixed overhead is
5  already in place and the per unit billing cost is typically lower than the direct approach. Moreover,
6  the LEC bill adds credibility to the charge and provides a substantially higher collection rate.

7        14.    The Debtor quickly established itself as a leader in providing LEC billing solutions
8  for diverse and emerging products and services. The Debtor presently offers a complete array of
9  complementary services including internet-delivered management and settlement reporting, direct
10 billing, customer care and collection support. As a strategic back-room business partner, the
11 Debtor frees its clients to focus their efforts on promoting and selling products and services.

12       15.    In addition to AOS providers, the Debtor services customers offering enhanced
13 products and services such as voice mail, online directory listings and bundled calling plans.
14 While these services may be billed to credit cards, often consumers are hesitant to use their credit
15 cards for such intangible purchases and, therefore, may prefer alternate billing choices such as the
16 LEC phone bill.

17       16.    The Debtor has served thousands of service providers over the years. The vast
18 majority of the processed billings have been in support of smaller sized businesses that otherwise
19 would not have been able to compete. It is the competitive pressure of these smaller companies
20 that has forced down the rates charged to consumers by the larger telecommunication companies.

21       17.    The Debtor's office is in San Jose, California. The Debtor leases that office space.
22 The Debtor has no other offices or real estate leases. The Debtor owns no real estate. The Debtor
23 has approximately thirty-seven employees. Twenty-two of those employees have been with the
24 company for over five years, and thirteen have been with the Debtor for over ten years. In
25 addition, the Debtor's services support, through outsourced relationships, approximately 20-30 call
26 center personnel in several different call centers who are employed by a third-party vendor.

27
28

-3-
W02-WEST:FJR\400435989.3      COMPLAINT FOR DECLARATORY RELIEF,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY INJUNCTION

### B. Access One and Network One.

18. Access One Communications, Inc. ("Access One") and Network One Services, Inc. ("Network One") were two of the Debtor's prior AOS provider customers (Access One and Network One collectively shall be referred to as the "Prior Customers").

19. The relationship between the Debtor and its AOS provider customers, including each of the Prior Customers, is governed by a contract between the Debtor and the customer.

20. The Debtor's contracts with the Prior Customers (the "Subject Contracts") provide that the customer submitted to the Debtor the customer's billing transactions (the "Billing Transactions") in a data format acceptable to the Debtor. The Billing Transaction became an account receivable of the Debtor and not the customer. The Debtor's Billing Contracts with the LECs are structured as a purchase of accounts receivable between the Debtor and the LECs and the Subject Contracts provided that all necessary rights were transferred to the Debtor. In fact, the Debtor's contract with Access One included a provision which explicitly recognizes this "Client [i.e., the customer] acknowledges that the Billing Contracts with Telcos [i.e., LECs] are structured as a purchase of accounts receivable..."

21. The Prior Customers had no ownership interest in their Billing Transactions after the Billing Transactions were submitted to the Debtor. The Prior Customers were unsecured creditors of the Debtor, with claims for certain "distributions" under the contract between the Debtor and the customer. Generally, those "distributions" were paid by the Debtor about 90 or so days after the Billing Transaction is submitted to the Debtor by the customer. The Debtor was authorized to withhold from the Prior Customers its fees as well as amounts that may be used by the Debtor to resolve disputes, make other adjustments and maintain reserves against future disputes and adjustments.

22. The Subject Contracts provide that each week the Debtor shall transfer by wire to the customer's bank account the Net Proceeds identified in the prior week. "Net Proceeds" is defined as the gross value of the Billing Transactions that are remitted to the LECs, less amounts withheld by the LECs, less amounts due to the Debtor, and less other fees and reserves. This

-4-

1 amount is due only as such amounts are determined from the information provided from the LECs, and that is generally 90 days after submission of the Billing Transactions.

23. Nowhere in either of the Subject Contracts is there any language purporting to give the Prior Customers any rights against the Debtor with respect to payments due the Prior Customers other than those of a general unsecured creditor. Neither of the Subject Contracts contains language granting the Prior Customers a security interest – or any other property interest, either legal or equitable – in any funds the Debtor receives from a LEC on account of a Billing Transaction.

24. When the Debtor withheld reserve amounts from the Net Proceeds paid to the Prior Customers, the Debtor recorded that amount as a bookkeeping entry. However, the Debtor does not have a corresponding asset, such as a bank account, that contains the monies that were withheld as reserves from the Prior Customers. Moreover, there is no segregated account containing the reserves of any customer, including either of the Prior Customers. The Debtor does not have enough monies to cover the full amount of reserves for all of the Debtor's customers. All "Net Proceeds" that could possibly have arisen from the Debtor's relationship with the Prior Customer have long since passed through Debtor's bank accounts.

### C. The Florida Action.

25. On February 27, 2006, the FTC filed a complaint commencing the Florida Action in the Florida Court against three AOS providers, Nationwide Connections, Inc. ("Nationwide"), Access One and Network One (collectively, the "Nationwide Parties"), as well as their principals, alleging deceptive and unfair practices for unauthorized billing of charges on phone bills – referred to as "cramming" – in violation of the Federal Trade Commission Act (the "FTCA").

26. The Florida Court entered a temporary restraining order and later a preliminary injunction. The Florida Court appointed a receiver (i.e., the Receiver) for Nationwide, Access One and Network One and certain of their affiliates. An "Amended Preliminary Injunction Order" was filed on September 25, 2006.

27. On or about September 21, 2006, the FTC filed an amended complaint (the "Amended Complaint") which Amended Complaint now named as defendants the Debtor as well

-5-

as another billing aggregator which is comprised of three related companies: Billing Concepts, Inc., ACI Billing Services, Inc. d/b/a OAN, and BSG Clearing Solutions North America, LLC (collectively, "BSG").

28. The FTC alleged in its Amended Complaint that the Debtor caused certain of the Prior Customers' fraudulent charges to be placed on end users' phone bills and that the Debtor was liable under the FTCA in spite of the fact that the LECs, not the Debtor, perform the billing.

29. The FTC has sought injunctive relief against the Debtor as well as monetary redress including restitution for the allegedly defrauded consumers.

30. The Debtor voluntarily stopped providing services for the Prior Customers over a year prior to the FTC filing of its Amended Complaint. At the time that it stopped providing services, the Debtor set the reserve at 100 percent of the Net Proceeds received on account of the Prior Customers' Billing Transactions and made no further payments to the Prior Customers. This was done because of the Debtor's possible exposure to claims for refunds of the Prior Customers' Billing Transactions.

31. The Debtor filed an answer denying the FTC's allegations.

32. The Receiver is seeking to collect all assets of the Prior Customers. Toward that end, the Receiver sought relief in the Florida Action by motion against the Debtor. The Receiver asserted that the Debtor owes the Prior Customers the amount of the reserves.

33. The Receiver's motion asserting the rights of the Prior Customers sought to compel the Debtor to turn over to the Receiver the amount of the reserves contained in the Debtor's bookkeeping entries, which the Receiver alleged was an asset of the Prior Customers in an amount in excess of $1.4 million. The Receiver further alleged that the Debtor had violated the Amended Preliminary Injunction Order and should be held in contempt for failing to turn over the sums demanded by the Receiver.

34. The Debtor filed a response opposing such relief on numerous grounds, including without limitation those set forth in this paragraph. The Debtor had no obligation to pay any funds to the Receiver under the Subject Contracts. In addition, the Debtor did not hold any specific funds allocable to reserves for the Prior Customers, because, consistent with the Debtor's general

-6-

practice regarding reserves, the Debtor treated them solely as balance sheet entries, without maintaining, segregating or otherwise designating specific funds for purposes of the reserves. At the most, any rights the Prior Customers had with respect to the reserves were simply those rights of a general, unsecured creditor. The Debtor also asserted that it had offsetting claims under the Subject Contracts against the Prior Customers which exceeded the amount of the Prior Customers' alleged reserves. In particular, to the extent the Debtor has any liability in the Florida Action, it arises from the misconduct of the Prior Customers, not the Debtor, and pursuant to the Subject Contracts, the Prior Customers are liable to the Debtor for such liability, as well as the costs and fees incurred in the Florida Action. These costs and fees, and the liability asserted against the Debtor in the Florida Action, far exceed the amount of any sums withheld from the Prior Customers as reserves.

35. The Florida Court entered an order on September 14, 2007 (the "Payment Order") requiring that the Debtor pay over the amounts sought by the Receiver into a segregated receivership account. Though the FTC is a party to the Florida Action, the Payment Order was entered upon the motion of the Receiver, not the FTC. The Debtor intends to appeal the Payment Order to the Eleventh Circuit Court of Appeals upon obtaining relief from the automatic stay to do so.

36. The Debtor has expended over $700,000 in legal fees and costs to date in defending the Florida Action. That case is set for trial in February 2008. The Debtor expects that unless the Florida Action is stayed or the FTC is enjoined from proceeding as to the Debtor that it will be required to spend as much as $1 million in legal fees and costs in defending the matter. The Debtor has also had to devote substantial and valuable management and employee time and resources to this issue and would be forced to further incur such items, to the detriment of its reorganization efforts, if this action were not stayed as against the Debtor.

## FIRST CLAIM FOR RELIEF

**(Declaratory Relief Pursuant To 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure)**

37.   The Debtor repeats the allegations set forth in Paragraphs 1 through 36 as if fully set forth herein.

38.   This is a claim for declaratory relief brought under the provisions of 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); and Rules 7001(7) & (9) of the Federal Rules of Bankruptcy Procedure.

39.   An actual controversy has arisen and now exists between the Debtor and the Receiver relating to their legal rights and duties for which The Debtor seeks a judicial declaration of rights as to such matters, as well as further necessary or proper relief, including injunctive relief.

40.   A declaratory judgment is necessary and appropriate at this time in that the Debtor contends and the Receiver may deny that the implementation or enforcement of the Payment Order is automatically stayed including without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or (a)(6).

WHEREFORE, the Debtor prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF

**(Declaratory Relief Pursuant To 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure)**

41.   The Debtor repeats the allegations set forth in Paragraphs 1 through 36 as if fully set forth herein.

42.   This is a claim for declaratory relief brought under the provisions of 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105, 362(a)(1), (2), (3) and (6); and Rules 7001(7) & (9) of the Federal Rules of Bankruptcy Procedure.

43. An actual controversy has arisen and now exists between the Debtor and the FTC relating to their legal rights and duties for which the Debtor seeks a judicial declaration of rights as to such matters, as well as further necessary or proper relief, including injunctive relief.

44. A declaratory judgment is necessary and appropriate at this time in that the Debtor contends and the FTC may deny that

    a. the claims made in the Florida Action against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate, including without limitation the implementation or enforcement of the Payment Order, are automatically stayed including without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or (a)(6).

    b. while there is an exception, under 11 U.S.C. § 362(b)(4), for regulatory actions, from the Bankruptcy Code's automatic stay provisions set forth in 11 U.S.C. § 362(a), the gist of the Florida Action and the claims made therein against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate, are monetary in nature and are therefore stayed.

WHEREFORE, the Debtor prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF

**(Temporary Restraining Order and Preliminary Injunction Pursuant To 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Section 105; Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure; and Federal Rule of Civil Procedure 65 incorporated by Federal Rule of Bankruptcy Procedure 7065)**

45. The Debtor repeats the allegations set forth in Paragraphs 1 through 36 as if fully set forth herein.

46. This is a claim for a temporary restraining order and preliminary injunction brought under the provisions of 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Section 105; Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure; and Federal Rule of Civil Procedure 65 incorporated by Federal Rule of Bankruptcy Procedure 7065.

-9-

47.     If and to the extent that the Court determines that the Florida Action is not stayed as to the Debtor, then the Debtor requests that the Court temporarily restrain and preliminarily enjoin the FTC until a plan of reorganization is entered in this Bankruptcy Case from proceeding against the Debtor in the Florida Action, including as to the claims made therein against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate.

48.     Money damages will not be adequate and there exists no adequate remedy at law.

49.     Permitting the Florida Action to continue against the Debtor, threatens the Debtor's ability to continue its business operations, affects whether the Debtor's other creditors receive their appropriate share of monies paid by the Debtor to unsecured creditors, threatens the Debtor's ability to successfully confirm a plan of reorganization, interferes with this Court's ability to enforce its jurisdiction over the Debtor's assets and this bankruptcy case, and threatens the integrity of the bankruptcy estate by, among other things, upsetting the well-established and Congressionally-approved goals underlying the uniform bankruptcy laws of rehabilitation of debtors and equality of treatment of creditors.  The objectives of the Bankruptcy Code would be served by issuing a preliminary injunction staying the Defendants' continued pursuit in the Florida Action of the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate.

50.     The Debtor has a strong likelihood of successfully reorganizing if the requested temporary restraining order and preliminary injunction are entered.

51.     The Debtor is threatened with the possibility of immediate irreparable injury if the temporary restraining order and preliminary injunction are not granted.

52.     At the least, serious questions are raised with respect to the FTC's continued pursuit in the Florida Action of claims against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate, and the balance of the hardships tip strongly in the Debtor's favor.

53.     The requested preliminary injunction is in the public interest.  While the FTC action seek to gain, at most five or six dollars for consumers, each or which may have been billed

-10-

a single collect call by the Prior Clients, the Debtor's efforts to reorganize its operations affects the livelihoods of its employees, the Debtor's ability to pay its creditors and the continued viability of its customers.

WHEREFORE, the Debtor prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, The Debtor, prays for relief as follows:

1. For the FIRST CLAIM FOR RELIEF that the Court declare that the implementation or enforcement of the Payment Order is automatically stayed including without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or (a)(6).

2. For the SECOND CLAIM FOR RELIEF that:

   a. the claims made in the Florida Action against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate, including without limitation the implementation or enforcement of the Payment Order, are automatically stayed including without limitation pursuant to 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3), and/or (a)(6).

   b. while there is an exception, under 11 U.S.C. § 362(b)(4), for regulatory actions, from the Bankruptcy Code's automatic stay provisions set forth in 11 U.S.C. § 362(a), the gist of the Florida Action and the claims made therein against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate, are monetary in nature and are therefore stayed.

3. For the THIRD CLAIM FOR RELIEF that the Court temporarily restrain and preliminarily enjoin the FTC until a plan of reorganization is entered in this Bankruptcy Case from proceeding against the Debtor in the Florida Action, including as to the claims made therein against the Debtor, the Debtor's property, property of the Debtor's estate, and/or property held by the Debtor's estate

-11-

4. That the Court grant such other and further relief as the Court deems just and proper under the circumstances.

Dated: September 19, 2007

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     /s/ Michael H. Ahrens
MICHAEL H. AHRENS
Proposed Attorneys for Plaintiff and Debtor The Billing Resource, dba Integretel