WILLIAM BLUMENTHAL
General Counsel

MICHAEL P. MORA
Federal Trade Commission
600 Pennsylvania Ave. NW, Room NJ-2121
Washington, DC 20580
Telephone: (202) 326-3373
Facsimile: (202) 326-2558
Email: mmora@ftc.gov

ATTORNEY FOR FEDERAL
TRADE COMMISSION

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

|  |  |
|---|---|
| In re:<br><br>THE BILLING RESOURCE, dba Integretel, a California corporation,<br><br>                     Debtor | **Case No. 07-52890**<br><br>Chapter 11<br><br>FEDERAL TRADE COMMISSION'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION AND DECLARATORY RELIEF<br><br>Date:    September 26, 2007<br>Time:   2:15 p.m.<br>Ctrm:  3020 |

The Federal Trade Commission ("Commission") opposes Integretel's Emergency Motion

for Temporary Restraining Order and submits as follows[1]:

---

[1] The Commission intends that neither this Opposition nor any later appearance, pleading, claim, or suit shall waive: (1) the FTC's right to have final orders in noncore matters entered only after *de novo* review by a District Court Judge; (2) the FTC's right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; or (3) any other rights, claims, actions, defenses, setoffs, recoupments, or remedies

-1-

1  **Background**

2      Integretel is a telephone billing aggregator.  Aggregators provide billing and collection

3  services to third party service providers.  Aggregators receive billing information from the

4  service providers, and submit that information to local telephone companies so that they can

5  include the service provider's charges on consumers' phone bills.  Generally, once the consumers

6  pay their telephone bills, the aggregators collect payments on their clients' behalf from the phone

7  companies and, after charging fees for their billing and collection services and holding some of

8  the funds in reserve, transfer the remaining funds to their clients.

9      On February 27, 2006, the Commission filed an enforcement action (the "Enforcement

10  Action") against several of Integretel's clients in the District Court for the Southern District of

11  Florida, pursuant to Sections 5(a) and 13(b) of the Federal Trade Commission Act.  15 U.S.C. §§

12  45(a), 53(b).[2]  The Complaint alleged that Nationwide Connections, Inc. and its co-defendants

13  engaged in a massive telephone billing scam in which more than $30 million dollars in phony

14  collect call charges were "crammed" onto consumers' telephone bills.  The same day that the

15  Commission filed suit, the District Court entered an ex parte temporary restraining order

16  ("TRO") shutting down the Nationwide defendants' unlawful operation, freezing all of their

17  assets, and appointing David R. Chase, P.A. (he "Federal Receiver") as the temporary receiver

18  for the corporate defendants. [D. Ct. DE 18].  The TRO, issued on February 27, 2006, created a

19  federal equity receivership estate as of that date, encompassing all of the assets of the

20  receivership entities, including Access One Communications and Network One Services. [TRO §

21

22

23

24  to which the FTC is or may be entitled, in law or equity, all of which rights, claims, actions,

25  defenses, setoffs, recoupments and remedies the FTC expressly reserves.

26      [2]  *FTC v. Nationwide Connections, Inc., et al.,* Case No. 06-80180-Civ-

27  RYSKAMP/VITUNAC (S.D. Fla.).

28                                    -2-

1  2]. On March 8, 2006, after a contested hearing, the Court issued a Preliminary Injunction that,

2  *inter alia*, made the temporary receiver permanent.[3]

3      The Nationwide defendants did not act alone in their flagrant cramming scheme.

4  Integretel played a pivotal role by, among other things, processing the bogus charges that they

5  claimed consumers were liable to pay. Indeed, but for Integretel's contracts with the local phone

6  companies and its active involvement during the course of nearly a year of billing, consumers

7  would not have been victimized to the extent that they were.[4]

8      Accordingly, on September 21, 2006, the FTC filed an Amended Complaint adding, *inter*

9  *alia*, Integretel as a defendant. [D. Ct. DE 255]. As in its original Complaint, the Commission

10 alleges the same two causes of action against all of the defendants, including Integretel: (1) that

11 the defendants deceptively represented that consumers were obligated to pay charges appearing

12 on their telephone bills for collect calls that were never made or authorized; and (2) that the

13 defendants unfairly billed consumers for collect telephone calls that consumers never received or

14

15

16      [3] The District Court also entered an Amended Preliminary Injunction on September 25,
17 2006 after a contempt hearing involving defendants Willoughby Farr and Mary Lou Farr. [D. Ct
   DE 233]. For purposes of this Opposition, the FTC refers to the Amended Preliminary
18 Injunction and the Preliminary Injunction as the "Preliminary Injunction."

19      [4] Integretel has a long history of involvement in similar schemes. In October 2000, the
   FTC sued Integretel and its subsidiary, eBillit, for their role in an allegedly illegal scheme
20 misusing the international telephone billing system to charge consumers for "videotext" services
   - Internet-based "adult" entertainment - that the consumers never purchased or authorized. That
21 case was resolved as to Integretel pursuant to a Stipulated Final Order under which, *inter alia*,
   Integretel released all claims to the $1.6 million consumers paid during the scheme, with the
22 money transferred to an escrow account that the Commission held until the litigation against the
   remaining defendants was concluded. *FTC v. Verity Int'l*, No. 00 Civ 7422 (S.D.N.Y.); *see* Press
23 Release, *Companies That Billed Consumers for Adult "Videotext" Internet Services Settle FTC*
24 *Charge* (Nov. 26, 2002), at http://www.ftc.gov/opa/2002/11/integretel.shtm.

25

26

27

28                              -3-

authorized.  Pursuant to the District Court's Order Modifying the Amended Scheduling Order, discovery is set to close on October 5, 2007.  [D. Ct. DE 565].

The TRO, issued on February 27, 2006, required all entities holding assets of any defendant, including the receivership defendants, upon being served with the TRO, to submit promptly to the Commission a sworn statement accounting for any such assets.  [TRO § VI.C].  The TRO also included a turnover order, requiring any entity served with the TRO to immediately transfer to the Federal Receiver all assets of the receivership defendants in their possession.  [TRO § X].  The FTC served the TRO on Integretel.  In response, Kenneth Dawson, the president of Integretel, submitted an unsworn statement alleging that "no amounts are currently due and owing" defendants Access One and Network One, for whom Integretel placed bogus charges on consumers' phone bills.

When the Federal Receiver learned – seven months later – about reserve funds constituting property of the receivership estate that Integretel had in fact been holding ("Reserve Funds"), the Receiver, on October 16, 2006, promptly filed a Motion for an Order to Show Cause Why Integretel Should Not Be Held in Contempt ("Contempt Motion" or "Contempt Proceeding").  [D. Ct. DE 243].

After extensive briefing by all parties, a hearing was held on the Contempt Motion on April 12, 2007.  On September 14, 2007, the District Court entered an Omnibus Order granting the Contempt Motion, and ordering Integretel to show cause within 10 days why it should not be held in contempt for failing to turn over the Reserve Funds.  The District Court also ordered Integretel to provide a sworn statement identifying the amount of reserves as of the issuance of the TRO.  The District Court further ordered that the funds be placed in a segregated Receivership account.

On September 16, 2007, Integretel filed a petition for relief in this Court.  On September 21, 2007, the District Court entered an order granting the FTC's Emergency Motion for Clarification That the Automatic Stay Does Not Apply to the FTC's Enforcement Action and the

-4-

Ongoing Contempt Proceeding ("Clarification Order"). [D. Ct. DE 618, 619]. The District Court noted that in its Omnibus Order on the Contempt Motion, the court had ruled that the Reserve Funds are property of the receivership estate and had ordered Integretel to pay the current Reserve Funds, amounting to $1,762,762.56, to the Federal Receiver. The District Court held that pursuant to the regulatory exception to the automatic stay, 11 U.S.C. § 362(b)(4), and the court's inherent civil contempt powers, Integretel's bankruptcy filing does not stay either the Contempt Proceeding against Integretel, including the enforcement of the turnover order, or the FTC's prosecution of its Enforcement Action against Integretel. Integretel has filed a notice of appeal from the Omnibus Order and the Contempt Order in the Eleventh Circuit, and has moved the District Court for a stay of those orders. As of this writing, no stay has been granted.

**Summary of Argument**

Bankruptcy is not intended to help violators of statutes and regulations avoid law enforcement. Nor is it intended to be an escape route from a federal district court's exercise of its powers of contempt. The District Court has held that the FTC's prosecution of its Enforcement Action against Integretel, and the enforcement of the Omnibus Order granting the Federal Receiver's Contempt Motion, including the turnover order incorporated therein, are excepted from the automatic stay pursuant to the "police and regulatory powers" exemption. The purpose of that exemption is to allow government agencies to exercise their law enforcement powers unimpeded. The District Court further held that its exercise of its contempt powers is not subject to the automatic stay.

Although a bankruptcy court has the power in extraordinary circumstances to enjoin actions that directly conflict with the bankruptcy court's management of the property of the estate, or which pose an extreme threat to the bankruptcy estate, Integretel has made no showing of why such relief should be granted here. Section 105 of the Bankruptcy Code does not authorize the Bankruptcy Court to enjoin law enforcement actions excepted from the automatic

1  stay by the Bankruptcy Code.  In any event, Integretel has not satisfied the stringent test for

2  granting injunctive relief under Section 105.

3       Accordingly, this Court should deny the Debtor's Motion for Temporary Restraining

4  Order.

5                                    **ARGUMENT**

6  **I.    THE FTC'S LAW ENFORCEMENT ACTION IS EXEMPT FROM THE
        AUTOMATIC BANKRUPTCY STAY.**

7

8       **A.    The Florida District Court Had Superior, Concurrent Jurisdiction to
                Determine that the Automatic Stay was Inapplicable**

9       It is beyond question that the Florida District Court had jurisdiction to decide whether the

10 automatic stay applies to the FTC's Enforcement Action and the contempt proceeding pending

11 before the District Court.  *See U.S. Dep't of Housing & Urban Dev't v. Cost Control Mktg. &*

12 *Sales Mgmt.,* 64 F.3d 920, 927 n.11 (4th Cir. 1995); *Brock v. Morysville Body Works, Inc.,* 829

13 F.2d 383 (3d Cir. 1987); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir.

14 1986); *In re Baldwin-United Corp. Litigation,* 765 F.2d 343, 347 (2d Cir. 1985); *NLRB v. Evans*

15 *Plumbing Co.*, 639 F.2d 291 (5th Cir. 1981).   Further, as the *Cost Control* court noted, "because

16 the district court's jurisdiction attached first in time, it was superior."  *Id.; see also United States*

17 *v. Delta Distributors Co., Inc.,* 1996 WL 460112 (June 21, 1996 S.D.W.Va.) (same).

18      The District Court issued a well reasoned ruling, resting on ample authority, that the

19 automatic stay is inapplicable to the FTC's prosecution of the Enforcement Action, and the

20 Contempt Proceeding, including enforcement of the order requiring Integretel to turn over the

21 Reserve Funds.  As the FTC argues further below, there is no basis for this Court to enter an

22 injunction under section 105 of the Bankruptcy Code that would directly conflict with the

23 District Court's Omnibus Order and Clarification Order, and the regulatory exemption to the

24 automatic stay.  Accordingly, Integretel's Motion should be denied.

25      **B.    Congress Enacted the Police and Regulatory Powers Exemption for
                Consumer Protection Actions Precisely Like the FTC's.**

26

27

28                                      -6-

1    Law enforcement actions like the FTC's action against Integretel are specifically exempt

2  from the automatic bankruptcy stay under Section 362(b)(4) of the Bankruptcy Code, 11 U.S.C. §

3  362(b)(4).  That provision exempts from the automatic stay "the commencement or continuation

4  of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or

5  organization's police and regulatory power."  11 U.S.C. § 362(b)(4).[5]  Only the actual

6  enforcement of any **money judgment** obtained by the FTC is subject to the stay and must be

7  handled by the Bankruptcy Court.  *Id*.

8    The Supreme Court has characterized the police and regulatory powers exemption as

9  embodying Congress' legislative determination that the [bankruptcy] trustee is not to have carte

10  blanche to ignore nonbankruptcy law . . . . Congress has expressly provided that the efforts of the

11  trustee to marshal and distribute the assets of the estate must yield to governmental interest in

12  public health and safety.  *Midlantic Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494,

13  502 (1986).  The automatic stay provision does not allow a bankruptcy court to examine — much

14  less interfere with — a federal agency's performance of its statutory mandate.  *Board of*

15  *Governors of the Fed. Reserve Sys.  Of the United States v. MCorp Fin., Inc.*, 502 U.S. 32, 40

16  (1991) (bankruptcy courts are not empowered "to scrutinize the validity of every administrative

17  or enforcement action brought against a bankrupt entity").

18    The Supreme Court in *MCorp* rejected a bank holding company's argument that the

19  automatic stay provision should be read broadly (and the exemption read narrowly) to invalidate

20  cease-and-desist orders issued by the Federal Reserve.  The Court drew the fundamental

21  distinction between "the broad discretion Congress has expressly granted many administrative

22  agencies," on the one hand, and "the limited authority Congress has vested in bankruptcy courts,"

23  on the other.  Id.  Under the principle set forth in *MCorp*, this Court would be exceeding its

24  bankruptcy jurisdiction if it infringed on Congress' broad grant of statutory authority to the FTC

25

26    [5]  The current version of Section 362(b)(4) is based on a 1998 amendment that combined
27  former Sections 362(b)(4) and (5).

28                    -7-

1    by enjoining the Commission from pursuing its Enforcement Action in the District Court against

2    Integretel.

3         The Commission's statutory mission, as it concerns this case, arises under the FTC Act.

4    The Commission is "empowered and directed to prevent persons, partnerships, or corporations . .

5    . from using . . . unfair or deceptive acts or practices in or affecting commerce." Section 5(a)(2)

6    of the FTC Act, 15 U.S.C. § 45(a)(2).

7         Congress gave the Commission authority to seek injunctive relief in district courts against

8    violations of the statutes it enforces, when the Commission "has reason to believe" that an

9    injunction "would be in the interest of the public." Section 13(b) of the FTC Act, 15 U.S.C. §

10   53(b) (emphasis added).  This grant of authority was "designed to enable the Commission to

11   carry out its mandate to protect the public interest through prompt and aggressive enforcement of

12   the laws it administers."  119 Cong. Rec. 21435, 21443 (93d Cong., 1st Sess. June 26, 1973)

13   (Remarks of Senator Henry M. Jackson).   Congress granted the Commission authority to seek

14   consumer redress for unfair trade practices "to reinforce the Commission's credibility in policing

15   the marketplace by authorizing sanctions which could realistically be expected to inhibit

16   unlawful business practices."[6]

17        FTC consumer protection actions are routinely held to be exempt from the stay by courts

18   in this Circuit and others.  *See, e.g.*, *In re First Alliance Mortgage Co.*, 264 B.R. 634, 647-51

19   (C.D. Cal. 2001) (reversing the bankruptcy court and holding that FTC's action to enforce

20   consumer protection and fair lending laws falls within the § 362(b)(4) exemption from the stay)*;*

21   *FTC v. American Standard Credit Sys.*, 874 F. Supp. 1080, 1083 (C.D. Cal. 1994) (FTC's action

22   to enforce consumer protection laws not subject to automatic stay); *FTC v. R.A. Walker & Assoc.*,

23   Nos.  83-2138, 83-2154, 83-2480, 83-2677, 83-2962, 1991 U.S. Dist. LEXIS 14114, *4-6

24   (D.D.C. July 26, 1991) (entering injunction against unfair or deceptive lending activities by

25

26       [6] Report of the Senate Committee on Commerce, S. Rep. No. 269 (92d Cong., 1st Sess.).
27   Pub. L. No. 93-637, Federal Trade Commission Improvement Act of 1975, at 24.

28                                            -8-

1    debtor); *FTC v. Austin Galleries of Illinois, Inc.*, No. 88 C 3845, 1991 U.S. Dist. LEXIS 1223, *3

2    (N.D. Ill.  Feb. 5, 1991) (FTC action for consumer redress exempt from automatic stay under

3    Section 362(b)(4)) [7]

4    　　　　The purpose of the automatic stay provision of Section 362(a) of the Bankruptcy Code is

5    to allow the orderly administration of the debtor's estate and to protect creditors' rights as of the

6    time of bankruptcy.  *See McLean Trucking Co.*, 834 F.2d at 403 n.9; *Donovan v. TMC Indus.,*

7    *Ltd.*, 20 B.R. 997, 1001 (N.D. Ga. 1982).  Congress recognized, however, that the Bankruptcy

8    Code must not be used to shield a debtor from the law:

9    　　　　[W]here a governmental unit is suing a debtor to prevent or stop violations of

10   　　　　fraud, environmental protection, consumer protection, safety, or similar police or

11   　　　　regulatory laws, or attempting to fix damages for violations of such a law, the

12   　　　　action or proceeding is not stayed under the automatic stay.

13   S. Rep. No. 95-989, at 52, reprinted in 1978 U.S.C.C.A.N. 5787, 5838 (emphasis added).

14   "Congress clearly intended for the police power exception to allow governmental agencies to

15   remain unfettered by the bankruptcy code in the exercise of their regulatory powers."  *In re*

16   *Commerce Oil Co.*, 847 F.2d 291,  295 (6th Cir. 1988).[8]

17

18   　　　[7] Numerous decisions by the Court of Appeals for the Ninth Circuit and other courts of
19   appeals have found the exemption applicable to a wide variety of federal regulatory actions.  *See,*
     *e.g., NLRB v. Continental Hagen Corp.*, 932 F.2d 828, 832 (9th Cir. 1991) (enforcement
20   proceedings by NLRB not subject to stay); *NLRB v. Twin Cities Elec.*, 907 F.2d 108, 109 (9th
     Cir. 1990) (same); *see also EEOC v. McLean Trucking Co.*, 834 F.2d 398, 402 (4th Cir. 1987)
21   (EEOC action to recover back pay not subject to stay); *Ahrens Aircraft, Inc. v. NLRB*, 703 F.2d
22   23, 24 (1st Cir. 1983) (NLRB action for back pay not subject to stay).

23   　　　[8] "Congress concluded that the government's interest in the enforcement of these laws
24   outweighed the debtor's interest in disentangling himself from sundry creditors."  *TMC Indus.*,
     20 B.R. at 1001; *see also United States v. Nicolet*, 857 F.2d 202 at 207 (3d Cir. 1988) ("Congress
25   recognized . . . that the stay provision was particularly vulnerable to abuse by debtors improperly
     seeking refuge under the stay in an effort to frustrate necessary governmental functions.  To
26   combat the risk that the bankruptcy court would become a sanctuary for . . . wrongdoers . . .
27   Congress enacted the police and regulatory power exception to the automatic stay.")

28   　　　　　　　　　　　　　　　　　　　　-9-

The legislative history of the Bankruptcy Reform Act of 1978 shows Congress' intent to halt abuse of the stay provision:

> Under present law, there has been some overuse of the stay in the area of governmental regulation. . . . The bill excepts [regulatory] actions from the automatic stay. [Governments] will be able to enforce their police and regulatory powers free from the automatic stay.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 174-75 (1977). Thus, in the words of the Court of Appeals for the Ninth Circuit, Congress "prevent[ed] the bankruptcy court from becoming a haven for wrongdoers." *CFTC v. Co Petro*, 700 F.2d 1279, 1283 (9th Cir. 1983).

The FTC's action therefore should proceed in the District Court.

### C.    The FTC Action Meets the Ninth Circuit's Test for Determining Whether the Police or Regulator Power Exemption Applies

The Court of Appeals for the Ninth Circuit has held that a governmental agency's action against a debtor must meet either of two tests for determining whether the police and regulatory power exemption applies: either (1) the government action must not be for a strictly "pecuniary purpose" or (2) the government action must be to further "public policy."[9] Here, the FTC's action satisfies both tests.

### 1.    The FTC's Action Is Not Brought for the Government's "Pecuniary Purpose."

The "pecuniary purpose" test asks "whether the government action relates primarily to the protection of the government's interest in the debtor's property or to matters of public safety and welfare." *Universal Life Church*, 128 F.3d at 1297. The Ninth Circuit has recognized that "most government actions which fall under this exemption have some pecuniary component to them,

---

[9] *Universal Life Church v. United States (In re Universal Life Church Inc.)*, 128 F.3d 1294, 1297 (9th Cir. 1997), *cert. denied*, 524 U.S. 952 (1998); *Berg v. Good Samaritan Hosp. (In re Berg)*, 230 F.3d 1165, 1166 (9th Cir. 2000).

particularly those associated with fraud detection." *Id.* at 1299.[10]  Only if the action is pursued "solely to advance a pecuniary interest of the governmental unit" does the automatic stay apply. *Id.*  As the Ninth Circuit has explained, even if private parties obtain some financial benefit from the government's action, the exemption still applies because "the deterrent effect of monetary penalties can be essential for the government to protect its regulatory interests." *Berg*, 230 F.3d at 1166 (rejecting the debtor's claim that court's award of attorneys fees for frivolous litigation was stayed simply because it would "inure to the benefit of a private party").[11]

The dual purposes of ensuring that violators are prosecuted and that they are prevented from violating the law in the future bring the FTC's action squarely within the police and regulatory powers exemption.  *See NLRB v. Continental Hagen Corp.*, 932 F.2d 828, 834 (9th Cir. 1991) (NLRB enforcement action was not for purpose of protecting government's "pecuniary interest" in debtor's estate, but rather was "designed to prevent employers from violating federal labor law"); *United States v. Nicolet, Inc.*, 857 F.2d 202, 209-10 (3d Cir. 1988) (in prosecuting a CERCLA suit, government was not seeking to redress private wrong, but acting under explicit Congressional authorization to hold violating parties accountable).  Thus, although the FTC's action in part seeks monetary relief in the form of consumer redress, such an equitable remedy is not for the government's "pecuniary interest."  Furthermore, the FTC action seeks additional

---

[10]  *Accord United States v. Commonwealth Cos. Inc.  (In re Commonwealth Cos., Inc.*), 913 F.2d 518, 522-23 (8th Cir. 1990) (exemption not defeated "simply because money damages are the only relief sought in the action"); *United States v. Nicolet*, 857 F.2d 202, 207-09 (3d Cir. 1988) (same); *McLean Trucking Co.*, 834 F.2d at 400-02 (4th Cir. 1987) (same); *Brock v. Morysville Body Works*, 829 F.2d 383 (3d Cir. 1987) (OSHA enforcement action was not stayed, although it would "significantly affect[] the finances of the distressed corporation"); *Penn Terra Ltd. v. Department of Envtl. Resources*, 733 F. 2d 267 (3d Cir. 1983) (environmental enforcement was not stayed, though compliance would require expenditures by the debtor).

[11]  *Accord SEC v. Brennan*, 230 F.3d 65, 72 (2d Cir. 2000) ("When the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity — it is attempting to curb certain behavior (such as defrauding investors, or polluting groundwater) by making the behavior that much more expensive.")

-11-

equitable relief, such as recission of contracts, that the bankruptcy court is without power to award.

Only in non-regulatory, contract cases have courts found that a governmental action related primarily "to the protection of the government's interest in the debtor's property." *See*, *e.g.*, *Servicios Medicos Hospitalarios de Fajardo v. Mora*, 805 F.2d 440, 446 (1st Cir. 1986) (holding that a public contract termination action was not an exercise of police and regulatory authority, on grounds that it "did not directly involve the enforcement of generally applicable regulatory laws"). Here, the FTC has brought its Enforcement Action against Integretel as an enforcer of the FTC Act. The police and regulatory powers exemption therefore directly applies. *Id*.

Enjoining the FTC from prosecuting its Enforcement Action against Integretel would prevent the FTC from carrying out its statutory mandate to prevent unfair and deceptive trade practices that harm consumers, and provide an open invitation to further wrongdoing.

If the Commission were prevented from enforcing the FTC Act against Integretel, Integretel would be able to escape its obligations under the consumer protection provisions of that statute — simply by virtue of its bankrupt status. Such a result would make the bankruptcy court a "haven for wrongdoers," contrary to the Ninth Circuit's teaching in *Co Petro*.

### 2. The FTC Law Enforcement Action's Primary Purpose Is to Carry Out the Public Policy Objectives of Statutes It Is Charged With Enforcing.

The Ninth Circuit's alternative "public policy" test "distinguishes between government actions that effectuate public policy and those that adjudicate private rights." *Universal Life Church*, 128 F.3d at 1297. The public policy goals of the FTC Act would be undermined if the FTC were enjoined from pursuing its Enforcement Action against Integretel in the District Court. Unscrupulous billing aggregators and other entities would know that they can sidestep the statutes simply by declaring bankruptcy. Indeed, affiliates and principals of unscrupulous entities

-12-

1    could continue their unlawful practices undeterred — via a series of new corporations and new

2    bankruptcies.

3    　　　　It is to prevent precisely such a result that the police and regulatory powers exemption

4    from the bankruptcy stay exists.  As the Third Circuit held in *Nicolet*, the exemption "embod[ies]

5    Congress' recognition that enforcement of the . . . laws merits a higher priority than the debtor's

6    rights to a 'cease fire' or the creditors' rights to an orderly administration of the estate."  857 F.2d

7    at 207 (emphasis added); accord *City of New York v. Exxon*, 932 F.2d 1020, 1024 (2d Cir. 1991)

8    (the "purpose of the regulatory exemption to the automatic stay [is] to avoid [allowing

9    wrongdoers to] frustrat[e] necessary governmental functions by seeking refuge in bankruptcy

10   court") (internal quotations and citation omitted).

11   　　　　The Commission's action is not concerned with the adjudication of private rights, but

12   rather seeks to redress harm done to the public good by Integretel's participation in a scheme to

13   cram unauthorized charges on thousands of consumers' phone bills in violation of federal

14   consumer protection laws.  Preventing the FTC from prosecuting Integretel's alleged violations

15   of those laws — and from obtaining injunctions against future violations — would threaten the

16   welfare of all consumers.

17   **II.    THE CONTEMPT PROCEEDING IS NOT STAYED**

18   　　　　As the District Court has held, the Contempt Proceeding, including the enforcement of

19   the District Court's Order requiring Integretel to turnover the Reserve Funds to the Receiver, is

20   not stayed by Integretel's bankruptcy filing for three reasons.

21   　　　　First, with respect to acts involving property, the automatic stay applies solely to protect

22   property of the bankruptcy estate or property of the debtor.  *See* 11 U.S.C. § 362(a)(2)

23   (enforcement of a pre-petition judgment against the debtor or property of the estate); 362(a)(3)

24   (act to obtain possession of or control property of the estate or property from the estate); 362

25   (a)(4) (act to enforce a lien against property of the estate); 362(a)(5) (act to enforce lien against

26   property of the debtor).  Subject to certain exceptions not relevant herein, property of the

27

28                                          -13-

bankruptcy estate consists of "interests of the debtor in property *as of the commencement of the case*." 11 U.S.C. § 541(a)(1) (emphasis added).  Because the District Court ruled – before Integretel filed its bankruptcy petition – that the Reserve Funds are property of the Receivership Estate, by definition that property is neither property of the "bankruptcy estate" nor the debtor, Integretel.  Therefore, the Contempt Proceeding is not stayed by § 362(a).

Second, the § 362(b)(4) exception also applies to civil contempt proceedings brought by a governmental unit in the exercise of its police or regulatory powers.  *See SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.D.C. 2001) (finding that the civil contempt proceeding fell within the § 362(b)(4) exemption, the court incarcerated the debtor after he failed to provide financial information required by purgation provisions of prior disgorgement order); *NLRB v. Sawulski*, 158 B.R. 971, 978 (E.D. Mich. 1993) ("pursuant to § 362(b)(4), this Court may continue the contempt proceeding initiated by the NLRB for [the debtor's] noncompliance with the [National Labor Relations Act].").  Although the Contempt Proceeding at issue here was initiated by the Receiver, the Receiver is enforcing the Amended Preliminary Injunction obtained by the FTC pursuant to the agency's exercise of its regulatory enforcement powers, and in doing so the Receiver is acting in his capacity as an agent of the District Court. [D. Ct. DE 233, ¶ 8]  Moreover, the FTC effectively joined the Receiver's motion by filing a response in support thereof.  [D. Ct. DE 399].  Accordingly, the Contempt Proceeding is also exempt from the automatic stay pursuant to Bankruptcy Code § 362(b)(4).

Third, regardless of whether § 362(b)(4) applies, Integretel's bankruptcy filing does not stay the Contempt Proceeding because it does not deprive the District Court of its inherent power to enforce the integrity of its orders and take steps necessary to ensure that defendant Integretel complies with its orders.  "[C]ontempt orders to uphold the dignity of the court are excepted from the automatic stay." *NLRB v. Sawulski*, 158 B.R. 971, 975 (E.D. Mich. 1993); *see also SEC v. Wolfson*, 309 B.R. 612, 620 (D. Utah 2004); *U.S. Sprint Communications Co. v. Buscher*, 89 B.R. 154, 157 (D. Kan. 1988); *Guariglia v. Community Nat'l Bank & Trust Co.*, 382 F. Supp.

-14-

1    758, 761 (E.D.N.Y. 1974), *aff'd,* 516 F.2d 896 (2d Cir. 1975) (decided under the former

2    Bankruptcy Act of 1898); *In re Montana,* 185 B.R. 650, 652 (Bankr. S.D. Fla. 1995) (Cristol,

3    C.J.); *accord In re Gedeon,* 31 B.R. 942, 946 (Bankr. D. Colo. 1983) (court held that civil

4    contempt fine "imposed to uphold the dignity of the court" is nondischargeable under Section

5    523 of the Code); *In re Marini,* 28 B.R. 262, 265 (Bankr. E.D.N.Y. 1983) (same).

6        The *Wolfson* case is particularly instructive.  In that civil securities fraud case, the

7    defendants filed for bankruptcy literally four hours before a district court hearing on a civil

8    contempt motion filed by the SEC against the defendants.  The SEC sought the return of funds

9    taken by the defendants in violation of the district court's order freezing defendants' assets.

10   After concluding that the SEC's prosecution of the underlying securities fraud action was

11   excepted from the automatic stay pursuant to § 362(b)(4) of the Bankruptcy Code, the court,

12   citing a string of analagous cases, held that "[i]nherent in this conclusion is the determination that

13   the civil contempt proceeding against [defendant] is not stayed."  309 B.R. at 320.

14   **III.    GRANTING AN INJUNCTION WOULD BE IMPROPER UNDER SECTION 105**
15   **OF THE BANKRUPTCY CODE.**

16       **A.    An Injunction Is Not Necessary to Carry Out the Purposes of the Bankruptcy**
17       **Code.**

18       Although Section 105 of the Bankruptcy Code gives bankruptcy courts the power to

19   "issue any order . . . that is necessary or appropriate to carry out the provisions of [the

20   Bankruptcy Code]," that power does not extend to the issuance of orders that conflict with other,

21   specific federal statutory mandates.  *In re Rohnert Park Auto Parts, Inc.,* 113 B.R. 610 (B.A.P.

22   9th Cir. 1990).  Here, an injunction entered by this Court would conflict with the Commission's

23   federally mandated obligations under the FTC Act — and with the Bankruptcy Code itself.

24       Moreover, Section 105 does not allow entry of orders that create rights or immunities that

25   are not otherwise available to the debtor under nonbankruptcy law.  *Matter of Schewe,* 94 B.R.

26   938 (W.D. Mich. 1989); *In re FCX, Inc.,* 60 B.R. 405 (E.D.N.C. 1986).  Explaining that Section

27

28                                              -15-

1  105 should not be used to stay enforcement of the debtor's environmental obligations, one court

2  held that:

3      To uphold a § 105 stay under these circumstances would allow [the debtor] to

4      operate the facility as a hazardous waste site despite noncompliance with the

5      RCRA. Neither the Bankruptcy Code nor the RCRA is intended to promote such

6      preferential treatment for Chapter 11 debtors.

7  *In re Professional Sales Corp.*, 56 B.R. 753, 764 (N.D. Ill. 1985).

8       Exercise of a bankruptcy court's discretionary authority to issue Section 105 injunctive

9  relief is appropriate only when necessary to carry out the provisions of the Bankruptcy Code. *In*

10  *re Middleton Arms, Ltd. Partnership*, 934 F.2d 723, 724 (6th Cir. 1991); *see also Norwest Bank*

11  *Worthington v. Ahlers*,  485 U.S. 197, 203 (1988) ("whatever equitable powers remain in the

12  bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code").

13  In *Powerine Oil Co. v. Koch Oil Co.*, 59 F.3d 969, 973 (9th Cir. 1995), *cert. denied*, 516 U.S.

14  1140 (1996), the Ninth Circuit relied on Norwest Bank, holding that "[e]quity may not be

15  invoked to defeat clear statutory language, nor reach results inconsistent with the statutory

16  scheme established by the Code."[12]

17      Because the Bankruptcy Code expressly exempts government police and regulatory

18  actions from the automatic stay, only in the rarest circumstances do courts find that a Section 105

19  injunction against a government agency is necessary to carry out the Code's provisions.[13]

20

21  _____

22  [12]  Other Ninth Circuit cases have also declined to depart from a plain language reading of
   the Code.  *See Futoran v. Rush (In re Futoran)*, 76 F.3d 265, 267 (9th Cir. 1995); *Suffolla, Inc. v.*
23  *U.S. Nat'l Bank of Oregon (In re Suffolla, Inc.)*, 2 F.3d 977, 980-81 (9th Cir. 1993); *In re CIC*
   *Investment Corp.*, 175 B.R. 52, 56 (B.A.P. 9th Cir. 1994).

24  [13]  *See In Re One Times Square Associates Limited Partnership*, 159 B.R. 695, (S.D.N.Y.
25  1994), *aff'd without op.*, 41 F.3d 1502 (2d Cir. 1994), *cert. denied*, 513 U.S. 1153 (1995) ("11
   U.S.C. § 105 should be used sparingly and then only to supplement the Bankruptcy Code, not
26  supplant the Code."); *In the Matter of Oxford Management, Inc.*, 4 F.3d 1329, 1335 (5th Cir.
27  1993) ("The powers granted by" Section 105 "must be exercised in a manner that is consistent

28                                            -16-

1    "[S]ection 105 does not give bankruptcy courts the authority to contravene specific provisions of

2    the Code." *In re Continental Airlines, Inc.*, 61 B.R. 758, 781 n. 47 (S.D. Tex. 1986).  "The

3    bankruptcy court is limited by the express terms of the Code; the court must apply bankruptcy

4    law, not rewrite it." *Id.*[14]

5          The limited circumstances in which a bankruptcy court may enjoin a government action

6    are: (1) where that action seeks control over the assets of the estate, or (2) where it so severely

7    threatens the assets of the estate, that it directly conflicts with the Bankruptcy Code.[15]  The Ninth

8    Circuit held in *Co Petro* that a "conflict" with the Bankruptcy Code is not established simply by

9    showing that the relief sought by the government's regulatory action may reduce the value of the

10   bankruptcy estate.  700 F.2d 1279, 1284 (9th Cir. 1983).  Here, no such conflict is present with

11   respect to either the relief sought by the Commission against Intergretel in the Enforcement

12   Action, or the relief sought against Integretel in the Contempt Proceeding to turnover property of

13   the receivership estate to the Federal Receiver.  *See, e.g., In re Tucson Yellow Cab Co.*, 27 B.R.

14   621, 624 (B.A.P. 9th Cir. 1982) (striking down bankruptcy court's Section 105 injunction,

---

16   with the Bankruptcy Code") (citations omitted);  *United States v. Sutton*, 786 F.2d 1305, 1308
17   (5th Cir. 1986) (Section 105 "does not authorize the bankruptcy courts to create substantive
     rights that are otherwise unavailable under applicable law, or constitute a roving commission to
18   do equity"); *Compton Corp. v. Department of Energy (In re Compton)*, 90 B.R. 798, 807
     (N.D.Tex. 1988) (bankruptcy court's injunction against Department of Energy action not
19   necessary to carry out Code's provisions), *appeal dismissed*, 889 F.2d 1104 (Temp. Emer. Ct.
20   App. 1989).

21        [14] *See In re Minor,* 115 B.R. 609 (D. Colo. 1990) (Section 105 does not authorize
     issuance of orders that conflict with other provisions of Bankruptcy Code); *In re Purnell v.
22   Citicorp Homeowners Services*, 92 B.R. 625 (E.D. Pa. 1988) (same); *In re Barbee,* 82 B.R. 470
     (N.D. Ill. 1988) (same); *Federal Land Bank of Omaha v. Fischbach*, 72 B.R. 245 (D.S.D. 1987)
23   (same); *In re Security and Energy Systems, Inc.*, 62 B.R. 676 (W.D.N.Y. 1986); *In the Matter of
     International Gold Bullion Exchange, Inc.* 53 B.R. 660 (S.D. Fla. 1985) (same); *In re Pirsig
24   Farms, Inc.*, 46 B.R. 237 (D. Minn. 1985) (same).

26        [15] *See NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695, 699-700 (8th Cir. 1985)
     (enjoining action arising out of rejection of labor contract that had been approved by the
27   bankruptcy court).

28                                              -17-

holding that "we do not agree that the issuance of a[n NLRB] back pay order, based upon a plain statutory right, forms [an enjoinable] threat to a debtor's estate, even though that order may greatly enhance the amount of priority obligations payable from the estate").

By the same reasoning, because courts have recognized that the automatic stay should not deprive nonbankruptcy courts in the exercise of their inherent powers of civil contempt, *see, e.g, Wolfson*, 309 B.R. 320, this Court should not, in effect, enjoin the District Court from holding Integretel responsible for its flagrant contempt of the District Court's injunctive orders in the FTC's Enforcement Action.

**B.    Integretel Has Not Satisfied the Test for Injunctive Relief Under Section 105.**

Not only must Section 105 injunctions be used only sparingly against governmental actions, under the principles discussed above, they may not be issued in the absence of the rigorous showing required for any injunctions. *See EEOC v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1985), *cert. denied*, 479 U.S. 910 (1986); *see also* S. Rep. No. 95-989 at 51, reprinted in 1978 U.S.C.C.A.N. 5787, 5837. The Court of Appeals for the Ninth Circuit employs either the traditional four-point inquiry or an alternative balancing standard. *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994).[16] Here, Integretel has not satisfied either standard --- nor can it.

Integretel cannot show that it will suffer irreparable harm if an injunction is not granted. Such an argument presupposes that it has a realistic chance of reorganizing. As the numerous objectors to their Cash Collateral Motion demonstrate, Integretel has not and cannot make that showing. To the contrary, all indications are that Integretel is woefully and irreversibly insolvent. If allowed to use its available cash to continue operating even on an interim basis,

---

[16]  A court may issue a preliminary injunction if it finds that: (1) the moving party will suffer irreparable harm if injunctive relief is not granted; (2) the moving party will probably prevail on the merits; (3) in balancing the equities, the non-moving party will not be harmed more than the moving party is helped by the injunction, and (4) that granting the injunction is in the public interest. *Stanley*, 13 F. 3d at 1319.

-18-

Integretel will likely just deplete its cash and then liquidate.  Moreover, contrary to Integretel's

suggestion, litigation expenses do not qualify as "irreparable harm":

> Congress by excepting certain actions from the automatic stay provision
>
> recognized that the debtor would likely incur litigation expense as a result of any
>
> excepted lawsuit. . . .Congress has therefore implicitly recognized that litigation
>
> expenses alone do not justify a stay of a proceeding.

*Rath Packing Co.*, 787 F.2d at 325.[17]

     For all of the reasons discussed above, Integretel cannot show that it will likely prevail on

the merits.  Further, the balance of the hardships weighs in favor of the FTC.  The Commission,

if enjoined, will be thwarted in its Congressional mandate to enforce the consumer protection

statutes in the public interest.  And in the absence of a realistic chance of reorganizing, Integretel

cannot show that granting the injunction against the FTC's consumer protection action is, in any

sense, in the public interest.


**CONCLUSION**

     Congress empowered the Commission to enforce federal laws that both remedy and

prevent violations of consumer protection laws.  Congress also recognized the importance of

preserving government law enforcement actions by enacting the police and regulatory power

exemption from the automatic bankruptcy stay.  This carefully balanced legislative scheme

promotes the strong public interest in ensuring that orderly law enforcement is not thwarted by

---

[17] *See also Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 178 (3d Cir. 1982) (the cost, anxiety, and inconvenience of defending oneself do not constitute irreparable injury); *In re Allegheny Health, Educ. and Research Found.*, 252 B.R. 309, 331 (W.D. Pa. 1999) (inconvenience of having to appear in two forums cannot form basis for finding of substantial harm; *In re Todd Shipyards Corp.*, 92 B.R. 600, 603 (Bankr. D.N.J. 1988) (stating that litigation expenses do not constitute an injury sufficient to justify enjoining of litigation against a debtor); *Nicholas, Inc. v. NLRB*, 55 B.R. 212, 218 (D.N.J. 1985) (litigation expenses do not constitute "threat" to the estate, absent detailed showing by debtor).

-19-

1   abuse of the bankruptcy process.  This Court should give effect to the choices made by Congress

2   by denying Integretel's Motion for a Temporary Restraining Order.

3

4   Dated: September 25, 2007                    Respectfully submitted,

5

6                                               WILLIAM BLUMENTHAL
                                                General Counsel
7

8                                               /s/ Michael P. Mora

9                                               _____
                                                MICHAEL P. MORA
10                                              Federal Trade Commission
                                                600 Pennsylvania Ave. NW, Room NJ-2121
11                                              Washington, DC  20580
                                                Telephone:  (202) 326-3373
12                                              Facsimile:   (202) 326-2558
                                                Email: mmora@ftc.gov
13

14                                              ATTORNEY FOR FEDERAL TRADE
                                                COMMISSION
15

16

17

18

19

20

21

22

23

24

25

26

27

28

-20-