WILLIAM BLUMENTHAL
General Counsel

MICHAEL P. MORA
Federal Trade Commission
600 Pennsylvania Ave. NW, Room NJ-2121
Washington, DC  20580
Telephone:  (202) 326-3373
Facsimile:   (202) 326-2558
Email: mmora@ftc.gov

ATTORNEY FOR FEDERAL
TRADE COMMISSION

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>THE BILLING RESOURCE, dba Integretel, a California corporation,<br><br>                Debtor<br><br><br>THE BILLING RESOURCE, d/b/a INTEGRETEL, a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL TRADE COMMISSION, et al.<br><br>    Defendants. | **Case No. 07-52890**<br><br>Chapter 11<br><br>Adv. Proc. No. 07-05156<br><br>FEDERAL TRADE COMMISSION'S SUPPLEMENTAL OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION<br><br>Date:  October 17, 2007<br>Time:  2:00 p.m.<br>Ctrm:  3020 |

The Federal Trade Commission ("Commission") submits its Supplemental Opposition to Integretel's Emergency Motion for Preliminary Injunction as follows[1]:

---

[1] The Commission intends that neither this Supplemental Opposition nor any later appearance, pleading, claim, or suit shall waive: (1) the FTC's right to have final orders in noncore matters entered only after *de novo* review by a District Court Judge; (2) the FTC's right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; or (3) any other rights, claims, actions, defenses, setoffs, recoupments,

-1-

**PRELIMINARY STATEMENT**

Integretel seeks a preliminary injunction, pursuant to the Court's general equitable powers under § 105 of the Bankruptcy Code, of the continuation of the Commission's Enforcement Action against Integretel in the Florida District Court, and the Contempt Proceeding instituted by the Receiver in that action to enforce the District Court's injunctive orders against Integretel. The Florida District Court held in its Clarification Order dated September 21, 2007, that the Enforcement Action and the Contempt Proceeding are specifically excepted from the automatic stay by 11 U.S.C. § 362(b)(4), which allows police and regulatory actions such as those at issue here to proceed notwithstanding the pendency of bankruptcy proceedings.

Integretel's request for a preliminary injunction should be denied. Even if it is within the Court's discretion to enjoin a governmental police or regulatory powers action under § 105, that extraordinary remedy is not justified here, because Integretel is unlikely to succeed in reorganizing. Further, Integretel will suffer no irreparable harm absent an injunction. In contrast, granting an injunction would harm the Commission and injured consumers and would disserve the public interest.

**ARGUMENT**

**Integretel Has Failed to Show Any Extraordinary Circumstances Upon Which a § 105 Injunction Against the FTC's Enforcement Action and the Receiver's Contempt Proceeding Could Be Based.**

In our prior briefs, we demonstrated why it would be improper for the Court to issue a discretionary stay order under § 105 enjoining the Commission's Enforcement Action as to Integretel. As the Florida District Court in the Enforcement Action has held, the continuation of both the Enforcement Action, and the Contempt Proceeding to enforce the Florida District Court's injunctive order in that Action, is excepted from the automatic stay pursuant to § 362(b)(4) of the Bankruptcy Code, the governmental police or regulatory powers exception.

---

or remedies to which the FTC is or may be entitled, in law or equity, all of which rights, claims, actions, defenses, setoffs, recoupments and remedies the FTC expressly reserves.

Under the plain language of the statute, beyond which the Court should look no further, enjoining the Enforcement Action and the Contempt Proceeding pursuant to the Court's general equitable powers under § 105 would eviscerate, rather than further, the specific stay exception under § 362(b)(4). That specific exception codifies the bedrock principle of bankruptcy law that "the government must be able to enforce its [police or regulatory] laws uniformly without regard to the debtor's position in the bankruptcy court." *Brock v. Rusco*, 842 F.2d 270, 273 (11th Cir. 1988) (internal quotations and citation omitted). It would also be contrary to the FTC Act, which gives the Commission authority to prevent the unfair and deceptive trade practices at issue in the Enforcement Action, and to seek appropriate injunctive relief in federal district courts for violations of the statutes it enforces when the agency determines that such relief is in the public interest. 15 U.S.C. §§ 45(a), 53(b). Further, as to the Contempt Proceeding, a § 105 injunction would also strip the Florida District Court of its inherent judicial power to hold Integretel accountable for its flagrant, and inexcusable, contempt of that court's orders.

In issuing its Order to Show Cause, however, the Court indicated that it would follow *In re First Alliance Mortgage Co. ("FAMCO")*, 264 B.R. 634 (C.D. Cal. 2001), where the court held that, while "it has some doubts as to whether § 105 truly authorizes an injunction of an otherwise excepted regulatory or police powers action," other courts have squarely held that it does, and that it would follow their lead. 264 B.R. at 652 n. 18.

Under *FAMCO*, the test for enjoining a regulatory or police powers action under § 105 is whether the governmental action will "threaten" the assets of the estate. 264 B.R. at 252. In addition, the usual, stringent standard for granting preliminary injunctive relief – adjudicated in an expedited proceeding, based on an incomplete record – applies: (1) the movant's likelihood of success on the merits; (2) irreparable injury; (3) the balance of hardships tips in the movant's favor; and (4) the requested injunction is in the public interest. *Id*. At a prior hearing, the Court denied Integretel's request for a Temporary Restraining Order, finding that Integretel failed to meet this stringent standard. As demonstrated below, Integretel likewise fails to meet

-3-

1  that standard with regard to its request for a Preliminary Injunction through the date of
2  confirmation of any Chapter 11 plan of reorganization.

### A.     Integretel Has Failed to Show a Likelihood of Success on the Merits.

As to this factor, the Ninth Circuit recently held that in the specific context of a § 105 injunction to stay proceedings against a non-debtor – which of course is not the case here – and where the movant is a Chapter 11 debtor, the relevant inquiry is the debtor's likelihood of successfully reorganizing. *In re Excel Innovations*, 2007 WL 2555941 at *7 (9th Cir. 2007). Predating that decision, the court in *FAMCO* noted that there is conflicting authority on this point generally.  264 B.R. at 653.  At the TRO hearing, the Court looked to Integretel's likelihood of success in reorganizing and credited its efforts, up to that time, as possibly satisfying this factor.

More recently, however, the Creditors Committee in this case, which represents the interests of all unsecured creditors, was unwilling to consent to Integretel's motion for entry of a final Cash Collateral order – its only source of funding its ongoing operations.  Thus, at the last minute, the "final" hearing scheduled on Integretel's Cash Collateral Motion was converted into yet another in a series of interim hearings.  By Integretel's own admission, after meeting with Integretel and conducting its due diligence, the Committee was only willing to give Integretel a 3-week extension of the existing Interim Cash Collateral Order.  The Committee's reticence speaks volumes about Integretel's prospects, or rather lack thereof, of successfully reorganizing.

Similarly, the Court itself aptly noted at a prior hearing on Integretel's Cash Collateral Motion that it remains to be seen whether this will be a "real" reorganization case.  More likely it will fall into the 90% or more of all Chapter 11 cases that are converted to liquidations, or dismissed.  Overall, the record in the case at this juncture demonstrates that Integretel's fate is hanging precariously in the balance.  A liquidation scenario is more or at least as likely as a successful reorganization.  Accordingly, Integretel has not by a preponderance of the evidence established a likelihood of success on the merits.

**B.    Integretel Has Failed to Meet its Burden of Showing Irreparable Harm**

Integretel points to only two possible sources of irreparable harm: (1) its estimated litigation costs in the Enforcement Action and Contempt Proceeding, for which it submits a declaration of counsel containing a highly dubious and conveniently inflated estimate of almost exactly $1 million, and (2) as to the Contempt Proceeding, the risk that it will be forced to turn over to the court-appointed Receiver the $1.7 million in Reserve Funds that the Florida District Court has held are property of the Receivership Estate.  The turnover of those Receivership funds, of course, cannot constitute any harm to the estate at all, because those funds are by definition not assets of the estate.  In making these allegations, they rely principally on the aforementioned declaration from their counsel in the Enforcement Action, and a conclusory affidavit from an accountant who was not retained by Integretel until very recently.  The evidence they have submitted does not support a finding of irreparable harm.

**1.    Integretel Will Not Be Irreparably Harmed By Litigation Costs**

In *FAMCO*, in which the district court reversed a bankruptcy court's § 105 injunction against a similar FTC law enforcement action, the court noted that the general standard for enjoining a regulatory or police powers action under § 105 – whether there is a sufficient "threat" to the assets of the estate – dovetails with the irreparable injury prong of the test for granting injunctive relief.  264 B.R. at 653.  With respect to alleged harm from litigation costs, the court held that, in general, litigation costs do not constitute irreparable injury.  264 B.R. at 656 (citing *EEOC v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1985).  The court further noted, however, that a case relied on by the debtor there, which Integretel also heavily relies on here, states that when litigation costs are high enough, they may constitute at least an element of irreparable harm.  See *NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695, 699 (8th Cir. 1985).  Though as to the Enforcement Action alone, litigation costs are the *only* source of alleged irreparable harm that Integretel points to.

-5-

In arguing that it will be irreparably harmed by litigation expenses, Integretel continues to rely on the same generalized and rather conclusory estimate in Neal Goldfarb's scant three-page declaration, devoid of sufficient detail to support the supposed estimate, which the Court found to be lacking when it denied Integretel's request for a TRO. The Court's ruling was premised on the Declaration of FTC Counsel Laura Kim submitted by the Commission, which amply demonstrated the invalidity and lack of support in Mr. Goldfarb's declaration for the TRO that Integretel sought.

With this Supplemental Opposition, the FTC has submitted the Declaration of FTC Counsel Collot Guerard, further demonstrating that Integretel's litigation cost estimate is highly speculative and vastly overstated. As Ms. Guerard's Declaration shows, Integretel's estimate of its projected litigation cost is unreasonably high because it assumes that there will be a full, lengthy trial. In fact, the FTC intends to move for summary judgment. Grant of the motion will result in no trial costs for Integretel. An order that narrows the issues for trial could substantially reduce the length and costs associated with a trial. The Commission further notes that the uncontested facts show that Integretel billed consumers $4,408,186 for collect calls that were completely fabricated. Collot Dec. ¶¶ 5-6.

In her declaration, Ms. Guerard also points out other specific and fatal flaws in Mr. Goldfarb's now clearly outdated declaration:

- First, contrary to the Goldfarb Declaration, it is not at all clear that any more depositions will be taken because discovery has closed and the District Court has not ruled on the motion of the other Billing Aggregator to take an additional ten depositions, or on the motion of Integretel to take one additional deposition. The FTC has opposed these motions. Collot Dec. ¶ 8.

- Second, it is unlikely that there will be any motions regarding the depositions, especially if the Court denies the motion to take additional depositions. *Id.*

- Third, Mr. Goldfarb's analysis ignores the significant number of admissions that the defendants in the Enforcement Action have made. This will make any trial abbreviated, in the unlikely event that the FTC loses a summary judgment motion. *Id.*

- Fourth, in his Declaration, Mr. Goldfarb estimates the trial may last as long as four weeks. This is highly unlikely. In submitting their Joint Scheduling Report, the FTC

and two of the individual defendants estimated the trial would only last up to nine days at most. Counsel for the Billing Aggregator defendants, including Mr. Goldfarb, estimated the trial to last 10 to 15 days. Contrary to Mr. Goldfarb's baseless statement in his Declaration, there was never an estimate of four weeks, by Integretel or any other party. Collot Dec. ¶ 9.

In its zeal to misuse this Bankruptcy Court and its discretionary, equitable injunctive powers as a haven from their wrongdoing, Integretel also makes the same fatal mistake here that the debtor – and the bankruptcy court — made in *FAMCO*. It completely fails to address the likelihood that its litigation costs, in the event that a preliminary injunction is entered, will be equaled or exceeded by the litigation costs it will incur in any event by reason of (i) litigation in the bankruptcy court over the FTC's monetary claim related to the Enforcement Action, and (ii) litigation, after Integretel emerges from bankruptcy and the injunction is dissolved, over non-monetary injunctive relief that the FTC will continue to seek. *See FAMCO,* 264 B.R. at 656.

If the Court enjoins the Enforcement Action and the Contempt Proceeding, Integretel will still have to incur the costs of litigating the Commission's monetary claims, but in the bankruptcy court proceeding. The FTC will assert a proof of claim against the estate for the full amount of equitable monetary relief arising from the cramming scheme. Moreover, under the recently enacted § 1141(d)(6)(A) of the Code, certain fraud-type debts as defined in § 523(a)(2)(A), owed by a corporate debtor to a "domestic governmental unit" such as the FTC, are not dischargeable in a Chapter 11 reorganization. Because the evidence against Integretel in the Enforcement Action is so strong, the Commission could file a nondischargeability action against Integretel for its monetary claim. *See In re Lederman*, 1995 WL 792072 (Bankr. C.D. Cal.) (debt to FTC arising from consumer fraud case found to be nondischargeable under § 523(a)(2)(A) in an individual debtor's bankruptcy case). And assuming the FTC prevailed, Integretel would have to provide for full payment of the FTC's claim in order to confirm a feasible plan of reorganization.

Moreover, as Integretel itself recognizes, it can only seek a preliminary injunction through the hypothetical date of confirmation of any plan of reorganization and its emergence

-7-

from bankruptcy, after which the Commission would be free to resume the Enforcement Action as to the <u>non-monetary</u> injunctive relief it seeks against Integretel. In that regard, Integretel is simply mistaken in its belief that its alleged cessation of the unlawful activities at issue in the Enforcement Action moots the need for any permanent, prospective injunctive relief. That is not the law. If it were, then Integretel would simply be free to return to its old ways. *See FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999).

Thus, the same facts would have to be established, before another court unfamiliar with the facts and voluminous record of the Enforcement Action and the Contempt Proceeding. Judicial resources that would have been conserved will instead be wasted, and additional litigation costs that would have been avoided by allowing the proceedings to go forward will instead be incurred. And Integretel would incur yet additional litigation expenses post-confirmation when the Enforcement Action resumes, all of which would have to be taken into account in determining whether any plan of reorganization proposed by Integretel were feasible, *i.e.*, not likely to be followed by liquidation or a subsequent bankruptcy filing.

**2.  Integretel Will Not Be Irreparably Harmed By the Continuation of the Contempt Proceeeding or By Turning Over Property of the Receivership Estate**

With respect to the Contempt Proceeding, moreover, Integretel cannot show any immediate irreparable harm at this juncture for additional reasons. In its Omnibus Order in the Contempt Proceeding, the District Court ruled that the Reserve Funds are property of the Receivership, and not Integretel's property, and issued an order to show cause why Integretel should not be held in civil contempt for failing to turn over the Reserve Funds to the Receiver. In the next phase of the proceeding, if Integretel fails to purge itself of its contempt by turning over the funds, as they presumably will based on their past contumacious conduct, the burden will shift to Integretel as the contemnor to demonstrate – if they can – why they are allegedly unable to comply. Inability to comply is a defense, if it can be adequately established. *See Affordable Media*, 179 F.3d at 1239. If Integretel ultimately prevails, it will not have to turn

over the disputed funds and will not have incurred the irreparable harm it alleges.  If the Receiver ultimately prevails, there will be no cognizable irreparable harm either, because the property of the Receivership will have been rightly restored to the Receivership, at no cost to Integretel's estate.

Moreover, Integretel's claim of irreparable harm rings especially hollow given that Integretel only has itself to blame for any predicament it now finds itself in.  Integretel was served with the TRO including the turnover order in March 2006 and has faced the Receiver's contempt motion since October 2006.  Integretel, therefore, has had 18 months to get its affairs in order and to plan for the turnover of the Reserve Funds to the Receiver.  Integretel had ample opportunity to seek clarification from the Florida District Court concerning the Reserve Funds or, e.g., to secure a letter of credit,  borrow from one of its affiliated companies, cut costs, or simply put away some money into savings.  Instead, Integretel chose to do nothing other than to ignore the turnover order.  Integretel cannot now legitimately be heard to complain about a harm that is, in essence, self-inflicted.  *See Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ("We will not consider a self-inflicted harm to be irreparable.") *citing Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995); *Ventura County Christian High School v. City of San Buenaventura,* 233 F.Supp.2d 1241, (C.D.Cal. 2002) (plaintiffs faced no irreparable harm because their "financial peril is due in part to their own failure to obtain a judicial determination of their rights and obligations at some earlier point in time.")*; Lee v. Christian Coalition of America, Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001); 11A  Wright, Miller & Kane, Federal Practice & Procedure § 2948.1, at 152-53 (2d ed. 1995).

### 3. The Declaration of Integretel's Accounting Consultant Does Not Establish that Integretel Will Be Irreparably Harmed

Integretel has submitted the declaration of an accountant that it retained "only a few days ago" – from whom neither the Commission nor the Receiver have had any opportunity for

-9-

discovery – for the proposition that it will suffer irreparable harm if the Enforcement Action and Contempt Proceeding are not enjoined. Weber Dec. ¶ 1. The analysis in this declaration is based on fatally flawed assumptions. It assumes the validity of Mr. Goldfarb's highly speculative and overstated litigation cost estimate, which is fraught with errors, as the Commission has shown above. It fails to take into account the litigation costs related to the Commission's claims that Integretel is likely to incur in any event if the injunction is granted. It assumes that the "prepayment" program posited by Integretel, which appears to be a radical departure from its historical business practices, is fully implemented and sustained through March 2008. Under its early pay proposal, each week, Integretel proposes to pay its customers 50% of the adjusted value of billing transactions processed the prior week, without holding back any reserve funds whatsoever. There is no indication that he ran any alternative scenarios or performed any sensitivity analysis as to that assumption, as he did for another key, dubious assumption that he was uncertain about. Weber Dec. ¶ 15. For instance, Weber fails to discuss whether the LECs, i.e., the phone companies, to whom Integretel submits billing data for posting on consumers' phone bills, will agree to do business with an aggregator that has failed to adequately hedge against the risk of consumer refund requests. Moreover, despite the faulty assumptions and critical flaws in his analysis, the "Alternative Budget" that he prepared, which assumes that the $1.7 million in Reserve Funds are unavailable to Integretel and that Integretel will incur $1 million in litigation costs, indicates that Integretel would have a positive "post and prepetition" cash balance throughout the forecast period. Weber Dec., Exhibit C, Line 29.

**C.    Integretel Has Failed to Account for All of the Harms to the FTC and the Public Interest If the Enforcement Action and Contempt Proceeding Are Preliminarily Enjoined**

In its Supplemental Opposition to the TRO, supported by the Declaration of FTC Counsel Laura Kim submitted in conjunction therewith, the Commission pointed out the multiple harms to the agency – as well as the public in general, and the consumer victims of

-10-

Integretel's alleged unlawful trade practices in particular – should this Court issue a § 105 injunction stopping the Enforcement Action in its tracks.

In addition to monetary equitable relief, the Commission seeks multiple forms of non-monetary equitable monetary relief against Integretel in the Enforcement Action. Such relief includes a permanent injunction against pertinent law violations and other non-monetary "fencing-in" injunctive relief, rescission of contracts, and a claims procedure whereby consumers can be redressed for the harm they have suffered. As the Commission pointed out in its prior brief, this Bankruptcy Court would not be the proper forum for granting such relief. Apart from the limited scope of the Bankruptcy Court's referral jurisdiction under 28 U.S.C. § 157, as the Ninth Circuit succinctly held in *San Francisco v. PG&E Corp.*:

> Through various provisions of the Bankruptcy Code, Congress has evidenced its intent that a governmental unit's police or regulatory action not be litigated in federal bankruptcy court. Section 362(b)(4) of the Bankruptcy Code exempts such an action from the reach of the automatic stay; 28 U.S.C. § 1452(a) exempts such an action from removal to bankruptcy court. 433 F.3d 1115, 1127 (9th Cir. 2006).

Analogously, the Eighth Circuit recently held in *CFTC v. NRG Energy, Inc.*, that given the limited jurisdiction of bankruptcy courts, and the limits of its power under § 105 of the Code, a bankruptcy court has no authority to enjoin a government agency from bringing an enforcement action against a reorganized debtor, post-confirmation, for injunctive relief against future law violations. 457 F.3d 776 (8th Cir. 2006).

The Commission explained in its prior brief how the agency's consumer protection mission would be undermined in other critical ways that cannot be quantified in dollars and cents if the Enforcement Action is enjoined. This further tilts the scales of equity heavily towards denying a discretionary § 105 injunction against the Commission's police or regulatory powers action. As the court held in *FAMCO*, being enjoined from proceeding in its chosen forum – here, the Florida District Court – seriously impairs the Commission from attaining the very goals that Congress sought to recognize when it created the regulatory and police powers

exception. Those goals include carrying out the Commission's consumer protection mission through vigorous law enforcement, redress for consumers, and deterrence of unlawful activity, which sometimes conflict with the bankruptcy goals of maximizing an individual estate's assets and efficiently processing claims. 264 B.R. at 659.

In particular, the harm caused to the deterrent effect of the Commission's law enforcement actions by setting the precedent that a defendant can escape prosecution for committing deceptive and unfair trade practices by simply filing for bankruptcy, contrary to a specific exception in the Bankruptcy Code itself, is immeasurable. *See id.*

These same potential harms would arise if the Contempt Proceeding were enjoined, with the added dimension that the most hard core defendants and third parties who violate preliminary injunctive orders issued by district courts in FTC law enforcement actions, would likewise view bankruptcy as an escape hatch from the district court's inherent powers of civil contempt.

The Commission's need for permanent injunctive relief from the Florida District Court barring Integretel's allegedly unlawful business practices and other equitable relief, and the important public policy goals at stake, are particularly acute here. As set forth in the previously submitted Declaration of FTC Counsel Laura Kim, pursuing phone billing aggregators such as Integretel is a vital enforcement strategy that the Commission has pursued to curb the insidious and unlawful practice of "cramming" unauthorized charges on consumers' phone bills. Kim Dec. ¶ 22. Aggregators, after all, are the ones who provide unscrupulous, alleged service providers with the access and ability to abuse the telephone billing system. Since 1998, the FTC has filed numerous actions against telephone billing aggregators and obtained appropriate injunctive and monetary equitable relief. *Id*.

And, this is not the first time that the FTC has sued Integretel. In 2000, the FTC sued Integretel for its role in billing and collecting charges in an international internet pornography case. Kim Dec. ¶ 19. That litigation was settled as to Integretel in 2002 pursuant to a stipulated

-12-

final order and permanent injunction. Despite that court order, in 2006, the Commission had to file suit against Integretel yet again in the subject Enforcement Action, for unlawful telephone billing and collection practices.

Integretel also acted as the telephone billing aggregator for the defendants in at least three cramming cases that the FTC brought between 2000-2002. Kim Dec. ¶ 20. A number of state law enforcement authorities have also commenced regulatory proceedings in the past against Integretel. Kim Dec. ¶ 21. In addition, the Declaration of Collot Guerard further describes how two Integretel clients who are among its largest unsecured creditors – Email Discount Network, and Telco Billing, Inc. – who have also been appointed to the Creditors Committee, were recently prosecuted by state attorneys general for cramming unauthorized charges on consumers' phone bills and other alleged deceptive trade practices. Collot Dec. ¶ 10.

Moreover, although the Enforcement Action at issue here concerns unauthorized charges billed by the Nationwide Connections defendants and Integretel in May and June 2003, and from October 2004 to June 2005, the FTC has obtained strong evidence indicating that Integretel billed unauthorized charges for a daisy chain of predecessor entities controlled by the Nationwide defendants and their principals over a period of nearly 5 years, dating back to at least 2000. Kim Dec. ¶¶ 23-27.

**D.    The Balance of Hardships Tips in Favor of Denying the Requested Injunction**

As the foregoing discussion amply demonstrates, the cognizable harms alleged by Integretel from allowing the Enforcement Action and the Contempt Proceeding to proceed are outweighed by the harms to the Commission and the public that would stem from enjoining the Enforcement Action and the Contempt Proceeding.

**E.    Granting a preliminary injunction is most assuredly not in the public interest.**

Finally, this is not a case where issuing a discretionary § 105 injunction against the government's law enforcement action is in the public interest, or at all warranted. This is a case where the Court should allow the FTC's Enforcement Action, as well as the Contempt

Proceeding collateral to that action, to run their course, as Congress clearly intended under § 362(b)(4).

## CONCLUSION

Integretel has failed to satisfy the stringent standard for granting discretionary injunctive relief pursuant to § 105 against the Commission's regulatory and police power action and related civil contempt proceeding at issue. Accordingly, the Commission respectfully requests that the Court deny Integretel's Motion for a Preliminary Injunction.

Dated: October 15, 2007

Respectfully submitted,

WILLIAM BLUMENTHAL
General Counsel

/s/ Michael P. Mora
_____
MICHAEL P. MORA
Federal Trade Commission
600 Pennsylvania Ave. NW, Room NJ-2121
Washington, DC  20580
Telephone:  (202) 326-3373
Facsimile:   (202) 326-2558
Email: mmora@ftc.gov

ATTORNEY FOR FEDERAL TRADE COMMISSION