1  HOWARD KOLLITZ (State Bar No. 059611)
   WALTER K. OETZELL (State Bar No. 109769)
2  STEVEN J. SCHWARTZ (State Bar No. 200586)
   DANNING, GILL, DIAMOND & KOLLITZ, LLP
3  2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
4  Telephone: (310) 277-0077
   Facsimile: (310) 277-5735
5  Email:    sschwartz@dgdk.com

6  JEFFREY C. SCHNEIDER
   TEW CARDENAS LLP
7  Four Seasons Tower, Fifteenth Floor
   1441 Brickell Avenue
8  Miami, Florida 33131-3407
   Telephone: (305) 539-2481
9  Facsimile:  (305) 536-1116

10 Co-Counsel for Creditor David R. Chase, Federal Receiver
   of Nationwide Connections, Inc., Access One
11 Communications, Inc., Network One Services, Inc.,
   411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing
12 Services, Inc., Toll Free Connect, Inc., Cripple Creek
   Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC,
13 He's Gone, LLC, The Other One, LLC, Turn on Your Love
   light, LLC, China Cat Sunflower, LLC, and Lazy River Road
14 Holdings, LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re | Case No. 07-52890-ASW |
| THE BILLING RESOURCE, dba Integretal, a California corporation, | [Chapter 11] |
| Debtor. | |
| [Taxpayer's Identification No. 33-0289863] | |
| THE BILLING RESOURCE, dba INTEGRETAL, a California corporation, | Adv. No. 04-05156 |
| Plaintiff, | **FEDERAL RECEIVER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION AND DECLARATORY RELIEF** |
| vs. | |
| FEDERAL TRADE COMMISSION, and DAVID R. CHASE, not individually, but solely in his capacity as receiver for Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., 411TXT, Inc., | |

-1-

314573.01 [XP]    24774

| | |
|---|---|
| CELL-INFO-USA, INC., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love Light, LLC, China Cat Sunflower, LLC, Lazy River Road Holdings, LLC,<br>　　　　　　　　　　　　　Defendants. | Date: September 26, 2007<br>Time: 2:15 p.m.<br>Place United States Bankruptcy Court<br>　　　　280 South First Street<br>　　　　San Jose, California<br>Judge: Hon Arthur S. Weissbrodt<br>Courtroom: 3020 |

Defendant David R. Chase, the United States District Court-Appointed Receiver (the "Federal Receiver"), submits herewith his Memorandum of Points and Authorities in Opposition (the "Opposition") to the Emergency Motion For Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction and Declaratory Relief filed by The Billing Resource, dba Integretal, a California corporation (the "Debtor"), filed and served in this matter on or about September 24, 2007 (the "TRO Motion").[1] The grounds for such opposition are as described below.

## I.

## SUMMARY OF ARGUMENT

Debtor is seeking an order from this Court which will contradict and frustrate specific unambiguous Orders and findings (collectively, the "District Court Orders") of the United States District Court in the Southern District of Florida (the "District Court"). Initially, this attempt was made through a Motion for Approval of Use of Cash Collateral, in which the Debtor failed to disclose the true nature of those District Court Orders. The District Court, obviously concerned with this tactic, issued a Clarification Order just prior to the hearing on the Cash Collateral Motion specifically and unambiguously stating two matters that control any action herein. The first

---

[1] The Federal Receiver expressly reserves his right to file appropriate motions under Federal Rule of Civil Procedure 12(b) to dismiss the Debtor's complaint and the herein requested injunctive relief as against all Receivership entities named therein that do not own or claim ownership to the subject receivership funds, which entities include: Nationwide Connections, Inc., 411TXT, Inc., CELL-INFO-USA, Inc., Enhanced Billing Services, Inc., Toll Free Connect, Inc., Cripple Creek Holdings, LLC, Built to Last, LLC, Not Fade Away, LLC, He's Gone, LLC, The Other One, LLC, Turn on Your Love light, LLC, China Cat Sunflower, LLC, and Lazy River Road Holdings, LLC. In addition, the Receiver expressly objects to the exercise of jurisdiction by the United States Bankruptcy Court over the subject matter of the Debtor's complaint and expressly reserves all of the Receiver's objections to the jurisdiction of the United States Bankruptcy Court to hear and determine the matters in question as well as expressly reserves all of the Receiver's rights to trial by jury in the United States District Court.

314573.01 [XP]　　24774

holding was that the District Court had ruled that the subject Receivership Funds were not property of the Bankruptcy Estate. The second was that the contempt proceedings in the District Court (the "District Court Proceedings") were not subject to the automatic stay herein, but, instead, fell under the Regulatory Powers Exception set forth in 11 U.S.C. § 364(b)(4). Finally, the District Court made its intent perfectly clear – the Debtor was to turn over the receivership funds to the Federal Receiver "immediately" under pain of contempt. In so doing, it quoted judicial authority holding that incarceration was an appropriate remedy in respect of such an order.

Debtor now comes before this Court, again, asking it to block the effect of and ignore the expressed order of the District Court, this time by employing injunctive relief under section 105 of the Bankruptcy Code. Its purported evidence is the assertions in the Declaration of Ken Dawson (the "Dawson Declaration"). Section 105 has no application here and the Dawson Declaration does not provide any evidence required for the relief requested.

Application of Bankruptcy Code Section 105 is only proper in situations where provisions of the Bankruptcy Code are advanced. Here, there is no such provision. Cash collateral use is only allowed in respect of property of the estate, and, as discussed above, the District Court has held that the Receivership Funds are property of the Federal Receiver, and not property of the Bankruptcy Estate. Nor can the Debtor rely on Bankruptcy Code Section 362. Again, the District Court has specifically held that the District Court's proceedings are not barred by the automatic stay. Finally, not only does the application of section 105 to the facts here not further provisions of the Bankruptcy Code, but it contravenes a specific section of the Bankruptcy Code. 11 U.S.C. § 362(b)(4) excepts police power and regulatory actions from the automatic stay. Again, the District Court has found that the District Court proceedings fall under this exception. Application of Section 105 would run counter to section 362(b)(4) as well as, of course, the specific provisions of the District Court Orders.

Now Debtor claims that the proceedings in the District Court (the "District Court Proceedings") should be enjoined because of the expenses of litigation. However, the very case that Debtor cites in its motion In re Alliance Mortgage, 264 B.R. 634 (C.D. Cal 2001) holds just the opposite: litigation costs are not a sufficient threat to justify the relief sought nor do they establish

-3-

irreparable harm. And while courts have entertained requests for such relief when assets of the estate are threatened, the Receivership Funds have been adjudicated to not be assets of the bankruptcy estate.

Debtor argues that it may go out of business if is not able to spend the Receivership Funds. This, alone, demonstrates Debtor's game plan here, which is to obtain an Order from this Court in derogation of the District Court and hide behind it, using it for an excuse on appeal as to why it should not be held in contempt, while it does exactly what the District Court has ordered it not to do, spend the Receivership Funds on its operations.

Further, the Dawson Declaration does not make the showing required to grant a section 105 injunction. It simply consists of paragraphs lifted from the Cash Collateral Motion. It asserts that the Debtor believes it can confirm a plan of reorganization, but it gives this Court absolutely no evidence upon which that assertion is based. What it does do, however, is to make it clear beyond doubt that the Debtor, rather than preserving the status quo, intends to waste the Receivership Funds.

The Debtor concedes that the automatic stay does not apply to the FTC's prosecution of the Florida Action, but somehow attempts to carve out from that prosecution the actions of the Receiver who was appointed by the District Court in furtherance of the FTC's prosecution. See Footnote 1 to the TRO Motion. There is no distinction. The Receiver is, in effect, a "representative and fiduciary" of the United States District Court in a federal receivership proceeding, and the September 21, 2007 United States District Court Order specifically determined that the Section 362 stay did not apply to that federal receivership proceeding and vacated its (the District Court's) September 20, 2007 Order staying the proceeding.

In addition, the Debtor argues that this Court is the only court that can fashion appropriate injunctive relief. See Introduction to TRO Motion at lines 19-20. However, the Debtor concedes that it is seeking injunctive relief on identical issues not only from this court, but from District Court in Florida and from the Court of Appeals for the 11th Circuit. The Debtor is clearly attempting to re-litigate in this Court, by motion and by adversary proceeding, issues regarding the

-4-

application of the stay and determination of property of the estate already conclusively determined by the District Court. The equitable powers of 11 U.S.C. § 105(a) are not designed for such relief.

This Court is respectfully requested to deny the request for temporary restraining order or, if this Court is inclined to grant such a relief, to preserve the status quo by requiring the Debtor to segregate, sequester and account for the Receivership Funds or to pay said funds into the registry of this Court.

## II.
## ARGUMENT

A. **INJUNCTIVE RELIEF IS IMPROPER UNDER SECTION 105 OF THE BANKRUPTCY CODE.**

1. An Injunction Is Not Necessary to Carry Out the Purposes of the Bankruptcy Code.

Exercise of a bankruptcy court's discretionary authority to issue Section 105 injunctive relief is appropriate only when necessary to carry out the provisions of the Bankruptcy Code. In re Middleton Arms, Ltd. Partnership, 934 F.2d 723, 724 (6th Cir. 1991); see also Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 203 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). In Powerine Oil Co. v. Koch Oil Co., 59 F.3d 969, 973 (9th Cir. 1995), cert. denied, 516 U.S. 1140 (1996), the Ninth Circuit relied on Norwest Bank, holding that "[e]quity may not be invoked to defeat clear statutory language, nor reach results inconsistent with the statutory scheme established by the Code." Here, there are no provisions of the Bankruptcy Code which this injunction promotes. It does not promote section 363. The Receivership Funds are not property of the estate, and their use cannot be authorized by the cash collateral order or otherwise. The District Court Orders could not be clearer. The Debtor is not to spend the Receivership Funds. Nor does the requested relief promote section 362. Again, the District Court has already adjudicated that the District Court proceedings are exempt from the automatic stay.

The power to issue injunctions under Section 105 does not extend to the issuance of orders that conflict with other, specific federal statutory mandates. In re Rohnert Park Auto Parts, Inc.,

-5-

113 B.R. 610 (B.A.P. 9th Cir. 1990). Here, the injunctions sought by the Debtor conflict with the FTC's Federally mandated obligations under the FTC Act, express orders of the District Court, and with the Bankruptcy Code itself.

Moreover, Section 105 does not allow entry of orders that create rights or immunities that are not otherwise available to the debtor under non-bankruptcy law. Matter of Schewe, 94 B.R. 938 (W.D. Mich. 1989); In re FCX, Inc., 60 B.R. 405 (E.D.N.C. 1986). Here, the judge presiding over the Federal Receiverships has issued multiple orders determining that the $1.76 million being held by the Debtor is property of the Receiverships and not property of the Debtor, and determining that the automatic stay does not apply to the Payment Order or to the District Court Action, both of which are an exercise of the FTC's Federal regulatory powers.

Because the Bankruptcy Code expressly exempts government police and regulatory actions from the automatic stay, only in the rarest circumstances do courts find that a Section 105 injunction against a government agency is necessary to carry out the Code's provisions. See In Re One Times Square Associates Limited Partnership, 159 B.R. 695, (S.D.N.Y. 1994), aff'd without op., 41 F.3d 1502 (2d Cir. 1994), cert. denied, 513 U.S. 1153 (1995) ("11 U.S.C. 105 should be used sparingly and then only to supplement the Bankruptcy Code, not supplant the Code."); In re Oxford Management, Inc., 4 F.3d 1329, 1335 (5th Cir. 1993) ("The powers granted by" Section 105 "must be exercised in a manner that is consistent with the Bankruptcy Code") (citations omitted); United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986) (Section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity"). "[S]ection 105 does not give bankruptcy courts the authority to contravene specific provisions of the Code." In re Continental Airlines, Inc., 61 B.R. 758, 781 n. 47 (S.D. Tex. 1986). "The bankruptcy court is limited by the express terms of the Code; the court must apply bankruptcy law, not rewrite it." Id; See also, In re Minor, 115 B.R. 609 (D. Colo. 1990) (Section 105 does not authorize issuance of orders that conflict with other provisions of Bankruptcy Code)

The limited circumstances in which a bankruptcy court may enjoin a government action are: (1) where that action seeks control over the assets of the estate, or (2) where it so severely threatens

-6-

314573.01 [XP]    24774

the assets of the estate, that it directly conflicts with the Bankruptcy Code. The Ninth Circuit held in Co Petro that a "conflict" with the Bankruptcy Code is not established simply by showing that the relief sought by the government's regulatory action may reduce the value of the bankruptcy estate. Commodity Futures Trading Com'n v. Co Petro Marketing 700 F.2d 1279, 1284 (9th Cir. 1983). Distinguishing the Eighth Circuit's decision in Missouri v. Bankruptcy Court, 647 F.2d 768 (8th Cir. 1981), cert. denied, 454 U.S. 1162 (1982), the Co Petro court explained that the regulatory action in that case conflicted with the Bankruptcy Code because it was a parallel state-law insolvency proceeding:

> [i]n Missouri, the regulatory law in question was a state law empowering the state to operate and liquidate insolvent grain warehouses. If the state court suit under that law had been allowed to proceed, it would have conflicted with the administration of the debtors' estate in the bankruptcy court.

Co Petro, 700 F.2d 1279, 1284 (9th Cir. 1983). Here, no such conflict is present. See, e.g., In re Tucson Yellow Cab Co., 27 B.R. 621, 624 (B.A.P. 9th Cir. 1982) (striking down bankruptcy court's Section 105 injunction, holding that "we do not agree that the issuance of a[n NLRB] back pay order, based upon a plain statutory right, forms [an enjoinable] threat to a debtor's estate, even though that order may greatly enhance the amount of priority obligations payable from the estate").

First, it is clear that the so called, "Payment Order" does not seek control over assets of the estate; rather, it seeks a return of property of the Receiverships back to the Receiver. Second, the required turnover of property of the Receiver does not threaten the assets of the estate in conflict with the Bankruptcy Code. The only argument articulated as to the potential damage the estate will suffer as a result of the continuance of the Florida Action, is that the estate will have to expend "substantial attorney's fees" and "divert the management's attention away from reorganization." Debtor's Memo of Points and Authorities at p. 2. In addition, the Debtor cannot rest on its argument that if required to turn over funds that it does not own, it will be forced out of business. The Debtor is simply asking, through this Motion and the Cash Collateral Motion, to use property of the Receivership in aid of its reorganization efforts. The Debtor has not offered any evidence that it has sought other avenues of financing (other than the involuntary use of someone else's

314573.01 [XP]    24774

1  property) in order to maintain its operations over the near term.  It is not the fault of the
2  Receivership that the Debtor entered reorganization proceedings without a clearly defined strategy
3  for maintaining its business other than to spend the Receivership's money.

   2. <u>The Debtor is Improperly Attempting to Overturn the Prior Order from the District Court Vacating the Stay as to the District Court Action.</u>

   The Court's equitable powers under 105(a) do not allow a party to re-litigate issues that have previously been determined. Only proof of a substantial change in circumstances will justify changing what has been decreed. <u>Chrysler Capital Corp. v. Official Comm. of Unsecured Creditors (In re Twenver, Inc.)</u>, 149 B.R. 950, 954 (D.Colo.1993); <u>see also</u>, <u>In re Bryant</u> 296 B.R. 516, 519 (Bankr. D.Colo.,2003.) (Debtor improperly seeking to re-impose the automatic stay after it was already terminated by creditor's motion).

   Here, the Debtor has not demonstrated any change in circumstances so as to justify the relief requested.  The orders from the District Court, entered pre-petition, and reiterated post-petition, require the turnover of property not owned by the Debtor, under penalty of contempt. Having failed to convince the District Court that the automatic stay applies to the District Court Action (and now conceding as such at least with respect to the FTC), the Debtor is now attempting to obtain extraordinary relief of 105(a) to re-litigate and overturn the prior rulings from the District Court that the automatic stay does not apply and that the Receivership's money should be turned over to the Receiver.  The relief requested is simply a re-litigation of issues that have previously been determined which is not appropriate or authorized under section 105.

   3. <u>The Debtor Did Not Satisfy the Test for Injunctive Relief Under Section 105.</u>

   Not only must Section 105 injunctions be used only sparingly in respect of governmental actions, under the principles discussed above, they may not be issued in the absence of the rigorous showing required for any injunctions.  See <u>EEOC v. Rath Packing Co.</u>, 787 F.2d 318, 325 (8th Cir. 1985), <u>cert</u>. <u>denied</u>, 479 U.S. 910 (1986); <u>see also</u> S. Rep. No. 95 989 at 51, reprinted in 1978 U.S.C.C.A.N. 5787, 5837.  The Court of Appeals for the Ninth Circuit employs either the traditional four-point inquiry or an alternative balancing standard.  <u>Stanley v. Univ. of S. California</u>, 13 F.3d 1313, 1319 (9th Cir. 1994).   Here, the Debtor satisfied neither standard --- nor

314573.01 [XP] 24774

1  can it. As discussed above, courts entertain such relief where assets of the estate are threatened.
2  Again, the Receivership Funds are not assets of the bankruptcy estate.
3        The Debtor relied exclusively on the balancing standard. Under this standard, the court
4  balances the debtor's likelihood of success against the relative hardships to the parties. Sun
5  Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir. 1999). The Debtor failed to
6  show "either a likelihood of success on the merits and the possibility of irreparable injury, or that
7  serious questions going to the merits were raised and the balance of hardships tips sharply in [their]
8  favor." Id. This is illustrated by the very case Debtor cites, Alliance Mortgage, supra.
9        The Debtor has not made any showing that it will prevail on the merits of the District Court
10 Action, which sets out clear violations of federal statutes. In re Commonwealth Oil Refining Co.,
11 Inc. 805 F.2d 1175, 1189, 805 F.2d at 1189 (courts must examine whether the debtors are likely to
12 succeed in the underlying enforcement action). Nor has the Debtor made any showing that it will
13 prevail on matters concerning the receivership funds (which matters specifically relate and refer to
14 orders entered on behalf of the FTC in addition to the Receiver) that are currently on appeal in the
15 11th Circuit.
16       In addition, the Debtor made no showing of irreparable harm. The Dawson Declaration is
17 conclusory and consists mainly of paragraphs from the Motion making arguments and assertions.
18 There is little evidence, if any. Litigation expenses do not alone allow injunctive relief nor do they
19 constitute as "irreparable harm". Alliance Mortgage, supra.
20       Congress by excepting certain actions from the automatic stay provision recognized that the
21 debtor would likely incur litigation expense as a result of any excepted lawsuit. . . .Congress has
22 therefore implicitly recognized that litigation expenses alone do not justify a stay of a proceeding.
23 Rath Packing Co., 787 F.2d at 325.
24       Finally, the balance of the hardships weighs in favor of the Receiver. The Receiver, if
25 enjoined, will be forced to "sit by and watch" while its funds are spent by the Debtor in aid of its
26 supposed reorganization efforts, thus rendering moot any relief afforded to the Receiver by the
27 District Court. The Debtor has not, and cannot, offer the Receiver any adequate protection for the
28 use of its money while the appeals filed by the Debtor are prosecuted. Nor does the Debtor offer to

post a bond or other form of protection for the Receiver's funds. The Debtor simply expects this court to enjoin the Receiver from enforcement of its turnover orders while it concurrently spends the Receiver's money. The Receivership Funds would be spent, contrary to the District Court order and the District Court's remedy will be rendered meaningless

## III.

## CONCLUSION

For the foregoing reasons, the Debtor's Motion should be denied. The Federal Receiver also respectfully requests that this Court order the Debtor to comply with the Orders of the District Court and immediately turn over the $1,762,762.56 to the Federal Receiver. If this Court, however, is inclined to grant the TRO, it is requested to order the segregation of the Receivership Funds, enjoin the use or transfer thereof, or require their deposit with the Court. The Federal Receiver further requests all other appropriate relief in the premises.

Dated: September 25, 2007    DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _____
STEVEN J. SCHWARTZ
Attorneys for David R. Chase, Court-Appointed Receiver

314573.01 [XP]    24774