WILLIAM BLUMENTHAL
General Counsel

JOHN F. DALY
Deputy General Counsel - Litigation

JOHN ANDREW SINGER
Attorney - Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC  20580
Telephone:  (202) 326-3234
Facsimile:  (202) 326-2447
Email: jsinger@ftc.gov

MICHAEL MORA
JULIE MACK
Attorneys - Division of Enforcement
Bureau of Consumer Protection

ATTORNEYS FOR FEDERAL
TRADE COMMISSION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| THE BILLING RESOURCE d/b/a INTEGRETEL, ) | |
| ) | No. 5:07-CIV-5758-RMW |
| Debtor-Plaintiff-Appellee, ) | |
| ) | Date:  January 4, 2007 |
| v. ) | Time:  9:00 a.m. |
| ) | Place:  280 S. First Street |
| FEDERAL TRADE COMMISSION et al., ) | San Jose, CA |
| ) | Judge: Hon. Ronald M. Whyte |
| Defendant-Appellant. ) | Courtroom: 6 - 4th Floor |
| ) | |

On Appeal from the United States Bankruptcy Court for the Northern District
of California, No. 07-52890, Adversary Proceeding No. 07-5156 (Weissbrodt)

**DEFENDANT-APPELLANT FEDERAL TRADE COMMISSION'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR  STAY PENDING APPEAL OF THE
BANKRUPTCY COURT'S NOVEMBER 27, 2007, PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................... ii

N.D. CAL. L. R. 7-2(b) STATEMENT ..................................................................................... 1

STATEMENT OF ISSUE TO BE DECIDED ............................................................................. 1

INTRODUCTION ....................................................................................................................... 1

    STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ............................................................................................................................... 9

    I.      JURISDICTION ....................................................................................................... 9

    II.     STAY MOTION ....................................................................................................... 9

          A.     Standard for a Fed. R. Bankr. P. 8005 Injunction Pending Appeal ......... 10

          B.     Salient Factors ....................................................................................... 10

                 1.     The Commission is likely to succeed on the merits in
its appeal ................................................................................... 10

                        a.     The approximately $1.7 million in Reserve Funds
that form the basis for the enjoined contempt motion
are not part of Integretel's bankruptcy estate .................. 10

                        b.     Enjoining law enforcement actions is highly
disfavored as is enjoining contempt proceedings ........... 16

                        c.     Integretel is unlikely to be able to reorganize
successfully ................................................................... 18

                 2.     The Commission and the public will be irreparably harmed
absent a stay ............................................................................. 19

                 3.     Integretel will not be substantially harmed by a stay ................... 22

          C.     Analysis ................................................................................................... 25

CONCLUSION ........................................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*In re Brennan,*
 198 B.R. 445 (D.N.J.1996) ............................................................... 24

*CFTC v. Co-Petro Mrktng Group,*
 700 F.2d 1279 (9th Cir. 1983) ................................................... 14, 18

*In re Carousel International Corp.,*
 89 F.3d 359 (7th Cir. 1996) ......................................................... 15

*Compton Corp. v. Department of Energy,*
 90 B.R. 798 (N.D.Tex. 1988) ........................................................ 17

*Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora,*
 805 F.2d 440 (1st Cir. 1986) ........................................................ 17

*In re Dolen,*
 265 B.R. 471 (M.D. Fla. 2001) ...................................................... 16

*In re Dudley,*
 2006 WL 862932 (N.D. Cal. 2006) ................................................ 10

*EEOC v. Consolidated Freightways Corp. of Delaware,*
 312 B.R. 657 (W.D. Mo. 2004) ................................................ 24, 25

*EEOC v. Rath Packing Co.,*
 787 F.2d 318 (8th Cir. 1986) ........................................................ 23

*In re Emerald Casino, Inc.,*
 334 B.R. 378 (N.D. Ill. 2005) ....................................................... 23

*In re Excel Innovations, Inc.,*
 2007 WL 2555941 (9th Cir. 2007) ................................................. 9

*FTC v. Verity International, Ltd.,*
 443 F.3d 48 (2d Cir. 2006) ............................................................. 4

*In re First Alliance Mortgage Co. ("FAMCO"),*
 264 B.R. 634 (C.D. Cal. 2001) ..................................... 9, 16, 23, 24

*In re Gedeon,*
 31 B.R. 942 (Bankr. D. Colo. 1983) ............................................ 17

ii

*Gilchrist v. General Electric Capital Corp.,*
     262 F.3d 295 (4th Cir. 2001) ........................................................................ 14

*Guariglia v. Community National Bank & Trust Co.,*
     382 F. Supp. 758 (E.D.N.Y. 1974), *aff'd,* 516 F.2d 896 (2d Cir. 1975) ......................... 17

*In re Guild & Gallery Plus, Inc.,*
     72 F.3d 1171 (3d Cir. 1996) ........................................................................ 15

*Hawkins v. Risley,*
     984 F.2d 321 (9th Cir.1993) ........................................................................ 12

*Javens v. City of Hazel Park,*
     107 F.3d 359 (6th Cir. 1997) ........................................................................ 16

*Lands Council v. Martin,*
     479 F.3d 636 (9th Cir. 2007) ........................................................................ 10

*Lee v. Christian Coalition of America, Inc.,*
     160 F. Supp. 2d 14 (D.D.C. 2001) .................................................................. 23

*Luben Industrial v. United States,*
     707 F.2d 1037 (9th Cir. 1983) ...................................................................... 12

*Lynch v. Cal. Public Utility Commission,*
     2004 WL 793530 (N.D.Cal. 2004) *citing Universal Life Church, Inc. v. United States,*
     191 B.R. 433 (E.D. Cal. 1995) ...................................................................... 10

*In re Marini,*
     28 B.R. 262 (Bankr. E.D.N.Y. 1983) ............................................................... 17

*In re McGinley,*
     2002 WL 1205033 (Bankr. E.D. Pa. 2002) ....................................................... 11

*In re McMullen,*
     386 F.3d 320 (1st Cir. 2004) ........................................................................ 16

*In re Montana,*
     185 B.R. 650 (Bankr. S.D. Fla. 1995) ............................................................. 17

*NLRB v. Sawulski,*
     158 B.R. 971 (E.D. Mich. 1993) .................................................................... 17

*In Re One Times Square Associates Ltd Prtnrshp,*
     159 B.R. 695 (S.D.N.Y. 1994), *aff'd without op.,* 41 F.3d 1502 (2d Cir. 1994) ............. 17

*In the Matter of Oxford Mgmt, Inc.,*
    4 F.3d 1329 (5th Cir. 1993) ............................................................................ 17

*In re PMI-DVW Real Estate Holdings, LLP,*
    240 B.R. 24 (Bankr. D. Ariz. 1999) ............................................................. 17

*In re PTI Holding Corp.,*
    346 B.R. 820 (D. Nev. 2006) ......................................................................... 24

*In re Reynoso,*
    477 F.3d 1117 (9th Cir. 2007), *quoting Frank v. United Airlines, Inc.,*
    216 F.3d 845 (9th Cir. 2000) ......................................................................... 11

*Robi v. Five Platters, Inc.,*
    838 F.2d 318 (9th Cir.1988) ........................................................................... 12

*Rutherford Hospital, Inc. v. RNH Partnership,*
    168 F.3d 693 (4th Cir. 1999) ......................................................................... 15

*SEC v. Bilzerian,*
    131 F. Supp. 2d 10 (D.D.C. 2001) ............................................................... 20

*SEC v. Wolfson,*
    309 B.R. 612 (D. Ut. 2004) ..................................................................... 14, 17

*Salt Lake Tribune Public Co., LLC v. AT & T Corp.,*
    320 F.3d 1081 (10th Cir. 2003) ................................................................... 22

*Security People v. Medeco Security Locks,*
    59 F. Supp. 2d 1040 (N.D. Cal. 1999) ......................................................... 12

*In re Simon,*
    153 F.3d 991 (9th Cir. 1998) ......................................................................... 15

*Southwest Voter Registration Education Project v. Shelley,*
    344 F.3d 914 (9th Cir. 1998) ................................................................... 10, 25

*Syverson v. IBM,*
    472 F.3d 1072 (9th Cir. 2007) ..................................................................... 12

*TM Patents, LP v. IBM,*
    121 F. Supp. 2d 349 (S.D.N.Y. 2000) ......................................................... 15

*In re Thena, Inc.,*
    190 B.R. 407 (D. Or. 1995) ........................................................................... 15

iv

*In re Turner,*
    326 B.R. 563 (Bankr. W.D. Pa. 2005) ............................................................. 13

*U.S. Sprint Communications Co. v. Buscher,*
    89 B.R. 154 (D. Kan. 1988) ............................................................................ 17

*United States v. Sutton,*
    786 F.2d 1305 (5th Cir. 1986) ................................................................. 16, 17

*United States v. Whiting Pools, Inc.,*
    462 U.S. 198 (1983) ........................................................................................ 15

*Ventura County  Christian High School v. City of San Buenaventura,*
    233 F. Supp. 2d 1241 (C.D.Cal. 2002) .......................................................... 22

*citing In re Wymar,*
    5 B.R. 802 (9th Cir. 1980) .............................................................................. 10

*In re Yagenah,*
    2006 WL 1310447 (N.D. Cal. 2006) .............................................................. 10


**DOCKETED CASES**

*FTC v. Nationwide Connections, Inc.,*
    No. 06-CV-80180-Ryskamp/Vitunac (S.D. Fla.) .............................................. 1

*In re The Billing Resource d/b/a Integretel,*
    No. 07-52890 (Bankr. N.D. Cal.) ...................................................................... 5

*The Billing Resource dba Integretel v. David Chase and the Federal Trade Commission,*
    No. 07-AP-5156 (Bankr. N.D. Cal.) .................................................................. 5


**STATUTES**

Federal Trade Commission Act

    Section 5(a), 15 U.S.C. § 45(a) ........................................................................ 3

    Section 13(b), 15 U.S.C. § 53(b) ...................................................................... 3

11 U.S.C. § 105(a) .................................................................................................. 18

28 U.S.C. § 105(a) .................................................................................................... 5

v

28 U.S.C. § 158 ................................................................................................ 9

28 U.S.C. § 362(b)(4) ..................................................................................... 16

28 U.S.C. § 1291 ............................................................................................ 12

28 U.S.C. § 1334(e)(1) ........................................................................... 2, 12, 15

## RULES

Fed. R. Bankr. P. 8005 .................................................................................. 10

N.D. Cal. L.R. 6 ............................................................................................... 1

N.D. CAL. L. R. 7-2(b) ..................................................................................... 1

## LEGISLATIVE MATERIAL

H.R. Rep. No. 95-595 (1977),
   *reprinted in* 1978 U.S.C.C.A.N. 5963 ..................................................... 16

## MISCELLANEOUS

11A Wright, Miller & Kane,
   *Federal Practice & Procedure* § 2948.1 (2d ed. 1995) ............................... 23

Letter from Neal Goldfarb to Thomas K. Kahn (11th Cir. Clerk),
   Oct. 16, 2007 ............................................................................................. 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### N.D. CAL. L. R. 7-2(b) STATEMENT

Pursuant to N.D. Cal. L.R. 6, appellant-defendant the Federal Trade Commission (the "Commission" or "FTC") moves for expedited briefing, an accelerated hearing date of December 21, 2007, the same date this Court has set the hearing for its pending stay motion concerning the bankruptcy court's October 17, 2007, preliminary injunction and its change of venue motion. Due to the closely related nature of these motions, a single hearing on all three will result in significant judicial economy.

### STATEMENT OF ISSUE TO BE DECIDED

Whether to grant a stay, pending appeal, of the bankruptcy court's November 27, 2007, preliminary injunction order enjoining the Commission and a district court-appointed receiver from pursuing a contempt proceeding against debtor-plaintiff-appellee, The Billing Resource d/b/a Integretel, based upon Integretel's repeated refusal to turn over to the Receiver funds that, prior to Integretel's bankruptcy petition, the United States District Court for the Southern District of Florida held are the property of the receivership estate? The contempt proceeding is ancillary to a civil law enforcement action brought by the Commission against Integretel.

### INTRODUCTION

The November 27, 2007, preliminary injunction that the Commission seeks to stay pending appeal enjoins the Commission and a court-appointed receiver ("Receiver") from pursuing a contempt proceeding against debtor-plaintiff-appellee, The Billing Resource d/b/a Integretel ("Integretel"). The contempt proceeding is ancillary to a civil law enforcement action brought by the Commission, *FTC v. Nationwide Connections, Inc.*, No. 06-CV-80180-Ryskamp/Vitunac (S.D. Fla.) (the "Enforcement Action" in the "Florida District Court"). In the contempt proceeding, a September 14, 2007, Order

1

("September 14 Order") by the Florida District Court held that: (1) approximately $1.7 million (the "Reserve Funds") are the property of the receivership estate created in the Enforcement Action (and *not* Integretel); (2) Integretel should have turned the Reserve Funds over to the Receiver in March 2006 pursuant to the turnover provisions of a temporary restraining order (and subsequent injunctions) issued by the Florida District Court; and (3) Integretel was required, within ten days, to either turn over these funds to the Receiver or show cause why it should not be held in contempt.

Rather than comply with the September 14 Order, Integretel filed for bankruptcy on September 16, 2007, and, on September 19, 2007, filed the instant adversary proceeding. Despite the collateral estoppel effect of the Florida District Court's September 14 Order concerning the ownership of the Reserve Funds, and the limits of its jurisdiction under 28 U.S.C. § 1334(e)(1), the bankruptcy court issued its November 27, 2007, preliminary injunction enjoining the Commission and the Receiver from pursuing the contempt proceeding that would permit the Receiver to obtain direct control of the Reserve Funds. While the Reserve Funds are in a blocked account subject to further order of the bankruptcy court, this "protection" offers only cold comfort to the Commission and the Receiver since the Integretel may ask for the release and use of these funds at any time. Once the Reserve Funds are released to and disbursed by Integretel, the Commission and the Receiver will be irreparably harmed because the subject of the contempt proceedings, the Reserve Funds, will be gone. The disbursal of the funds will leave the Florida District Court unable to meaningfully vindicate its authority through contempt and Integretel will have successfully flaunted repeated orders of the Florida District Court.

## STATEMENT OF FACTS

The genesis of Integretel's September 16, 2007, bankruptcy petition began in February 2006, when the Commission commenced its Enforcement Action in the Southern District of Florida. An

2

understanding of aspects of the Enforcement Action as well as the bankruptcy proceeding are critical to understanding the basis for the Commission's motion.

The Commission commenced the Enforcement Action on February 27, 2006, pursuant to §§ 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b). (Federal Trade Commission Exhibit ("FTCX") 1 – Adversary Proceeding Docket Entry ("APDE") 25, Pt. 4, pp. 18-27 (Bates 00176-185)).[1] The complaint alleged that, *inter alia*, two former clients of Integretel, Enforcement Action defendants Access One and Network One, engaged in a massive telephone billing scam in which more than $30 million in phony collect call charges were "crammed" onto consumers' telephone bills. The Florida District Court entered an *ex parte* temporary restraining order ("TRO") (FTCX 2 – APDE 25, Pt. 3, pp. 21-31 (Bates 00125-155)), appointing David R. Chase, P.A. as the receiver (the "Receiver") over, *inter alia*, Access One and Network One. The receivership included "all assets of the Defendants as of the time this Order was entered" including funds "owned or controlled by any Defendant, in whole or in part, for the benefit of any Defendant." (*Id*. at 5-6: TRO ¶ II).

Upon service of the TRO, all entities holding assets of an Enforcement Action defendant (including Access One and Network One) were required to turn over to the Receiver "immediately upon service of this Order * * * or within such time period permitted by the Receiver * * * all assets of the Receivership Defendants" in their possession. (FTCX 2 at 15-16: TRO ¶ X). "[T]hird party billing agents" (such as Integretel) specifically were ordered to "cooperate with all reasonable requests of the FTC and the Receiver relating to the implementation of this Order, including the transfer of funds at the Receiver's direction." (FTCX 2 at 17: TRO ¶ XI). On March 6, 2006, in response to the TRO,

---

[1]Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

3

Kenneth Dawson, the president of Integretel, submitted to the Commission an unsworn statement claiming that "no amounts are currently due and owing" to defendants Access One and Network One. (FTCX 3 -- APDE 25, Pt. 3, pp. 32-33 (Bates 00157-158)). The receivership and turnover provisions were continued in a March 8, 2006, preliminary injunction (FTCX 4 – APDE 25, Pt. 5, pp. 34-57 (Bates 00255-278)), and a September 25, 2006, amended preliminary injunction (FTCX 5 – APDE 35, pp. 5-29 (Bates 0004-0028)).

On September 21, 2006, the Commission filed an amended complaint in the Enforcement Action adding Integretel as a defendant. (FTCX 6 – APDE 25, Pt. 4, pp. 5-17 (Bates 00163-175)).[2] Shortly thereafter, the Receiver learned that Integretel had been holding, as a reserve against claims by consumers duped by Access One and Network One, funds that were property of the receivership estate (the "Reserve Funds") and that should have been turned over to the Receiver in March 2006, after service of the TRO on Integretel. On October 16, 2006, after Integretel refused to turn over the Reserve Funds, the Receiver filed a motion in the Enforcement Action for an order to show cause why Integretel should not be held in contempt, due to its noncompliance with the turnover provisions of the Florida District Court's injunctive orders.

On September 14, 2007, the Florida District Court entered an Omnibus Order (FTCX 7 – APDE 35, pp. 31-41 (Bates 0029-39)) FD 610) (the "September 14 Order"). Of importance to this motion, this order granted the Receiver's motion for an order to show cause why Integretel should not

---

[2] Integretel has a history of involvement in similar schemes. In October 2000, the Commission sued Integretel for its role in a scheme that charged consumers for Internet pornography that they never purchased or authorized. Integretel agreed to a Stipulated Final Order by which it released all claims to the $1.6 million in consumer payments that it then held and transferred these monies to the Commission for consumer redress. *See FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006).

4

be held in contempt for not turning over the Reserve Funds. The September 14 Order (entered *prior* to Integretel's bankruptcy petition) held that the Reserve Funds are receivership property. (*Id.* at 8). They are receivership property because the Reserve Funds were held by Integretel on behalf of, or for the benefit of, defendants Access One and Network One and thus were "capture[d]" by the turnover provisions of the Florida District Court's injunctive orders in the Enforcement Action. (*Id.* at 3). Integretel was ordered to turn over the Reserve Funds (which amounted to approximately $1.7 million) to the Receiver within ten days or show cause why it should not be held in contempt for its refusal to do so. (*Id.* at 10).

In reaction, on September 16, 2007, Integretel filed a voluntary petition under Chapter 11 of Bankruptcy Code, *In re The Billing Resource d/b/a Integretel*, No. 07-52890 (Bankr. N.D. Cal.) (FTCX 8 – Bankruptcy Docket Entry ("BDE") 1), and the next day Integretel filed a Notice of Bankruptcy in the Enforcement Action claiming that all proceedings against it were automatically stayed.

On September 19, 2007, Integretel commenced an adversary proceeding, *The Billing Resource dba Integretel v. David Chase and the Federal Trade Commission*, No. 07-AP-5156. (FTCX 9 – BDE 27; APDE 1). Through that proceeding, Integretel sought, pursuant to 28 U.S.C. § 105(a), a temporary restraining order and preliminary injunction enjoining, *inter alia*, the Receiver and the Commission from pursuing the pending contempt proceeding against Integretel before the Florida District Court and using this proceeding to compel the turnover of the Reserve Funds to the Receiver as authorized by the September 14 and 21 Orders.

On September 20, 2007, the Florida District Court entered an order staying the proceedings before it as to Integretel. (FTCX 10 – ADPE 35, p. 43 (Bates 39)). The Commission filed an emergency motion for clarification, and, on September 21, 2007, the Florida District Court entered a

Clarification Order (the "September 21 Order") (FTCX 11 – ADPE 35, pp. 45-48 (Bates 41-44)).  The

September 21 Order (entered after Integretel's bankruptcy petition) reiterated the holdings of the pre-

petition September 14 Order about the ownership of the Reserve Funds and that the Reserve Funds are

the property of the receivership estate:

> Integretel was holding more than $1.35 million in reserve funds that belonged to two of the
> Nationwide defendants, Access One and Network One, in spite of several provisions of the
> Temporary Restraining Order in (sic) Preliminary Injunction requiring it to turn said funds over
> to the Receiver* * * *  *On Friday, September 14, 2007, this Court issued its Omnibus Order in
> which it ruled that the reserve funds are the property of the receivership estate* and ordered
> Integretel to pay the current reserve funds, amounting to $1,762,762.56, to the Receiver.

(*Id.* at 1) (emphasis added).  The Order concluded "that *the reserve funds are neither the property of*

*the 'bankruptcy estate' or Integretel.*"  (*Id.* at 4) (emphasis added).

On September 24, 2007, Integretel appealed the September 14 and 21 Orders to the Eleventh

Circuit.  That appeal was docketed as No. 07-14531-EE.  On October 10, 2007, Integretel filed an

emergency motion for a stay pending appeal regarding the contempt proceeding only.  On October 17,

2007, the Eleventh Circuit temporarily granted a stay, (FTCX 12 -- ADPE 35 , Exh. A, p. 4)).

On November 2, 2007, in its Memorandum Decision, the bankruptcy court declined to issue a

preliminary injunction concerning the contempt proceeding.  The bankruptcy court stated it was not

doing so only because it would be duplicative of the stay issued by the Eleventh Circuit.  (FTCX 13 –

ADPE 41 at 58:6-18).

On November 5, 2007, the Eleventh Circuit denied Integretel's motion for a stay pending appeal

and terminated its temporary stay. (FTCX 14 -- ADPE 52, pp. 3-5, (Bates 003-005)).  Within 3.5 hours

of this termination, the bankruptcy court, following a telephonic hearing at the request of Integretel,

orally issued a temporary restraining order enjoining the Receiver and the Commission from pursuing

6

the contempt proceeding.  The bankruptcy judge further enjoined the Receiver from providing any

status reports to the Florida District Court that appointed him unless Integretel joined in such reports.

No formal written order ever issued – only a minute order on the docket of the adversary proceeding

(FTCX 15 -- ADPE Nov. 4, 2007 (unnumbered)).

The bankruptcy court held a preliminary injunction hearing on November 16, 2007.  After

argument, the bankruptcy court requested that the parties stipulate to the continuation of the November

5, 2007, temporary restraining order through December 7, 2007.  All of the parties declined.  The

bankruptcy court then, on its own motion, extended the temporary restraining order through December

6, 2007.  On November 21, 2007, the bankruptcy court, in a telephonic conference, announced that

while it had prepared a draft preliminary injunction order, it was uneasy about entering the order

because it was very concerned about the fact that the Eleventh Circuit has the propriety of the

September 14 and 21 Orders (holding the Reserve Funds are receivership property) before it on appeal

and that the bankruptcy court issuing a preliminary injunction would, in effect, reach the exact opposite

conclusion on the same issue as had the Eleventh Circuit.  The bankruptcy court asked the parties to

reach an agreement that would obviate the need for the court to make a decision whether or not to issue

a preliminary injunction.  The parties could not reach an agreement and, given the late hour on

Thanksgiving Eve, consented to the bankruptcy court extending its temporary restraining order through

November 26, 2007.  (FTCX 16 -- ADPE Nov. 21, 2007 (unnumbered)).

On November 26, 2007, the bankruptcy court conducted another telephonic hearing.  Initially,

the court attempted to broker a deal that would obviate the need for the court to rule on Integretel's

motion.  When this effort failed, the bankruptcy court announced that it would "abstain," as a matter of

comity, from entering a preliminary injunction that would be in conflict with Florida District Court's

September 14 Order requiring that Integretel show cause why it should not be held in contempt or the Eleventh Circuit's November 5 Order. Rather, the bankruptcy court indicated it would not enjoin the Receiver or the Commission from pursuing the contempt proceeding before the Florida District Court, would permit the Reserve Funds (if ordered by the Florida District Court) to be transferred to the Receiver, but (if the Receiver gained possession of the funds) would enjoin the Receiver from disbursing these funds without the permission of the bankruptcy court. The court then read lengthy findings of fact and conclusions of law into the record and restated the limited nature of its intended preliminary injunction. After some brief comments by counsel, the court took a short recess of no more than ten minutes.

When the hearing resumed, the court effectively reversed itself. It announced that it would not permit the Reserve Funds to leave California. It requested the Commission either (1) to acknowledge that the freezing of the funds in California would preclude a contempt finding against Integretel in Florida (by giving it an "impossibility" defense), or (2) otherwise to commit voluntarily to not pursue the contempt action. The Commission disagreed with the premise that such an order would render compliance impossible, and declined to forego its rights to seek contempt in the Florida District Court. The court then announced it was orally entering a preliminary injunction, effective immediately, to continue the terms of the November 5 temporary restraining order, enjoining the Commission and the Receiver from pursuing the contempt proceeding or discussing the contempt proceeding with the Florida District Court other than through joint communications approved by Integretel. Finally, the court indicated it would reduce this oral ruling into a written order with terms substantially identical to its November 5 temporary restraining order.

On November 27, the bankruptcy court conducted another telephonic hearing which primarily

consisted of it reading into the record what appeared to be slightly revised findings of fact and conclusions of law. The court also indicated that it was considering entering a second "back up" injunction that would enjoin the Receiver from disbursing the Reserve Funds without permission of the bankruptcy court. The court indicated that this "back up" injunction would immediately come into effect and continue to enjoin the Commission and the Receiver if an appellate court should stay or overturn its November 27 preliminary injunction.

The November 27 preliminary injunction was announced orally and continues the terms of the November 5 temporary restraining order and remains in effect through March 14, 2008. It enjoins the Commission and Receiver from pursuing the contempt proceeding and directs that the Reserve Funds remain in a blocked account held by Integretel until this time. But, Integretel can move at any time to have these funds released for its use in its reorganization and, Integretel repeatedly has indicated that it will so move.

The Commission will file with this Court as soon as they are available the order that memorializes the oral November 27 preliminary injunction order to writing and copies of the November 26 and 27 hearing transcripts (expedited copies are on order).

**ARGUMENT**

**I.    JURISDICTION**

Pursuant to 28 U.S.C. § 158, this Court has jurisdiction over this appeal of the bankruptcy court's November 27, 2007, preliminary injunction order. *In re Excel Innovations, Inc.*, 2007 WL 2555941at *5 (9th Cir. 2007); *In re First Alliance Mortgage Co. ("FAMCO")*, 264 B.R. 634, 644 and nn.9 and 10 (C.D. Cal. 2001).

**II.    STAY MOTION**

9

1

**A.    Standard for a Fed. R. Bankr. P. 8005 Injunction Pending Appeal**[3]

2

3

To prevail in a motion for a stay pursuant to Fed. R. Bankr. P. 8005, an appellant must show:

4

(1) a likelihood of probable success on the merits and the possibility of irreparable injury; *or* (2) that

5

serious questions going to the merits are raised and the balance of the hardships tips sharply in its favor.

6

*Lands Council v. Martin*, 479 F.3d 636, 639 (9th Cir. 2007); *Southwest Voter Registration Education*

7

*Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 1998) (*en banc*); *In re Dudley*, 2006 WL 862932 at *2

8

(N.D. Cal. 2006). "This analysis creates a continuum: the less certain the district court is of the

9

likelihood of success on the merits, the more [the appellant] must convince the district court that the

10

public interest and balance of hardships tip in their favor." *Southwest Voter*, 344 F.3d at 917. This

11

Court also has enunciated an alternative stay standard: (1) the appellant is likely to succeed on the

12

merits of the appeal; (2) the appellant will suffer irreparable injury; (3) no substantial harm will come to

13

the appellee; and (4) the stay will do no harm to the public interest. *In re Yagenah*, 2006 WL 1310447

14

at *4 (N.D. Cal. 2006) *citing In re Wymar*, 5 B.R. 802, 806 (9th Cir. 1980); *Lynch v. Cal. Pub. Util.*

15

16

*Comm'n*, 2004 WL 793530 at *2 (N.D.Cal. 2004) *citing Universal Life Church, Inc. v. United States*,

17

191 B.R. 433, 444 (E.D. Cal. 1995).

18

**B.    Salient Factors**

19

20

**1.    The Commission is likely to succeed on the merits in its appeal**

21

**a.    The approximately $1.7 million in Reserve Funds that form the basis
for the enjoined contempt motion are not part of Integretel's
bankruptcy estate**

22

23

24

25

In its *pre-petition* September 14 Order the Florida District Court conclusively held that the

26

27

28

_____

[3]As a predicate to its stay motion, the Commission orally moved for and was denied a
stay pending appeal by the bankruptcy court.

Reserve Funds are part of the receivership estate and *not* the property of Integretel. In its post-petition September 21 Order, the Florida District Court reiterated the holdings of its September 14 Order. It also expressly held that, since its September 14 Order determined that the Reserve Funds are part of the receivership estate and not the property of Integretel, the Reserve Funds *cannot* be part of Integretel's bankruptcy estate. Based upon the these Orders, the principle of collateral estoppel should have bound the bankruptcy court to follow the findings of the Florida District Court that the Reserve Funds are outside of Integretel's bankruptcy estate. Collateral estoppel preclusively forecloses the "'relitigation of issues that have been actually and necessarily decided in earlier litigation.'" *In re Reynoso*, 477 F.3d 1117, 1122 (9th Cir. 2007), *quoting Frank v. United Airlines, Inc.,* 216 F.3d 845, 850 n. 4 (9th Cir. 2000). *See also In re McGinley*, 2002 WL 1205033 (Bankr. E.D. Pa. 2002) (applying collateral estoppel in a bankruptcy proceeding).

Collateral estoppel applies where three requirements are met: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom preclusion is asserted was a party in the first proceeding. *Reynoso*, 477 F.3d at 1122. Here, all three requirements are easily met.

*Identical issues*: For the purpose of this motion the key issue, initially in the Enforcement Action and then in the adversary proceeding, is: *who owns the Reserve Funds?* In its September 14 Order, *prior to Integretel's bankruptcy petition*, the Florida District Court expressly decided that the Reserve Funds are part of the receivership estate and are *not* the property of Integretel. The September 21 Order reiterated the holdings of the September 14 Order and, since it was decided post-petition, also made the obvious (and logically consistent) determination that the Reserve Funds cannot be part of Integretel's bankruptcy estate since they were not Integretel's property prior to the bankruptcy petition.

11

In the adversary proceeding, the bankruptcy court addressed precisely the same issue of who owns the Reserve Funds in order to determine if they were part of Integretel's bankruptcy estate. As discussed below, it ignored the collateral estoppel effect of the September 14 Order and the statutory mandate of 28 U.S.C. § 1334(a)(1), and reached the opposite conclusion.

*Final judgment on the merits*: Integretel itself contends that both the September 14 and 21 Orders are final orders on the merits. In its October 19, 2007, Response to Jurisdiction Questions by the Eleventh Circuit, Integretel asserted that the September 21 Order, "was a final order that is appealable under 28 U.S.C. § 1291." (FTCX 17 -- 11th Cir Docket (unnumbered) at 4-5). Similarly, the September 14 Order "is appealable under 28 U.S.C. §1291 as a final order" (*Id.* at 7-8).[4] Integretel further asserted that these Orders, "are intended to *finally* resolve the parties' rights." (*Id.* at 8) (emphasis added).[5]

*Identical party*: Integretel, the party against whom preclusion is asserted, is a party in the

---

[4]In its November 5, 2007, Order, the Eleventh Circuit, in directing the parties to file briefs concerning Integretel's appeals of both the September 14 and 21 Orders, said nothing that contradicted Integretel's position that they are final, appealable orders. (FTCX 14 - ADPE 52, pp. 3-5 (Bates 003-005). The pendency of the appeal of these Orders does not affect their collateral estoppel effect. *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir.1993); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir.1988).

[5]Even if the September 14 and 21 Orders are not "final" for appeal purposes, "to be 'final' for collateral estoppel purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291." *Luben Indus. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983). *See also Syverson v. IBM*, 472 F.3d 1072, 1077 (9th Cir. 2007); *Security People v. Medeco Security Locks*, 59 F. Supp. 2d 1040, 1045 (N.D. Cal. 1999). Finality in the collateral estoppel context means "little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Syverson*, 472 F.3d at 1079 (citation omitted). Here, Integretel fully briefed and participated in oral argument prior to the September 14 Order resolving the ownership of the Reserve Funds issue. The combination of the September 14 and 21 Orders makes clear that the Florida District Court "sees no really good reason for permitting [this issue] to be litigated again." The September 14 Order, therefore, has collateral estoppel effect.

12

Enforcement Action.

The bankruptcy court erred in failing to apply and be bound by the principle of collateral estoppel. *In re Turner*, 326 B.R. 563, 570 (Bankr. W.D. Pa. 2005) (a bankruptcy court cannot "ignore [the] existence and effect" of a prior order that finally adjudicated the identical legal issue). Rather, it chose to be guided by its "personal opinion," expressed at an October 17, 2007, hearing that the September 14 Order was "wrong." ("And I now have this district court order which you know, in my personal opinion is incorrect in that these appear to be funds that belong to the [bankruptcy] estate. But now what do I do with that?") (FTCX 18 – ADPE 40 at 20:17-20).[6] The bankruptcy court also appeared to be swayed by Integretel's assertion that it will be destroyed if it cannot make use of the funds by December 14, 2007. (FTCX 13 - ADPE 41 at 51). The bankruptcy court mischaracterized the September 14 Order as "at most, a money judgment determining [Integretel's] purported liability to the receiver" (FTCX 13- ADPE 41 at 46).[7] The bankruptcy court then permitted Integretel to relitigate the

---

[6]At the November 26 and 27 hearings, the bankruptcy court opined collateral estoppel is inapplicable here. It claimed the September 14 Order only addressed whether the Receiver had an "abstract" interest in "Reserve Funds" – it did not address the cash in Integretel's bank accounts. As discussed in this memo, *viz.* n.6 and accompanying text, this simply is wrong.

[7]This assertion is wrong for at least two reasons. First, the September 14 and 21 Orders enforcing the turnover provisions of Florida District Court's earlier injunctions are equitable orders intended to bring under the direct control of the Receiver funds that belong to the receivership estate, not orders to enforce a judgement. Second, the bankruptcy court improperly characterized the Reserve Funds as mere "commingled funds" with no definite *res*. (FTCX 13 - ADPE 41 at 8). In fact, as the Florida District Court found, (FTCX 7 -- APDE 35 at 3 (0031)), and the bankruptcy court conceded, (FTCX 13- ADPE 41 at 8), the amount of the Reserve Funds that are the property of the receivership is "tracked via an internal accounting entry" in Integretel's accounting system. The Florida District Court held that whether the Reserve Funds were maintained as an accounting entry on Integretel's books or in a separate bank account is "a distinction without a difference," (FTCX 7 - APDE 35, pp. 31-41 (0029-39)), because, either way, Integretel at all times maintained precise track of the amount of monies that constitute the Reserve Funds that are the property of the receivership estate.

13

issue of the ownership of the Reserve Funds, substituted its "personal opinion" for the conclusive determination of the September 14 Order,[8] and compounded this error by declaring that it has exclusive jurisdiction over the Reserve Funds. (FTCX 13 - ADPE 41 at 51:21-52:9).[9]

The bankruptcy court's analysis of the collateral estoppel effect of the September 14 Order and whether it even has jurisdiction over the Reserve Funds was precisely backwards. The first step of the correct analysis is: Did the pre-petition September 14 Order of Florida District Court conclusively determine that the Reserve Funds were the property of the receivership estate and not Integretel? As indicated above, the answer to this question is a resounding "yes." The second step of the correct analysis is: Given the preclusive effect of the September 14 Order, can the Reserve Funds still be a part of Integretel's bankruptcy estate? The answer to this question is an equally resounding "no." The answer to this question is readily derived from the express language of 28 U.S.C. § 1334(e)(2). This statute plainly states that a bankruptcy estate consists of "all *property of the debtor * * * as of the*

---

[8]The only court with jurisdiction to review the Florida District Court's September 14 and 21 Orders is the Eleventh Circuit and it will be doing so in Integretel's appeal. Though the bankruptcy court asserted it was not sitting in review of the Florida District Court (FTCX 13 - ADPE 41 at 48 n.24), by failing to apply collateral estoppel and, instead, substituting its own judgment for that of the Florida District Court, that is precisely what it did.

[9]Even if the bankruptcy court had not otherwise erred in the analysis, it erred in concluding that it had exclusive jurisdiction over the Reserve Funds post-petition. (FTCX 13 – APDE 41 at 39-43, 51). Its Memorandum Decision ignores cases such as *CFTC v. Co-Petro Mrktng Group*, 700 F.2d 1279, 1282 (9th Cir. 1983) and *SEC v. Wolfson*, 309 B.R. 612, 620 (D. Ut. 2004), which hold that a district court retains the jurisdiction (post-bankruptcy petition) to order that assets be turned over to a receiver where, pre-petition, the assets were found by the district court to be part of a district-court administered receivership. The single case the bankruptcy court cited in its November 2 memorandum decision for its claim of "exclusive jurisdiction," *Gilchrist v. General Elec. Capital Corp.*, 262 F.3d 295 (4th Cir. 2001), is inapposite. *Gilchrist* involved assets that indisputably were the property of Gilchrist that had, pre-bankruptcy, been placed under the control of a federal receiver at the request of GE Capital. In contrast, the Florida District Court, in both the September 14 and 21 Orders, held that the Reserve Funds are *not* the property of Integretel.

14

*commencement of such case*, and of property of the estate." *Id.* (emphasis added). Here, *prior* to

Integretel's bankruptcy petition, the September 14 Order conclusively determined that the Reserve

Funds are not Integretel's property but rather were the property of the receivership. Since the Florida

District Court's determination preceded Integretel's September 16 bankruptcy petition, these funds

were not "the property of [Integretel] as of the commencement of" its bankruptcy proceeding and,

therefore, not the property of Integretel's bankruptcy estate.

   By ignoring the preclusive effect of the September 14 Order and the clear statutory mandate of

§ 1334(e)(2), the bankruptcy court erred by improperly extending its limited jurisdiction to property

(the Reserve Funds) that is not the debtor's property, *In re Simon*, 153 F.3d 991, 996 (9th Cir. 1998).

"The filing of a bankruptcy case does not, and cannot, give a debtor * * * greater rights in property than

the debtor had prior to bankruptcy" and a bankruptcy court's jurisdiction "does not extend to property

that is not part of a debtor's estate." *TM Patents, LP v. IBM*, 121 F. Supp. 2d 349, 361 (S.D.N.Y. 2000).

*See also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983) ("Congress plainly

excluded [from bankruptcy estates the] property of others held by the debtor in trust at the time of the

filing of the petition."); *Rutherford Hosp., Inc. v. RNH Partnership*, 168 F.3d 693, 699 (4th Cir. 1999)

(a bankruptcy estate consists only of "those interests that the debtor had in property prior to

commencement of the bankruptcy case"); *In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996)

(a bankruptcy estate "is necessarily limited to the property owned by the debtor at the commencement

of the bankruptcy"); *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1179 (3d Cir. 1996); *In re Thena,

Inc.*, 190 B.R. 407, 412 (D. Or. 1995) ("Chapter 11 does not permit the estate's inclusion of property

which did not exist, at the time of filing, for the debtor's beneficial, equitable use * * * * Chapter 11

protect[s], rather than enhance[s], the debtor's estate."). While the bankruptcy court is within its rights

15

to facilitate Integretel's efforts to reorganize within the confines of its jurisdiction, § 1334(e)(1) clearly prohibits it from doing so by providing Integretel with the use of the Reserve Funds that are *not* part of its bankruptcy estate. *See United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) (bankruptcy courts do not have "a roving commission to do equity").

> **b.** **Enjoining law enforcement actions is highly disfavored as is enjoining contempt proceedings**

The enjoined contempt proceeding is ancillary to the Commission's underlying Enforcement Action, since its purpose is to enforce the turnover provisions of Florida District Court's injunctions issued in the Enforcement Action. Congress specifically recognized the vital nature of the Commission's consumer protection work through its enactment of the 28 U.S.C. § 362(b)(4) exemption for law enforcement actions from the otherwise automatic bankruptcy stay. The legislative history of this provision indicates a clear Congressional intent that consumer protection law enforcement actions should especially not be hampered by a defendant's filing for bankruptcy. H.R. Rep. No. 95-595, at 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299; *In re McMullen*, 386 F.3d 320, 324-25 (1st Cir. 2004) (exemption intended to discourage debtors from filing for bankruptcy "either primarily or solely" to evade a law enforcement action which would "seriously threaten the public safety and welfare" such as a consumer protection action); *In re Dolen*, 265 B.R. 471, 481 (M.D. Fla. 2001); *FAMCO*, 264 B.R. at 645-51. This undoubtedly is why courts have found that a § 105 injunction against proceedings relating to a law enforcement action is appropriate only in exceptional circumstances. *E.g., Javens v. City of Hazel Park*, 107 F.3d 359, 366 (6th Cir. 1997) (§ 105 can be used to enjoin "enforcement of local regulation which is shown to be used in bad faith"); *In Re One Times Square Assocs Ltd Prtnrshp*, 159 B.R. 695, (S.D.N.Y. 1994), *aff'd without op.*, 41 F.3d 1502 (2d

16

Cir. 1994) ("§ 105 should be used sparingly and then only to supplement the Bankruptcy Code, not

supplant the Code"); *In the Matter of Oxford Mgmt, Inc.*, 4 F.3d 1329, 1335 (5th Cir. 1993) ("The

powers granted by" §105 "must be exercised in a manner that is consistent with the Bankruptcy Code");

*Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora*, 805 F.2d 440, 449 n. 14 (1st Cir.

1986) (proceedings that are exempt from the automatic stay pursuant to §362(b)(4) may be enjoined

only in "exceptional circumstances"); *Sutton*, 786 F.2d at 1308 (§ 105 "does not authorize the

bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or

constitute a roving commission to do equity"); *In re PMI-DVW Real Estate Holdings, LLP,* 240 B.R.

24, 32 (Bankr. D. Ariz. 1999) (§ 105 can be used to enjoin "bad faith" law enforcement actions);

*Compton Corp. v. Department of Energy*, 90 B.R. 798, 807 (N.D.Tex. 1988).

Similar to the special priority that Congress provided for consumer protection law enforcement

actions, courts repeatedly hold that the importance of their being able to "uphold their dignity"

mandates that contempt proceedings must not be forestalled by a contumacious party's filing for

bankruptcy. *E.g. Wolfson*, 309 B.R. at 620; *U.S. Sprint Communications Co. v. Buscher*, 89 B.R. 154,

157 (D. Kan. 1988); *Guariglia v. Community Nat'l Bank & Trust Co.*, 382 F. Supp. 758, 761 (E.D.N.Y.

1974), *aff'd,* 516 F.2d 896 (2d Cir. 1975) (decided under the former Bankruptcy Act of 1898); *In re

Montana*, 185 B.R. 650, 652 (Bankr. S.D. Fla. 1995); *NLRB v. Sawulski*, 158 B.R. 971, 975 (E.D.

Mich. 1993); *In re Gedeon*, 31 B.R. 942, 946 (Bankr. D. Colo. 1983); *In re Marini*, 28 B.R. 262, 265

(Bankr. E.D.N.Y. 1983).

Here, Integretel does not face an exceptional circumstance. Rather, it is in the same situation as

every other debtor that is attempting to reorganize under the bankruptcy code while simultaneously

defending contumacious behavior in a law enforcement action. While it unquestionably would be

easier for Integretel if it could avoid the expense and distraction of defending against the contempt proceeding, courts repeatedly have held that this is not a sufficient basis for enjoining proceedings related to a law enforcement action. Indeed, if a debtor such as Integretel routinely could escape or even delay the effects of pending law enforcement action (or related contumacious behavior) through the simple act of filing for bankruptcy, defendants in countless law enforcement actions would attempt to do so. This would turn bankruptcy into little more than a vehicle for vitiating the specific intent of Congress that defendants should not be able to avoid or delay consumer protection law enforcement actions. Equally, it would permit a debtor to avoid or delay the consequences for its contumacious acts, thereby defiling the dignity of the court whose orders the debtor uses bankruptcy to avoid. To the contrary, the Ninth Circuit unambiguously teaches that bankruptcy is not to be "a haven for wrongdoers." *CFTC v. Co-Petro Mrktng Group*, 700 F.2d 1279, 1283 (9th Cir. 1983).

### c.    Integretel is unlikely to be able to reorganize successfully

When a debtor seeks a preliminary injunction under 11 U.S.C. § 105(a), a court must consider whether the debtor demonstrates a reasonable likelihood of a successful reorganization. *Excel Innovations*, 2007 WL 2555941 at *6-*7. A stay is further justified here because the bankruptcy court erred in finding that Integretel met this standard. In support of its conclusion, the court found: (1) the creditors of Integretel view it as a viable business through their agreements to permit Integretel to use its cash collateral for routine operations (FTCX 13 – ADPE 41 at 20:13-16); (2) the continued forwarding, "for the most part," of funds to Integretel from the local telephone companies whose consumers Integretel billed (*Id*. at 20:17-27); (3) a change in Integretel's disbursements to customers, with the support of its creditors, that allows a 50% payment to customers up front rather than having them held for 90 days as reserves against consumer claims (*Id*. at 20:18-22); (4) a projected positive

18

cash flow over the next six months (*Id.* at 21:14); and (5) that Integretel likely will be able to raise significant funds for use towards reorganization from the sale of its 97%-owned subsidiary, PaymentOne (*Id.* at 21:1-4).

The bankruptcy court's analysis was fundamentally flawed because: (1) the creditors only approved the use of cash collateral by Integretel after obtaining liens on other assets of Integretel; (2) Integretel's creditors have taken the unusual step of keeping Integretel on a short cash collateral leash, approving Integretel's use of its cash collateral only in two or three week long increments – the creditors clearly lack the confidence to approve a permanent cash collateral order which would permit Integretel to use its remaining cash without strict supervision by the creditors; (3) Integretel's overall projected "positive cash flow" may not be realistic given that Integretel is paying out more monies than ever before through its unprecedented and untested elimination of reserves for consumer claims; (4) the bankruptcy court overstated the import of Integretel's creditors' continuing to do business with it post-petition – it is to a creditor's advantage to continue to do business with a debtor because post-petition payments to the creditor receive priority treatment as administrative claims; and (5) no firm buyer for Integretel's PaymentOne subsidiary has materialized post-petition and the Commission's understanding is that PaymentOne was up for sale long before Integretel filed for bankruptcy.

### 2. The Commission and the public will be irreparably harmed absent a stay

The Commission and the public will be irreparably harmed absent a stay. If a stay is not granted, Integretel's using bankruptcy to avoid liability for its contumacious behavior sets a dangerous precedent that becomes a road map for defendants in future Commission enforcement actions. This harm is compounded if (as appears likely) the bankruptcy court releases the Reserve Funds for disbursement by Integretel in its reorganization efforts. Then, not only will Integretel have avoided any

19

liability for its contumacious behavior, it actually will benefit from it by obtaining the use of $1.7 million that the Florida District Court specifically determined is the property of the receivership and *not* Integretel or its bankruptcy estate.

The public, in the form of the millions of consumers duped by the defendants' scam, also is harmed absent a stay since the November 27 preliminary injunction prevents the Receiver and the Commission from pursuing control of the Reserve Funds and thereby preserving these illegally-derived monies as a possible source of consumer redress.

A stay also will permit the Florida District court to vindicate its authority and enforce, through contempt proceedings, the receivership property turnover orders that have been pending since March 2006 and which Integretel has flagrantly ignored. *SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.D.C. 2001). In *Bilzerian*, the defendant Bilzerian (as has Integretel here) had "not even minimally complied with the Court's" prior orders. The court found that Congress could not have intended to "permit a party to blatantly violate direct orders of a court and then seek shelter" through a bankruptcy stay and held that a "court must retain the ability to compel compliance with its orders," and bankruptcy is not a "free [pass] to run rampant in flagrant disregard to the powers of the court." *Id.* at 15. Though *Bilzerian* was addressing the § 362(b)(4) exemption, its conclusions concerning Congress' intent with regard to the effect of bankruptcy on law enforcement actions is equally applicable to § 105.

The November 27, 2007, preliminary injunction also harms the public interest by improperly intruding on the relationship between the Florida District Court and its Receiver. The order *prohibits* the Receiver from giving status reports to the Florida District Court unless Integretel joins in the report. The bankruptcy court thereby effectively gave Integretel absolute control over communications between the Florida District Court and its appointed Receiver.

The Commission and the public also are harmed by Integretel's (thus far successful) efforts to game the legal system concerning the contempt proceeding by pitting the bankruptcy court against the Florida District Court and the Eleventh Circuit. The key example is the directly conflicting orders concerning the contempt proceeding from the Eleventh Circuit and the final version of the preliminary injunction by the bankruptcy court. The Eleventh Circuit, on November 5, 2007, denied Integretel's motion for a stay pending appeal of the September 14 and 21 Orders, which permitted the Receiver and the Commission to pursue the Receiver's contempt proceeding against Integretel in the Enforcement Action. But, within 3.5 hours of the Eleventh Circuit's denial of Integretel's stay motion, the bankruptcy court, at the request of Integretel, conducted an emergency telephonic hearing and entered a temporary restraining order enjoining the Receiver and the Commission from doing precisely what the Eleventh Circuit had just hours earlier held they could do. This temporary restraining order was followed by the November 27, 2007, preliminary injunction on appeal. Only the issuance of the Commission's requested stay pending appeal will avoid the current anomalous situation of a single bankruptcy judge effectively reversing the decision of a unanimous panel of the Eleventh Circuit.

Integretel has further gamed the judicial system concerning the contempt proceeding by making fundamentally inconsistent representations to the Eleventh Circuit and the bankruptcy court. Trying to obtain a stay from the Eleventh Circuit, Integretel stated that a stay from the Eleventh Circuit would maintain the status quo, specifically, "The status quo is that enforcement of the [September 14] Order is stayed and that Integretel still *holds* the disputed [reserve] funds." (FTCX 19 – ADPE 35, pp. 54-56; App. A, pp. 1-2 (Bates 0048-52) (Oct. 16, 2007, Letter from Neal Goldfarb to Thomas K. Kahn (11th Cir. Clerk) at 4) (emphasis added)). In direct contradiction of this representation to the Eleventh Circuit, Integrel told the bankruptcy court on October 30, 2007, that, "The status quo is and was

21

Debtor's *possession* and *use* of all of its money and nothing the Debtor said to the Eleventh Circuit is inconsistent with the Debtor using its money." (FTCX 20 – BDE 211 at 7) (emphasis added). Both the Commission and the public are harmed by Integretel's being permitted to obtain judicial relief by making fundamentally inconsistent representations to different courts. Only a stay permitting the contempt proceeding to go forward will prevent Integretel from benefitting from its misrepresentations.

### 3.   Integretel will not be substantially harmed by a stay

If the Commission's stay motion is granted, the contempt proceeding can go forward. If, at, and, at the end of the proceeding, as Integretel rightfully fears, it is compelled to turn over the $1.7 million of Reserve Funds to the Receiver or be penalized for contempt, the Florida District Court is doing no more than vindicating its authority by enforcing its prior orders. This result would create no irreparable harm to Integretel because any resulting financial predicament (including Integretel's failure in its reorganization attempt) is wholly self-inflicted. Integretel was served with the TRO including the turnover order in March 2006 and has faced the Receiver's contempt motion since October 2006. Integretel, therefore, has had 21 months to get its affairs in order and to plan for the turnover of the Reserve Funds to the Receiver. Integretel had ample opportunity to seek clarification from the Florida District Court concerning the Reserve Funds or, e.g., to secure a letter of credit, borrowed money from an affiliate, cut costs, or put away money into savings. Instead, Integretel chose to do nothing other than to ignore the turnover order. Integretel cannot now legitimately be heard to complain about a problem that it caused for itself. *See Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ("We will not consider a self-inflicted harm to be irreparable."); *Ventura County Christian High School v. City of San Buenaventura*, 233 F.Supp.2d 1241 (C.D.Cal. 2002) (plaintiffs faced no irreparable harm because their "financial peril is due in part to their own failure to obtain a

judicial determination of their rights and obligations at some earlier point in time."); *Lee v. Christian Coalition of America, Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001); 11A Wright, Miller & Kane, *Federal Practice & Procedure* § 2948.1, at 152-53 (2d ed. 1995)).

The contempt proceeding itself also presents no irreparable harm to Integretel in terms of litigation costs or diversion of employee attention from reorganization. Litigation costs generally are not an irreparable harm that would prevent the entry of a stay. "If litigation costs constituted a sufficient threat to the estate's assets to justify an injunction, the regulatory and police powers exception to the automatic stay would be, for all practical purposes, a nullity." *EEOC v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1986); *FAMCO*, 264 B.R. at 656. *See also In re Emerald Casino, Inc.*, 334 B.R. 378, 390 (N.D. Ill. 2005) (since Congress gave an express priority to law enforcement actions through the enactment of § 362(b)(4), a law enforcement proceeding should not be stayed under § 105 even if going forward would deplete the debtor's assets). Though decided in the context of the law enforcement exemption from the otherwise automatic bankruptcy stay, *FAMCO* teaches that the purpose of repose from litigation provided by bankruptcy with regard to law enforcement actions "is to stop actual collection or foreclosure efforts, not the determination of liability, and to assure that similarly situated creditors are treated fairly." 264 B.R. at 654. Here, the contempt proceeding is an equitable proceeding designed to bring under the direct control of the Receiver funds that belong to the Receivership estate, not an action to enforce a judgment. To the extent Integretel's purported litigation costs are a factor to be considered, they are not supported by evidence sufficient to create a colorable a claim of substantial harm. The evidence before the bankruptcy court concerning Integretel's purported costs regarding the contempt proceeding consists of a *single* paragraph, that initially states, "Proceedings relating to [the contempt proceeding would be] fees and expenses in the range of $50,000

to $150,000," and then opines that the fees actually could be higher. (FTCX 21 – APDE 6 - Att. 3, ¶ 8).

With a 300 percent swing in the stated estimate, not to mention an even wider swing with the claimed

possibility of higher fees, this projection cannot represent anything more than an off-the-cuff guess.

The declaration's failure to provide even a shred of detail as to how this wide-ranging estimate was

derived fully supports this conclusion. *FAMCO* directs that a conclusory declaration by counsel of

projected litigation costs, such as the one submitted by Integretel, does *not* suffice to create possible

substantial harm to a debtor. 264 B.R. at 656. Thus, the costs of defending the contempt proceeding is

not a substantial harm for Integretel.

Nor does Integretel's relatively small staff size create an irreparable harm for Integretel if a stay

is granted and the contempt proceeding goes forward. *In re Brennan*, 198 B.R. 445, 451 (D.N.J.1996)

(debtor's lack of repose from a regulatory proceeding does not constitute a serious conflict between the

regulatory action and the bankruptcy process and a bankruptcy court abused its discretion by granting a

§ 105 stay in order to prevent the distraction of the regulatory action).    Integretel has 37 employees.

(FTCX 22 -- ADPE 6, Attch. 4 at ¶ 9). This is an experienced staff with 22 employees having at least

five years experience with Integretel and 13 employees having at least ten years. *Id.* In a situation of a

debtor with an even smaller staff (24 people), a district court vacated a bankruptcy court injunction and

required the debtor to continue its defense of a large governmental discrimination law enforcement

action while going through reorganization. *EEOC v. Consolidated Freightways Corp. of Delaware*,

312 B.R. 657 (W.D. Mo. 2004); *cf. In re PTI Holding Corp.*, 346 B.R. 820 (D. Nev. 2006) (injunction

issued where debtor had only two principals). As the court observed in *Consolidated Freightways,*

though the burden of bankruptcy "is a mighty chore, fortunately it is not one that Consolidated

Freightways employees [we]re bearing alone" since it had the considerable assistance of competent

24

counsel. 312 B.R. at 661. Equally true here, Integretel's staff has competent counsel and a

reorganization consultant helping it bear the burden of both defending the Enforcement Action and

orchestrating its attempt at reorganization. Moreover, given that the contempt proceeding is focused in

scope, the distraction of Integretel's employees from reorganization appears minimal at most, certainly

in comparison to the distraction stemming from the substantial discrimination claim faced by a smaller

company in *Consolidated Freightways.*

### C.    Analysis

On the continuum referred to in *Southwestern Voter*, 344 F.3d at 917, the balance weighs

heavily in favor of granting a stay pending appeal. The Commission is likely to prevail on appeal -- the

bankruptcy court failed to follow the preclusive determination of the ownership of the Reserve Funds

set out in the September 14 and 21 Orders of the Florida District Court and then compounded its error

by impermissibly expanding its jurisdiction to include these funds. Also, injunctive relief under § 105

may be granted only in exceptional circumstances. Here, there is nothing exceptional about Integretel's

circumstances -- it faces the same situation and difficulties as any debtor that is seeking to reorganize

while also defending a contempt proceeding arising out of a law enforcement action. Beyond these

factors, the Commission readily demonstrates that the balance of hardships and public interest weigh

heavily in favor of granting a stay pending appeal and permitting the Commission and the Receiver to

pursue the contempt proceeding against Integretel without delay.

### CONCLUSION

For these reasons set out above, the Commission's motion for a stay pending appeal should be

granted.

Respectfully submitted,

WILLIAM BLUMENTHAL
General Counsel

JOHN F. DALY
Deputy General Counsel - Litigation

JOHN ANDREW SINGER
Attorney - Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC  20580
Telephone:  (202) 326-3234
Facsimile:  (202) 326-2447
Email: jsinger@ftc.gov

MICHAEL MORA
JULIE MACK
Attorneys - Division of Enforcement
Bureau of Consumer Protection

ATTORNEYS FOR FEDERAL TRADE COMMISSION