UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 06-16635-EE |
| | ) | No. 07-14531-E |
| NATIONWIDE CONNECTIONS, | ) | |
| INC. et al., | ) | |
| | ) | |
| *Defendants,* | ) | |
| | ) | |
| THE BILLING RESOURCE d/b/a | ) | |
| INTEGRETEL, | ) | |
| | ) | |
| *Appellant.* | ) | |

**Appellant's Response
to Jurisdictional Questions**

Laurie Webb Daniel (GA Bar # 204225)
Cynthia G. Burnside (GA Bar # 097107)
Holland & Knight LLP
1201 West Peachtree Street, NE
One Atlantic Center, Suite 2000
Atlanta GA 30309
(404) 817-8500

Neal Goldfarb (DC Bar # 337881)
Richard H. Gordin (DC Bar # 727925)
Tighe Patton Armstrong Teasdale PLLC
1747 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
(202) 454-2800

*Attorneys for Appellant/Movant
The Billing Resource dba Integretel*

No. 06-16635-EE
No. 07-14531-E
*Federal Trade Commission v. Nationwide Connections, et al.*

**Certificate of Interested Parties
and Corporate Disclosure Statement**

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for appellant The Billing Resource d/b/a Integretel certifies that to the best of his knowledge, the following is a complete list of trial judges, attorneys, persons, associations of persons, firms or partnerships or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. 411TXT, Inc. (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

2. Access One Communications, Inc. (defendant)

3. ACI Billing Services, Inc. d/b/a OAN (defendant)

4. Ahrens, Michael (counsel for The Billing Resource d/b/a Integretel)

5. Alexander, Martin J. (counsel for The Billing Resource d/b/a Integretel)

6. Alitowski, Andrew (counsel for receivership defendants Grunspan et al.)

7. Americredit Financial Services, Inc. (third-party creditor of defendant Willoughby Farr)

*Federal Trade Commission v. Nationwide Connections, Inc.*
Nos. 06-16635-EE & 07-14531-E

8.  Anhalt, Irwin, Trustee of the Irwin Anhalt Trust (receivership defendant)

9.  Arnold, Risa (receivership defendant)

10. Austin, Michael Garrett (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

11. Barnett Bolt Kirkwood & Long (counsel for BMW Financial Services)

12. Berg, Andrew (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

13. BHD/WEB, LLC (third-party creditor of receivership defendants)

14. Billing Concepts, Inc. (defendant)

15. The Billing Resource d/b/a Integretel (defendant/appellant)

16. Bloch, Bruce

17. Blumenthal, William (counsel for plaintiff)

18. BMW Financial Services (third-party creditor of certain defendants and/or affiliated entities)

19. Brady, Rosanne (counsel for crossclaim defendant/third-party defendant Ronny Morillo)

20. BSG Clearing Solutions North America, LLC (defendant)

21. Built to Last, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

22. CELL-INFO-USA, Inc. (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

23. Chapman, John

24. Chase, David (Receiver for defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, and Willoughby Farr, and for affiliated entities)

25. China Cat Sunflower, LLC(entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

26. Cohen Norris Scherer Weinberger & Wolmer (counsel for Denise McCann))

27. Coleman, Ira (receivership defendant)

28. Coleman, Jill (receivership defendant)

29. Cripple Creek Holdings, LLC(entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

30. Danning, Gill, Diamond & Kollitz

*Federal Trade Commission v. Nationwide Connections, Inc.*
Nos. 06-16635-EE & 07-14531-E

31. Davis Cedillo & Mendoza Inc (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

32. Davis, Michael (counsel for plaintiff)

33. Dean, Chad A. (counsel for Primus Automotive Financial Services and Ford Motor Co. Credit Co.)

34. Devine Goodman Pallet & Wells, PA (Counsel for Second Churchill Way, LLC)

35. Dinan, Kevin (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

36. Dunkel, Gary M. (Counsel for BHD/WEB, LLC)

37. Enhanced Billing Services, Inc. (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

38. Farr , Mary Lou (defendant)

39. Farr, Willoughby (defendant)

40. Federal Trade Commission (plaintiff/appellee)

41. Fialco, Lisa (counsel for plaintiff)

42. First Churchill Way, LLC (third-party creditor of certain defendants and/or affiliated entities)

43. Fitzsimmons, Robert V. (counsel for Americredit Financial Services, Inc.)

44. Flaxman, Charles, Trustee of the Flaxman and Lopez Profit Sharing Trust (receivership defendant)

45. Ford Motor Co. Credit Co. (third-party creditor of certain defendants and/or affiliated entities)

46. Freeman, Geraldine (counsel for The Billing Resource d/b/a Integretel)

47. Garcia, Yaret (defendant)

48. Goldfarb, Neal (counsel for The Billing Resource d/b/a Integretel)

49. Gomez, John (receivership defendant)

50. Gomez, Peter (receivership defendant)

51. Gomez, Tonya (receivership defendant)

52. Gordin, Richard H. (counsel for The Billing Resource d/b/a Integretel)

53. Greenberg Traurig (counsel for BHD/WEB, LLC)

54. Grunspan, Alan, Trustee of the Aron Grunspan Revocable Trust (receivership defendant)

55. Guerard, Collot (counsel for plaintiff)

56. Hartog, Ross R. (counsel for First Churchill Way, LLC)

57. Hawkins, Scott G. (former counsel for defendants Mary Lou Farr and Willoughby Farr)

58. He's Gone, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary

Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

59. Holland & Knight, LLP (counsel for The Billing Resource d/b/a Integretel)

60. Hume & Johnson

61. Information Services 900, L.L.C. (majority-owned subsidiary of The Billing Resource d/b/a Integretel)

62. Inmate Calling Solutions, L.L.C. (majority-owned subsidiary of The Billing Resource d/b/a Integretel)

63. Jackman, Steve (receivership defendant)

64. Smith, John J.

65. Johnson, Henry

66. Johnson, Mark Douglas (counsel for Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

67. Jones, Foster, Johnston & Stubbs, P.A. (former counsel for Mary Lou Farr and Willoughby Farr)

68. JP Morgan Chase Bank, N.A.

69. Katz, Ori (counsel for The Billing Resource dba Integretel)

70. Kerst, Marilyn (counsel for plaintiff)

71. Kim, Laura (counsel for plaintiff)

72. King & Spalding, LLP (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

73. Kollitz, Howard

74. Kubicki Draper (counsel for Americredit Financial Services, Inc.)

75. Lancellotta, Steven A. (counsel for The Billing Resource d/b/a Integretel)

76. Law Offices of Peter N. Macaluso (counsel for crossclaim defendant/third party defendant Ronny Morillo)

77. Lazy River Road Holdings, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

78. Levitats, Carole (receivership defendant)

79. Leopold. Theodore

80. Long, Thomas G. (counsel for BMW Financial Services)

81. Macaluso, Peter (counsel for crossclaim defendant/third arty defendant Ronny Morillo)

82. Maccoby, Max (counsel for defendant/appellant The Billing Resource dba Integretel

83. Markowitz, Jerry M. (counsel for First Churchill Way, LLC)

84. Markowitz, Davis, Ringel & Trusty (counsel for First Churchill Way, LLC)

85. Massington, Carole (receivership defendant)

86. Massington, Richard (receivership defendant)

87. McCann, Denise (third-party creditor of certain defendants and/or affiliated entities)

88. McDermott, Will & Emery, LLP (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

89. McDonough, Michael (counsel for crossclaim defendants/third party defendants German Miranda and Jesus Sandoval)

90. McKewen, Richard (counsel for plaintiff)

91. Medoza, Jessy (crossclaim defendant/third party defendant)

92. Mercantile Bank

93. Miranda, German (crossclaim defendant/third party defendant)

94. Mora, Michael (counsel for plaintiff)

95. Morillo, Ronny (crossclaim defendant/third party defendant)

96. Mortgage X, LLC (receivership defendant)

97. Nationwide Connections, Inc. (defendant)

98. Network One Services, Inc. (defendant)

99. Newman, Scott B. (counsel for The Billing Resource d/b/a Integretel)

100. Norton Hammersley Lopez & Skakos

101. Not Fade Away, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika

Riaboukha)

102.    Oetzell, Walter (counsel for David Chase, receiver)

103.    Payment One Corporation (majority-owned subsidiary of The Billing Resource d/b/a Integretel)

104.    Ponsford, Terence (counsel for The Billing Resource dba Integretel)

105.    Primus Automotive Financial Services (third-party creditor of certain defendants and/or affiliated entities)

106.    Qaid, Kaadir (defendant)

107.    Rehfeld, Jeffrey (counsel for The Billing Resource d/b/a Integretel)

108.    Riaboukha, Erika (defendant)

109.    Rengstl, Patrick (counsel for David Chase, receiver)

110.    Leopold, Ricci

111.    Rodgers, Derick (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

112.    Royal Bank of Canada (owner of more than 10% of stock in The Billing Resource d/b/a Integretel)

113.    Ryskamp, Hon. Kenneth L. (district-court judge)

114.    Sacks, Steven (counsel for The Billing Resource dba Integretel)

115.    Jesus Sandoval (crossclaim defendant/third party defendant)

116.    Sapurstein & Block PA

117.    Schneider, Jeffrey (counsel for David Chase, receiver)

118.    Schochinski, Robert  (counsel for plaintiff)

119.    Schuyler Stewart Smith The Creditors Rights Law Firm of Florida, P.A. (counsel for Primus Automotive Financial Services and Ford Motor Co. Credit Co.)

120.    Schwartz, Steven

121.    Second Churchill Way, LLC (third-party creditor of certain defendants and/or affiliated entities)

122.    Segal Family Partners Ltd. (receivership defendant)

123.    Schwartz, Joanna  (receivership defendant)

124.    Schwartz, Scott (receivership defendant)

125.    Sheppard Mullin Richter & Hampton (counsel for The Billing Resource d/b/a Integretel)

126.    Siff, Steven E. (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

127.    Tapie, Carolyn (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

128.    Tew Cardenas LLP (counsel for the Receiver)

129.    The Other One, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika

Riaboukha)

130.    Thomas, John-David (counsel for ACI Billing Services, Inc. d/b/a OAN; Billing Concepts, Inc; and BSG Clearing Solutions North America, LLC)

131.    Tighe Patton Armstrong Teasdale PLLC (counsel for The Billing Resource d/b/a Integretel)

132.    Toll Free Connect, Inc. (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

133.    Turn On Your Love Light, LLC (entity in receivership; affiliated with defendants Nationwide Connections, Inc., Access One Communications, Inc., Network One Services, Inc., Mary Lou Farr, Willoughby Farr, Yaret Garcia, Qaadir Kaid, and Erika Riaboukha)

134.    Vargas, Roberto Mario (former counsel for Mary Lou Farr and Willoughby Farr)

135.    Visiedo-Hidalgo, Michelle T. (former counsel for the Receiver)

136.    Vitunac, Hon. Ann E. (magistrate judge)

137.    Wanders, Hildegund P. (counsel for BMW Financial Services)

138.    Wedderburn, Jacobs and Alitowski, PA (counsel for receivership defendants Grunspan et al.)

139.   Weissbrodt, Hon. Arthur (bankruptcy court judge)

140.   Weinberger, Robert M. (counsel for Denise McCann)

141.   Wells, Diane Noller (counsel for Second Churchill Way, LLC)

142.   Woodbury & Santiago, P.A. (counsel for receivership defendants Grunspan

et al.)

143.   Woodbury, Michael (counsel for receivership defendants Grunspan et al.)


_____

Neal Goldfarb

Appellant The Billing Resource d/b/a Integretel ("Integretel") hereby responds to the jurisdictional questions that were raised by the Court in these consolidated appeals. In addition, we address the question whether this Court's jurisdiction is affected by the motion filed by the BSG defendants seeking reconsideration of the order requiring them to transfer additional reserves to the receiver. As shown below, this Court has jurisdiction over all the orders Integretel is appealing, and its jurisdiction is not affected by the BSG defendants' motion for reconsideration.

## Background

**1.** The Federal Trade Commission sued two of Integretel's former clients ("the Former Clients"), along with others associated with them, for violating the FTC Act. Seven months later, the FTC amended its complaint to assert claims against Integretel and a group of companies that we refer to here as "BSG." Integretel and BSG provide services that enable their clients to have their charges placed on consumers' local phone bills. BSG had provided services to Nationwide Connections, which was affiliated with the Former Clients and was named as a defendant in the original complaint.

The FTC seeks equitable relief, including equitable monetary relief. (Ex. 1 at 9-10; Ex. 18 at 12.) Before Integretel and BSG were joined as defendants, the district court entered a temporary restraining order against the original defendants. The TRO appointed a receiver for the Former Clients ("the Receiver"), who was authorized to collect the Former Clients' assets. (Ex. 2.) The TRO required the original defendants to turn over "[a]ll assets of the Receivership Defendants[.]" (*Id.* at 15-16.)

The TRO was served on Integretel and shortly after ward it was superseded by a preliminary injunction, broadened the turnover provision to apply not only to the original defendants, but also to "any person or entity served with a copy of this Order[.]"(Ex. 3.) The preliminary injunction was not served on Integretel, but Integretel was later served with a substantially identical amended preliminary injunction. (Ex. 4.)

The Receiver claimed that Integretel was in possession of property belonging to the receivership estate—more than $1 million in "reserves" under the Former Clients' contracts with Integretel—and demanded the money. When Integretel responded that his demand was unfounded, the Receiver moved that Integretel be required to show cause why it should not be held in civil contempt for violating the TRO and the amended preliminary injunction. (Doc. 243.) Integretel opposed this motion, in part on the ground that it owed nothing and that if the Receiver had any claim, he was an unsecured creditor with no property interest in the disputed funds. It also moved that the injunctions be modified on the ground that if the Receiver's interpretation was accepted, they were invalid as to Integretel. (Doc. 296; Ex. 5) Integretel also moved under § 3 of the Federal Arbitration Act to stay litigation of all contract-related issues pending arbitration, as required by the Former Clients' contracts. (Ex. 6, 7.) Finally, Integretel appealed from the entry of the amended preliminary injunction. (Ex. 8.) That appeal  (No. 06-16635-EE; "the '06 Appeal") was stayed pending the district court's ruling on Integretel's motion to modify the injunction.

Later,  the Receiver moved to compel BSG to turn over approximately $950,000

in reserves that BSG held under its contracts with Nationwide Connections. (Ex. 9.)

**2.**  On September 14, 2007, the district court entered an "Omnibus Order" in which it granted the Receiver's motions and denied Integretel's. (Ex. 10.) The court ordered Integretel to show cause why it should not be held in contempt, and although it did not find that Integretel was in fact in contempt, it court directed Integretel to "provide a sworn statement identifying the amount of reserves as of the issuance of the TRO" and ordered that "these funds shall be placed in a segregated Receivership account." (Ex. 10 at 10.) The Court also denied Integretel's motions to modify the injunctions and to stay litigation of contract-related issues pending arbitration. The denial of the motion to modify had the effect of terminating the stay of the '06 Appeal. The Court also granted the Receiver's turnover motion against BSG.

Integretel filed for bankruptcy protection under Chapter 11 on September 16. On September 20, the district court entered an order declaring that the case "is subject to the automatic stay set forth in 11 U.S.C. § 362." (Ex. 11.) But on the next day (September 21), the district court reversed course: it granted the FTC's motion, vacated the previous day's stay order, and held that the automatic stay did *not* apply.  (Ex. 12.)

In addition to vacating the stay order, the September 21 order ("the Vacatur Order") stated that in the Omnibus Order it had "ruled that the reserve funds are the property of the receivership estate and ordered Integretel to pay the current reserve funds, amounting to $1,762,762.56, immediately to the Receiver." (Ex. 12 at 1.)

On September 24, Integretel appealed from the district court's orders of Septem-

ber 14 and September 21. (Ex. 13.) That appeal (No. 04-14531-E; "the '07 Appeal") was docketed on September 27 and has been consolidated with the '06 appeal.

**3.**   After the '07 Appeal was docketed, BSG moved for reconsideration of the turnover order against it. (Ex. 14) That motion  was limited to issues relating to BSG's contracts with Nationwide, and raised no issues relevant to the rulings against Integretel. The decision on BSG's motion therefore will not affect the latter rulings.

**4.**   Integretel filed a motion asking this Court to stay the Vacatur Order pending appeal, which would reinstate the prior order stating that the action was automatically stayed under the Bankrupcty Code. Counsel was subsequently told that the Court would not be ruling on the motion because BSG's motion was thought to deprive the Court of jurisdiction. Integretel submitted a letter explaining (1) that motion did not affect the Court's jurisdiction, and (2) that the Court could grant an immediate temporary stay to preserve the status quo pending a conclusive decision regarding jurisdiction. The Court subsequently granted such a temporary stay. On the same day that Integretel submitted its letter, it filed an amended notice of appeal, in which it explicitly stated that it is not appealing from the turnover order against BSG. (Ex. 15.)

### Responses to Jurisdictional Questions

## 1.  The September 21, 2007 Vacatur Order.

The Vacatur Order (a) held that the Bankruptcy Code's automatic stay did not apply to the September 14, 2007 order and (b) vacated the order that the court had entered the day before declaring that the automatic stay did apply:

ORDERED AND ADJUDGED that the motion is GRANTED. The commencement of Integretel's bankruptcy case does not stay either the pending contempt proceeding against Integretel, including the turnover order, or the FTC's prosecution of this consumer protection action against Integretel. The September 20, 2007 Order staying proceedings against Integretel is VACATED. [Ex. 12 at 4.]

**a.** This was a final order that is appealable under 28 U.S.C. § 1291. It was functionally equivalent to an order granting relief from the automatic stay, which this Court has held is final and appealable. *E.g.*, *In re Delta Resources*, 54 F.3d 722, 726 (11th Cir. 1995); *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989). Like an order granting relief from the automatic stay, the September 21 order terminated a stay of litigation that had previously been effect, namely, the previous day's bankruptcy stay order. And other circuits have held that district-court orders holding the stay applicable or inapplicable to a particular case are final and appealable. *E.g.*, *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 864 (4th Cir. 2001); *United States v. Nicolet*, 857 F.2d 202, 202-07 (3d Cir. 1988).

The conclusion that the Vacatur Order was a final order is supported by the collateral-order doctrine. Under that doctrine, an order that would otherwise be interlocutory is regarded as final for purposes of appeal if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *McMahon v. Presidential Airways, Inc.*, 2007 WL 2891086 at *3 (11th Cir. Oct. 5, 2007). Those criteria are present here.

First, the district court's determination that the automatic stay did not apply is conclusive. There is no indication that the decision on this point was only a tentative one, and there is nothing more for the district court to decide on this point. Second, the question whether the automatic stay applies is an important one and it has nothing to do with the merits of either the Receiver's claim regarding the reserves or the underlying claim by the FTC. Finally, the ruling would be effectively unreviewable on appeal from a final judgment in the underlying action. The purpose of the automatic stay is to protect the debtor from (among other things) the costs burdens of litigation, and delaying the availability of appeal would frustrate that purpose because in the interim the debtor would be exposed to the very burdens and costs that the stay is intended to prevent.

In this respect, the automatic stay in bankruptcy is similar to other doctrines that are intended to provide an immunity, not only from liability, but from litigation. "Because immunity from suit entails a right to be free from the burdens of litigation, an erroneous denial cannot be redressed through review of the final judgment, and therefore must be reviewed on interlocutory appeal." *McMahon*, 2007 WL 2891086 at *4. Thus, the collateral-order doctrine allows immediate appeals from decisions denying claims of such immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 524-530 (1985) (qualified immunity of federal officials); *Helstoski v. Meanor*, 442 U.S. 500, 506-08 (1979) (congressional immunity under Speech-and-Debate clause); *Abney v. United States*, 431 U.S. 651, 659-62 (1977) (immunity under Double Jeopardy clause from second trial on criminal charges); *McMahon*, 2007 WL 2891086 at *3-5 (immunity under *Feres* doctrine from claims by members of armed forces

for service-related injuries); *Taylor v. Adams*, 221 F.3d 1254, 1260 n.9 (11th Cir. 2000) (discretionary-function immunity of government employees under state law).

**b.** If the Vacatur Order is for some reason deemed not to be final and appealable under § 1291, it is appealable under § 1292(a)(1), which grants jurisdiction over appeals from "[i]nterlocutory orders of the district court of the United States . . . refusing or dissolving injunctions, except where a direct review may be had in the Supreme Court[.]" As this Court has noted, "the automatic stay is essentially a court-ordered injunction[.]"*Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir. 1992). *See also Buckley v. Bass & Associates*, 249 F.3d 678, 680 (7th Cir. 2001); *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000) (en banc). The Vacatur Order was at the same time an order "refusing" an injunction (the holding that the automatic stay did not apply) and an order "dissolving" an injunction (the vacatur of the previous day's bankruptcy stay order).

## 2.  The September 14 order granting the receiver's show-cause motion.

The Omnibus Order order not only ordered Integretel to show cause why it should not be held in contempt ("the Show-Cause Order"), but also held that the reserves belonged to the receivership estate and ordered Integretel to pay them to the Receiver ("the Payment Order"). In the subsequent Vacatur Order, the district court said that the Omnibus Order had "ruled that the reserve funds are the property of the receivership estate and ordered Integretel to pay the current reserve funds, amounting to $1,762,762.56, immediately to the Receiver."

**The Payment Order.**  The Payment Order is appealable under 28 U.S.C. § 1291 as

a final order. Alternatively, it is appealable under the doctrine of pendent appellate juris-diction.

**a.**  Turnover orders in receivership proceedings are final and appealable under § 1291 where, as in this case, they are intended to finally resolve the parties' rights, as opposed to deciding only the question of interim custody of the funds pending litigation. *CFTC v. Topworth International, Ltd.*, 205 F.3d 1107, 1111-12 (9th Cir. 1999).[1] Both the Receiver and the FTC have argued in the bankruptcy court that the Payment Order was not an interim custody order, but rather was intended to finally resolve the parties' rights. The Receiver said that "the District Court has made it clear beyond any argument that the Receivership Funds are property of the Federal Receiver" and that "the District Court has adjudicated ownership of the Receivership Funds." (Ex. 16 at 2, 3)  And the FTC said, "The District Court has issued a final order holding that the Reserve Funds are property of the receivership estate." (Ex. 17 at 5.)

It is irrelevant that the district court has not yet decided how the funds will ultimately be distributed by the Receiver. That decision will not in any way change what the district court adjudicated with respect to the Receiver's claim. And it is appropriate in the context of a receivership to apply the "more pragmatic and less technical" approach to finality that is applied in the bankruptcy cases. *Jove Engineering, Inc. v. IRS*, 92 F.3d 1539,

---

1.  *Cf. In re Moody*, 817 F.2d 365, 367-78 (5th Cir. 1987) (turnover orders in bankruptcy are appealable); *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1515 (11th Cir. 1990) (orders imposing civil contempt fines that cannot be purged by complying with some other order are appealable).

1548 (11th Cir. 1996) (internal quotes omitted). This Court has explained the rationale for

that approach in terms that apply to receiverships just as much as they to do bankruptcies

The Court noted that bankruptcies often "involve protracted proceedings with many

parties participating." *Id.* The same is true of receiverships. Further, "a bankruptcy case is

simply an aggregation of controversies, many of which would constitute individual

lawsuits had a bankruptcy petition never been filed." *Id.* So, too, for receiverships.

Because of these factors, "a truly simultaneous resolution [of all claims and disputes] is

impossible." *Id.* Therefore, "[a]ny order within a bankruptcy case which concludes a

particular adversary proceeding should be deemed final and reviewable." *Id.*

The proceedings that resulted in the Payment Order bear the same relationship to

the overall receivership proceeding as an adversary proceeding does to the overall

bankruptcy of which it is part. The district court's determination is therefore not

deprived of finality by the fact that there is not yet a plan for the final distribution of

funds Integretel is required to pay the Receiver.

The cases cited by the FTC are not to the contrary.[2] In *United States v. Beasley*, the

Fifth Circuit noted that "the rights and liabilities of the parties to the sums directed to be

turned over to the Receiver have not been finally adjudicated." 558 F.2d 1200, 1200-01

(5th Cir. 1200). Here, on the other hand, the Payment Order was intended as a final

adjudication. And *Citibank, N.A. v. Data Lease Financial Corp.*, 645 F.2d 333 (11th Cir.

---

2.  The FTC served its response to the jurisdictional questions a day early.

1981), is similarly distinguishable. That case involved, not a receivership, but an order authorizing a prejudgment sale of collateral. When one reads the statement that the FTC relies on, it is obvious that Court's point was much narrower than the FTC suggests and that the statement is not germane to this case: "Not all orders contemplating a judicial sale are final and appealable. An immediate appeal may not be taken . . .from an order directing transfer of property to a receiver but not directing an immediate sale[.]" 645 F.2d at 337 (citing *Grant v. Phoenix Mutual Life Ins. Co.*, 106 U.S. 429 (1882).) The *Grant* case cited in *Citibank* involved a receivership in aid of a foreclosure, and the Supreme Court noted that the turnover order did not finally adjudicate the parties' rights, but was merely an interim ruling as to who would have custody of the property pending the final outcome. 106 U.S. at 431-32.

    **b.**  Even if the Payment Order were not appealable independently, it would be appealable under the doctrine of pendent appellate jurisdiction. Under that doctrine the Court "'may address [otherwise] nonappealable orders if they are "inextricably intertwined" with an appealable decision or if 'review of the former decision [is] necessary to ensure meaningful review of the latter.'" *Hudson v. Hall*, 231 F.3d 1289, 1294 (11th Cir. 2000) (quoting *Summit Med. Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir.. 1999)). The Payment Order is within the Court's pendent jurisdiction because it is inextricably intertwined with three of the other orders being appealed: the issuance of the Amended Preliminary Injunction, the denial of Integretel's motion to modify that order and the TRO, and the denial of Integretel's motion for a stay pending arbitration.

(The appealability of the Amended Preliminary Injunction under 28 U.S.C. § 1292(a)(1) has not been questioned; the appealability of the other orders is discussed below.)

The Payment Order was entered in order to (as the district court saw it) enforce the Amended Preliminary Injunction and the TRO. If this Court invalidates the challenged portions of those orders, such as the asset-turnover provision of the Amended Preliminary Injunction, that will undermine the Payment Order's foundation.

In addition, the issues raised by the appeal of the Payment Order overlap to a significant extent with the issues raised by the appeals of the Amended Preliminary Injunction and of the district court's refusal to modify its prior injunctions. For example, each appeal raises the question whether claims such as the Receiver brought here are appropriately characterized as state-law claims in which the Receiver merely stands in the shoes of the entity in receivership or whether he is instead asserting substantive rights and property interests under federal law that were somehow created by the order appointing him. (Integretel says the former; the Receiver says the latter.)

Furthermore, each of these appeals raises the question whether a receivership court has in rem jurisdiction over property claimed by the receiver that is in the possession of a third party who holds it under a substantial claim of right. (Integretel and the Supreme Court say no; the Receiver and the district court say yes.) That issue is relevant to the appeal of the Payment Order because the district court justified the order as an exercise of such in rem jurisdiction. And the issue is relevant to the appeal of the Amended Preliminary Injunction and the denial of the motion to modify, because one of

the issues raised by those cases has to do with the extent of a receivership court's power to invoke in rem jurisdiction in order to bind nonparties who are not acting in concert with any of the named defendants.

The appeal of the Payment Order is also inextricably intertwined with that of the district court's refusal to grant a stay pending arbitration. Integretel argued below that the only rights the Receiver could assert were those granted to the Former Clients by their contracts with Integretel, which contained arbitration provisions. Integretel invoked its rights under the arbitration provisions and moved under § 3 of the Federal Arbitration Act to stay litigation of all contract-related issues pending arbitration. The district court denied that motion, and its basis for doing so was that "[t]he Receiver's claim is not a claim at law governed by pre-receivership contracts, . . . but one governed by this Court's jurisdiction over receivership property based on the TRO and Amended Preliminary Injunction[.]" The question whether that conclusion is correct is also at the heart of Integretel's argument that the Payment Order should be reversed.

**The Show-Cause Order.**  Although the order requiring Integretel to show cause why it should not be held in contempt is not independently appealable, the Court has pendent jurisdiction over it because the appeal from the this order is inextricably intertwined with the challenge to the Amended Preliminary Injunction and TRO. If the provisions that Integretel is accused of violating are held to have been invalid, the show-cause order would have to be vacated because the basis on which it was issued would have disappeared.

**3.  The September 14, 2007 order refusing to modify the prior injunctions.**

Although the denial of Integretel's motion to modify the injunctions does not constitute a final order, it is appealable under 28 U.S.C. § 1292(a)(1), which provides that the courts of appeal have jurisdiction over appeals from "[i]nterlocutory orders of the district court of the United States . . . refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court[.]"

The amended preliminary injunction was, of course, expressly denominated as an injunction, and the Court's jurisdiction over Integretel's appeal from its entry has never been questioned.

Moreover, the Amended Preliminary Injunction constituted an injunction under the standards set out in *Alabama v. United States Army Corps of Engineers*, 424 F.3d at 1127. It set out a variety of directives to persons served with the order "to act or refrain from a particular action[,]" *id.*, such as to turn over to the Receiver any assets of the Receivership defendants and to transfer funds to the Receiver at his direction. The order is also enforceable through contempt, as is shown by the proceedings that have given rise to these appeals. And it gave the FTC "some or all of the substantive relief sought in the complaint." *Id.* The relief sought by the FTC includes equitable monetary relief against the original defendants. (Ex. 1at 9-10; Ex. 19 at 12.) And the FTC told the district court that appointment of a receiver was sought both in order to secure assets that could ultimately be used to satisfy any award of monetary relief and also "to ensure that similar unlawful activities do not occur." (Ex. 20 at 36.)

The FTC is mistaken in arguing that the modifications Integretel sought "would not alter any legal relationships[.]" (FTC Response at 12.) A review of the motion to modify (Ex. 5 hereto) will show that the modifications were quite substantive. To pick just the most obvious example, Integretel asked that the amended preliminary injunction's turnover order be modified by adding language providing that "if any person (other than someone in one of the categories listed in Fed. R. Civ. P. 65(d)) contends that he holds no assets or accounts of the original defendants in this action," the turnover provision would not apply "unless and until the receiver obtains a further order from the court directed specifically at that person, after notice and an opportunity to be heard." (Ex. 5 at 1.) If that provision had been included in the injunction, the Receiver would have been precluded from arguing that Integretel's refusal to his turnover demand (which it regarded as unfounded) constituted a contempt of court.

## 4. The September 14, 2007 order refusing a stay pending arbitration.

This order is appealable because the motion to stay litigation on contract claims was made under § 3 of the Federal Arbitration Act ("FAA"), and the denial of such motions is appealable under § 16(a)(1)(A) of that Act.

Section 3 of the FAA provides that in a federal-court action on "any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Integretel's

contracts with the Former Clients contain an arbitration provision that applies broadly to "any claim, dispute, or other controversy arising out of or relating to this Agreement or its breach[,]" and that constituted the "sole remedy" for such claims.[3] In its motion to stay litigation of contract-related issues, Integretel argued that these provisions were binding on the Receiver, *see, e.g., Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624-27 (6th Cir. 2003), and that under § 3 of the FAA, they required that any such litigation be stayed until the Receiver had completed the contractually mandated arbitration process.[4]

Because Integretel's motion was made under § 3 of the FAA, the order denying the motion is appealable under § 16 of the Act. That section provides, "An appeal may be taken from an order refusing a stay of any action under section 3 of this title[.]" 9 U.S.C. § 16(a)(1)(A) (punctuation, numbering, and paragraph breaks omitted). (This provision was enacted 13 years after the case cited by the FTC was decided. Pub.L. 100-702, Title X, § 1019(a), 102 Stat. 4671, § 15 (Nov. 19, 1988). That case is therefore inapposite.)

## 6.  The effect of BSG's motion for reconsideration.

Under Fed. R. App. P. 4(a)(4), the timely filing of certain types of postjudgment

---

3.  The parties disagree about whether the Receiver's claims fall within an exception to the arbitration clause. However, that disagreement goes to the merits of the appeal, not to the question of jurisdiction.

4.  The FAA applies to any written arbitration provision in an agreement "evidencing a transaction involving commerce." 9 U.S.C. § 2. The phrase "involving commerce" has been held to be as broad as Congress's power to regulate interstate commerce. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-77 (1995). The contracts here, which were between parties in different states and which contemplated the transmission of payments and data across state lines, satisfied that standard. (Ex. 7.)

motions tolls the time for appealing, and a notice of appeal filed before such a motion has been ruled on becomes effective when the motion has been decided. We assume for purposes of discussion that BSG's motion is one of those covered by this rule.

**The Vacatur Order.**  BSG's motion to reconsider part of the Omnibus Order does not affect the appealability of the Vacatur Order., which the motion does not deal with. The two orders are separate from one another; they were entered a week apart. The Vacatur Order's appealability is independent of the Omnibus Order. And because BSG have not sought to have the Vacatur Order reconsidered, the ruling on its motion cannot possibly have any impact on the Vacatur Order.  As a result, BSG's motion does not trigger Fed. R. App. P. 4(a)(4). The Courts have held that where separate judgments are entered, a motion to reconsider one does not affect the timing of an appeal from the other. *TBG, Inc. v. Bendis*, 36 F.3d 916, 921 (10th Cir. 1994); *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1125 (7th Cir. 1993); *Wieglos v. Commonwealth Edison*, 892 F.2d 509, 511-12 (7th Cir. 1989).

**The Omnibus Order.** The analysis as to the various orders included in the Omnibus Order is more complicated. The first point to note is that the reconsideration motion does not affect the finality of the Omnibus Order's rulings against Integretel. As discussed above, the grounds on which BSG have sought reconsideration relate entirely to BSG's contracts with Nationwide Connections, which played no part in the court's rulings with respect to Integretel.

Whether the tolling provisions of Fed. R. App. P. 4(a)(4) are triggered as to those

rulings is unclear, because this Court's relevant cases are in conflict. In one case, the Court held that a motion by one group of defendants for reconsideration does not toll the time for other defendants affected by that judgment to appeal. *Wooden v. Board of Regents of the University System of Georgia*, 247 F.3d 1262, 1271-73 (11th Cir. 2001). But in two other cases, it has reached the opposite conclusion. *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 779-80 (11th Cir. 2005); *Martin v. Campbell*, 692 F.2d 112 (11th Cir. 1982).

Fortunately, the Court need not resolve this conflict here, because even if Rule 4(a)(4) is triggered, it does not operate to affect the Court's jurisdiction. The Court therefore has power under Fed. R. App. P. 2 to suspend its application to this case. A rule of judicial procedure that is promulgated under the general rulemaking authority granted by the Rules Enabling Act, 28 U.S.C. § 2072(a), can neither expand nor restrict the court's jurisdiction. *E.g.*, *Bowles v. Russell*, 127 S. Ct. 2360, 2364-65 (2007); *Kontrick v. Ryan*, 540 U.S. 443, 452-54 (2004); *Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992). "Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick*, 540 U.S. at 452. Thus, rules of judicial procedure are generally not jurisdictional. *Bowles*, 127 S. Ct. at 2364, *Kontrick*, 540 U.S. at 453-54; *Schacht v. United States*, 398 U.S. 58, 64-65 (1970).[5]

---

5.   There are two exceptions. The first is for rules that implement a statute relating to jurisdiction such as the time limit for civil appeals in Fed. R. App. P. 4(a)(1) implements the limits established by 28 U.S.C. § 2107. *See, e.g. United States v. Sadler*, 480 F.3d 932, 937 (9th Cir. 2007). The second is for rules that are authorized by a statute explicitly delegating authority to the judiciary to promulgate rules affecting jurisdiction. *See, e.g.*, 28 U.S.C. § 1292(e) (authorizing the Supreme Court to promulgate rules providing for interlocutory appeals not otherwise permitted); *id.* § 2072(c) (authorizing the Supreme Court to promulgate rules "defin[ing] when a ruling of a district court is final for the

When a rule is not jurisdictional, it "can be relaxed by the [c]ourt in the exercise of its discretion when the ends of justice so require." *Schacht*, 398 U.S. at 64-65. *See also id.* at 68 (Harlan, J., concurring); *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 539 (1970). This discretion is codified in Fed. R. App. P. 2, which provides, "On its own or a party's motion, a court of appeals may—to expedite its decision or for other good cause—suspend any provision of these rules in a particular case and order proceedings as it directs, except as otherwise provided in Rule 26(b)." And Rule 26(b), in turn, provides that a court of appeals may not extend the time for filing a notice of appeal or petition for review, except as specifically authorized by Rule 4 or other law.

Applying these principles to the situation here, one can see that the operation of Fed. R. App. P. 4(a)(4) does not deprive the Court of jurisdiction over the appeal from the Omnibus Order, and indeed that it could not validly have such an effect. The relevant provision is Rule 4(a)(4)(B)(i), which provides that if a notice of appeal is filed before the disposition of any timely tolling motions, the notice becomes effective when all such motions have been resolved. That provision is not jurisdictional because the only authority for its promulgation is the general authority granted by the Rules Enabling Act. It does not implement a jurisdictional statute and is not authorized by any delegation of specific authority to promulgate jurisdictional rules. In particular, it is not within the scope of 28 U.S.C. § 2702(c) because it does not purport to define when a ruling is final

purposes of appeal under section 1291 of this title").

for purposes of appeal.[6]

If the Court were to give jurisdictional effect in this case to Rule 4(a)(4)(B)(i)'s definition of when a notice appeal takes effect, it would be violating the principle that ordinary rules of procedure do not limit or expand a court's jurisdiction. *See Bowles*, 127 S. Ct. at 2364-65; *Kontrick*, 540 U.S. at 452-54; *Willy*, 503 U.S. at 135. That becomes especially clear when one considers the sequence of events here. Integretel's appeal was noticed (and docketed in this Court) before BSG filed its motion. The Court clearly had jurisdiction before that motion was filed. If Rule 4(a)(4)(B)(i)'s effective-date provision were held to be jurisdictional in this situation, the result would be to deprive the Court of jurisdiction that it had already acquired. An ordinary rule of procedure simply may not be given that effect. [7] As a result, the Court has power under Fed. R. App. P. 2 to suspend the rule's operation in this case.

That leads to the question that power should be exercised here. In most cases, applying Rule 4(a)(1)(B)(i) strictly makes sense, because it avoids piecemeal appeals. *See Martin*, 692 F.2d at 115.[8] But applying the rule here would have no such effect, for the

---

6. The principle that a timely motion for reconsideration deprives a ruling of finality predates both the statute authorizing judicial rulemaking regarding finality and the current version of Rule 4(a)(4)(B)(i). *See, e.g.*, *United States v. Healy*, 376 U.S. 75, 78 (1964).

7. This does not necessarily mean that Rule 4(a)(4)(B)(i) can never be given jurisdictional effect. There may well be cases where it can be given such effect, but the Court need not address that question now.

8. The Court in *Martin* does not seem to have considered the possibility of suspending the operation of Rule 4(a)(4). However, there is no indication that the Court

rule has no effect on the appeal from the Vacatur Order or on the '06 Appeal. If the Court proceeds with those appeals while holding the appeal from the Omnibus Order in abeyance, it will still be faced with piecemeal appeals. Moreover, the same factors that supported consolidation also support proceeding with everything on the same track.

Thus, if the Court proceeds with the '06 Appeal and the appeal from the Vacatur Order, it should waive compliance with Rule 4(a)(1)(B)(i) and proceed with the appeal from the Omnibus Order at the same time. On the other hand, if the Court decides to hold the latter appeal in abeyance until BSG's motion is decided, it should do the same with respect to the '06 Appeal and the appeal from the Vacatur Order. In that event, the Court might wish to request that the district court expedite its ruling on the motion, so that the appeals are not unduly delayed.

Whatever the Court does, however, two points are clear. First, there is no basis for dismissing any of the appeals. Rule 4(a)(4) contemplates that while a tolling motion is pending, the appeal is to be suspended, not dismissed. *See* Fed. R. App. P. 4(a)(4) adv. comm. note to 1993 amdt. Second, regardless of whether the filing of BSG's motion affects Integretel's appeal from the Omnibus Order, it does not in any way limit the Court's power to stay the Vacatur Order.

---

was asked to do so, and in any event it is clear from the opinion that the Court would have regarded that case as being among the majority of cases in which suspension is not appropriate. *See* 692 F.2d at 115-116.

Respectfully submitted,

_____

| | |
|---|---|
| Laurie Webb Daniel (GA Bar # 204225) | Neal Goldfarb (DC Bar # 337881) |
| Cynthia G. Burnside (GA Bar # 097107) | Richard H. Gordin (DC Bar # 727925) |
| Holland & Knight LLP | Tighe Patton Armstrong Teasdale PLLC |
| 1201 West Peachtree Street, NE | 1747 Pennsylvania Ave., NW, Suite 300 |
| One Atlantic Center, Suite 2000 | Washington, D.C. 20006 |
| Atlanta GA 30309 | (202) 454-2800 |
| (404) 817-8500 | |

*Attorneys for Appellant/Movant*
*The Billing Resource dba Integretel*

## Certificate of Service

I HEREBY CERTIFY that on this 19th day of October, 2007, the foregoing response to jurisdictional questions (with exhibits) was served on each of the following by the method(s) indicated:

### By Federal Express and by email:

Marilyn Kerst, Esq.
mkerst@ftc.gov
John F. Daly, Esq.
jdaly@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., N.W., Room 582
Washington, D.C. 20580

Laura M. Kim, Esq.
lkim@ftc.gov
Collot Guerard, Esq.
cguerard@ftc.gov
Richard McKewen, Esq.
rmckewen@ftc.gov
Robert Schoshinksi, Esq.
rschoshinski@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., N.W., Room 286
Washington, DC  20580

Jeffrey C. Schneider, Esq.
jcs@tewlaw.com
Patrick Rengstl, Esq.
pjr@tewlaw.com
Tew Cardenas LLP
Four Seasons Tower—15th Floor
1441 Brickell Avenue
Miami, FL  33131

**By first-class mail:**

Michael Garrett Austin, Esq.
Steven E. Siff, Esq.
McDermott Will & Emery LLP
201 S Biscayne Boulevard
Suite 2200
Miami, FL 33131-4336

Andrew G. Berg, Esq.
Kevin Dinan, Esq.
Carolyn Tapie, Esq.
John-David Thomas, Esq.
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-4704

Derick J. Rodgers, Esq.
Davis Cedillo & Mendoza Inc
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, TX 78212

Mark Douglas Johnson, Esq.
Mark D. Johnson, P.A.
10 Central Parkway, Suite 210
Stuart, Florida 34994

Rosanne Brady, Esq.
Peter N. Macaluso, Esq.
The Law Office of Peter N. Macaluso
3302 N. Tampa Street
Tampa, FL 33603

Michael David McDonough, Esq.
12794 Forest Hill Blvd., Suite 19D
Wellington, FL 33414

Willoughby Farr, Inmate No. 653974
Avon Park Correctional Institution
PO Box 1100
County Road 64 East
Avon Park, FL 33926-1100

Mary Lou Farr
c/o James Stonehill

1006 Churchill Circle South
West Palm Beach, FL 33405

Jessy Mendoza
6117 Blue Grass Circle
Lake Worth, FL 33463

Gary M. Dunkel, Esq.
Jason H. Okleshen, Esq.
Greenberg Traurig
Phillips Point—East Tower, Suite 300-E
777 South Flagler Drive
West Palm Beach, FL  33401

Diane Noller Wells, Esq.
Devine Goodman Pallet & Wells, PA
777 Brickell Avenue, Suite 850
Miami, FL  33131

Michael Woodbury, Esq.
Two Datran Center—Penthouse 1A
9130 South Dadeland Boulevard
Miami, FL  33156

Henry W. Johnson, Esq.
Hume & Johnson
1401 University Drive, Suite 301
Coral Springs, FL  33071

John W. Chapman, Jr., Esq.
Norton Hammersley Lopez & Skokos
1819 Main Street, Suite 610
Sarasota, FL  34236

Robert M. Weinberger, Esq.
Cohen Norris Scherer Weinberger & Wolmer
712 U.S. Highway 1, Suite 400
North Palm Beach, FL  33408

Thomas G. Long, Esq.
Hildegund P. Wanders, Esq.
Barnett Bolt Kirkwood & Long
601 Bayshore Boulevard, Suite 700
Tampa, FL  33606

Robert Voss Fitzsimmons, Esq.
Kubicki Draper
City National Bank Building
25 W Flagler Street, Penthouse
Miami, FL  33130-1712

Chad A. Dean, Esq.
Schuyler Stewart Smith
118 West Adams Street, #800
Jacksonville, FL  32202

Bruce Eric Bloch, Esq.
Sapurstein & Bloch PA
9700 South Dixie Highway, Suite 1000
Miami, FL  33156

Theodore J. Leopold, Esq.
Ricci Leopold
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL  33410


_____

Neal Goldfarb