SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
   Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
STEVEN B. SACKS, Cal. Bar No. 98875
JEFFREY K. REHFELD, Cal. Bar No. 188128
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947
Email:        mahrens@sheppardmullin.com
              ssacks@sheppardmullin.com

Attorneys for The Billing Resource, dba
Integretel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE BILLING RESOURCE, dba Integretel, a California corporation,<br><br>        Debtor-Plaintiff-Appellee<br><br>      v.<br><br>FEDERAL TRADE COMMISSION, et al.<br><br>        Defendant-Appellant | Case No. 07-CIV-5758-RMW<br><br>DATE:    December 21, 2007<br>TIME:    9:00 a.m.<br>Place:    280 S. First Street<br>         San Jose, CA<br>Judge:    Hon. Ronald M. Whyte<br>         Courtroom 6- 4th Floor |

On Appeal from the United States Bankruptcy Court for the Northern District of California,
No. 07-52890-ASW, Adversary Proceeding No. 07-5156

**PLAINTIFF-APPELLEE THE BILLING RESOURCE, dba INTEGRETEL's MEMORANDUM IN OPPOSITION TO FTC'S MOTION FOR STAY PENDING APPEAL AND FOR CHANGE OF VENUE**

Case No. 07-CIV- 5758-RMW

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................... 1

II. FACTUAL STATEMENT ........................................................................... 1

    A.  The Debtor's Business. ........................................................................ 2

    B.  The Florida Action and the Debtor's Bankruptcy Filing. ................... 2

    C.  The Adversary Proceeding and Injunction ........................................ 6

III. THIS COURT SHOULD DENY A STAY PENDING APPEAL ............. 6

    A.  This Court Should Only Issue a Stay if the Bankruptcy Court Abused
        its Discretion in Denying a Stay Pending Appeal. ............................. 6

    B.  The Applicable Standard for a Stay Requires a Showing of Irreparable
        Injury to Appellant and Lack of Harm to Appellee............................ 7

    C.  The FTC is not Likely to Succeed on the Merits................................. 8

    D.  The FTC will not Suffer any Irreparable Injury................................. 12

    E.  Substantial Harm will come to Integretel if a Stay is Granted......... 13

    F.  The Public Interest is not Served by Granting a Stay. ..................... 14

IV. CHANGE OF VENUE SHOULD BE DENIED...................................... 14

    A.  Change of Venue Under 28 U.S.C. § 1412 ....................................... 14

    B.  Procedure ......................................................................................... 15

    C.  The Motion Should Be Denied Because the FTC Failed to Carry Its
        Burden of Proof That Transfer Is in the Interest of Justice or For the
        Convenience of the Parties............................................................... 17

V.  CONCLUSION...................................................................................... 22

Case No. 07-CIV- 5758-RMW                                    -i-

W02-WEST:5SS1\400568373.1                                    PLAINTIFF-APPELLEE's MEMORANDUM IN
                                                            OPPOSITION TO FTC'S MOTION FOR STAY
                                                            PENDING APPEAL AND FOR CHANGE OF VENUE

# TABLE OF AUTHORITIES

Page

<u>Federal Cases</u>

*In re American International Airways, Inc.*,
  66 B.R. 642 (Bankr. E.D.Pa. 1986) ................................................................................ 18

*Blanton v. IMN Finance Corp.*,
  260 B.R. 257 (Bankr. M.D.N.C. 2001) ..................................................................... 17, 18

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971) ...................................................... 8

*Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora*,
  805 F.2d 440 (1st Cir. 1986) ............................................................................................ 9

*In re Crown Vantage, Inc.*,
  421 F.3d 963 (9th Cir. 2005) .......................................................................................... 20

*In re Deep*,
  288 B.R. 27 (N.D.N.Y. 2003) ............................................................................................ 8

*In re Donald*,
  328 B.R. 192 (9th Cir. BAP 2005) ............................................................................. 15, 17

*In re Enron*,
  317 B.R. 629 (Bankr. S.D.N.Y. 2004) ............................................................................ 15

*In re Fullmer*,
  323 B.R. 287 (Bankr. D. Nev. 2005) ................................................................................. 7

*Gruntz v. County of Los Angeles (In re Gruntz)*,
  202 F.3d 1074 (9th Cir. 2000) .......................................................................................... 9

*In re Irwin*,
  338 B.R. 839 (E.D. Cal. 2006) ...................................................................................... 7, 8

*In re Manville Forest Products Corp.*,
  896 F.2d 1384 (2d Cir. 1990) ............................................................................... 16, 17, 18

*In re Modern Boats, Inc.*,
  775 F.2d 619 (5th Cir. 1985) .......................................................................................... 21

*Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.*,
  762 F.2d 1374 (9th Cir. 1985) ..................................................................................... 8, 12

*Oaks Of Woodlake Phase III, Ltd. v. Hall, Bayoutree Associates, Ltd.*
  *(In re Hall, Bayoutree Associates, Ltd.)*, 939 F.2d 802 (9th Cir. 1991) ....................... 16

*In re Pavilion Place Associates*,
  88 B.R. 32 (Bankr. S.D.N.Y. 1988) ................................................................................ 15

*Raytech Corp. v. White*,
  54 F.3d 187 (3rd Cir. 1995) ............................................................................................ 16

*Sampson v. Murray*,
   415 U.S. 61, 94 S. Ct. 917 (1982)........................................................12

*Schwartz v. Covington*,
   341 F.2d 537 (9th Cir. 1965)...............................................................8

*SenoRX v. Coudert Brothers LLP*,
   2007 WL 2470125 (N.D. Cal. 2007)...................................................18

*Shared Network Users Group, Inc., v. Worldcom Technologies, Inc.*,
   309 B.R. 446 (E.D. Pa. 2004)..............................................................18

*Shavers v. Dale*,
   182 Fed. Appx. 316 (5th Cir. 2006) ....................................................16

*Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*,
   502 F.3d 1086 (9th Cir. 2007)..............................8, 9, 10, 19, 21

*Southwinds Associates, Ltd. v. Reedy (In re Southwinds Associates Ltd.)*,
   115 B.R. 857 (Bankr. W.D. Pa. 1990) ................................................15

*Sports Form, Inc. v. United Press Intern., Inc.*,
   686 F.2d 750 (9th Cir. 1982)................................................................8

*In re TIG Insurance Co.*,
   264 B.R. 661 (Bankr. C.D. Cal. 2001)...........................................15, 21

*In re Toxic Control Tech., Inc.*,
   84 B.R. 140 (Bankr. N.D.Ind. 1988) ..................................................15

*In re U.S. Brass Co.*,
   110 F.3d 1261 (7th Cir. 1997)............................................................20

*Universal Life Church v. United States*,
   191 B.R. 433 (E.D. Cal. 1995)............................................................7

*Virginia Petroleum Jobbers v. FPC*,
   259 F.2d 921 (D.C. Cir. 1958) ...........................................................12

*Walsh v. West Virginia (In re Security Gas & Oil, Inc.)*,
   70 B.R. 786 (Bankr. N.D. Cal. 1987)...................................................9

*In re Wymer*,
   5 B.R. 802 (Bankr. 9th Cir. 1980) .....................................................7, 8

State Cases

Federal Statutes

11 U.S.C. § 105..............................................................................9, 13, 19
11 U.S.C. § 362(a) ................................................................................9
28 U.S.C. § 157(b)(2).........................................................................6, 16
28 U.S.C. § 1334(e)...............................................................................20

1

28 U.S.C. § 1409..............................................................................................................14

2

28 U.S.C. § 1412...............................................................................................14, 15, 17

3

Local Rules

4

Northern District Local Bankruptcy Rule 5011-1 .................................................15

5

Other Authorities

6

H.R.Rep. No. 95-595, at 342 (1977) ...............................................................9, 13

7

1 Collier on Bankruptcy, ¶ 4.404[1]:4-29 (15th ed. 2007)............................ 15, 18

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 07-CIV- 5758-RMW

W02-WEST:5SS1\400568373.1                                          -iv-                 PLAINTIFF-APPELLEE's MEMORANDUM IN
                                                                                       OPPOSITION TO FTC'S MOTION FOR STAY
                                                                                       PENDING APPEAL AND FOR CHANGE OF VENUE

# I.

## INTRODUCTION

The Billing Resource, dba Integretel ("Integretel" or "Debtor"), opposes the Federal Trade Commission's ("FTC") motion for a stay pending appeal and for a change of venue, as neither remedy is appropriate in this appeal from the bankruptcy court's well-reasoned and amply justified preliminary injunction order.

The FTC's motion wholly fails to demonstrate that it has met the standards for a stay pending appeal. The FTC does not even attempt to show that the bankruptcy court abused its discretion in denying a stay. In addition, the FTC cannot show any actual irreparable injury that would arise from the preliminary injunction that stays for a brief period prosecution of the FTC's action against Integretel.

Rather, the bankruptcy court correctly concluded that the Florida litigation initiated by the FTC should be temporarily stayed as to the Debtor until the Debtor has an opportunity to pursue reorganization. The FTC's proposed regulation of Integretel will be meaningless if the litigation puts the company out of business. Allowing Integretel to reorganize at the cost of a few months' delay in the Florida action does not harm the FTC or the public interest, but may benefit Integretel's creditors, customers, and owners.

The FTC's motion for a change of venue is an obvious attempt to shop for a more favorable venue and is procedurally improper. It would be grossly inappropriate to transfer an appeal from a bankruptcy court to a district court in another circuit. Nor is this pre-hearing motion on such an appeal an appropriate means of transferring venue of an adversary proceeding that otherwise remains before the bankruptcy court.

# II.

## FACTUAL STATEMENT

The FTC's motion ignores the complete factual findings made by the bankruptcy court in its Memorandum Decision re Order to Show Cause Regarding Preliminary Injunction entered on November 2, 2007 (the "Memorandum Decision"). (FTCX 25). Instead of making even the slightest effort to prove that the bankruptcy court's factual

1  findings were clearly erroneous, the FTC instead offers its own misleading factual

2  summary replete with inaccuracies and misrepresentations.

3  **A.      The Debtor's Business.**

4

5      The Memorandum Decision describes Debtor's business operations, stating:

6          Debtor provides billing-related and other services for smaller
           private telecommunications companies that compete with large

7          local exchange carriers ("LECs") in niche areas such as public
           pay phones, hotels and prisons ("Alternative Operator

8          Services").  Private telecommunications companies that
           provide Alternative Operator Services have difficulty billing

9          for "collect" and other types of calls, since most individuals do
           not pay invoices from these unknown companies and those

10         companies cannot bill the individuals through the individual's
           normal telephone bill.  Debtor was created in 1988 to address

11         this void in the marketplace.

12  Memorandum Decision at 3-4.

13

14  **B.      The Florida Action and the Debtor's Bankruptcy Filing.**

15      On February 27, 2006, the FTC commenced a lawsuit (i.e., the Florida Action) in

16  the United States District Court for the Southern District of Florida (the "Florida Court")

17  against three companies, including Access One Communications, Inc. ("Access One") and

18  Network One Services, Inc. ("Network One"), as well as their principals, alleging

19  deceptive and unfair practices for unauthorized billing of charges on phone bills – referred

20  to as "cramming" – in violation of the Federal Trade Commission Act (the "FTCA").

21  (FTCX 1).  Access One and Network One had previously been customers of the Debtor

22  (the "Prior Customers").  The Florida Court entered a temporary restraining order ("TRO")

23  and later a preliminary injunction.[1]  The Florida Court appointed the Receiver as the

24

25  ────────────────────
   [1] Contrary to the FTC's claim (Motion at 4), the TRO only ordered the original defendants to turn

26  over assets.  (FTCX 2 at 15-16: TRO ¶ X).  Integretel was not named as a defendant until well
   after the TRO had expired.  In addition, while the FTC quotes the cooperation provision of the

27  TRO, the FTC fails to disclose that Integretel was never asked to turn over any funds while the
   TRO was in effect.  The FTC also fails to mention that when the TRO was superseded by a

28  preliminary injunction on March 8, 2006, the injunction (which contains the turnover language

1   receiver for the defendants and their affiliates. An "Amended Preliminary Injunction

2   Order" was filed on September 25, 2006. (FTCX 5). On or about September 21, 2006, the

3   FTC filed an amended complaint which included claims against the Debtor and another

4   billing aggregator. (FTCX 6).

5        The FTC alleged in its Amended Complaint that the Debtor caused certain of the

6   Prior Customers' fraudulent charges to be placed on end users' phone bills and that the

7   Debtor was liable under the FTCA in spite of the fact that the LECs, not the Debtor,

8   perform the billing. (Integretel Exhibit ("IGTX") 1.

9        The FTC has sought injunctive relief against the Debtor as well as monetary redress

10  including restitution for the allegedly defrauded consumers. There has been no finding

11  that the Debtor violated the FTCA. (IGTX 1, ¶13). Nor has the FTC ever sought a

12  preliminary injunction against Integretel seeking to stop any alleged ongoing violations. In

13  fact, the FTC has presented no evidence either here or in the Florida Court suggesting that

14  any such violations exist.

15       The Debtor voluntarily stopped providing services for the Prior Customers over a

16  year prior to the FTC's filing of its Amended Complaint. At the time that it stopped

17  providing services, the Debtor stopped making payments to the Prior Customers and

18  instead made a determination under the contracts with the Prior Customers that all further

19  amounts received from LECs on account of their billings should be booked as reserves.

20  This was done because of the Debtor's possible exposure to claims for refunds of the Prior

21  Customers' Billing Transactions. (IGTX 1, ¶ 14).

22

23  ────────────────────

that the FTC falsely claims was in the TRO) was not served on Integretel. Nor does the FTC

24  disclose that it was not until October 2006—more than seven months after the TRO expired—that

Integretel again became subject to an injunction in the Florida Action, when it was served with an

25  amended preliminary injunction that had been issued shortly before. Thus, for those seven months

when Integretel was supposedly defying the Florida Court's injunction, the fact is that Integretel

26  was not even subject to the injunction. (The FTC's motion contains a number of other inaccurate

or misleading statements, as well. Our failure to correct each of them should not be taken as an

27  acceptance of the FTC's version of the facts.)

28

      -3-

           PLAINTIFF-APPELLEE's MEMORANDUM IN
OPPOSITION TO FTC'S MOTION FOR STAY
PENDING APPEAL AND FOR CHANGE OF VENUE

1    Whenever the Debtor allocated an amount to the reserves for the Prior Customers,

2   the Debtor made a bookkeeping entry for that amount.  However, the Debtor does not have

3   a corresponding asset, such as a bank account, that contains the monies that were allocated

4   as reserves from the Prior Customers.  Moreover, there is no segregated account containing

5   the reserves of any customer, including either of the Prior Customers.  The Debtor does not

6   have enough monies to cover the full amount of reserves for all of the Debtor's customers.

7   (IGTX 1, ¶ 15).

8    In contrast to the FTC's allegations, the Debtor asserted that the Prior Customers'

9   wrongful conduct caused great injury to the Debtor, including by causing the Debtor to

10  incur fees and expenses to defend the FTC action.  (IGTX 1, ¶ 16).

11    The Receiver is seeking to collect all assets of the Prior Customers.  Toward that

12  end, the Receiver sought relief in the Florida Action by motion against the Debtor.  The

13  Receiver asserted that the Debtor owes the Prior Customers the amount that the Debtor

14  booked as reserves for the Prior Customers, which the Receiver alleged was an asset of the

15  Prior Customers.  (IGTX 1, ¶ 17).

16    The Debtor filed a response opposing such relief on numerous grounds, including

17  that at the most, any rights the Prior Customers—and therefore the Receiver, who stood in

18  their shoes—had with respect to the reserves were simply those rights of a general,

19  unsecured creditor.  The Debtor also asserted that it had offsetting claims against the Prior

20  Customers which exceeded the amount of the Prior Customers' alleged reserves.  In

21  particular, to the extent the Debtor has any liability in the Florida Action, it arises from the

22  misconduct of the Prior Customers, not the Debtor, and the Prior Customers are liable to

23  the Debtor for such liability, as well as the costs and fees incurred in the Florida Action.

24  These costs and fees, and the liability asserted against the Debtor in the Florida Action, far

25  exceed the amount of any sums withheld from the Prior Customers as reserves.  (IGTX 1,

26  ¶ 18).

27

28

Case No. 07-CIV- 5758-RMW                    -4-

W02-WEST:5SS1\400568373.1                         PLAINTIFF-APPELLEE's MEMORANDUM IN
                                                  OPPOSITION TO FTC'S MOTION FOR STAY
                                                  PENDING APPEAL AND FOR CHANGE OF VENUE

1    The Florida Court entered an order on September 14, 2007 (the "Omnibus Order")

2 requiring that the Debtor pay over the amounts sought by the Receiver into a segregated

3 receivership account.  (FTCX 8).

4    The Florida Court has since ruled that the Florida Action and the Omnibus Order

5 are not subject to the automatic stay and that the Florida Court can continue with its

6 contempt proceedings.  (FTCX 22).

7    The Debtor has expended over $700,000 in legal fees and costs to date in defending

8 the Florida Action.  (IGTX 1, ¶19).  That case is set for trial in February 2008.  The

9 Debtor expects that unless the FTC is enjoined from proceeding as to the Debtor and the

10 Receiver is enjoined from enforcing the Omnibus Order that it will be required to spend as

11 much as $1 million in legal fees and costs in defending the matter.  These fees will be

12 incurred in completing discovery, responding to an expected dispositive motion by the

13 FTC, prosecuting the Debtor's appeal from the Florida Court's Omnibus Order and related

14 rulings, preparing for trial and conducting a trial expected to consume 10-20 trial days.

15 (FTCX 30).

16    The Debtor has also had to devote substantial and valuable management and

17 employee time and resources to the Florida Action.  Given the schedule in that case, the

18 Debtor's management will need to be diverted even more, to the detriment of its

19 reorganization efforts, if this action were not stayed as against the Debtor.  (IGTX 1, ¶ 20).

20    The Debtor believes that it will ultimately prevail in the Florida Action, and that it

21 will ultimately be held to owe nothing to the Receiver.  However, the Debtor could not pay

22 the money sought by the Receiver and still continue its normal operations.  The Debtor

23 requested that the Receiver agree to a stay to the implementation and enforcement of the

24 Omnibus Order.  The Receiver refused.  The Debtor thereafter filed for bankruptcy

25 protection.  Contrary to the FTC's unsupported assertion, Integretel did not file for

26 bankruptcy in order to escape an enforcement action.  Rather, Integretel litigated with the

27 FTC for almost a year at great expense, and went into bankruptcy only because of the

28 order to pay money to the Receiver that it did not have.  (IGTX 1, ¶¶ 21, 22).

**C.    The Adversary Proceeding and Injunction**

On September 19, 2007, Integretel initiated an adversary proceeding by filing a complaint in the bankruptcy court in order to obtain injunctive relief against the FTC and the Receiver to stay the continuation of the Florida Action and the enforcement of the Omnibus Order.  (FTCX 11).  The complaint alleges that Integretel's claims are core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).  Integretel promptly filed a motion for a temporary restraining order and a preliminary injunction.  (FTCX 12).  After extensive briefing and hearings, the bankruptcy court took the matter under submission and on November 2, 2007, it issued a 62-page Memorandum Decision comprehensively addressing the motion and issuing the injunction at issue here.  (FTCX 25).  The FTC asked that the court stay the injunction pending appeal and the court rejected that request, saying:

> I don't know how long the District Court. . .is going to take in prosecuting your appeal, but the key is that the purpose – the whole purpose of the order would be thwarted.  The injunction would be thwarted if I didn't deny the stay under this circumstance. . . .I think the Debtor would be irreparably injured. . .if I did stay it now. . .and that the balance of the hardships favors the Debtor.  And to the extent that the Court believes that the Court's decision has a likelihood of success on appeal, the Court so believes.

(IGTX 2, at 45-46).

On November 8, 2007, the bankruptcy court issued the formal preliminary injunction order.  (FTCX 26).

## ARGUMENT

### III.

### THIS COURT SHOULD DENY A STAY PENDING APPEAL

**A.    This Court Should Only Issue a Stay if the Bankruptcy Court Abused its Discretion in Denying a Stay Pending Appeal.**

1    "[A] discretionary stay pending appeal is viewed as an extraordinary remedy." *In re*

2    *Fullmer*, 323 B.R. 287, 293 (Bankr. D. Nev. 2005); see also *In re Wymer*, 5 B.R. 802, 806

3    (Bankr. 9th Cir. 1980) (power to be reserved for exceptional situation).

4        "When a bankruptcy court has ruled on the issue of a stay of its order pending

5    appeal, the district court, sitting as an appellate court, reviews that decision for abuse of

6    discretion." *In re Irwin*, 338 B.R. 839, 843 (E.D. Cal. 2006) (quoting *Universal Life*

7    *Church v. United States*, 191 B.R. 433, 444 (E.D. Cal. 1995)); *In re Wymer*, 5 B.R. at 807

8    (appellate court should only grant a stay if the bankruptcy court abused its discretion in not

9    doing so).

10       Here, the bankruptcy court did not abuse its discretion in denying a stay pending

11   appeal.  The purpose of the injunction was to halt the enforcement action as to Integretel

12   until it is clear that the proceeding will be beneficial to the public interest and not just put

13   Integretel out of business due to the very significant costs involved and the distraction

14   from the reorganization process.  Staying the injunction would prevent the injunction from

15   accomplishing its purpose, as the litigation would then proceed and Integretel would suffer

16   the irreparable injury identified by the bankruptcy court.

17       This is not a situation where a stay pending appeal preserves the status quo pending

18   appellate review.  Rather, the injunction affords the Debtor a breathing spell from the

19   litigation for a limited four-month period while it determines whether it can preserve its

20   business.  At the end of the injunction period, the FTC will not have lost any claims, rights,

21   or remedies it presently has.  It can show no urgency to its pursuit of litigation against

22   Integretel, which stopped doing business with the alleged perpetrators of the scheme at

23   issue long before the FTC brought suit.

24   **B.    The Applicable Standard for a Stay Requires a Showing of Irreparable Injury
25         to Appellant and Lack of Harm to Appellee.**

26       The Ninth Circuit test for a stay pending appeal is long-standing:

27             1. Appellant is likely to succeed on the merits of the appeal.

28             2. Appellant will suffer irreparable injury.

3. No substantial harm will come to appellee.
4. The stay will do no harm to the public interest.

*In re Wymer*, 5 B.R. at 806 (citing *Schwartz v. Covington*, 341 F.2d 537, 538 (9th Cir. 1965)).  "Movant's failure to satisfy one prong of the standard for granting a stay pending appeal dooms the motion.'" *In re Irwin,* 338 B.R. at 843 (quoting *In re Deep*, 288 B.R. 27, 30 (N.D.N.Y. 2003).

Here, the FTC fails to satisfy any of the necessary elements, as set forth below.

**C.    The FTC is not Likely to Succeed on the Merits.**

In this appeal the FTC will be required to show that the bankruptcy court's decision to issue a preliminary injunction should be overturned.  It faces a very heavy burden in doing so.  "Review of a ruling on a motion for a preliminary injunction is very limited. (Citation). The decision to grant or deny is within the discretion of the trial court and will only be reversed if that discretion has been abused or if the decision is based on erroneous legal standards or clearly erroneous findings of fact. (Citations)." *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985) (internal quotations omitted).  The limited review of a preliminary injunction does not allow the reviewing court to substitute its judgment for that of the trial court based on  making a different application of the law to the facts.  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971);  *Sports Form, Inc. v. United Press Intern., Inc.*, 686 F.2d 750, 752 (9th Cir. 1982).

The Bankruptcy Court followed the applicable law in this Circuit in concluding that it was appropriate to enjoin the Florida Action as it pertains to Integretel for a brief period to allow the Debtor to determine if it can reorganize without the financial cost and management distraction of defending a summary judgment proceeding and a trial in Florida.  That law is set out in the  very recent decision of the Ninth Circuit in *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086 (9th Cir. 2007) ("*Excel*").  The FTC, in contrast, ignores *Excel* in favor of an argument

never adopted by the Ninth Circuit that law enforcement proceedings can only be enjoined if there are "exceptional circumstances."[2]

"Section 105(a) gives the bankruptcy courts the power to stay actions that are not subject to the 11 U.S.C. § 362(a) automatic stay but '<u>threaten the integrity of a bankrupt's estate</u>.'" *Excel*, 502 F.3d at 1093 (citations omitted; emphasis added).  Bankruptcy courts have the power to enjoin prosecution of governmental actions even if they fall under the police and regulatory power exception:

> There [is] a procedural avenue to forfend state actions that are not subject to the automatic stay but that threaten the bankruptcy estate:  a request for an injunction under 11 U.S.C. § 105.  The bankruptcy court's injunctive power is not limited by the delineated exceptions to the automatic stay . . .

*Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1087 (9th Cir. 2000) (*en banc*).  *See* H.R.Rep. No. 95-595, at 342 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6298 ("The effect of the [police powers] exception is not to make the action immune from injunction.  The court has ample other powers to stay actions not covered by the automatic stay.  Section 105 . . .grants the power to issue [such an injunction]."); *Walsh v. West Virginia (In re Security Gas & Oil, Inc.)*, 70 B.R. 786, 792 (Bankr. N.D. Cal. 1987) ("well established that the bankruptcy court may . . . affirmatively enjoin acts against a debtor that are not prohibited by the automatic stay").

*Excel* also holds that "The usual preliminary injunction standard applies to stays of proceedings under 11 U.S.C. § 105(a)."  Memorandum Decision at 18:18-20.  As applied to a Chapter 11 case, that standard means that "a bankruptcy court must consider whether the debtor has a reasonable likelihood of a successful reorganization, the relative hardship of the parties, and any public interest concerns if relevant."  *Excel*, 502 F.3d at 1096.  The

---

[2] The lone circuit court case cited for that proposition by the FTC uses that phrase in dicta after finding the issue was moot in the case before it and did not offer any analysis or explanation for its use of that phrase. *Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora*, 805 F.2d 440, 449 n.14 (1st Cir. 1986).

1   bankruptcy court  amply considered each of these factors in detail  and concluded that

2   "continued prosecution of the Enforcement Action severely threatens the integrity of the

3   bankruptcy process and Debtor's prospects for reorganization."  Memorandum Decision at

4   29:6-8.

5        First, the bankruptcy court detailed the basis for its conclusion that the Debtor has a

6   strong likelihood of a successful reorganization.  The court pointed out that in a  "short

7   period of time, Debtor has obtained the confidence of its creditors that Debtor is a viable

8   business. . .."  Memorandum Decision at 20:11-12.  The court noted that, among other

9   things, Integretel's creditors have consented to use of cash collateral, that the LECs have

10  continued to forward funds to Debtor,  and that Integretel has obtained the Committee's

11  support for its prepayment plan and for continued use of cash collateral.[3]  *Id*. at 20-21.  The

12  FTC cannot demonstrate that any of these factual findings by an experienced bankruptcy

13  judge, who is familiar with many hundreds of Chapter 11 cases, are clearly erroneous.  It

14  does not even try to make such a showing.  Instead, the FTC reargues the facts and asserts

15  that they do not demonstrate a likelihood of a successful reorganization.[4]  In *Excel*, the

16  Ninth Circuit found that requiring a debtor to show  a reasonable likelihood of success in

17  reorganizing if the requested injunctive relief is granted  "is not a high burden" to meet.

18  502 F.3d at 1097.  Here, where the bankruptcy court found that the Debtor was likely to be

19  able to reorganize based on factual findings that are not clearly erroneous, this Court has

20  no basis to overturn that conclusion on appeal.

21  _____

22  [3] In its motion, the FTC makes much of the fact that cash collateral use has been allowed on an interim basis on several occasions as purportedly showing that the Debtor's business is shaky.  But the bankruptcy court found that "it is not unusual in a chapter 11 bankruptcy case for a debtor to

23  seek multiple interim requests for use of cash collateral. . .."  Memorandum Decision at 31.

24  [4] The FTC also argues that reorga nization could not be found to be likely because Integretel had

25  not filed its Schedules and Statement of Financial Affairs at the time the preliminary injunction was issued.  But Integretel made these financial disclosures on the date they were due and the y

26  afford no basis for reaching a different result than that of the bankruptcy court.  Similarly, the FTC claims that Integretel's dispute with its landlord demonstrates that its ability to survive the

27  relocation process "seems doubtful."  But Integretel has obtained sufficient time from the landlord to either relocate or arrange to stay in its present premises.

28

1        Moreover, the FTC's argument that the Debtor may not be able to reorganize is

2    wholly self-defeating.  If the Debtor is likely to collapse in the next 30-90 days as the FTC

3    contends, there is no reason whatsoever that  Integretel should be spending substantial

4    monies that would otherwise go to creditors on attorneys' fees for the Florida Action.  That

5    case is only worth pursuing if the FTC has a significant likelihood of a monetary recovery,

6    or, at least, that Integretel will still be in business so that the permanent injunctions sought

7    by the FTC would be meaningful.  The bankruptcy court properly stayed the litigation until

8    it becomes clear that there is some purpose to it.

9        Similarly, the bankruptcy court made factual findings as to the relative harms to be

10   suffered by Integretel and the FTC in the event the Florida Action was or was not stayed as

11   to Integretel.  Rather than demonstrate that any of these findings are clearly erroneous, the

12   FTC merely repeats the same arguments that the bankruptcy court carefully considered and

13   rejected.  What is most telling in connection with this motion, which seeks to second-guess

14   the bankruptcy court's conclusion that Integretel needs relief from the Florida action for a

15   few months in order to have a chance of reorganizing, is that the FTC does not show that

16   there is any danger of ongoing violations by Integretel that demand that the Florida Action

17   needs to proceed immediately.  The fact that the FTC has never sought a preliminary

18   injunction against Integretel indicates that there is no such danger and that the public

19   interest does not demand that the action continue unabated.  The FTC has  no basis for

20   arguing that delaying a summary judgment motion and  trial against Integretel for a few

21   months will harm the FTC or the public.

22       In contrast, the bankruptcy court found that Integretel would suffer serious harm

23   both financially and to its reorganization prospects if forced to continue litigating with the

24   FTC in Florida.  The bankruptcy court detailed the Debtor's need for its president and other

25   personnel to be available to assist in reorganizing the company.  Memorandum Decision at

26   27-28, 32-34.  The court noted that it may well be possible to settle the Florida Action and

27   allowing time in which the Debtor is not enmeshed the litigation to do that "is critical at

28   this juncture" "where Debtor should instead be seeking confirmation of a plan of

1  reorganization. *Id*. at 28-29, 34. Further, the court credited Integretel's evidence as to the

2  likely costs of litigating the Florida Action through summary judgment and trial, finding

3  that these costs "would seriously impair, if not strike a death knell, to Debtor's prospects

4  for reorganization." *Id*. at 35. The bankruptcy court found that "it is the unusual

5  convergence—almost a perfect storm—of the trial schedule in the Enforcement Action and

6  the critical first few months of a viable chapter 11 bankruptcy case that warrant a limited

7  preliminary injunction at this time." *Id*. at 29. These findings are not clearly erroneous but

8  are well supported by the evidence in the record.

9      In sum, Integretel established the elements of proof necessary to enjoin the FTC

10  from proceeding with the Florida Action for a brief period. Debtor is reasonably likely to

11  reorganize and will be significantly harmed if the injunction does not issue.

12  **D.    The FTC will not Suffer any Irreparable Injury.**

13      In order to obtain a stay pending appeal, the FTC must, but cannot, prove that it will

14  suffer irreparable injury absent a stay. Without such injury, the Court need not consider

15  other factors but should deny a stay on this basis alone. Oakland Tribune, Inc. v.

16  Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir. 1985) ("plaintiff must

17  demonstrate that there exists a significant threat of irreparable injury"). Here, the *sole*

18  basis for the FTC's claim of irreparable injury is that any delay in proceeding with a trial as

19  to either Integretel or the other defendants in the Florida Action would result in "justice

20  being delayed" by denying the FTC the ability to "promptly" place Integretel under a

21  permanent injunction. Motion at 13:3, 13:13. But the FTC offers no sound reason why

22  any delay itself constitutes irreparable injury. Indeed, delay does not normally constitute

23  irreparable injury—"The possibility that adequate compensatory or other corrective relief

24  will be available at a later date, in the ordinary course of litigation, weighs heavily against

25  a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 917, 953

26  (1982), *quoting Virginia Petroleum Jobbers v.FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958).

27      As noted above, the FTC has not sought a preliminary injunction against Integretel

28  during the year that Integretel has been a defendant in the action. It has already obtained

provisional relief against the defendants who were responsible for the scheme that led to the FTC's enforcement action and they are out of business.  The Florida Court has already denied a motion to delay the trial date based on the bankruptcy court injunction and thus at this juncture the FTC has no basis to overturn the injunction here based on its interest in proceeding against other defendants.

As to Integretel, the FTC asserts that Congress had a "clear intent" in exempting a law enforcement action from the automatic stay that prosecutions not be "deterred, delayed or avoided" by a bankruptcy filing.  But the legislative history of the exceptions to the automatic stay shows that Congress fully intended to allow bankruptcy courts to enjoin cases that were not subject to the automatic stay where it was appropriate to do so, i.e., where they "threaten the integrity of the bankruptcy process," as the Florida Action does with regard to Integretel.  *See* H.R.Rep. No. 95-595, at 342 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6298 ("The effect of the [police powers] exception is not to make the action immune from injunction.  The court has ample other powers to stay actions not covered by the automatic stay.  Section 105 . . .grants the power to issue [such an injunction].").  Moreover, even if Congress intended for enforcement actions to proceed expeditiously that does not turn any delay into an irreparable injury.

As the FTC has not and cannot demonstrate any irreparable injury stemming from this preliminary injunction, its request for a stay must be denied.

**E.    Substantial Harm will come to Integretel if a Stay is Granted.**

Granting a stay pending appeal under these circumstances would cause the harm to Integretel that the bankruptcy court sought to avoid by entering the preliminary injunction. Integretel would then have to incur very significant litigation costs, divert its management to managing and participating in the litigation, and likely lose the opportunity to reorganize the business that is intended to be afforded by a filing under Chapter 11.  The harm to Integretel is likely to be fatal.  The injury to Integretel arising from a stay pending appeal far outweighs any harm claimed by the FTC arising from delay in proceeding with the Florida Action against Integretel.

**F.    The Public Interest is not Served by Granting a Stay.**

While the FTC claims that the public interest demands that it continue prosecution of the Florida Action unabated, it makes no attempt to demonstrate that any particular relief is required against Integretel on an expedited basis to avoid harm to the public.  In contrast, there is also a public interest in reorganizing businesses so that they continue to have employees, customers and investors.  *See* Memorandum Decision, at 25.   The bankruptcy court has determined that the interest in business reorganizations would be well-served by enjoining the FTC for four months so that Integretel has an opportunity to reorganize free of the costs and distractions inherent in the Florida Action.  Staying the bankruptcy court's order would defeat that interest.

Based on the foregoing, the FTC has not established a basis for staying the preliminary injunction in this case.

**IV.**

**CHANGE OF VENUE SHOULD BE DENIED**

The FTC mixes with its stay motion an inappropriate and procedurally invalid attempt to transfer venue of this adversary proceeding to the Florida Court.  While this blatant effort at forum-shopping is imaginative, it should be rejected out of hand.   The adversary proceeding raises issues of bankruptcy law that are quite different than those before the Florida Court, particularly because the bankruptcy court is charged with considering the interests of all of the constituencies in a Chapter 11 case—the debtor, the secured and unsecured creditors, investors, the public, potential buyers, etc.  As discussed below, there is no basis to change venue here.

**A.    Change of Venue Under 28 U.S.C. § 1412**

Venue for an adversary proceeding is initially governed by Section 1409 of title 28, which provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  28 U.S.C § 1409.  Here, the venue for this adversary proceeding is proper as it was filed in the same court where Integretel's bankruptcy case is pending.

1    Section 1412 in turn authorizes a court to "transfer a case or proceeding under title

2  11 to a district court for another district, in the interest of justice or for the convenience of

3  the parties." 28 U.S.C. § 1412. However, there is "a strong presumption of maintaining

4  venue where the bankruptcy case is pending." *Southwinds Assocs., Ltd. v. Reedy (In re*

5  *Southwinds Assocs. Ltd.),* 115 B.R. 857, 862 (Bankr. W.D. Pa. 1990).

6    Thus, the party seeking such transfer bears the burden of demonstrating by a

7  preponderance of the evidence that the transfer of venue is warranted. *In re Manville*

8  *Forest Products Corp.,* 896 F.2d 1384, 1390 (2d Cir. 1990); 1 Collier on Bankruptcy, ¶

9  4.404[1], at 4-29 (15th ed. 2007) ("The party moving for a change of venue has the burden

10  of proof that must be carried by a preponderance of the evidence."). A court's

11  determination regarding a request for a transfer of venue under Section 1412 "requires a

12  case-by-case analysis that is subject to the broad discretion of the court." *In re TIG Ins.*

13  *Co.,* 264 B.R. 661, 667 (Bankr. C.D. Cal. 2001). "The power to transfer a case [or

14  proceeding] should be exercised cautiously." *In re Enron,* 317 B.R. 629, 638 (Bankr.

15  S.D.N.Y. 2004) (citing *In re Toxic Control Tech., Inc.,* 84 B.R. 140, 143 (Bankr. N.D.Ind.

16  1988); *See also In re Pavilion Place Assocs.,* 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988)

17  ("Transfer is a cumbersome disruption of the Chapter 11 process.").

18    In deciding a motion to transfer venue, courts consider a variety of private and

19  public interest factors. *In re Donald,* 328 B.R. 192, 204 (9th Cir. BAP 2005). "Such

20  factors, however, when distilled to their essence, reveal that they are mere secondary tools

21  facilitating the ultimate § 1412 analysis, which entails a balancing of due process concerns

22  of assuring appropriate access to the court for all parties in interest against the economic

23  and efficient administration of the case." *Id.*

24  **B.    Procedure**

25    As an initial matter, while Section 1412 authorizes the transfer of a "proceeding

26  under title 11 to a district court for another district," this adversary proceeding is in the

27  bankruptcy court pursuant to Northern District Local Bankruptcy Rule 5011-1 referring

28

bankruptcy matters to the bankruptcy court. This matter is within the core jurisdiction of the bankruptcy court and this Court has not been asked to withdraw the reference pursuant to 28 U.S.C. §157(d) for "cause shown." Unless this occurs, this Court does not have jurisdiction over the adversary proceeding so as to rule on a change of venue motion. *See Oaks Of Woodlake Phase III, Ltd. v. Hall, Bayoutree Associates, Ltd.* (*In re Hall, Bayoutree Associates, Ltd.*), 939 F.2d 802, 804-05 (9th Cir. 1991) (where reference has not been withdrawn district court cannot determine question involving disputed facts); *In re Manville Forest Products Corp.*, 896 F.2d 1384 (2d Cir. 1990) (movant sought a withdrawal of reference to the bankruptcy court in conjunction with the motion to change venue). The FTC must either make its motion to change venue to the bankruptcy court or obtain an order for good cause that this Court withdraw the reference.

Moreover, unless the reference is withdrawn, transfer of the adversary proceeding would be to the bankruptcy court in the new district. That would of course defeat the whole purpose of the FTC's exercise in forum-shopping, which is to bring these proceedings before the judge in the Florida Court.

The cases the FTC cites in its motion in support of initiating a change of venue in the district court are distinguishable from the circumstances here. In *Shavers v. Dale*, 182 Fed. Appx. 316 (5th Cir. 2006), after the bankruptcy court had transferred the entire bankruptcy case to a bankruptcy court in another district the district court transferred an appeal from the bankruptcy court to the same district, so that it was in the same venue as the bankruptcy case. *Id*. at 317. Here, unlike *Shavers*, the bankruptcy case remains pending in the bankruptcy court of the Northern District of California and has not been transferred to the bankruptcy court of the Southern District of Florida. Therefore, *Shavers* is irrelevant. Nor does *Raytech Corp. v. White*, 54 F.3d 187, 190 (3rd Cir. 1995) provide any support for the FTC's argument. There the reference was withdrawn, and then venue was transferred to a different district. The appellate court addressed no disputed issue with regard to the transfer and thus made no ruling that would support a transfer here, where the reference has not been withdrawn in any case.

1    This Court should reject the FTC's motion as procedurally improper.

2
**C.    The Motion Should Be Denied Because the FTC Failed to Carry Its Burden of**
3    **Proof That Transfer Is in the Interest of Justice or For the Convenience of the**
**Parties.**
4

5    Even if the motion was procedurally sound, the motion should, nevertheless, be

6    denied because the FTC fails to meet its burden of proof under Section 1412 that the

7    transfer is in the interest of justice or for the convenience of the parties.

8    **1.    Interest of Justice Test**

9    In considering whether a transfer of venue of an adversary proceeding under

10    Section 1412 will serve the "interest of justice," courts have evaluated several factors

11    including: the economic administration of the bankruptcy estate, the presumption of trying

12    cases related to a bankruptcy case in the court in which the bankruptcy is pending, judicial

13    efficiency, ability to receive a fair trial, the state's interest in having local controversies

14    decided within its borders, and the debtor's original choice of forum. *Blanton v. IMN Fin.*

15    *Corp.*, 260 B.R. 257, 266 (Bankr. M.D.N.C. 2001).

16    As indicated in *In re Donald*, 328 B.R. at 204, the factors considered under this test

17    "when distilled to their essence, reveal that they are mere secondary tools facilitating the

18    ultimate § 1412 analysis, which entails a balancing of due process concerns of assuring

19    appropriate access to the court for all parties in interest against the *economic and efficient*

20    *administration of the case.*" *Id*. (emphasis added).

21    The administration of Integretel's bankruptcy estate is harmed rather than advanced

22    if this adversary proceeding is transferred to the Southern District of Florida. The Florida

23    Court is not even remotely familiar with the issues pertaining to Integretel's bankruptcy

24    case and thus the transfer would not provide a more economic and efficient resolution of

25    the adversary proceeding. Instead, the limited funds of the estate would be further strained

26    by forcing Integretel to litigate this adversary proceeding on the opposite side of the

27    country from the bankruptcy case, Integretel's bankruptcy counsel, and Integretel itself.

28

As noted above, there is a strong presumption that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction. This weighs heavily against the transfer of the proceeding to another district away from the district where Integretel's bankruptcy case is pending. *In re Manville*, 896 F.2d at 1391 ([T]he district court in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy."); *Blanton*, 260 B.R. at 267 ("[M]any courts presume that the proper venue for a proceeding related to a bankruptcy case is in the district hearing the bankruptcy case."); 1 Collier, *supra*, at 4-29.

The FTC would have this Court ignore the presumption of keeping an adversary in the same district as the bankruptcy case. This Court should be reluctant to allow pieces to be severed from the underlying bankruptcy case so that litigation proceeds in multiple jurisdictions, rather than the desired goal of centering administration of an entire case in one jurisdiction. *See In re American International Airways, Inc.*, 66 B.R. 642, 645 (Bankr. E.D.Pa. 1986).

The Commission argues that transferring the proceeding to the Florida court would be in the interest of judicial economy, but the cases cited by the Commission in support of this contention found, to the contrary, that judicial economy is achieved by having the adversary proceeding decided by the bankruptcy court administering the debtor's bankruptcy. *In re Manville*, 896 F.2d at 1391 ("[F]actors relating to the efficient administration of the bankruptcy estate [ ] cut against transferring venue."); *Shared Network Users Group, Inc., v. Worldcom Technologies, Inc.*, 309 B.R. 446, 452 (E.D. Pa. 2004) ("[T]he judicial economy to be achieved in having the entire controversy decided in one forum, in this case the bankruptcy court which is already administering the [debtor's] bankruptcy."); *SenoRX v. Coudert Bros. LLP*, 2007 WL 2470125 at *2 (N.D. Cal. 2007) ("[J]udicial efficiency will be served by administering all claims against the estate in the same forum.").

The Commission fails to delineate how any interest in judicial economy would ensue by the transfer of venue. The fact that the Florida Action is before the Florida court is irrelevant to the efficient and economical resolution of the adversary proceeding and the

administration of the estate.  Rather, it is the knowledge of the Integretel bankruptcy that is

critical to judicial economy because the adversary proceeding and this appeal require the court

to, *inter alia*, determine if the Florida Court's orders "threaten the integrity" of the bankruptcy

estate and "consider whether [Integretel] has a reasonable likelihood of a successful

reorganization" in deciding whether to grant or deny the requested injunction under 11 U.S.C.

§105.  *Excel*, 502 F.3d at 1096.  Such determination is efficiently made by the California

bankruptcy court presiding over Integretel's case.  However, if the adversary proceeding is

transferred, then the resolution of the adversary proceeding would be up to the Florida Court, a

court that has no special expertise in bankruptcy and that is wholly unfamiliar with Integretel's

bankruptcy case.  Thus, such transfer would shift the burden of adjudicating the instant

proceeding to another court that has no capability of making a proper decision.

Judicial efficiency is better served by maintaining this adversary proceeding in this

district.  The bankruptcy court overseeing Integretel's bankruptcy is better situated than the

Florida court to properly resolve the claims asserted in the adversary.  Integretel has no

connection with the Southern District of Florida other than that the FTC brought suit in

that jurisdiction.  Integretel correctly venued its bankruptcy case in this District, where its

business and assets are located.

The Commission contends that transfer will allow the Florida Court to have

jurisdiction over both the Florida Action and this adversary proceeding, which would

avoid purported inconsistency between the rulings of that court and the California

bankruptcy court.[5]  These alleged inconsistencies do not relate to the bankruptcy court's

---

[5] In arguing for a change of venue, the FTC contends that the Florida Court is a preferable venue because of that court's "intimate familiarity . . . with the numerous issues of law and fact" in the enforcement action. (FTC Mem. at 19.) But in a recent filing in the Florida Court, the FTC took exactly the opposite position, arguing that the enforcement action was "neither factually nor legally complex," that it is a "garden variety" case, and that it does not involve highly contested factual issues.  (IGTX 3, at 4-6).

The FTC misrepresents the facts yet again in arguing that Integretel "games the system by making fundamentally inconsistent representations" to different courts. (FTC Mem. at 22.) The example given by the FTC is that Integretel told the Eleventh Circuit that the status quo was that

1  decision concerning the FTC's enforcement action. Rather, they relate to the bankruptcy

2  court's decision concerning the $1.7 million that the receiver is seeking to collect, which

3  are not the subject of the FTC's motion.[6] In any case, transferring the litigation over the

4  $1.7 million to the Florida Court would raise insurmountable problems.

5      First, the Florida Court would be in the position of having to decide whether its own

6  decisions were likely to be affirmed on appeal, which would at a minimum create an

7  appearance of unfairness and could well provide grounds for the judge's disqualification.

8  Upon the filing of the bankruptcy petition, the bankruptcy court for this district obtained

9  exclusive *in rem* jurisdiction over the property in Integretel's bankruptcy estate, ousting

10  any jurisdiction that the Florida Court may have had.  28 U.S.C. § 1334(e) (the bankruptcy

11  court where the bankruptcy is pending has exclusive jurisdiction "of all of the property,

12  wherever located, of the debtor. . .and of property of the estate"); *See In re Crown*

13  *Vantage, Inc.*, 421 F.3d 963, 971 (9th Cir. 2005) ("requirement of uniform application of

14  bankruptcy law dictates that all legal proceedings that affect the administration of the

15  bankruptcy estate be brought either in bankruptcy court or with leave of the bankruptcy

16  court."); *In re U.S. Brass Co.*, 110 F.3d 1261, 1268 (7th Cir. 1997) (28 U.S.C. 1334(e)

17

18  "'Integretel still holds the disputed funds,'" but told the Bankruptcy Court, "'The status quo is and was Debtor's possession and use of all its money[.]'" (FTC Mem. at 22, 23 (quoting FTCX 34 at 4

19  and FTCX 35 at 7)).  But there is no inconsistency.  Integretel's letter does not refer to the fact that the disputed funds had been deposited in a segregated account.  Therefore, it cannot be understood

20  as making any representation at all about whether the funds would remain in that account. It merely made the point that the funds were still in Integretel's possession.  Indeed, the status quo at

21  the time included the fact that Integretel remained free to ask the bankruptcy court to release the funds, which had been deposited in the segregated account pursuant to a stipulation that

22  contemplated that that Integretel could seek permission to use the disputed funds after October 15, 2007.  Thus, Integretel's statement to the Eleventh Circuit was fully consistent with Integretel's

23  position before the Bankruptcy Court.

24  [6] The bankruptcy court has recently entered a preliminary injunction preventing the receiver and

25  the FTC from taking further action to collect that sum.  FTC has appealed that injunction to this Court and has moved to have the injunction stayed.  The FTC cannot possibly show that it would

26  be irreparably injured without a stay, because the $1.7 million has been deposited in a blocked account under the bankruptcy court's control.  As of the filing of this memorandum, the Receiver

27  has not filed an appeal.

28

"was intended to eliminate jurisdictional disputes arising from the equity principle that makes *in rem* jurisdiction over an item of property exclusive in the first court to assert such jurisdiction over it"); *In re Modern Boats, Inc.*, 775 F.2d 619, 620 (5th Cir. 1985) (admiralty court's jurisdiction over vessel yielded once bankruptcy filed).  Given that jurisdiction, and the Ninth Circuit's ruling in *Excel,* the bankruptcy court is entitled to maintain the integrity of the bankruptcy estate, which is a wholly separate responsibility than the much narrower issue of whether the Receiver is entitled to collect money from Integretel or whether the FTC's lawsuit in Florida can proceed against Integretel.  The bankruptcy court plainly had the power to issue the injunction that temporarily enjoined the Florida Action and there is no conflicting jurisdiction in any other court.

Finally, the remaining factors with regard to the interest of justice weigh in favor of preserving Integretel's original choice of forum.  Integretel and all of its creditors are entitled to have a bankruptcy court hear disputes within that court's core jurisdiction for the benefit of the entire creditor body—once Integretel sought relief in bankruptcy, the Bankruptcy Code enacted by Congress governs Integretel's rights and responsibilities as a debtor.  Venue in California is more appropriate for this proceeding because it constitutes Integretel's original choice of forum and because of this state's interest in having local controversies decided within its borders.

### 2.    The Convenience of the Parties Test

With respect to the "convenience of the parties," courts have considered factors including: the location of the parties, the ease of access to the necessary proof, the convenience of the witnesses, the availability of the subpoena power for unwilling witnesses, and the expense related to obtaining witnesses.  *In re TIG Ins.*, 264 B.R. at 668.

Integretel is located in this district and its creditors have already come to this forum to resolve issues pertaining to their claims and other disputes.  The Creditors Committee and the various secured creditors are represented by California counsel.  There is no more burden on the Commission to litigate this matter in this district than it would be if the proceeding were in Florida.  The Commission has already appeared in the matter and

litigated the issue of the preliminary injunction before the California bankruptcy court. However, Integretel would incur extra expenses of having to litigate this proceeding away from the forum where its bankruptcy case is pending. Further, such extra expenses would be incurred during the critical time for Integretel in its effort to reorganize, a concern that the bankruptcy court recognized. Memorandum Decision, at 29.

None of the remaining factors weigh in favor of the transfer.

**V.**

**<u>CONCLUSION</u>**

The FTC has failed to offer any basis for a stay pending appeal. The bankruptcy court did not abuse its discretion in declining to stay its preliminary injunction. Nor has the FTC demonstrated that it will be irreparably injured if the Florida Action is stayed as to Integretel for a four month period. The bankruptcy court properly concluded that continuing the Florida Action against Integretel for the next four months would threaten the integrity of the bankruptcy estate by depriving the Debtor of personnel and funds necessary for reorganization.

Nor would it be appropriate to change venue of this action. The motion is procedurally improper and substantively meritless. Accordingly, the motion to transfer venue should be denied.

Dated: November 30, 2007

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        <u>/s/ Steven B. Sacks</u>

STEVEN B. SACKS
Attorneys for Debtor THE BILLING RESOURCE, dba INTEGRETEL.