UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ARTHUR S. WEISSBRODT, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 07-52890-ASW |
| | ) Chapter 11 |
| THE BILLING RESOURCE, dba | ) |
| Integretel, a California | ) R.S. JLF-001 |
| corporation, | ) <u>MOTION for RELIEF from</u> |
| | ) <u>STAY by LSI CORPORATION</u> |
| Debtor. | ) |
| | ) |
| | ) |
| THE BILLING RESOURCE, | ) Adv. No. 07-5156 |
| | ) |
| Plaintiff, | ) <u>PLAINTIFF'S MOTION for</u> |
| | ) <u>ORDER to SHOW CAUSE</u> |
| v. | ) <u>REGARDING PRELIMINARY</u> |
| | ) <u>INJUNCTION re ORDER to STAY</u> |
| DAVID R. CHASE, Federal Receiver, | ) <u>ENFORCEMENT of OMNIBUS ORDER</u> |
| et al., | ) |
| | ) |
| Defendants. | ) Wednesday, November 21, 2007 |
| | ) San Jose, California |

<u>Appearances</u>:

| | |
|---|---|
| For the Debtor and Plaintiff/Movant (via telephone in the afternoon): | Steven B. Sacks, Esq. Sheppard Mullin Richter & Hampton Four Embarcadero Center, 17th Floor San Francisco, California  94111-4109 |
| For the Committee (via telephone): | Maxim B. Litvak, Esq. Pachulski Stang Ziehl Young & Jones 150 California Street, 15th Floor San Francisco, California  94111-4500 |
| For the Committee (via telephone): | John D. Fiero, Esq. Pachulski Stang Ziehl Young & Jones 3 Embarcadero Center, Suite 1020 San Francisco, California  94111-5994 |
| From the Federal Trade Commission (via telephone): | John Singer, Attorney Michael Mora, Attorney 600 Pennsylvania Avenue, N.W. Washington, D.C.  20580 |

Appearances continued on next page.

2

Appearances:

| | |
|---|---|
| For the Federal<br>Receiver, David R.<br>Chase: | Walter K. Oetzell, Esq.<br>Danning, Gill, Diamond & Kollitz, LLP<br>2029 Century Park East, Third Floor<br>Los Angeles, California  90067-2904 |
| For LSI Corporation: | Jenny Fountain, Esq.<br>Robert A. Franklin, Esq.<br>Murray & Murray, P.C.<br>19400 Stevens Creek Boulevard, Suite 200<br>Cupertino, California  95014-2548 |
| For the Owner of the<br>Property: | David M. Wiseblood, Esq.<br>Seyfarth Shaw LLP<br>560 Mission Street, Suite 3100<br>San Francisco, California  94105 |
| From the Federal<br>Trade Commission<br>(via telephone): | Collot Guerard, Esq.<br>Richard McKuen, Esq.<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20580 |
| For PaymentOne<br>Corporation (via<br>telephone): | Steven H. Warren, Esq.<br>O'Melveny & Myers LLP<br>400 South Hope Street<br>Los Angeles, California  90071-2899 |
| Digital Court<br>Recorder: | United States Bankruptcy Court<br>Clerk of the Court<br>Erin Coyle<br>280 South First Street, Room 3035<br>San Jose, California  95113<br>(408) 535-5003 |
| Certified Electronic<br>Transcriber: | Palmer Reporting Services |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

*Motion for Order to Show Cause re Preliminary Injunction*                3

1   Wednesday, November 21, 2007                10:58 o'clock a.m.

2                   P R O C E E D I N G S

3        THE COURT:  Oh, that's Billing Resource, fine.  Okay.

4   That makes sense now.

5        MS. FOUNTAIN:  Good morning.  Jenny Fountain and Bob

6   Franklin of Murray and Murray for LSI Corporation.

7        THE COURT:  Good morning.

8        MR. SACKS:  Good morning.  Steven Sacks, Sheppard

9   Mullin, for the debtor.

10        THE COURT:  Good morning.

11        MR. WISEBLOOD:  Good morning, Your Honor.  David

12   Wiseblood appearing on behalf of the owner of the property and

13   interested party.  Just listening in this morning.

14        THE COURT:  Good morning, Mr. Wiseblood.

15        MR. LITVAK:  Good morning, Your Honor.  Max Litvak

16   with Pachulski Stang for the Creditors' Committee.

17        THE COURT:  Can you tell me your last name?

18        MR. LITVAK:  Sure, Your Honor.  Litvak, L-i-t- —

19        THE COURT:  Oh.

20        MR. LITVAK:  — -v-a-k.  Good to meet you.

21        THE COURT:  Nice to meet you.  You're not a Goltziana;

22   you're a Litvak?  You don't know what that means?

23        MR. LITVAK:  No.

24        THE COURT:  You don't know the distinction?  Can you

25   write it down?  Write down Litvak and Goltziana, and then go

*Motion for Order to Show Cause re Preliminary Injunction*                4

1    back to your firm and ask them what it means.

2            MR. LITVAK:  Okay.

3        (Laughter.)

4            MR. LITVAK:  Let me write — homework —

5            THE COURT:  Can you write —

6            MR. LITVAK:  — assignment.

7            THE COURT:  Can — yeah, homework assignment.

8            MR. LITVAK:  Okay.

9            THE COURT:  And no written memo back.

10        (Laughter.)

11            THE COURT:  But Litvak and Goltziana; do you have

12    that?

13            MR. LITVAK:  I got it.

14            THE COURT:  Good.  Okay.  Thank you.

15            Okay.  Counsel?

16            MS. FOUNTAIN:  Yes.  We have worked out a stipulation

17    whereby the Court will enter an order pursuant to Section 362(j)

18    providing that the relief from — or the automatic stay does not

19    apply to LSI Corporation and that the debtor may remain in

20    possession of the premises to and including 12/31/07, assuming

21    that the debtor will pay 150-percent rent, which is the

22    hold-over rate that LSI is currently required to pay.  In the

23    event that LSI remains in possession after 12/31/07, the debtor

24    may also remain in —

25            THE COURT:  Wait.

*Motion for Order to Show Cause re Preliminary Injunction*                    5

1          MS. FOUNTAIN:  — possession —

2          THE COURT:  Oh, I see.  If LSI —

3          MS. FOUNTAIN:  If LSI —

4          THE COURT:  — is in possession...

5          MS. FOUNTAIN:  — after 12/31/07, the debtor may also

6   remain in possession up to the day that LSI vacates.

7          We would also request that this order issue a writ of

8   possession upon the request of LSI in the event the debtor does

9   not vacate on 12/31/07 or the date that the debtor or that LSI

10  vacates.

11         THE COURT:  What kind of notice do you need to give

12  them that you're vacating after 12/31?  I mean, if you all of a

13  sudden pick up at three o'clock and vacate, you can't expect

14  them to have vacated by 4:30 the same day.  You need to give

15  them some kind of — what's going to happen?

16         MS. FOUNTAIN:  Certainly —

17         THE COURT:  How is it going to work?

18         MS. FOUNTAIN:  Sir, we can give the debtor three days'

19  notice, as we would under state the law.

20         THE COURT:  Okay.  Is that okay?

21         MR. SACKS:  Well, I think if this is going to go past

22  12/31 we should probably have more notice than that.  And I

23  think they will know earlier than that.  So maybe we can say

24  December —

25         THE COURT:  Seven days' notice?  Is it —

*Motion for Order to Show Cause re Preliminary Injunction*                                6

1    MR. SACKS:  Given that that would make it the evening

2  before Christmas, I was going to suggest December 15th.

3    THE COURT:  No, no, no.  You have until the end of the

4  year.

5    And we're only talking about them vacating after the

6  first of the year, aren't we?

7    MS. FOUNTAIN:  Correct.

8    MR. SACKS:  Right.

9    MS. FOUNTAIN:  LSI intends to vacate on 12/31, but in

10  the event that it does hold over longer.

11    THE COURT:  Right.  So we're not talking about

12  Christmas at all.

13    MR. SACKS:  Well, I —

14    THE COURT:  Oh, you mean the notice would come

15  Christmas?

16    MR. SACKS:  What — right.  What I was suggesting was

17  that if they're going to be able to stay past December 31, if

18  they are not giving up possession, that they would know that by

19  the 15th of December and could give us notice by that date that

20  they —

21    THE COURT:  Do you think that's true, that by the 15th

22  you'll know whether you're staying past the 31st?

23    MS. FOUNTAIN:  Your Honor, —

24    THE COURT:  You have this man pacing behind you.

25    MS. FOUNTAIN:  — I don't know that that's true.

*Motion for Order to Show Cause re Preliminary Injunction*                    7

1    THE COURT:  I don't know that he's going to let you

2   finish the hearing without knocking you over and trying to

3   address the Court.  But I'm just mentioning it, because I don't

4   want it to get —

5        You obviously want to say something, Mr. Franklin.

6        MR. FRANKLIN:  Yeah.  LSI has every intention of being

7   out of the premises by 12/31.

8        THE COURT:  So they just want to know, so it's

9   reasonable, if you're going to stay over, since they have the

10  right to stay over, how they're going to know what you decided.

11       MR. FRANKLIN:  I don't know how to do that.  I mean, I

12  think that it — by 12/15, I don't know whether they will be —

13  will know whether they're going to be out or not.  Their

14  intention right now is to be out by 12/31.

15       THE COURT:  Okay.  But can't we say that you're going

16  to be out by 12/31, but if you're not, you'll give them at least

17  some minimum notice that they — that they can stay for these —

18  whatever —

19       MR. FRANKLIN:  Sure.  And if we're not going to be

20  out, we can give them notice, right.

21       MR. SACKS:  That's all we're talking about.

22       MR. FRANKLIN:  That's all they're talking about.

23       THE COURT:  Yeah, all right.  But we still haven't

24  quantified the notice.  We're still — I mean, as far as this

25  conversation goes, you could tell them on 12/30, on New Year's

1  Eve, "We're staying, we're staying."

2          Do you need a few minutes to talk, or —

3          MR. FRANKLIN:  I just don't — I'm — I'm trying to

4  conceive of what that situation would be.  I mean —

5          THE COURT:  You're not moved out, you're thinking —

6  you need a little more time.  People have —

7          MR. FRANKLIN:  We're — we're a subtenant.  We're a —

8  sorry — we're a tenant; we're subleasing to the debtor.

9          THE COURT:  I know.

10         MR. FRANKLIN:  And I think Mr. Weissbrodt's client

11  is —

12         THE COURT:  I am Weissbrodt, he's Wiseblood.

13     (Laughter.)

14         THE COURT:  We knew that would happen, didn't we, Mr.

15  Wiseblood?

16         MR. WISEBLOOD:  Your Honor, yes — yes, we did.  It's

17  nice to know that there's some consistency in our relationship.

18         MR. FRANKLIN:  Nice to know I'm so predictable, too.

19         THE COURT:  All right.  Well, what do you say, Your

20  Honor?  What was your ruling?

21         Go ahead.  So talk for five minutes among yourselves,

22  and let me do my calendar, and then come back.

23         [COUNSEL]:  Okay.

24     (The hearing was recessed at 11:03 a.m. and resumed at

25  11:16 a.m. as follows:)

*Motion for Order to Show Cause re Preliminary Injunction*                    9

1              THE COURT:  Okay.  Billing resource.

2              MS. FOUNTAIN:  Robert Franklin and Jenny Fountain for

3    LSI Corporation.

4              THE COURT:  We're going to try again to see if he

5    let's you go through with this.

6              That's not going to affect you one bit, Mr. Franklin.

7              MR. SACKS:  Steven Sacks, Sheppard Mullin, for the

8    debtor.

9              MR. LITVAK:  Max Litvak for the Creditor's Committee.

10             THE COURT:  Did you find out yet?

11             MR. LITVAK:  Not yet.

12             THE COURT:  You've had plenty of time.

13             MR. LITVAK:  Not yet, Your Honor.

14        (Laughter.)

15             THE COURT:  And there was an appearance on the phone?

16   Was Mr. Wiseblood on this one, or no?

17             MR. SACKS:  He was, but —

18             THE OPERATOR:  He was.

19             THE COURT:  Mr. Wiseblood?

20             THE OPERATOR:  No, I just cut him off.

21             THE COURT:  We're off the record.

22        (Off the record from 11:17 a.m. to 11:18 a.m.)

23             MR. WISEBLOOD:  Still good morning, Your Honor.

24             THE COURT:  Go ahead.

25             MR. WISEBLOOD:  Still good morning, Your Honor.  David

*Motion for Order to Show Cause re Preliminary Injunction*                10

1    Wiseblood for the owner.  And I did get disconnected by your

2    staff, perhaps.  The absence of a black robe this morning, Your

3    Honor.

4            THE COURT:  I understand.  Well, there's a little

5    competition, you know, Mr. Wiseblood.  They're —

6            MR. SACKS:  Are you wearing a bathrobe, Mr. Wiseblood?

7            THE COURT:  — very protective of the Court's

8    jurisdiction.

9            MR. WISEBLOOD:  Yes, Your Honor.  I respect that, Your

10   Honor.

11           THE COURT:  All right.  So my understanding is that

12   you may have a deal?

13           MS. FOUNTAIN:  Yes, I believe we do.  So, as we were

14   discussing earlier, the comfort order under Section 362, that

15   the stay does not apply, the debtor will vacate on 12/31/07 or

16   later, in the event that LSI is in possession of the premises

17   after 12/31/07.

18           However, the debtor must vacate on the date that LSI

19   vacates.  A writ of possession to issue in the event that the

20   debtor does not vacate.  However, LSI will give five days'

21   notice of the date that it will vacate the premises, so — five

22   business days' notice.

23           So on 12/31, we'll give five business days' notice

24   prior to that, and on a go-forward basis.  The writ may execute

25   upon the expiration of that five days.  The —

1          THE COURT:  Assuming you're really out.  You have to

2     be out, because they have the right to stay as long as you're

3     there.

4          MS. FOUNTAIN:  Correct.

5          THE COURT:  So the writ — you'd have to say — in your

6     request for the writ, you have to say, "We're out, they're not."

7          MS. FOUNTAIN:  And we gave the five-day —

8          THE COURT:  And we gave the five-day notice?

9          MS. FOUNTAIN:  Correct.

10          The debtor will pay the hold-over rent at 150 percent,

11     plus the concomitant expenses, the triple-net lease, and all

12     catch-up payments from past due arrearages from the expiration

13     of the lease through termination at 12/31 will be made on

14     December 1, 2007.

15          THE COURT:  Is that your agreement?

16          MR. SACKS:  It is, Your Honor, with the caveat that if

17     we agree with the landlord on a lower rent rate, then we would

18     pay that as opposed to the 150 percent.

19          THE COURT:  Well, any contract is modifiable by the

20     parties.  So if you've made an agreement that's different from

21     the — what you've recited on the record, then, of course, it

22     would be binding.

23          MR. SACKS:  Right.  I'm just recognizing that LSI is a

24     pass-through here.  And the reason that we're setting the 150

25     percent is that they are presently obligated to the landlord at

*Motion for Order to Show Cause re Preliminary Injunction*                    12

1     150 percent.  If we were —

2              THE COURT:  Oh, I see.

3              MR. SACKS:  — if we were able to modify that for our

4     benefit on our space that the landlord, then LSI doesn't need a

5     150 percent.  So they're not intending to make a profit on the

6     rent payment here.

7              THE COURT:  And that's correct, isn't it?

8              MS. FOUNTAIN:  That's correct.

9              THE COURT:  Very good.  Thank you.  That will be fine.

10             Now who's preparing the order?  I'd like both of you

11    to sign off on it.  It's not your standard order, so you both

12    signed off — sign off on it.

13             MS. FOUNTAIN:  We will prepare the order, Your Honor.

14             THE COURT:  Very good.  Thank you.

15             MS. FOUNTAIN:  Thank you, Your Honor.

16             [COUNSEL]:  Thank you very much, Your Honor.

17             THE COURT:  Thank you.  Court is adjourned.  We're off

18    the record.

19        (The hearing was recessed at 11:21 o'clock a.m. and

20    continued at 2:07 o'clock p.m. as follows with all parties

21    appearing telephonically:)

22             THE CLERK:  This is the United States Bankruptcy Court

23    for the Northern District of California.  Court is now in

24    session.

25             THE COURT:  Good afternoon, ladies and gentlemen.

*Motion for Order to Show Cause re Preliminary Injunction*          13

1   This is the case of Billing Resource.  And I'm going to take

2   appearances of counsel in the order I have them.  We'll start

3   with Steven Sacks.

4           MR. SACKS:  Yes, Your Honor Steven Sacks and Michael

5   Ahrens, Sheppard Mullin, appearing for the debtor.

6           THE COURT:  Walter Oetzell.

7           MR. OETZELL:  Good afternoon, Your Honor.  Walter

8   Oetzell of Danning, Gill, Diamond & Kollitz, LLP, on behalf of

9   David R. Chase, the Federal Receiver.

10          THE COURT:  Collot Guerard?

11          MS. GUERARD:  Collot Guerard, the Federal Trade

12  Commission.

13          THE COURT:  Maxim Litvak?

14          MR. LITVAK:  I'm here, Your Honor.

15          THE COURT:  Okay.  John Fiero?

16          MR. FIERO:  Good afternoon, Your Honor.  John Fiero

17  also for the Committee.

18          THE COURT:  Stephen Warren?

19          MR. WARREN:  Good afternoon, Your Honor.  Stephen

20  Warren of O'Melveny & Myers on behalf of Payment One.

21          THE COURT:  John Singer?

22          MR. SINGER:  John Singer on behalf of the Federal

23  Trade Commission, here, Your Honor.

24          THE COURT:  Neal Goldfarb?

25          THE OPERATOR:  Your Honor, this is the operator.  We

1    still have no appearance for Mr. Goldfarb as of yet.

2            THE COURT:  Michael Mora?

3            MR. MORA:  Good afternoon, Your Honor.  Michael Mora

4    for the Federal Trade Commission.

5            THE COURT:  Is there anybody else on the phone whose

6    name I have not called?

7        (No audible response.)

8            THE COURT:  Okay.  Counsel, I have written a draft

9    decision granting a preliminary injunction.  I also have some

10   concerns.

11           The argument that the Eleventh Circuit has before it

12   now, the propriety of the Florida District Court's order before

13   it, and that the Eleventh Circuit has granted and then lifted a

14   stay.  And that the argument that what the Eleventh Circuit does

15   in terms of the stay issue is either identical to or very

16   similar to what this Court would do in the context of issuing an

17   injunction.  Those arguments are not lost on me.

18           And so if I issued an injunction, we're going to

19   become embroiled in appeals on that.  And, frankly, there's not

20   a lot of law out there on this issue.  There is law on related

21   issues.

22           Plus, in the meantime, I've done some more research

23   and come up with a couple of cases that probably the parties

24   should look at.  One is *Bulldog Trucking*, 147 Fed.3d 347 Fourth

25   Circuit.  And it's 19.  The last digit is 8, but I can't read

1  whether it's 1958 or — no, it must be 1998 — I don't know.  I

2  don't have it — I can't read my digit.

3          And the other one is *Christopher Village versus United*

4  *States* 360 Fed.3d 1319 Fed Circuit 2004.

5          MR. [SPEAKER]:  Could you please repeat the last

6  number, please, Your Honor?  I'm sorry.

7          THE COURT:  Yeah.  Christopher Village versus United

8  States 360 Fed.3d 1319 Fed. Circuit 2004.

9          MR. [SPEAKER]:  Thank you, Your Honor.

10          THE COURT:  And if I'm right that I have exclusive

11  jurisdiction to what constitutes property of the estate, then

12  those cases will be particularly instructive.

13          The other thing I've been looking at is 362(a)(3),

14  which basically — and cases, too.  And basically what that says

15  is that even if something isn't property of the estate, if it's

16  from the estate — and we'll talk about what that means in a

17  minute — then the stay applies, and that the debtor can have a

18  possessory interest in something, even if the other party has

19  been adjudicated as owning it.

20          So just to give you a very simplistic example, if

21  there has been prepetition litigation regarding the ownership of

22  a car and the nondebtor party has been determined by a court to

23  own the car, if the car is sitting in the debtor's lot, the

24  debtor has a possessory interest in the car.  The owner of that

25  car, or the person who has a judgment saying they own the car

1    can't come pick up the car without relief from stay from the

2    Bankruptcy Court.

3            Now, I'm not — I'm not doing anything more than

4    raising some of these issues with you.  I have real questions

5    how the receivership action for contempt could possibly be part

6    of the police or regulatory power exception to 362(b)(4), since

7    I don't understand that the Government was a party to the

8    contempt proceeding.  So that's problematic.

9            But in any event, I have several options.  And I'm

10   considering these options.  And as one party said to me the

11   other day, "The Court has been blunt with us and direct with

12   us."  And I intend to go on doing that.  And by "blunt," I don't

13   mean any disrespect to you.  It's just I basically want you to

14   know where I am in terms of my thinking about the case.  And I

15   appreciate your being candid with me to the extent you feel it's

16   appropriate.

17           I thought of issuing a preliminary — I got the FTC's

18   brief on the fact that the argument that it — if I issue a TRO

19   again, it's in effect a preliminary injunction, subject to

20   appeal.  So I'm aware of that argument.

21           And so one possibility would be, for example, to issue

22   a preliminary injunction of limited duration and take it through

23   December 14.

24           I've also considered whether I should abstain from the

25   whole injunction question for the reasons that I articulated

*The Court's Decision on the Preliminary Injunction* 17

1   earlier and, that is, the Eleventh Circuit has the issue.

2          But what I was hoping to do today is to obviate the

3   need for further litigation, at least for the indefinite future,

4   by structuring an agreement whereby the funds would remain in a

5   blocked account, the 1.7 that we've put in the blocked account,

6   through this Court, not through anything the debtor did

7   prepetition or postpetition, until we reached an agreement.

8          And the FTC and the Receiver have made it very clear

9   that what they're concerned about is that I would unblock the

10  funds and they wouldn't have time to appeal.

11         And the debtor presumably wants maximum flexibility to

12  unblock the funds, if they need the funds.  And to some extent

13  those are mutually-exclusive goals.

14         But what I would suggest is that as of the present

15  time the funds wouldn't get unblocked until a decision on

16  December 7.  And they wouldn't be unblocked before December 14,

17  absent some, you know, enormous emergency.

18         And I was going to suggest that we work out some

19  arrangement, pursuant to which the funds will remain blocked

20  indefinitely, without prejudice to the debtor's ability to come

21  back and ask them to be unblocked.  And if they do make that

22  request, it has to be on at least a week's notice to the FTC and

23  to the Receiver.

24         And then I wouldn't, even if they screamed emergency,

25  unblock them for a minimum of 10 days until after the hearing.

*The Court's Decision on the Preliminary Injunction*                    18

1    So that's the FTC and the Receiver aren't going to be in any

2    worse position.  They'll be in a slightly better position than

3    they are now.

4              Now, if we were able to agree to that, the funds would

5    remain blocked and the FTC would have — and then the Receiver

6    would have their respective goals of having the funds blocked

7    and having time to get to an Appellate Court.

8              If I abstain, for example, then the debtor is going to

9    be in a potentially-contempt posture almost immediately.  If I

10   issue a preliminary injunction of limited duration, then

11   potentially the FTC is going to have much less time, although

12   the FTC could appeal from the PI of a limited duration, I

13   suppose.  And I assume that's what they would do.  Whether

14   they'd find a court that was willing to hear it if the

15   preliminary injunction was only going to last a couple of weeks.

16   I don't know.

17             But my goal would be to structure something that

18   served both of your interests.  I, frankly, don't see the debtor

19   needing these funds on an immediate basis.  And it's not clear

20   to me whether they're going to need them at all, depending on

21   upon how, in particular, how the reorganization goes.

22             And when I say, "not need them at all," I mean not

23   need them for ongoing business operations.  I don't mean that

24   the debtor would in any way give up its claim that those are

25   property of the estate, that those funds are property of the

1   estate.  I just mean to need to use in an ongoing business

2   sense.

3            And it seems to me that we ought to be able to work

4   out a structure that served everybody's interest, with everybody

5   having to give up something, some — you know, the debtor

6   wouldn't have maximum flexibility.  And the FTC wouldn't have a

7   hundred-percent protection.

8            But if we could structure something that made you

9   comfortable enough on both sides, that that would be an

10  everybody's interest, more than me just deciding between one of

11  these three options, PI until March, PI of limited duration,

12  abstention, and then bringing in all these other problems,

13  including the possibility that we'd be doing additional briefing

14  on all of these issues, anyway, by the issues.

15           I've also taken a look at *Gruns*, the *Gruns'* case, but

16  that was under *Rooker-Feldman*.  And it deals with a state court,

17  so I'm not sure that's going to be helpful.  I'm not a hundred —

18  I still don't understand, frankly, the argument that the

19  District Court has jurisdiction — I'm sorry — that the FTC's

20  action is a function of the police or regulatory power of the

21  government, the FTC's consent proceeding.  I don't understand

22  that.  But, in any event, if we can work something out, none of

23  that would be litigated at this point.

24           Now let me start with the Receiver's side or the FTC

25  side.  But I don't know to whom I should address this question.

*The Court's Decision on the Preliminary Injunction*                    20

1    And you're all in different cities.  So if you want me to recess

2    for ten minutes, and you can talk among yourselves, the debtor

3    can talk to the Creditors' Committee.

4            One of the questions I have — and I still don't

5    understand it — is whether the Creditors' Committee in Florida

6    or in the Eleventh Circuit, filing briefs and, if not, why not?

7            It seems to me that if the Creditors' Committee thinks

8    that debtor is correct, having its presence be shown as part of

9    the bankruptcy, — you know, is having a very strong interest in

10   the bankruptcy estate, it might be extremely helpful to that

11   side of the picture.

12           But, in any event, — and I certainly understand that

13   counsel for Payment One has input.  And I don't see Ms. Diemer

14   on the line.  I assume we contacted her, but she's not on the

15   line.

16           So, in any event, I'll do whatever you want, but I'd

17   be glad to take a ten-minute recess.  If people want to

18   articulate what their positions are now, I'd be glad to hear

19   that, too.

20           MR. SACKS:  Your Honor, this is Stephen Sachs.  It may

21   be helpful if I go first.  And so I would propose to do that for

22   just a second.

23           We've been doing our analysis, obviously, as to

24   whether we need immediate use of $1.7 million.  And our

25   conclusion at this time is that, subject to working out an

1   arrangement, as the Court is describing, being protected from a

2   contempt proceeding and being able to go forward in this Court

3   with an amended adversary complaint of which we would seek a

4   ruling that this is, indeed, property of the estate, as well as

5   property — but it doesn't matter at that point whether it's

6   property from the estate, but I certainly agree with you that

7   would be taking property from the estate, that we would agree to

8   the proposal that the money remaining in the blocked account

9   while that litigation is going forward and only come out if we

10  gave notice as the Court has described.  So essentially we're

11  onboard.

12          What we'd like to do is get an agreement that we could

13  amend our complaint.  We would then most likely bring a summary

14  judgment motion to establish that this is property of the

15  estate, and everybody can litigate whether it is or it isn't.

16          And we would then only be releasing the money,

17  hopefully, upon a final judgment, as opposed to having to

18  litigate preliminary-injunction-type of issues here.

19          THE COURT:  Counsel for the Receiver, Mr. Oetzell, you

20  and Mr. Mora have been here most frequently.  Just procedurally

21  what do you want me to do?  I'll ask Mr. Oetzell first and then

22  Mr. Mora.

23          I'm only asking procedurally.  I'm not asking you to

24  do anything more than tell me whether you want me to recess for

25  ten minutes, or what you want me to?

1          MR. MORA:  I would prefer recessing for ten minutes.

2   Our client's on the East Coast.  And, you know, it's the weekend

3   before Thanksgiving and all that.

4          THE COURT:  Well, but they're on the phone.  Most —

5   the lawyers are on the phone.  All the lawyers who have appeared

6   regularly, Ms. Guerard has appeared regularly and, of course,

7   Mr. Mora.

8          But, anyway, — okay.  So if I — and, by the way, if

9   you'll agree that nothing gets done, we could have this hearing

10  on Monday.  It's not — there's no emergency, except for the

11  emergency that's raised by the possibility of having to issue

12  yet another injunction and, you know, having a one-day

13  injunction be appealable becomes a little crazy.  But I also

14  understand the FTC's concerned about the clock ticking, and all

15  of that.

16         So I'd be glad to recess.  How long do you propose,

17  Mr. Oetzell?

18         MR. OETZELL:  Fifteen minutes would be fine.

19         THE COURT:  That's fine.  Okay.  Is anybody opposed to

20  a 15-minute recess?

21      (No audible response.)

22         THE COURT:  So Gentner, or CourtCall?  Operator,

23  operator?

24         THE OPERATOR:  Yes, Your Honor.  I'm sorry.

25         THE COURT:  Okay.  Operator, put everybody back.

*The Court's Decision on the Preliminary Injunction*                    23

1   They're going to all have their little, you know, little

2   colloquies and discussions.  And everybody needs to be called

3   back.  And we'll make it a quarter to 3:00.

4            THE OPERATOR:  Yes, Your Honor.

5            THE COURT:  Thank you, sir.

6            [COUNSEL]:  Thank you, Your Honor.

7            THE COURT:  Thank you.

8            THE OPERATOR:  John and Collot, I'll call you.  I have

9   conference...

10           MS. GUERARD:  All right.  Let me give you...

11       (Proceedings recessed from 2:24 p.m. to 2:47 p.m.)

12           THE COURT:  The Court is back in session.

13           Mr. Sacks, have you had an opportunity to talk your

14  clients, or whatever you're doing?

15           MR. SACKS:  Yes, Your Honor.

16           THE COURT:  Okay.  And, Mr. Mora, have you had an

17  opportunity to talk your client?

18           And, Mr. Oetzell, the same?

19           But first Mr. Mora.

20           MR. MORA:  Your Honor, we haven't had an opportunity

21  to talk to our client.  But the attorneys caucused amongst

22  ourselves.  And we are prepared to explain to the Court what

23  we're prepared to do today.

24           THE COURT:  Very good.  Okay.  So why don't we start

25  with you, Mr. Mora?  Are you the spokesperson, or is Mr.

1   Oetzell?

2           MR. MORA:  I'm counsel for the Federal Trade

3   Commission, Your Honor.

4           THE COURT:  I'm sorry.  What?

5           MR. MORA:  It is Mr. Mora, like in —

6           THE COURT:  Fine.  I'm just asking whether you'd

7   agreed that you'd have a particular spokesperson?

8           MR. MORA:  Yes.  Mr. Oetzell represents the Receiver.

9           THE COURT:  No, I know that.  I understand that.

10          MR. MORA:  Okay.

11          THE COURT:  But I —

12          MR. SINGER:  Your Honor, we — Your Honor, this is John

13  Singer.  We didn't have a chance to confer with Mr. Oetzell.  I

14  don't know if Mr. Mora did, but I don't think we —

15          MR. OETZELL:  Yes, I did, John.

16          MR. SINGER:  Okay.  I apologize, then.

17          THE COURT:  Okay.  So, Mr. Mora, you're on deck.

18          MR. MORA:  Thank you, Your Honor.

19          Your Honor, it's really — in this short timeframe,

20  this was quite unexpected.  Frankly, we expected to, you know,

21  have a ruling read into the record today.  So I'm —

22          THE COURT:  Yes.  Well, that's what I told you I was

23  going to do, until I had my Deputy call you and say we were

24  going to have this conversation.

25          MR. MORA:  Understood.  So the most we can consent to

1    today amongst ourselves, is we would agree to, notwithstanding

2    our position, that we believe that the temporary restraining

3    order expires on the 25th, which is Sunday, we would agree to

4    consent to treat the temporary restraining order currently in

5    effect as continuing in effect through the close of business on

6    Monday, so that we would have a chance to, frankly, confer with

7    our clients on responding to Your Honor's suggestion.

8              THE COURT:  Oh, I see.  Okay.

9              Well, Mr. Sacks, is that good for you?  Shall we have

10   a hearing on Monday?

11             MR. SACKS:  We can have a hearing on Monday, Your

12   Honor.

13             THE COURT:  Yeah.  I have — I can — I can hear you on

14   Monday.  It's no problem.  Let me just look at my calendar.

15   Yes, I have an Inns-of-Court meeting at noon.  But we can meet

16   either — you know, you're not going to have much time, because

17   tomorrow is the last bus- — no, today is the last business day

18   before Thanksgiving.  So maybe it would be best if we did it in

19   the afternoon like 1:30-ish, or 2:00?

20             MR. SACKS:  That would be —

21             THE COURT:  That way you'd have the morning.

22   Otherwise, I don't know how much time you're going to have to

23   consult with...

24        (End of the recording at 2:49 o'clock p.m.)

25                            —o0o—

```
State of California           )
                              )    SS.
County of San Joaquin         )
```

        I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

        I further certify I am not a party to nor in any way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber through the American Association of Electronic Reporters and Transcribers, Certificate No. 00124.  Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.

Susan Palmer
Palmer Reporting Services

Dated December 4, 2007