1

1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                (SAN JOSE DIVISION)

4

5   In re:

6   THE BILLING RESOURCE,              Case No. 07-52890-ASW

7                                      Chapter 11

8                                      San Jose, California
                                       November 27, 2007
9                                      11:05 a.m.
            Debtor.
10   _____/

11   THE BILLING RESOURCE, dba
     INTEGRETEL, a California
12   corporation,

13          Plaintiff,

14      v.                             A.P. No. 07-5156

15   DAVID R. CHASE, et al.,

16          Defendants.
     _____/
17

18                TRANSCRIPT OF PROCEEDINGS
          a) MOTION FOR ORDER TO SHOW CAUSE REGARDING
19   PRELIMINARY INJUNCTION RE ORDER TO STAY ENFORCEMENT
                     OF OMNIBUS ORDER
20   b) SUPPLEMENTAL OPPOSITION BY FEDERAL TRADE COMMISSION
              c) RESPONSE BY DAVID R. CHASE
21

22        BEFORE THE HONORABLE ARTHUR WEISSBRODT
             UNITED STATES BANKRUPTCY JUDGE
23

24

25

2

```
 1  APPEARANCES:

 2
    For the Debtor:            SHEPPARD, MULLIN, RICHTER and
 3                             HAMPTON
                               BY:  STEVEN SACKS, ESQ.
 4                             Four Embarcadero Center, 17th Floor
                               San Francisco, California 94111
 5

 6
    For the Federal            DANNING, GILL, DIAMOND &
 7  Receiver:                  KOLLITZ, LLP
                               BY: WALTER OETZELL, ESQ.
 8                             2029 Century Park East, 3rd Floor
                               Los Angeles, California 90067
 9

10

11  For the Committee:         PACHULSKI, STANG, ZIEHL, JONES
                               BY: JOHN FIERO, ESQ.
12                             150 California Street, 15th Floor
                               San Francisco, California 94111
13

14

15  For the Federal Trade      UNITED STATES FEDERAL TRADE
    Commission:                COMMISSION
16                             OFFICE OF THE GENERAL COUNSEL
                               BY: JOHN ANDREW SINGER, ESQ.
17                                 MICHAEL MORA, ESQ.
                                   COLLOT GUERARD, ESQ.
18                             600 Pennsylvania Avenue, NW
                               Washington, DC 20580
19

20

21

22

23

24

25
```

3

```
 1   APPEARANCES (CONTINUED):

 2

 3   Court Recorder:          LUPE BARRON
                              UNITED STATES BANKRUPTCY COURT
 4                            280 South First Street
                              San Jose, California 95113
 5

 6

 7   Transcription Service:   Jo McCall
                              Electronic Court
                              Recording/Transcribing
 8                            2868 E. Clifton Court
                              Gilbert, Arizona 85297
 9                            Telephone: (480-361-3790)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

<pre>
 1                    P R O C E E D I N G S
 2   November 27, 2007                          11:05 a.m.
 3                         ---oOo—--
 4            THE CLERK: This is the United States Bankruptcy
 5   Court for the Northern District of California.  The court
 6   is now in session.
 7            THE COURT: Good morning, ladies and gentlemen.
 8   May I have appearances of counsel on the telephone.  First,
 9   counsel for the Unsecured Creditors' Committee.  Mr. Fiero?
10            THE OPERATOR: Your Honor, his office advised me
11   that he would be dialing in.
12            THE COURT: I can't hear you, Operator.
13            THE OPERATOR: His office advised me that he would
14   be dialing in.
15            THE COURT: Oh, okay.  And what about Ms. Guerard?
16            MS. GUERARD: Collot Guerard for the Federal Trade
17   Commission in Washington, D.C.
18            THE COURT: Thank you.  Go off the record for a
19   second.
20            Back on the record, I'm sorry.  Mr. Sacks, state
21   your appearance again.
22            MR. SACKS: Steven Sacks of Sheppard, Mullin, for
23   the Debtor.
24            THE COURT: Who else is on the phone?
25            MR. MORA: Your Honor, Michael Mora for the
</pre>

 1  Federal Trade Commission.  Also with us is John Singer.

 2          THE COURT: Very good.  Anybody else?

 3          MR. OETZELL: Yes, Your Honor, Walter Oetzell of

 4  Danning, Gill, Diamond and Kollitz on behalf of the Federal

 5  Receiver.

 6          THE COURT: Thank you.  Anybody else?

 7          Good morning, everybody.  I need to clarify the

 8  record from yesterday because the findings of fact and

 9  conclusions of law I gave, I gave before I issued the

10  injunction, and I told you over the phone yesterday that I

11  should probably revise my findings of fact and conclusions

12  of law and that's what I've done, and so that's what I'm

13  going to do.

14          Before the Court is an order to show cause why

15  this Court should not preliminarily enjoin the continued

16  enforcement of the omnibus order entered by the Florida

17  District Court pre-petition.  The Florida District Court

18  will subsequently be referred to as the Florida Court.

19          This Court hereby incorporates all of the

20  findings of fact and conclusions of law as set forth in

21  this Court's Memorandum of Decision filed and entered on

22  November 2nd, 2007, subsequently referred to as the

23  Memorandum of Decision.

24      (Off the Record - the recorder machine not operating.)

25          The Court hereby incorporates all of the findings

6

1  of fact and conclusions of law as forth in this Court's

2  Memorandum of Decision filed and entered on November 2nd,

3  2007, subsequently referred to as the Memorandum of

4  Decision.  In the Memorandum of Decision, the Court

5  declined to rule on the merits of a preliminary injunction

6  as to enforcement of the omnibus order since that order was

7  at that time stayed by the Eleventh Circuit.

8         The Eleventh Circuit lifted that stay on November

9  5th, 2007 and this Court granted a temporary restraining

10  order enjoining the continued enforcement of the omnibus

11  order.  In addition to today's ruling and the Memorandum of

12  Decision, this Court incorporates this Court's comments

13  made on the record at the November 16th, 2007 hearing --

14  Tanya, I need those dates -- go off the record a minute.

15         The Court also incorporates its comments made on

16  11/21, November 21st in court, and I'm checking to see

17  whether there's another date as well.

18         The Receiver argued at the hearing on the order

19  to show cause regarding a preliminary injunction that if

20  this Court determined that the Barton Doctrine did not

21  apply to the Receiver that this Court would be sitting in

22  review of the Florida Court because the Florida Court has

23  allegedly determined that the subject funds are not

24  property of the estate.  This Court has fairly reviewed the

25  discussion of the Barton Doctrine as set forth in this

1   Court's Memorandum of Decision at pages 38 through 49.   In

2   the Memorandum of Decision, this Court explained why the

3   Court concluded that the Barton Doctrine is not applicable

4   to this adversary proceeding and why this Court had

5   jurisdiction to determine that the Barton Doctrine is not

6   applicable under the facts of this case.

7          Nothing in the Receiver's opposition to this

8   preliminary injunction or in the Receiver's oral argument

9   at the November 16 hearing alters this Court's analysis as

10  set forth in the Memorandum of Decision.   Moreover, other

11  Bankruptcy Courts have held that the Barton Doctrine does

12  not apply where a bankruptcy trustee seeks turnover of

13  property of the bankruptcy estate from a custodian.  <u>See In</u>

14  <u>re Citix (Phonetic) Corp.</u> 302 B.R. 144, Bankruptcy Eastern

15  District of Pennsylvania 2003; <u>In re Automotive</u>

16  <u>Professionals, Inc.</u> 2000 West Law 1958595, Bankruptcy

17  Northern District of Illinois July 3rd, 2007.

18         The facts of this case are analogous.   Here,

19  Debtor seeks to enjoin the turnover of what Debtor asserts

20  is property of the estate.   If compliance with the Barton

21  Doctrine is not required in a motion to compel turnover of

22  property held by a custodian, compliance with the Barton

23  Doctrine is also not required to enjoin the Federal

24  Receiver who seeks to obtain custody over property that is

25  very likely property of the estate.

1          Should it later be determined that the Barton

2    Doctrine does apply to the Receiver and that Debtor needed

3    to obtain permission from the Florida Court to sue the

4    Receiver in this court, this Court notes that it's highly

5    likely, as argued by Debtor, that under <u>In re Crown</u>

6    <u>Vantage, Inc.</u> 421 F3d, 963, 9th Circuit, 2005, the Receiver

7    would need to seek relief from this Court to proceed

8    against Debtor in the contempt proceeding in the Florida

9    Court, and the Receiver has not done that.  This is so

10   because the Debtor is the debtor in possession of this

11   Chapter 11 bankruptcy case pursuant to Bankruptcy Code

12   Section 1101.1.  As debtor in possession of this bankruptcy

13   case, Bankruptcy Code Section 1107 essentially grants the

14   Debtor the rights and powers of a bankruptcy trustee and

15   Debtor performs the functions and duties of a bankruptcy

16   trustee serving in a case under this Chapter.

17          As a bankruptcy trustee, under <u>Crown Vantage</u>,

18   Debtor cannot be sued in a foreign jurisdiction, in this

19   case the Florida Court, without the permission of the court

20   appointing the trustee, in this case, this Court.  <u>Crown</u>

21   <u>Vantage</u> likely applies even though Debtor was subject to

22   the Receiver's motion to compel pre-petition.  This is so

23   because any post-petition action by the Receiver against

24   Debtor is also against Debtor's bankruptcy estate and not

25   just against the pre-petition Debtor.  As such, any post-

1    petition action by the Receiver is against the debtor in

2    possession, the entity that has the rights and powers of a

3    bankruptcy trustee and performs the functions and duties of

4    a bankruptcy trustee serving in a case under this Chapter.

5         The FTC argues that the receivership established

6    by the Florida Court gives the Florida Court in rem

7    jurisdiction over the commingled funds to the exclusion of

8    the bankruptcy estate.  The FTC argues that the Ninth

9    Circuit authority of <u>CFTC versus C.O. Petro Marketing</u>

10   <u>Group, Inc.</u> 700 F2d, 1279 at 1281-84, 9th Circuit 1983,

11   stands for the proposition that the Florida Court retained

12   jurisdiction post-petition to order the turnover of subject

13   funds alleged to be property of Debtor's bankruptcy estate

14   and such jurisdiction was not divested by this Court's

15   jurisdiction.

16        This Court does not agree with the FTC's expanded

17   reading of <u>C.O. Petro</u>.  In <u>C.O. Petro</u>, as in every other

18   case cited by the FTC regarding this issue, the entity that

19   was the subject of the Federal Receivership was also the

20   entity that was under the bankruptcy protection.  That is

21   not the case in this instance.  The Ninth Circuit in <u>C.O.</u>

22   <u>Petro</u> cited to *Collier Bankruptcy Manual* for the

23   proposition that the purpose of the broad in rem

24   jurisdiction of the Bankruptcy Court is, and I quote:

25             "To render authority and control of the

1    Bankruptcy Court paramount and all-embracing to

2    the extent required to achieve the ends

3    contemplated by the new legislation and to

4    exclude any interference by the acts of others or

5    by proceedings before other courts where such

6    activities or judicial proceedings would in some

7    way frustrate the jurisdiction of the Bankruptcy

8    Courts.  1 *Collier Bankruptcy Manual* 3.01 at 3-

9    24, 3rd Edition, 1982; C.O. Petro, 700 F2d, at

10   1282."

11   The Ninth Circuit went on to say, and I quote:

12   "Allowing the District Court to enforce its

13   preliminary injunction by directing return of the

14   $60,000 to the receiver would in no way frustrate

15   the jurisdiction of the Bankruptcy Court.

16   Section 543 of the Act protects the Bankruptcy

17   Court's exclusive jurisdiction over property of

18   the estate by requiring the receiver to preserve

19   it and deliver it to the bankruptcy trustee.  11

20   U.S.C. Section 543, Supplement 4, 1980; Accord

21   S.E.C. versus First Financial Group, 645 F2d, at

22   439.  Therefore, Section 1471(e) does not divest

23   the District Court in this case of jurisdiction

24   to issue an order to aid the Receiver in

25   collecting and preserving property of the estate.

1            C.O. Petro. 700 F2d, at 1282 to 1283."

2   And that's the end of that quote.  Accord S.E.C. versus

3   First Financial Group of Texas, 645 F2d, 429 at 440, Fifth

4   Circuit 1981.

5            And then I quote:

6            "To the extent that the exercise of a District

7            Court's jurisdiction threatens the assets of the

8            Debtor's estate, the Bankruptcy Court may issue a

9            stay of those proceedings.  11 U.S.C. Section

10           105(a).  Additionally 11 U.S.C. Section 543

11           protects the Bankruptcy Court's exclusive

12           jurisdiction over property of the estate by

13           requiring the custodian of such property to

14           preserve it and deliver it to the bankruptcy

15           trustee.

16           In light of these provisions and the ancillary

17           nature of the equitable relief of appointment of

18           a Receiver for the entity in bankruptcy in

19           regulatory enforcement actions, we do not find

20           that the District Court's order was made in

21           contravention of the exclusive jurisdiction

22           provision of 1471(e)."

23   End of quote.  And I've omitted a footnote.

24           The facts of C.O. Petro are definitely not the

25   facts of this case.  Here, permitting the Receiver to

1   continue enforcement of the turnover order is not an order

2   to aid in collecting and preserving property of the

3   bankruptcy estate that subsequently will be turned over to

4   the Bankruptcy Court for distribution.  On the contrary,

5   the Receiver and the FTC's determination to proceed with

6   the omnibus order will remove and dissipate over 1.7

7   million dollars in what is likely property of this

8   bankruptcy estate.

9           As the Ninth Circuit pointed out in C.O.Petro,

10  the District Court was not divested of jurisdiction to

11  enforce a turnover order because permitting the District

12  Court to retain jurisdiction actually aided the bankruptcy

13  estate.  That is very different from the facts that are

14  before this Court.

15          The FTC also asserts that issuing a Section 105

16  injunction as to the contempt proceeding would exceed this

17  Court's discretionary authority because the Florida Court

18  orders preclude Debtor from re-litigating the issue of

19  ownership of the subject "reserve,"  and I put that in

20  quotes, funds, citing In re Renozzo (Phonetic) 477 F3d,

21  1117 at 1122, 9th Circuit 2007.  However, the first criteria

22  for the issue of preclusion is not met here, that the issue

23  necessarily decided at the previous proceeding is identical

24  to the one sought to be re-litigated.

25          In the omnibus order, the Florida Court addressed

1   whether the Receiver had a property interest in the

2   abstract.  It did not address as to what particular asset

3   that interest attached.  The question of whether the

4   Receiver could trace his asserted property interest into

5   any specific funds held by the Debtor was not litigated

6   before the Florida Court.  The question here is whether any

7   interest the Receiver had at the time of Debtor's

8   bankruptcy filing attached to specific funds or assets now

9   held by the Debtor.  Thus Debtor is not re-litigating the

10  identical issue previously litigated before the Florida

11  Court.

12          Receiver finally asserts that Debtor has not met

13  the standards for injunctive relief under Section 105.  As

14  this Court will set forth in greater detail, this Court

15  finds that the Debtor has met its burden for a Section 105

16  preliminary injunction.

17          The standard for injunctive relief in the Ninth

18  Circuit is well settled.  A party must show either one, a

19  likelihood of success on the merits and the possibility of

20  irreparable injury or two, the existence of serious

21  questions going to the merits and the balance of hardships

22  tipping in its favor.  The required showing of harm varies

23  inversely with the required showing of meritoriousness.

24  Ms. World U.K. Limited versus Miss America Pageants, Inc.,

25  856 F2d, 1445 at 1448, 9th Circuit 1988.

1            In a reorganization context, the Ninth Circuit

2   has said that a Debtor seeking a stay against a non-debtor

3   must show a reasonable or likelihood of successful

4   reorganization.  As set forth in detail in the Memorandum

5   of Decision at pages 19 through 21, Debtor has demonstrated

6   that the Debtor had a reasonable likelihood of successful

7   reorganization.  The Debtor still has a reasonable

8   likelihood of a successful reorganization.  In addition to

9   those findings, on November 2nd, 2007, the Unsecured

10  Creditors' Committee agreed to an additional two weeks for

11  the Debtor's use of cash collateral, while Debtor and the

12  Committee continued discussions for a Plan of

13  Reorganization.

14          At the November 2, 2007 hearing, no creditor

15  opposed Debtor's use of cash collateral based on the

16  viability of Debtor's business.  In addition, the

17  Creditors' Committee has consented to Debtor's continued

18  use of cash collateral through November 30, 2007.  Only the

19  FTC and the Receiver opposed Debtor's continued use of cash

20  collateral, and that objection was only on the basis that

21  both parties objected to the Debtor using funds in the

22  blocked account.  No creditor opposed Debtor's use of cash

23  collateral based on the viability of Debtor's business.

24          For the reasons stated in the Memorandum of

25  Decision and the additional information brought to the

1  Court's attention at the November 2nd and November 16th cash

2  collateral hearings, and the November 21st hearing, Debtor

3  has demonstrated that Debtor has a reasonable likelihood of

4  a successful reorganization sufficient for issuance of a

5  preliminary injunction.

6          Additionally, as set forth in great detail in the

7  Memorandum of Decision at pages 48 to 58, the Debtor has

8  demonstrated a strong likelihood of success on the merits

9  that the property Receiver seeks to have Debtor turn over

10 pursuant to the omnibus order is property of the estate.

11 The omnibus order does not require Debtor to pay any

12 specific amount of funds to the Receiver, rather, in order

13 to comply with the omnibus order, Debtor would have to pay

14 Receiver out of Debtor's general commingled funds as the

15 so-called "reserves" the Florida Court determined Debtor

16 held on behalf of the prior customers.

17          The Florida Court described such reserves, but

18 did not quantify them.  Pre-petition, Debtor did not turn

19 over any funds to the Receiver, and Debtor did not

20 segregate any funds in any fashion.  As of the petition

21 date, Debtor retained an interest in all of the funds in

22 Debtor's general bank account and Receiver asserted an

23 interest in some as yet unquantified portion of those

24 funds.  On the petition date, this Court obtained exclusive

25 jurisdiction over all funds in Debtor's general bank

1   account under Section 1334(e) of Title 28.  Accord in re

2   Simon, 153, F3d, 991, at 996, 9th Circuit 1998.

3         Receiver argues at length that this Court is

4   purporting to decide whether the 1.7 million dollars in

5   commingled funds constitutes property of Debtor's

6   bankruptcy estate.  It is correct that this Court is of the

7   opinion that as of the filing of the bankruptcy petition,

8   this Court obtained exclusive jurisdiction to determine

9   what is or is not property of the estate.  However, it is

10  not necessary for this Court to decide one way or the other

11  whether the 1.7 million dollars is property of Debtor's

12  estate in order to issue a preliminary injunction against

13  enforcement of the contempt proceeding against Debtor and

14  the omnibus order in particular.  Rather, this Court need

15  only find that there are serious questions going to the

16  merits of whether the 1.7 million dollars in commingled

17  funds is property of Debtor's estate.

18        The irreparable harm to Debtor of having to turn

19  over those funds to the Receiver is so great that this

20  Court need only find that there are serious questions going

21  to the merits on that issue.  In granting Debtor a

22  preliminary injunction, this Court is not reviewing the

23  decision of the Florida Court.  Instead, this Court is

24  deciding Debtor's likelihood of success on the merits, and

25  alternatively, that there are serious questions going to

1   the merits in the context of ruling on Debtor's request for

2   a preliminary injunction.

3          In evaluating Debtor's likelihood of success on

4   the merits, this Court also needs to consider the

5   circumstances under which the Florida Court entered the

6   omnibus and clarification orders.  The bankruptcy estate

7   did not exist at the time the omnibus order was entered.

8   The bankruptcy estate was not given any opportunity to

9   brief or argue the merits of the FTC's emergency motion

10  prior to the Florida Court issuing the clarification order

11  post-petition.

12         In the clarification order, the Florida Court

13  purported to determine what interest the bankruptcy estate

14  had in the approximately 1.7 million dollars ordered to be

15  turned over to Receiver in the omnibus order, and I say

16  that that was totally unquantified in the omnibus order,

17  without the bankruptcy estate having the opportunity to

18  argue or brief the issue in any way.  This is an additional

19  significant reason Debtor is likely to prevail on the

20  merits.  Alternatively, Debtor certainly has demonstrated

21  the substantial question going to the merits of the

22  procedure underlying the issuance of the clarification

23  order as well as the merits.

24         Moreover, this Court is not deciding today

25  whether Debtor or the Receiver owns the subject funds.

 1  This Court is making no decision today as to who owns those

 2  funds.  Rather, this Court is only deciding that the Debtor

 3  has a likelihood of success on the merits of Debtor's

 4  position that the subject funds are property of Debtor's

 5  bankruptcy estate.  This would be true regardless of

 6  whether this Court, the Eleventh Circuit, the Ninth

 7  Circuit, or the Supreme Court were ultimately to decide

 8  that issue.

 9        The Court also notes the Debtor is presently in

10  possession of these commingled funds.  Possession of funds

11  is a form of property of the estate.  The legal rights of

12  the parties potentially could substantively change if the

13  Debtor were to transfer possession to the Receiver.  In

14  addition, Ms. Diemer's point made at yesterday's hearing is

15  well made.  The creditors of this bankruptcy estate should

16  not have to litigate their respective rights to Debtor's

17  assets or what constitutes property of the estate in the

18  Florida Court or the Eleventh Circuit.  The purpose of

19  bankruptcy is to bring all disputes as to what constitutes

20  property of the estate into one court, and that is the

21  Bankruptcy Court.

22        Initially, in this preliminary injunction, this

23  Court is not issuing an order that is in conflict with any

24  issue that is presently before the Eleventh Circuit.

25  Indeed, the parties, that is Debtor, Receiver and the FTC,

1  have all agreed to pursue the litigation before the

2  Eleventh Circuit, and nothing in this Court's preliminary

3  injunction precludes the parties from doing so.  Plus, the

4  Debtor's bankruptcy case is moving very rapidly.  By

5  December 7th or before, the parties and this Court may well

6  know much more about what Debtor's reorganization plans

7  will be and whether Debtor even needs the 1.7 million

8  dollars.  If not, there will apparently be no good reason

9  why presumably those funds should not continue to be

10  blocked indefinitely.

11        The parties in this court may also have

12  additional information regarding the status of the appeals

13  in the Eleventh Circuit and the FTC's appeal of this

14  Court's Memorandum of Decision.  Plus, the Debtor conceded

15  yesterday that the Debtor will not need those funds in

16  December as previously the Debtor said was a possibility.

17  And so the hearing on Debtor's possible request for the use

18  of those funds has gone off calendar for December 14.

19        Debtor will be seriously and irreparably injured

20  if the Receiver and the FTC are permitted to enforce the

21  omnibus order.  First, Debtor's business will suffer very

22  substantially and irreparably if Debtor is required to turn

23  over $1,762,762.56 to the Receiver.  Particularly at this

24  critical point in Debtor's reorganization efforts, Debtor's

25  estate will lose the over 1.7 million dollars that appears

1  very likely to be property of this estate.  Those funds

2  will not be available to the Debtor or its creditors if

3  they are turned over to the Receiver.

4         Moreover, if Debtor is required to turn over the

5  commingled funds, Debtor will be preferring Receiver over

6  all similarly situated creditors.  The Debtor is a debtor

7  in possession and is a fiduciary to all of the Debtor's

8  creditors, inter alia, secured creditors, unsecured

9  creditors, customers, the FTC, and the Receiver.  The

10 Receiver certainly doesn't represent all creditors of the

11 Debtor's estate.  At most, Receiver represents the

12 receivership estates of the prior customers and the FTC.

13 The Receiver does not seek to have the commingled funds

14 turned over to him to protect those funds for all creditors

15 of Debtor's bankruptcy estate; rather, Receiver seeks

16 possession of those funds for the benefit of the

17 receivership estates of the prior customers, to the

18 exclusion of Debtor's other secured and unsecured

19 creditors.

20        Permitting the Receiver to implement the omnibus

21 order would irreparably harm Debtor's bankruptcy estate by

22 preferring one creditor, the Receiver, over other similarly

23 situated creditors of Debtor, since most, if not all,

24 service contracts provide for the same "reserves."  And of

25 course I put the word "reserves" again in quotes.

1   Additionally, as set forth in great detail in the

2   Memorandum of Decision at pages 29 to 35, this is a

3   critical time in Debtor's reorganization.  Permitting

4   Debtor to continue -- permitting Receiver, pardon me,

5   permitting Receiver to continue his enforcement of the

6   omnibus order would divert Debtor's president and other

7   personnel from the critical reorganization efforts.

8            Debtor continues actively to pursue a successful

9   reorganization and is working closely with the Creditors'

10  Committee toward that end.  Diverting Debtor's management

11  at this critical juncture with the time and attention that

12  would be devoted to addressing the enforcement of the

13  omnibus order would threaten Debtor's reorganization.

14           Finally, in addition to the diversion of Debtor's

15  management from the reorganization process, Debtor will be

16  harmed by incurring substantial legal fees and costs Debtor

17  can ill afford at this juncture if enforcement of the

18  omnibus order is not enjoined.  Debtor estimates that

19  Debtor will incur an additional 50 to $150,000 in fees

20  related to Receiver's request for the turnover of the

21  commingled funds.  Receiver argues that the contempt

22  proceedings are largely complete and the orders are self-

23  executing.  However, the omnibus order is now on appeal.

24  If the enforcement of the omnibus order is not enjoined,

25  Debtor will have to comply with the order to turn over the

1  funds or show cause why the Debtor should not be held in

2  contempt and then deal with any subsequent appeals of the

3  Florida Court's decision.

4      As set forth in greater detail in the Memorandum

5  of Decision at pages 49 to 52, Receiver asserts that

6  enjoining the contempt proceeding will harm Receiver by

7  one, interfering with the administration of a receivership;

8  two, re-litigating the parties' disputes that have already

9  been addressed by the Florida Court in the omnibus and

10 clarification orders; and three, the dissipation of the

11 approximately 1.7 million dollars that the Florida Court

12 ostensibly required Debtor to turn over to the Receiver.

13 This Court has already addressed why enjoining Receiver

14 does not unduly interfere with the administration of the

15 Florida Court receivership and why the preliminary

16 injunction is not a re-litigation of the omnibus and

17 clarification orders.

18     The alleged harm regarding the dissipation of the

19 funds currently held in the blocked account does not

20 outweigh the threat of irreparable injury to the Debtor

21 should this Court not issue a preliminary injunction.

22 There is no immediate threat of irreparable injury or any

23 injury to the Receiver or the FTC.  The funds are held

24 under this Court's direction in a blocked account, and

25 before anything were to happen with those funds, the

1  Receiver and the FTC would be given sufficient notice and

2  have an opportunity to address the Court at that time.

3        Receiver will be protected during the preliminary

4  injunction.  At this point, this Court continues to require

5  Debtor to hold 1.7 million dollars approximately in a

6  blocked account and will continue to do so, absent a

7  request from Debtor prior thereto and then only on notice

8  to the Receive and the FTC.  It is certainly not a foregone

9  conclusion that Debtor will be granted permission to use

10  any of those funds.  At the hearing to unblock -- if

11  there's a hearing to unblock the account, and we don't know

12  whether that will occur or when that will occur, but by

13  that time, the parties and this Court may well know much

14  more about what Debtor's reorganization plans will be and

15  whether Debtor even needs the 1.7 million dollars to

16  function.  If it is not apparent that Debtor absolutely

17  needs those funds, it is highly likely that those funds

18  will continue to remain blocked.

19        This Court could also condition the unblocking of

20  any of those funds or permit the unblocking only of a

21  portion of the blocked funds.  Granting a preliminary

22  injunction at this time limits the harm to Receiver because

23  the funds in the blocked account continue to remain in that

24  account and contrary to the Receiver's assertion, it is not

25  readily apparent at this juncture that any of the blocked

1  funds will be unblocked.

2        Although this Court issues the preliminary

3  injunction based on a finding that Debtor has demonstrated

4  a likelihood of success on the merits, this Court need only

5  find that there are serious questions going to the merits,

6  because Debtor has made such a strong showing of a

7  likelihood of irreparable injury if this preliminary

8  injunction would not issue.  Alternatively, this Court

9  finds that Debtor has made a very strong showing of

10  irreparable injury and Debtor has demonstrated without a

11  question that there are serious questions going to the

12  merits.  Thus based on the facts of this case and

13  consideration of the relative hardship of the parties and

14  the public interest concerns, the Court finds that

15  continued enforcement of the omnibus order severely

16  threatens the integrity of the bankruptcy process and

17  Debtor's prospects for reorganization and a preliminary

18  injunction of continued enforcement of the omnibus order is

19  warranted.

20        Now, the Court also relies on Christopher

21  Village, LP versus United States, 360 F3d, 1319, Fed.

22  Circuit 2004, previously referenced to the parties by the

23  Court.  In Christopher Village, the Federal Circuit held

24  that the Court of Federal Claims had exclusive jurisdiction

25  to adjudicate a breach of contract claim, notwithstanding

 1 | the fact that a District Court and the Fifth Circuit had

 2 | previously asserted jurisdiction over those claims.  The

 3 | Federal Circuit acknowledged by the general rule that in

 4 | most circumstances, a judgment may not be collaterally

 5 | attacked on the ground that the original tribunal lacked

 6 | subject matter jurisdiction, even if the issue of subject

 7 | matter jurisdiction has not been litigated in the first

 8 | action.  However, the Federal Circuit held that an

 9 | exception to that general rule includes situations where,

10 | quote, "allowing the judgment to stand would substantially

11 | infringe the authority of another tribunal or agency of

12 | government."  Quoting Restatement Second of Judgments

13 | Section 12(2) 1982.

14 |       And citing to In re Bulldog Trucking versus

15 | Productive Transportation Services, Inc., 147 F3d, 347 at

16 | 354, 4th Circuit 1998, and Sterling versus United States, 85

17 | F3d, 1225 at 1231, 7th Circuit 1996; Christopher Village,

18 | 360 F3d at 1329 to 1330.  Here, under Christopher Village

19 | where this Court has exclusive jurisdiction over

20 | determining what constitutes property of the bankruptcy

21 | estate, allowing the clarification order to determine

22 | Debtor's rights in property of the estate, would both

23 | substantially infringe the authority of this Court and

24 | irreparably damage the Debtor and the Debtor's estate.

25 |       That concludes my findings of fact and

1   conclusions of law.  We can -- Mr. Sacks, we need to decide

2   what to do.  Do you think we should do an amended order

3   granting motion for preliminary injunction, given that I

4   have issued these findings of fact today, or do you think

5   that's not necessary?

6           MR. SACKS: This is Steven Sacks.  I don't think

7   it's necessary.  It seems to me that the Court could issue

8   its findings and conclusions after its order.

9           THE COURT: All right.  Does anybody disagree?

10          MR. OETZELL: I don't know, Your Honor.  And I'm

11  not also sure that Mr. Sacks does either.

12          THE COURT: Okay.  Well, I'll leave it as is and

13  then Mr. Sacks, if in your research, you decide that we

14  should do another order, then you should get that to me as

15  soon as possible.  The order can be basically the same.

16  It's just that the order refers to -- I'm looking at the

17  order now -- does it refer to the Court having issued its

18  findings of fact and conclusions of law yesterday?  And it

19  does.

20          MR. SACKS: It does.  It doesn't incorporate

21  findings to be issued today, and so I guess --

22          THE COURT: I think it's safer to issue a new

23  order, an amended order.

24          MR. SACKS: It's easy to do.  I'm happy to upload

25  one.

1          THE COURT: Very good.

2          MR. OETZELL: Your Honor, before we worry about

3    this order here, I'm going to make a request that you

4    reinstate the order that you came to yesterday.  The order

5    that you came to yesterday preliminarily involved a good

6    deal of problems.  What the Debtor has requested you do

7    avoided by your first order yesterday was a direct

8    collision with the District Court whose order the Debtor is

9    flaunting and asking for your complicity in and a direct

10   collision with the Eleventh Circuit that has taken on three

11   critical issues upon which your decision rests.  You put in

12   your order yesterday sort of a handle where you would

13   ultimately have control over that property, that we could

14   go ahead; we could go into the District Court, let the

15   District Court enforce its order or not enforce its order,

16   but that property would not be disbursed without a further

17   order from you.

18          Your Honor, what you are being asked to do here

19   is extraordinary, and it is to restrain an agent of the

20   District Court, not the FTC, not an agent of the FTC, but

21   an agent of the District Court that has been appointed to

22   preserve property.  I quote to a couple of California cases

23   here about what a receiver is.  A receiver is an officer or

24   representative of the court appointed to manage property

25   that is the subject of litigation.  The receiver is not an

1  agent of either party to the action, represents all

2  persons.  In other words, the receiver acts as a fiduciary

3  on behalf of both parties as a representative and officer

4  of the court.  And that language in effect is in the

5  receivership orders that we have here.  The receiver is

6  appointed to preserve that property, and that's what this

7  receiver is attempting to do here.  In fact, Section 43(a)

8  of the Bankruptcy Code, which section has been referred to

9  a couple of times, specifically exempts actions that

10 preserve the property, that's meant to preserve the

11 property.  And that is the problem here.  The Debtor seeks

12 to dissipate that property.  The Receiver here seeks to

13 preserve that property.

14        In addition to that, Your Honor, Section 547(c)

15 requires the Court to protect the parties to which the

16 Receiver has become obligated, which is all the more reason

17 to preserve that property, the only way that they can be

18 protected.  Your Honor had it right yesterday.  Your Honor

19 had a situation where -- and I will say this -- there is a

20 standing order here.  There is an order from the District

21 Court that the Receiver (sic) turn over this property or

22 show case.  It has done neither.  It is flaunting that

23 order.  And I've argued before and I argue again that

24 enjoining the Receiver which is an extraordinary thing is

25 only a band aid.  It's only a stop-gap measure that is not

1  going to stop the District Court from shall we say

2  enforcing that order on its own.

3          I would ask Your Honor to go back to the ruling

4  that you had yesterday that avoided all these problems; let

5  this get straightened in Florida in front of Judge Reiscamp

6  (Phonetic) in front of the Eleventh Circuit, and not run

7  into this collision that is inevitable with enjoining the

8  officer of the District Court.

9          THE COURT: Well, I have a couple questions, and

10 then I'll hear from the Debtor.  First, you were telling me

11 I got it right yesterday, but you weren't willing to

12 stipulate to that order, and neither was the FTC, first.

13 And second, the order included a requirement that the

14 Debtor not release any funds.  Isn't that a collision with

15 the District Court order and so why do you think the order

16 that I had talked about yesterday was the proper order, if

17 it required the Debtor not to obey the District Court by

18 turning over the funds, but rather to keep the funds

19 protected?

20         Secondly, there's no question that my intention

21 is to protect the funds.  They're in a blocked account.

22 Nobody can unblock them without an order of this Court.  So

23 I stand between all of the parties and that money because

24 they're blocked.  Now I'll go ahead and hear from Mr. Sacks

25 and then you can respond to everything, if you will, Mr.

 1  Oetzell.  And if the FTC wants to speak, they're certainly

 2  welcome.  Anybody can speak.  Go ahead, Mr. Sacks.

 3         MR. SACKS: Thank you, Your Honor.  Steven Sacks

 4  for the Debtor.  Your Honor, I don't think it's necessary

 5  to respond fully other than to say that the Bankruptcy

 6  Court frequently has occasion to require that parties

 7  follow its orders and not those that have previously been

 8  issued by State or Federal Courts.  This order really is no

 9  different than a judgment that commands a payment of money

10  that would ordinarily and should be stayed.  In this case,

11  the District Court determined that it wasn't automatically

12  stayed, but ample authority provides that this Court has

13  authority to issue a stay anyway, and far from flaunting

14  the Florida Court's orders, we've come in an orderly way to

15  this Court and asked for protection, and the Court has

16  granted it and continues to grant it.  So there is not a

17  collision here.  There is exactly what Section 105

18  contemplates, indeed what the Celotex (Phonetic) case and

19  the U.S. Supreme Court said was perfectly appropriate, that

20  when the Bankruptcy Court issues a 105 injunction, that

21  injunction has to be obeyed unless a higher court overturns

22  it, not a court of a different circuit or a prior ruling of

23  another court.

24         I think that probably goes far enough to respond

25  to Mr. Oetzell, other than to say that I think he was

1  citing to Section 543 of the Bankruptcy Code, which deals

2  with the obligations of a custodian, and I think would

3  require that even had we turned over any money to the

4  Receiver or paid any money to the Receiver, prior to or

5  during the bankruptcy, under 543, the Receiver would have

6  to come to this Court and turn it over or at best, if the

7  Court allowed, protect it under the Court's auspices.  But

8  it certainly doesn't say in 543 that the Receiver gets to

9  compel the Debtor to turn over money to it.  That's all I

10  have, Your Honor.

11        THE COURT: Okay.  Does anybody else want to speak

12  before I let Mr. Oetzell respond to everybody?

13        MR. MORA: Yes, Your Honor, Michael Mora for the

14  Commission.

15        THE COURT: Yes, sir.

16        MR. MORA: Your Honor, I just wanted to add that

17  of course the Commission, as we indicated yesterday, would

18  not stipulate and still would not stipulate to the first

19  order that the Court suggested.  I think we're just

20  looking -- we of course don't want any order entered, but

21  we just want a decision and an order so that we can know,

22  you know, what our rights and obligations are going

23  forward.

24        THE COURT: I understand, Mr. Mora.

25        MR. MORA: Thank you.

32

1          THE COURT: Mr. Oetzell -- does anybody else want

2     to saying anything before I turn it back to Mr. Oetzell?

3          Thank you.  Go ahead, Mr. Oetzell.

4          MR. OETZELL: Just two things, Your Honor, a) I

5     said yesterday in respect of the order that you had

6     proposed and the order that you had ultimately, not entered

7     but stated on the record, that providing it was without any

8     prejudice to any party's position, which was our party's

9     position that I had no objection to it.  I was for that

10    order.  Secondly, I understood there is a District Court

11    order that is sitting there -- this is an 800-pound gorilla

12    that everybody is ignoring -- that compels the Debtor to

13    turn over the funds or show cause why it hasn't.  That

14    order is -- Mr. Sacks has not explained exactly how the

15    Bankruptcy Court can enjoin that order or its operation.

16    And enjoining the Receiver does not enjoin that order or

17    its operation; it's merely a band aid, and it is

18    interfering with the Receiver's duties.

19          THE COURT: I understand, Mr. Oetzell.  If I --

20          MR. OETZELL: You had a perfectly acceptable order

21    yesterday, and --

22          THE COURT: Well, apparently the FTC doesn't think

23    so, and they think --

24          MR. OETZELL: Oh, you know what, the FTC --

25          THE COURT: Mr. Oetzell, let me finish my sentence

1  because we're on a recording, and if you don't let me

2  finish my sentence, we're going to get a muffled record.

3         MR. OETZELL: Sorry, Your Honor, I apologize.

4         THE COURT: Muddled rather than muffled.  It may

5  be both, but -- the FTC says that it is the real party in

6  interest, not you.  And the FTC wouldn't go along with that

7  order.  In fact, what they apparently want to do is

8  appeal -- if I issue any order, appeal it, so they get a

9  determination of their rights from a higher court.  And I

10  respect that.  So there's no way to work out an arrangement

11  that would be acceptable to all of the parties here.  I've

12  tried extremely hard to do that, and I certainly understand

13  your position, Mr. Oetzell.  I thought that if I just -- if

14  you agreed, that I would just keep the funds blocked here

15  and give you plenty of time if anybody sought to unblock

16  them, that you could accept that.  And if you could accept

17  that, since you're the party before the District Court in

18  the contempt proceeding, you could go back to the District

19  Court and say I have agreed.  They're going to give me

20  enough notice, so I'll have plenty of time to protect my

21  rights, if and when the Debtor ever comes back and says the

22  Debtor needs the money.  And we could negotiate an amount

23  of time, a minimum amount of time the Debtor would need.

24         But that was unacceptable to you, and I frankly

25  far prefer that outcome to the current outcome, but you

1  wanted absolute certainty that nothing will be done until

2  the Eleventh Circuit rules, and we don't know when the

3  Eleventh Circuit will rule or what the Eleventh Circuit

4  will rule.  And of course, the Debtor has the right to seek

5  to amend its complaint and you acknowledge that.  So in any

6  event, I tried very hard to work something out so that the

7  Receiver wouldn't be enjoined, and I still am interested in

8  hearing if you can work something like that out.  Then I

9  don't have to enjoin the Receiver.  I'm a Federal Court.  I

10  will keep the funds blocked.  We'll give you plenty of

11  notice if the Debtor seeks to unblock the funds.  All this

12  litigation could stop.

13          I don't know whether the FTC would go into the

14  District Court if you worked out a stipulation with the

15  Debtor here.  I don't know whether the FTC would take an

16  independent course of action and go into the District Court

17  and say something contrary to what you say.  I can't

18  imagine it but perhaps they would.  I don't know the

19  relationship well enough between the Receiver and the FTC

20  to know whether that would be a possibility.

21          But maybe you should reconsider.  Maybe you

22  should consider the path that I suggested, and that is I'll

23  keep them in a blocked account here.  Nobody will touch

24  them.  If anybody wants to touch them, whether you want to

25  touch them or the FTC wants to touch them or the Debtor

 1  wants to touch them, there will be a minimum amount of

 2  notice to give all parties, and there would be no

 3  injunction necessary.

 4          MR. OETZELL: Your Honor, you know obviously we'll

 5  consider everything, but I will tell you that from our

 6  perspective as the Receiver, once the Receiver was

 7  appointed, the Receiver's duties include --

 8          THE COURT: Can you keep your voice up, please.

 9          MR. OETZELL: I'm sorry.  Once the Receiver was

10  appointed in this FTC action, the Receiver took the role of

11  preserving the assets, and as a consequence, you know, when

12  there's a -- you can see when there's a difference of

13  opinion as between the FTC and the Receiver, the Receiver's

14  duty is to preserve the assets.  That's what our order

15  requires, and that's what everything that I am attempting

16  to do is being done.  And again, I would say that your

17  order yesterday did that.  And it also recognized the fact

18  that there is a standing order out there that, you know,

19  has to be complied with at some point, or it has to be

20  argued against in Florida.

21          THE COURT: Not necessarily.  That order could be

22  overturned by the Eleventh Circuit.

23          MR. OETZELL: That's true too, but once again,

24  what I'm saying is that we should not be on a collision

25  course with the District Court's order or the Eleventh

1  Circuit.  We should not be taking any action that will

2  conflict with either of those two courts.  The action is in

3  Florida, and things can be taken care of in Florida and

4  could be taken care of in Florida under your order

5  yesterday.

6         THE COURT: Well, I will say this, and that is,

7  that if for some reason this injunction is overturned on

8  appeal, then alternatively I will issue the injunction or I

9  do now issue the injunction that I issued or talked about

10  yesterday.  It'll be an alternative, so that if for some

11  reason this injunction were overturned as being erroneous,

12  then assuming that the Court has the power to issue an

13  injunction in the alternative, that's what I'll do.

14         But I understand you, sir.  I wish there were

15  some way to do it.  I guess you don't trust the fact that

16  the Bankruptcy Court will preserve the funds or at least

17  give you more time than you have now to go seek further

18  redress, and I can't -- you want something that's a

19  certainty and I understand that, and you don't want to

20  agree to anything less than that.

21         MR. OETZELL: Well, Your Honor, it's not a

22  question of trusting the Bankruptcy Court or not trusting

23  the Bankruptcy Court, and --

24         THE COURT: Sure it is.  Sure it is.

25         MR. OETZELL:  -- I appreciate all the effort and

1  thought that you have put into this, including, you know,

2  calling this hearing today to clarify your order.  There's

3  not many courts that would do that, and, you know, it's

4  obvious that you put so much thought into this and a lot of

5  worry into this, and I certainly appreciate that.  It's

6  just an issue that in the end the Debtor's goal in this

7  thing is to get those funds and to spend them.  And that is

8  just something that is not subject to argument, and it is

9  the Receiver's duties to preserve those funds.  And that is

10  why I am concerned, and that is why I'm asking for a

11  certainty.

12          THE COURT: Okay.  But I stand between the Debtor

13  and those funds.

14          MR. OETZELL: I understand, Your Honor.

15          THE COURT: Thank you, sir.  Okay, ladies and

16  gentlemen, we'll issue a new order.  Does anybody else wish

17  to say anything before I wish you a good lunch or I guess

18  if you're at the FTC, it's 3:00 o'clock there.

19          MR. MORA: Your Honor, Michael Mora for the

20  Commission.

21          THE COURT: Yes, sir.

22          MR. MORA: Your Honor, may I just ask for

23  clarification, at the end there, that Your Honor will be

24  issuing the order that you entered last night but also an

25  alternative order?

1          THE COURT: You know, Mr. Mora, to be honest with

2   you, I'll ask all of you.  I've never done it before, so

3   I'll ask you.  Is a court allowed to issue an injunction

4   that has two components, the first component is the

5   injunction I issued today, and if for some reason that

6   overturned, then the injunction that I discussed on the

7   record yesterday.  If I have that power, that's what I

8   would like to do.

9          MR. MORA: I don't know the answer to that

10  question, Your Honor.

11         MR. OETZELL: Your Honor, I don't know the answer

12  to that question either, and I would -- you know, we can

13  look into it, but --

14         THE COURT: So I'll issue the first -- when I say

15  first, that could get confusing -- I'll issue the

16  injunction that I issued today and if I have the power, I'd

17  like everybody's position within a week in a brief -- I'd

18  like to know whether you think I have the power to issue

19  any alternative, so yesterday's injunction discussed on the

20  record yesterday would be in the alternative if for some

21  reason this injunction is overturned.

22         MR. SACKS: Your Honor, Steven Sacks.  It seems to

23  me that the Court has power to issue an order today that

24  says that a), the Receiver is enjoined; the FTC is

25  enjoined, as the Court issued yesterday.  And in addition,

1  if for any reason the Receiver comes into control of the

2  money that's presently in the blocked account or otherwise

3  is able to compel Integretel to pay it 1.7 million dollars,

4  that the Court enjoins the Receiver from doing anything

5  with that money --

6            THE COURT: Pending further order of this Court.

7            MR. SACKS: Right.

8            MR. OETZELL: That's not the issue.  The issue is

9  whether Your Honor can sit there and say that the -- on the

10 alternative that the Receiver is not enjoined and basically

11 go back to your order yesterday.

12           THE COURT: No, no, I think he's right, Mr.

13 Oetzell, with all due respect, and let me just explain to

14 you why, because the purpose would be to issue the

15 injunction that I discussed today on the record and issued

16 today on the record or in the alternative if for some

17 reason the Receiver were to obtain those funds, the

18 Receiver would be enjoined from distributing them to

19 anybody pending further order of the Court.  That's exactly

20 what I intend.

21           MR. OETZELL: Well, you know, I'm not so sure.  I

22 mean if the injunction is overturned, I guess the answer is

23 the injunction is overturned.

24           THE COURT: Right.  And you can argue that in the

25 appeal, that the alternative part of the injunction should

1  be stricken by the Appellate Court.

2         MR. OETZELL: I certainly would like Mr. Sacks to

3  explain the authority by which somebody can -- a court can

4  issue an injunction and then a back-up if it gets

5  overturned.

6         THE COURT: (Laughing.)  Right.  I guess that is

7  the question, Mr. Sacks.  So, Mr. Sacks, rather than doing

8  that, I'll just go ahead and issue my injunction today and

9  if you can provide me some authority that I can have a

10  back-up injunction, that's what my intent would me.  I

11  would like to do it if I have the authority.

12         MR. SACKS: Your Honor, Steven Sacks again.  I

13  don't think it is a back-up; I think what it is, is an

14  alternative circumstance that may arise, which is, as the

15  Receiver and the FTC argue, somehow the District Court may

16  compel something to happen even though they're enjoined.

17  Let's say the injunction is not overturned, and somehow we

18  are required under penalty of otherwise going to jail I

19  guess, to pay money to the Receiver.  And in that case,

20  this Court's order would be in effect, which is that the

21  Receiver couldn't do anything with that money without the

22  Bankruptcy Court's further order.  I don't see it as an

23  alternative; I see it as part of the Court's review of the

24  situation and part of the Court's order.

25         THE COURT: So it wouldn't be only if I got

41

1  reversed.  It would be if for any reason the Receiver

2  became in possession of those funds.

3          MR. SACKS: That's my view, Your Honor.  Steven

4  Sacks speaking.

5          THE COURT: Go ahead, Mr. Oetzell.

6          MR. OETZELL: That's called a back-up.  And also I

7  think it's based upon speculative circumstances, and I

8  don't think that's appropriate for an injunction.

9          MR. MORA: And, Your Honor, this is Michael Mora

10  for the Commission.  Also this is obviously something new

11  that certainly we didn't have advance notice of, but on the

12  spot, I would say that a back-up order like that would be

13  tantamount to -- because it would only be the District

14  Court judge itself who would have acted under those

15  circumstances -- being postulated.  So that would be

16  tantamount to enjoining the District Court itself.

17          THE COURT: Well, but remember that's what the

18  order was yesterday and that's what Mr. Oetzell wanted.

19          MR. OETZELL: Well, that was in a situation –- in

20  somewhat of a compromised situation in respect to this

21  particular hearing, these particular circumstances.  Now we

22  have an order restraining us.  If that order gets

23  overturned, that order gets overturned.  We don't sit

24  there –- we don't sit there and put in back-up provisions

25  to ameliorate an order getting overturned.

1          THE COURT: Well, Mr. Sacks, I'm not sure because

2   nobody has had an opportunity to look at this, but I think

3   you may be right.  Take a few days and write a brief, and

4   I'll look at it, and I'll give you a couple of days and

5   I'll give the FTC and the Receiver a couple of days, and if

6   all you want to say is what you said in your papers, fine.

7   But if you can find some law on it, fine.  And we are now

8   November 27th, so why don't you take until November 30th, Mr.

9   Sacks, and do we still have a hearing on the 7th, by the

10  way?

11          MR. SACKS: We do have matters on calendar for the

12  7th, Your Honor.

13          THE COURT: All right.  And the FTC and the

14  Receiver can have until the 5th.  I need it by no later than

15  3:00 p.m. California time which is 6:00 p.m. the Receiver's

16  time on the 5th.

17          MR. SACKS: 3:00 p.m. on the –- I'm sorry.

18          THE COURT: It's not the Receiver's time, I'm

19  sorry; it's the FTC's time.  I need it by 3:00 p.m. on the

20  5th, California time.

21          MR. OETZELL: That's the response?

22          THE COURT: Yes, sir.

23          MR. OETZELL: I'm sorry, the actual –-

24          THE COURT: The 30th.

25          MR. OETZELL: The 30th.

43

 1          THE COURT: And we'll give it to you by 3:00 p.m.

 2  on the 30th too.

 3          MR. OETZELL: Thank you, Your Honor.

 4          THE COURT: Thank you very much, counsel.

 5          ALL COUNSEL: Thank you, Your Honor.

 6          THE COURT: Mr. Sacks, you better get in a new

 7  order right away.

 8          MR. SACKS: I'm going to upload a new order.

 9          THE COURT: Thank you, sir.  Court is adjourned.

10      (Whereupon, the proceedings are concluded at 12:05

11  p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

44

1

2

3

4

5                    CERTIFICATE OF TRANSCRIBER

6

7          I certify that the foregoing is a correct

8   transcript from the digital sound recording of the

9   proceedings in the above-entitled matter.

10

11  DATED: December 4, 2007

12

13                           By:___/s/ Jo McCall_____

14

15

16

17

18

19

20

21

22

23

24

25