UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ARTHUR S. WEISSBRODT, JUDGE


| | |
|---|---|
| In Re:<br><br>THE BILLING RESOURCE, dba<br>Integretel, a California<br>corporation,<br><br>            Debtor.<br>_____ | ) Case No. 07-52890-ASW<br>) Chapter 11<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| THE BILLING RESOURCE,<br><br>            Plaintiff,<br><br>      v.<br><br>DAVID R. CHASE, Federal Receiver,<br>et al.,<br><br>            Defendants.<br>_____ | )<br>) Adv. No. 07-5156<br>)<br>) <u>CONTINUED FROM NOV. 21:</u><br>) <u>PLAINTIFF'S MOTION for</u><br>) <u>ORDER to SHOW CAUSE</u><br>) <u>REGARDING PRELIMINARY</u><br>) <u>INJUNCTION re ORDER to</u><br>) <u>STAY ENFORCEMENT of</u><br>) <u>OMNIBUS ORDER including</u><br>) <u>THE COURT'S RULINGS</u><br>)<br>) Monday, November 26, 2007<br>) San Jose, California |

<u>Appearances</u>:

For POL, Inc.:          Kathryn S. Diemer, Esq.
                        Diemer Whitman & Cardosi, LLP
                        75 East Santa Clara Street, Suite 290
                        San Jose, California 95113-1806

<u>Appearances via telephone</u>:

For the Debtor:         Steven B. Sacks, Esq.
                        Sheppard Mullin Richter & Hampton
                        Four Embarcadero Center, 17th Floor
                        San Francisco, California 94111-4109

                        Neal Goldfarb, Esq.
                        Tighe Patton Armstrong Teasdale, PLLC
                        1747 Pennsylvania Avenue, Suite 300
                        Washington, D.C. 20006


Appearances continued on next page.

2

<u>Appearances via telephone continued</u>:

| | |
|---|---|
| For the Committee: | John D. Fiero, Esq.<br>Pachulski Stang Ziehl Young & Jones<br>3 Embarcadero Center, Suite 1020<br>San Francisco, California  94111-5994 |
| From the Federal Trade<br>Commission: | Collot Guerard, Esq.<br>Michael P. Mora, Esq.<br>John Andrew Singer, Esq.<br>600 Pennsylvania Avenue, N.W., Room 286<br>Washington, D.C.  20580 |
| For the Federal<br>Receiver, David R.<br>Chase: | Walter K. Oetzell, Esq.<br>Danning, Gill, Diamond & Kollitz, LLP<br>2029 Century Park East, Third Floor<br>Los Angeles, California  90067-2904 |
| Digital Court<br>Recorder: | United States Bankruptcy Court<br>Clerk of the Court<br>Erin Coyle<br>280 South First Street, Room 3035<br>San Jose, California  95113<br>(408) 535-5005 |
| Certified Electronic<br>Transcriber: | Palmer Reporting Services<br>1948 Diamond Oak Way<br>Manteca, California  95336-9124<br>(800) 665-6251, telephone |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

*Motion for Order to Show Cause re Preliminary Injunction*                3

```
 1   Monday, November 26, 2007                    2:05 o'clock p.m.

 2                    P R O C E E D I N G S

 3         THE CLERK:  Please rise.

 4         THE COURT:  Please be seated.  This is the case of

 5   Billing Resource.  I'll take the appearances of the lawyer, the

 6   single lawyer in court.

 7         MS. DIEMER:  Good afternoon, Your Honor.  Kathryn

 8   Diemer on behalf of secured creditor POL.

 9         THE COURT:  Yes.  And on the phone, Mr. Sacks, may I

10   have your appearance?

11         MR. SACKS:  Steven Sacks, Sheppard Mullin, for the

12   debtor.

13         THE COURT:  Mr. Oetzell.

14         MR. OETZELL:  Good afternoon, Your Honor.  Walter

15   Oetzell of Danning, Gill, Diamond and Kollitz on behalf of

16   federal receiver.

17         THE COURT:  Ms. Guerard.

18         MS. GUERARD:  Collot Guerard on behalf of the Federal

19   Trade Commission.  And with me is Mickey Mora and John Singer.

20         THE COURT:  Neal Goldfarb.

21         MR. GOLDFARB:  Your Honor, Neal Goldfarb of Tighe,

22   Patton in Washington, D.C., also for The Billing Resource.

23         THE COURT:  Very good.  So is the Federal Trade

24   Commission going to speak first since there was a question on

25   the table to the Commission and to the receiver?
```

*Motion for Order to Show Cause re Preliminary Injunction*                    4

1          MR. FIERO:  Your Honor, very quickly, John Fiero for

2   the committee.

3          THE COURT:  Oh, thank you, sir.  You weren't on my

4   list.

5          Is there anybody else on the phone who wasn't on my

6   list?

7      (No audible response.)

8          THE COURT:  No.  Okay, go ahead.  You didn't have to

9   do it quickly, Mr. Fiero, I would have called on you.  I just

10  didn't have you on my list.

11         MR. MORA:  Thank you, Your Honor.  Michael Mora for

12  the Federal Trade Commission.

13         THE COURT:  Thank you, sir.  Go ahead.

14         MR. MORA:  Your Honor, the Commission appreciates the

15  Court's attempt to bring the parties together in a settlement.

16  And also Mr. Sacks did circulate a written proposal to us over

17  the weekend.  We did have time to deliberate and consider Your

18  Honor's proposal today.  I can report to you that we're not in a

19  position to accept it.

20         THE COURT:  That's fine.  But is there something you

21  will accept?  I mean the whole point of it is to try to work

22  something out.  When you were in court, Mr. Mora, you and Mr.

23  Oetzell stressed to me that as long as the funds were held you

24  were fine.  And, in fact, you even made a proposal.  So what

25  kind of proposal would satisfy you that the funds are going to

*Motion for Order to Show Cause re Preliminary Injunction*                    5

1   be held so —

2           MR. MORA:  Well, Your Honor, I'm not sure what Your

3   Honor is referring to, but in fact we never made — well, Your

4   Honor, we never made a proposal like this and actually we did

5   not.

6           THE COURT:  Well, I think Mr. Oetzell did in fact.

7   And he's —

8           MR. MORA:  Yeah, —

9           THE COURT:  And he, in fact, represents the receiver

10  and the receiver is the only one going for contempt proceedings,

11  so I think that's incorrect.

12          MR. MORA:  Your Honor, we did make such a proposal.

13  The Commission did not.

14          THE COURT:  Well, I don't know whether Mr. Oetzell

15  speaks for the receiver in this context, but my very firm

16  recollection is Mr. Oetzell made that proposal.  He said — well,

17  why don't we hear from Mr. Oetzell.

18          MR. OETZELL:  Your Honor, thank you.  We also

19  appreciate Your Honor's efforts in this and we appreciate Mr.

20  Sacks' circulating his proposal.  Obviously what we're concerned

21  about is several things.  Number one, the funds being preserved.

22  Number two, inconsistent rulings between what's going on in

23  Florida and in front of Your Honor.  Three, rendering the

24  Eleventh Circuit's efforts somewhat meaningless, particularly

25  since the debtor did invoke the jurisdiction of the Eleventh

*Motion for Order to Show Cause re Preliminary Injunction*                6

1   Circuit.

2        And what we would ask for or be amenable to is if a

3   stay there needs to be, that that stay be until the Eleventh

4   Circuit decides the issues here, that the funds be kept in a

5   blocked account during that time and, you know, we would like to

6   have an interest in that account if possible, and that the funds

7   are neither subject to a motion to release or an adversary

8   proceeding to determine the status or ownership.

9        The concerns about the motion to release is that again

10  you've got the problems of rendering the Eleventh Circuit's

11  efforts meaningless and 'We need to spend the money' is not an

12  excuse and will not serve as an excuse if it turns out that the

13  Eleventh Circuit takes it upon themselves to rule that they are

14  our funds.

15       And, again, in respect of them not being subject to an

16  adversary proceeding in front of Your Honor to determine the

17  status or ownership, again that avoids, you know, conflicting

18  results between the Eleventh Circuit and a possible ruling from

19  the Bankruptcy Court.  That's what we would be looking for, Your

20  Honor.

21       THE COURT:  Okay.  So there's no amount of time, for

22  example, that I can promise you — of course the debtor would

23  have to agree — but there's no matter of time, a month, that

24  they won't be dissipated without you having notice for a month

25  so that if you need to go to an appellate court you could go to

*Motion for Order to Show Cause re Preliminary Injunction*                    7

1    an appellate court, that would satisfy you?  If we said they're

2    going to stay in a blocked account; they won't — they will not

3    be removed pending decision by the Eleventh Circuit; however, if

4    the debtor has an emergency the debtor can come to this Court,

5    on a month's notice to you, and seek to release some or all of

6    the funds with the understanding that you have all the rights

7    that you have today?

8            MR. MORA:  We appreciate that, Your Honor, but that

9    would involve the very real possibility that funds that are not

10   the debtor's would be spent.

11           THE COURT:  How could that be if — you're in that

12   position now.  I don't understand.  You're in that position now

13   with a hearing on December 7th and the possibility of spending

14   them on December 14.  And here we are toward the end of

15   November.  So if you had a month warning you would be in a

16   better position than you are today.

17           MR. MORA:  I understand, Your Honor.  However, you

18   know, the issue remains the same and — and what we would like to

19   be removing in exchange for a stay is that concern, that the

20   funds would be spent and —

21       (The Court and Clerk confer.  Static on the line.)

22           MR. MORA:  — give the Eleventh Circuit a chance to

23   rule on the issue.

24       (The Court and Clerk confer.)

25           THE COURT:  Does somebody have a cellphone on?  Is

*Motion for Order to Show Cause re Preliminary Injunction*                8

1    there anybody in court who has a cellphone on?  No.

2              THE CLERK:  On the phone.

3              THE COURT:  Is there anybody on the phone who has a

4    cellphone on?  We're getting static here.  Could you please

5    answer my question if you do?

6              MS. GUERARD:  No, Your Honor — or at least Collot

7    Guerard doesn't.

8              MR. OETZELL:  I have a cellphone near the phone.  I

9    will now remove everything that could be offending.

10             THE COURT:  You have to remove everything that could

11   be offensive.  I don't know what's in your office, but the

12   cellphone would be a good start.

13             MR. OETZELL:  Well, that and a — and a PDA, and there

14   you have it.  It's done.

15             THE COURT:  Okay.  Thank you.

16             So, again, Mr. Oetzell, I understand you'd like to

17   remove the concern, but the concern exists now.  And so if I

18   give you more time than you have now you're still not willing to

19   go for it.

20             MR. OETZELL:  I understand, Your Honor, but, you know,

21   time is one thing and assurance is along thing and it's the

22   assurance that, you know, we think would be the appropriate —

23   would be the appropriate thing to get.

24             THE COURT:  Okay.  Now where are you, Mr. Sacks?

25             MR. SACKS:  Well, I guess we're not very far given the

*Motion for Order to Show Cause re Preliminary Injunction*                    9

1    response of the FTC and the receiver.  We circulated a proposed

2    stipulation to them that really embodied what the Court

3    discussed last week in terms of timing and said that the FTC and

4    the receiver wouldn't seek to enforce the omnibus order so long

5    as the Bankruptcy Court hadn't tried — hadn't released the

6    funds. So that wasn't acceptable — or at least we heard from the

7    receiver and today we've heard from the FTC that that's not

8    acceptable.  So as best I can tell they would rather be enjoined

9    and fight the battle in the appellate courts to determine

10   whether they have rights that we don't think they have.

11          THE COURT:  Yeah, but you're assuming I'm going to

12   enjoin them.

13          MR. SACKS:  I'm assuming that, but if the Court —

14          THE COURT:  That's — that's not necessarily what's

15   going to happen.  It may happen, but that isn't necessarily

16   what's going to happen.

17          MR. SACKS:  Well, if the Court doesn't enjoin them, if

18   no preliminary injunction issues, then they can seek the entry

19   of an order of contempt against us in the Florida District Court

20   and we can fight that fight there, I guess, unless we have some

21   appellate alternatives of our own, but — you know, from this

22   Court.  But —

23          THE COURT:  I just wonder how serious your need for

24   this 1.7 million is.  What they're asking you to agree to is

25   agree to let the Eleventh Circuit rule.  Now if you have a real

1   need for this 1.7 million, then it becomes — that becomes the

2   primary motivating factor worth risking contempt or worth

3   fighting about contempt with.  If you don't, then it may be much

4   ado about nothing.

5           MR. SACKS:  Well, two things.  I think we will have a

6   need for the funds and I think that we don't agree that the

7   Eleventh Circuit is the place to decide what is property of the

8   estate.

9           THE COURT:  Right.  I don't — I understand that

10  argument.

11          MR. SACKS:  So there isn't any point in waiting for

12  the Eleventh —

13          THE COURT:  But they're saying that they're willing to

14  allow me to do it in the context of an adversary here.  That's

15  what I understood Mr. Oetzell to say, they're willing to let me

16  decide what constitutes property of the estate.  So it's just

17  that first issue about the need for the funds before the

18  Eleventh Circuit does whatever the Eleventh Circuit is going to

19  do.  And you could file your adversary tomorrow.

20          MR. OETZELL:  Your Honor, we — the idea was is that

21  it's the Eleventh Circuit that's deciding because we would like

22  to avoid inconsistent rulings as between you and the Eleventh

23  Circuit.  Now I can't keep them from filing their adversary

24  proceeding, but, you know, I don't necessarily have to agree to

25  it.

1    MR. SACKS:  This is Steven Sacks, Your Honor.  That's

2  what I thought is was that they were saying they wanted us not

3  to proceed by adversary, which is exactly what we've said to

4  them.  We asked them to stipulate to the filing of an amended

5  complaint in the adversary so that this Court could decide what

6  property of the estate is, whether the receiver has any interest

7  in our bank accounts.  And, as I understand it, they have

8  specifically said that they refused to do that.

9    THE COURT:  There is a possible alternative order that

10  I'm considering and that is to not interfere with the transfer

11  of funds myself.  I mean that doesn't mean that the — that you

12  don't have other appellate avenues.  But to enjoin the receiver

13  from doing anything other than if the receiver gets the funds,

14  keeping them in a blocked account pending further order of this

15  Court.

16    Would the receiver agree to that?

17    MR. OETZELL:  Your Honor, it's — I would have to check

18  with the receiver.  It does — it doesn't sound unreasonable.

19  But I would have to check with him.

20    Let me understand.  It's that the receiver would not

21  be enjoined from pursuing the Florida action but the receiver

22  would hold the funds if they were ordered to be turned over

23  pending an order of —

24    THE COURT:  Of the Bankruptcy Court.

25    MR. OETZELL:  The Bankruptcy Court.  I would have to

*Motion for Order to Show Cause re Preliminary Injunction*                    12

1    check with the receiver on that.

2            THE COURT:  How long does the receiver — do you need

3    to check with the receiver?  I don't know how available the

4    receiver is, but given that we're dealing with this extended TRO

5    that you agreed to, I don't want to — I don't want to lose our

6    jurisdiction over these funds.

7            MR. OETZELL:  Well, let's see what I can do.

8            THE COURT:  Do you have him in the next room?

9            MR. OETZELL:  I wish I did.

10           THE COURT:  Okay.  So what are we going to do, do you

11   want me to recess and we'll call you — everybody will call back

12   in ten minutes?  What's practically, what do you want me to do?

13           MR. OETZELL:  Let's make it 15 minutes and that should

14   give me a chance to be in touch if I can get in touch.

15           THE COURT:  All right.  And then if Mr. Sacks or Mr.

16   Fiero want to say anything at that point or any of the other

17   lawyers, that would be fine.  But we might as well find out what

18   his position is.

19           Did somebody want to say something before we find out

20   what the receiver's position is?

21           MR. MORA:  Yes, Your Honor.  This is Michael Mora for

22   the Commission.  Your Honor, since this injunction was proposed

23   to be entered against the Commission as well and since we are —

24           THE COURT:  Absolutely.

25           MR. MORA:  Right.

*Motion for Order to Show Cause re Preliminary Injunction*          13

1          THE COURT:  Nobody can dissipate the funds pending

2   further order of the Bankruptcy Court.

3          MR. MORA:  Right.  So this is something that we also

4   will have to discuss with our client internally during the

5   recess.

6          THE COURT:  I understand.  That's of course

7   appropriate.

8          Thank you.  We'll recess.  Ms. Bracegirdle will expect

9   the operator to come back in in 15 minutes.

10          Operator, are you onboard?

11          THE OPERATOR:  Yes, Your Honor.

12          THE COURT:  You understand?

13          THE OPERATOR:  Yes, Your Honor.

14          THE COURT:  Thank you very much.  Court is in recess

15   for 15 minutes.

16          [COUNSEL]:  Thank you, Your Honor.

17      (Recess taken from 2:20 p.m. to 2:41 p.m.)

18          THE CLERK:  Please rise.

19          THE COURT:  Thank you.  You may be seated.

20          Yes, Mr. Oetzell.

21          MR. OETZELL:  Your Honor, I've talked to the receiver

22   and we would not object to such — such an order as long as, you

23   know, it's without prejudice to our positions to make any and

24   all argument, including the fact that it doesn't necessarily

25   confirm to —

1        THE COURT:  I can't hear you.  You're started to fade

2    out.  You need to keep your voice up.

3        MR. OETZELL:  I'm sorry, Your Honor.  I've talked to

4    the receiver.  The receiver would not object to the entering of

5    such an order, assuming that it was without prejudice to, you

6    know, our arguing anything, you know, at a later time, including

7    the jurisdiction did not attend and that, you know, we're

8    concerned that we would be in a position of conferring

9    jurisdiction, which we're not — which we don't have the ability

10   to do.  So if it's without prejudice to all of our positions,

11   with all rights reserved, we would not object to the entry of

12   such an order.

13       THE COURT:  Okay.  And how about the Federal Trade

14   Commission?

15       MR. MORA:  Your Honor, first of all, — this is Michael

16   Mora for the Commission.  Your Honor, first of all,

17   unfortunately we were just rejoined at the end of Mr. Oetzell's

18   comments, so I caught the end of what he said.  I believe I know

19   what he said, but —

20       THE COURT:  Well, Mr. Oetzell, just repeat it.

21       MR. OETZELL:  I said that we would not object to the

22   entry of such an order assuming that — that it was without

23   prejudice to any position later on that we were — that we could

24   argue, including that there was no subject matter jurisdiction,

25   because we were concerned that if — that we would — that

1  assenting to such a thing would be conferring subject matter

2  jurisdiction, which we do not have the right to do.  So we're

3  not waiving any arguments.

4          THE COURT:  Okay.  Go ahead, Mr. Mora.

5          MR. MORA:  Thank you, Your Honor.  Your Honor, we did

6  have an opportunity to confer with our client and I have to

7  report to the Court that this alternative proposed stipulation

8  is not acceptable to the Commission either.

9          And I just want to reiterate that the Commission was

10  not a party to the original stipulation that the receiver and

11  Integretel entered into.  We objected to it.  It was done over

12  our objection.

13          We would — we would object to any stipulation like

14  this alternative proposal and we would simply ask that the Court

15  enter whatever order it intends to as against the Commission.

16          THE COURT:  Okay.  So we'll start with you, Mr. Sacks.

17  With respect to the receiver's contempt proceeding is the

18  receiver — is the Commission even a party to that?

19          MR. SACKS:  That's a question that's hard to answer,

20  Your Honor.  They have filed briefs with respect to that motion

21  though it is not their original motion.  So I'm not sure whether

22  they take the position they're a party to it or not.

23          THE COURT:  Well, okay.  Mr. Mora, are you a party to

24  the contempt proceeding?

25          MR. MORA:  Yes, Your Honor, we are.  We filed an

*Motion for Order to Show Cause re Preliminary Injunction*                16

1    extensive brief in support.  And, in fact, —

2            THE COURT:  Wait a second, Mr. Mora.  Does that — the

3    fact that you filed a brief doesn't confer party status.

4            MR. MORA:  Your Honor, we're the real party-in-

5    interest in the action.  The receiver is a court-appointed agent

6    of the District Court, so, yes, we are a party.

7            THE COURT:  Okay.  That's what I wanted to know.

8            MR. MORA:  The case is *Federal Trade Commission versus*

9    *Nationwide, et al*.

10            THE COURT:  Okay.  So go ahead, Mr. Sacks.

11            MR. SACKS:  I'm sorry, Your Honor.  You wanted me to

12    go ahead and respond concerning the Court's proposal?

13            THE COURT:  Right.  And — and whatever you suggest.  I

14    am having serious concerns about enjoining the receiver based on

15    the possibility, the very real possibility, of inconsistent

16    rulings between myself and the District Court and myself and the

17    Eleventh Circuit.

18            Now if I enjoin the distribution of these funds, if

19    they are turned over to the receiver, and I'm not ordering that

20    they be turned over to the receiver, I'm just saying if they are

21    turned over to the receiver, then they can't be dissipated

22    without further Court order and further order of the Bankruptcy

23    Court.  And that's not — that doesn't give you everything you

24    want.  It doesn't give you the ability necessarily, at least

25    through my order, to get — to use those funds.  And it takes

1   them out of the jurisdiction of the Bankruptcy Court and puts

2   them in the receiver's interest-bearing account, pending further

3   order of the Bankruptcy Court, so it's less secure in that

4   respect.

5           On the other hand, it doesn't violate or it's not

6   inconsistent with anything that the District Court has done and

7   it's not inconsistent with anything that the Eleventh Circuit

8   has done.  So I can issue that order knowing that I'm not in

9   conflict with another Court's order.

10          MR. SACKS:  Well, Your Honor, I think a number of

11  points.  This is Steven Sacks.  Several points with respect to

12  that and, as well, a proposal for how we should proceed.

13          The Court cited us on Wednesday to the case of

14  *Christopher Village* in the Federal Circuit 2004, 360 F.3d 1319.

15  And I think *Christopher Village*, which as best I could tell

16  checking that case and similar cases, is good law for the

17  proposition that if a court does not have jurisdiction, then

18  another court considering a matter where it does have

19  jurisdiction may enter an order that does not take account of

20  the first court's order, that — that ignores it, in effect,

21  without running afoul of any rules to the contrary about

22  collateral estoppel or *res judicata*.

23          And based on that and based on the fact that the

24  District Court did not have jurisdiction to rule what was

25  property of the estate and what was not, and —

1          THE COURT:  Well, there's a problem with that.  Wait a

2    minute, Mr. Sacks.  The problem with that is that as of the date

3    the District Court decided that these were property of the

4    receiver, at least according to the District Court, that was

5    prepetition.  And so it's not exactly clear that prepetition the

6    District Court didn't have jurisdiction to determine what was —

7    what belonged to the receiver and what belonged to the

8    prepetition debtor.  And so then you get into the question about

9    the second order.

10          But if you — if you accept for a moment that the

11   District Court determined in its first prepetition order that

12   this was property of the receiver, then your jurisdictional

13   argument is weaker, much weaker.

14          MR. SACKS:  Well, I don't think so, Your Honor,

15   because I think the Court had a perfect answer to that argument

16   when we were here on Wednesday which was that merely because a

17   court has decided prepetition the ownership of something does

18   not determine what a bankruptcy court then does when faced with

19   a debtor that has possession, allegedly, of the thing that is

20   owned by a nondebtor, the other party.

21          THE COURT:  Not allegedly.

22          MR. SACKS:  Well, —

23          THE COURT:  You do have possession.

24          MR. SACKS:  Well, that's — well, I guess the problem I

25   have with this is that the federal court did not really

*Motion for Order to Show Cause re Preliminary Injunction*                    19

1   determine possession of anything that's in our bank account.

2   There was never any attempt to determine how much was in the

3   bank account or that any specific funds were property of anyone.

4            THE COURT:  Right.

5            MR. SACKS:  Instead the federal court's determination

6   was with respect to a vague concept called reserve funds or a

7   reserve account, which doesn't exist.

8            THE COURT:  But those issues —

9            MR. SACKS:  So we might —

10           THE COURT:  Those issues are —

11           MR. SACKS:  We might want —

12           THE COURT:  Those issues are presently before the

13  Eleventh Circuit, are they not?

14           MR. SACKS:  Well, I'm not sure what you mean by "those

15  issues."  But the question of whether the omnibus order is

16  indeed something that created an obligation at all, whether it's

17  a valid obligation that the receiver can enforce is before the

18  Eleventh Circuit, I agree.  But I think what is before this

19  Court is whether the debtor has an interest in its funds in its

20  bank account.  And I think it's unquestionable that this Court

21  does, that those are property certainly in the possession of the

22  estate and property of the estate, that the District Court was

23  never making any ruling about funds in the bank account that

24  were identified to that action.

25           So I mean we can — we can debate the jurisdictional

*Motion for Order to Show Cause re Preliminary Injunction*                    20

1    issue, but I think there's a sound basis for this Court to

2    proceed and for its ruling to be upheld if the other parties

3    want to appeal it.  The Court well expressed it in its

4    memorandum decision and it's obvious that we are threatened by

5    irreparable harm by what's proposed here.

6           And I wanted to say something about that because I

7    think that this Court cannot preserve its jurisdiction merely by

8    saying that the receiver might have to give back the money, if

9    you will, if this Court makes an order, because the receiver

10   doesn't recognize this Court's jurisdiction.  That's the entire

11   problem we have.  They insist that the District Court has the

12   only jurisdiction and now the Eleventh Circuit has the only

13   jurisdiction.  And, as a result, making an order that puts the

14   money in their hands takes it completely out of the Bankruptcy

15   Court's ability to control the ultimate disposition of the

16   funds.

17          THE COURT:  In other words, —

18          MR. SACKS:  We would be right back in front of the

19   District Court subject to an order, in fact.  In fact, it

20   doesn't even remove the conflicting-order aspect of this, as the

21   Court suggests that it might because the receiver has continued

22   to maintain that it is subject to an order to deposit these

23   moneys in a segregated receivership account subject to the

24   control of the District Court.  So they — they would be, at

25   best, subject to conflicting orders if this Court says, 'You

*Motion for Order to Show Cause re Preliminary Injunction*                    21

1    only have the money subject to my control.'

2              THE COURT:  I understand.

3              MR. SACKS:  Now the proposal I wanted to make was that

4    I think that this Court can reach a resolution of the adversary

5    proceeding that we filed.  We need to amend our complaint to

6    assert a claim based on the lack of interest that the receiver

7    has in our bank account.  And the Court can then decide that as

8    a matter of law and summary judgment, and I think it can do that

9    on an expedited basis.  And the entire proceeding can then,

10   depending on how the Court rules, be subject to appeal.  And so

11   we would propose to do that really almost as soon as the Court

12   could hear it.

13             THE COURT:  Um-hum.

14             MR. SACKS:  We think we could have a hearing — we've

15   already circulated a proposed amended complaint and asked the

16   parties to stipulate to its filing.  If they won't stipulate the

17   Court could hold a hearing on certainly shortened time to do

18   that.

19             THE COURT:  Why do they have to stipulate to your

20   filing a complaint?

21             MR. SACKS:  Well, we have a complaint.  That's a —

22   there already is an adversary proceeding.  That's what this case

23   is — that's what this motion is being filed in.  And our

24   original adversary did not make a claim that the receiver lacked

25   an interest in the property.  We merely sought to enforce the

*Motion for Order to Show Cause re Preliminary Injunction*                    22

1   automatic stay against it.  And really assumed that that would

2   leave it in the Bankruptcy Court's jurisdiction.  So at this

3   point we need to amend the complaint to add that claim to

4   resolve the existence of a claim of right of ownership or lien.

5           THE COURT:  Okay.  Does anybody else wish to say

6   anything?

7           MR. MORA:  Your Honor, Michael Mora for the

8   Commission.  I just wanted to respond to the last point.

9           The Commission would not consent to the amendment of

10  the existing complaint.  And that wouldn't resolve anything

11  because it just puts us back in where we are right now, which is

12  that again Integretel's simply trying to relitigate the same

13  issues that have already been litigated in Florida, and it

14  resolves absolutely nothing.  To file an amended complaint to do

15  the same thing a third time.

16          THE COURT:  Ms. Diemer.

17          MS. DIEMER:  Yes, Your Honor.  As a secured creditor I

18  am concerned about the possibility that funds which I have a

19  properly-perfected secured interest in, I on behalf of my client

20  have a properly-perfected secured interest might go outside the

21  scope of this Court's jurisdiction.  And I think that's a real

22  and significant risk as this case is teed up.

23          Furthermore, it could end up in the position that my

24  client would have to be forced to litigate to, you know, in a

25  worst-case scenario, in the worst-case scenario, should this

1    matter convert and there be insufficient funds, to pay my client

2    the remaining security funds that it is owed, we might then be

3    placed in the position by such an order of being required to go

4    outside the state of California to litigate those funds in a

5    foreign circuit, despite the fact that we have both appropriate,

6    properly-perfected prepetition security and postpetition

7    security.

8           And I think that that is an unfair and undue burden

9    upon my client.  I could see if the Court was interested in

10   making such a ruling, that if the ruling were confined to a

11   separate, segregated interesting-bearing account in the state of

12   California to be held by a third party, or something, fine.  But

13   I don't want to have to, God forbid a worst-case scenario

14   occurs, to have to go and litigate in the Eleventh Circuit at

15   great added expense over money that frankly is within the core

16   jurisdiction of this Court and which should be mine should the

17   worst-case scenario come to pass.  I think it poses a huge and

18   unfair burden upon the secured creditor in this case.

19           MR. FIERO:  Your Honor, this is John Fiero for the

20   committee.

21           THE COURT:  I can barely hear you, Mr. Fiero.

22           MR. FIERO:  I'm sorry, Your Honor.  This is John Fiero

23   for the committee.  Is that better?

24           THE COURT:  Yes.

25           MR. FIERO:  Your Honor, it's my expectation that the

*Motion for Order to Show Cause re Preliminary Injunction*               24

1   debtor would never have agreed to segregate these funds in the

2   first place in the context of a cash collateral fight had it

3   known that at some later date the Court would order that the

4   funds be sent to —

5           THE COURT:  I'm not ordering anything, Mr. Fiero.

6           MR. FIERO:  Yes, I understand that, Your Honor, but

7   that was — that's what the receiver has said it will accept.

8           THE COURT:  No.  Well, the receiver may go — may get

9   the — you couldn't have been banking on an injunction here.  At

10  that point I even asked you whether I had jurisdiction to issue

11  the injunction, and you wouldn't give me an answer.  So I don't

12  think you could have been banking on that.

13          MR. FIERO:  No, —

14          THE COURT:  There's no question that I'm not going to

15  order the — I don't — I'm not proposing to order the debtor to

16  transfer any funds.  I'm just deciding whether it's appropriate

17  for me to issue an injunction.

18          MR. FIERO:  Your Honor, our position always was, and

19  you may recall that I mentioned it at the time, that their —

20  that this was property of the estate and that are, in fact,

21  cases, different ones, that I mentioned to you different ones

22  than the ones that you cited to us last week involving landlord

23  and tenants with expired leases, where the question of property

24  of the estate remains even after a court has found that a

25  landlord is entitled to possession of the property.

*Motion for Order to Show Cause re Preliminary Injunction*                25

1    So I don't think there's any question about this Court

2    having jurisdiction to determine the property-of-the-estate

3    question.

4    THE COURT:  But wait a second, Mr. Fiero.  I think

5    that I have exclusive jurisdiction to determine what is property

6    of the estate, too.  The question is whether I have jurisdiction

7    to enjoin the receiver and the FTC from doing what the District

8    Court has ordered the debtor to do.

9    MR. FIERO:  Well, Your Honor, if you — if you find

10   that it is — that there's a reasonable likelihood of success on

11   the merits of the essential claim of whether or not it's

12   property of the estate, certainly there could be no basis for

13   transferring the money to the receiver, as the order — as the

14   omnibus order suggests.

15   I mean let's remember that, you know, what if there

16   had been $1 in those accounts on the day that the omnibus order

17   had been entered, would that mean that the extent of the

18   receiver's claim would be $1?

19   THE COURT:  I thought — well, I don't know how to

20   answer that, Mr. Fiero.

21   MR. FIERO:  And I didn't expect you to, Your Honor.  I

22   just wanted to register for the Court the committee's concern,

23   which is identical to that of POL, that — that the property of

24   this estate remain subject to the husbandry, if you will, of

25   this debtor and this Court's order.

1          THE COURT:  Thank you, sir.

2          MR. GOLDFARB:  Your Honor, Neal Goldfarb.  Might I

3   respond to Mr. Mora's statement?

4          THE COURT:  Sure.

5          MR. GOLDFARB:  Mr. Mora said he's concerned about

6   relitigating issues that were litigated before the Florida

7   Court, but in connection with the property-estate issue we're

8   not relitigating anything because we never had a chance to

9   litigate that issue before the bankrupt- — before the District

10  Court.

11         THE COURT:  I am aware of that.

12         MR. GOLDFARB:  So I just think, you know, that —

13  that —

14         THE COURT:  Although the District Court purported to

15  order.

16         MR. GOLDFARB:  I'm sorry?

17         THE COURT:  The District Court issued an order that

18  says that this isn't property of the estate.  So whether or not

19  you got a chance to litigate it or not, the District Court

20  thinks that it's — that the issue has been adjudicated.

21         MR. GOLDFARB:  Well, that's correct in terms of what

22  the court thinks, but in terms of what this Court, what Your

23  Honor is — whether Your Honor's precluded by that, the fact that

24  we didn't get to litigate it seems to me means that it's not a

25  conclusive decision.

1          THE COURT:  All right.  I want to mention something

2    else and that is that whether — let me just say it differently.

3          If a court other than the Bankruptcy Court determines

4    that the automatic stay is not applicable or grants relief from

5    the automatic stay and gets that decision wrong, then there is

6    no relief from the automatic stay.  The nondebtor party cannot

7    rely, as I understand the law, on the determination that

8    something isn't subject to the automatic stay.

9          So that if, for example, the receiver were to pursue

10   contempt proceedings and if it were ultimately determined that

11   those contempt are violative of the stay, then the receiver

12   would be operating at his own risk.

13                        THE COURT'S RULING

14         THE COURT:  Having said that, counsel, my — my

15   position on all of this has changed and I'm not willing to issue

16   an injunction along the lines of enjoining the receiver from, if

17   you will, obeying the Florida District Court, seeking the

18   contempt proceeding following the Florida District Court's

19   order, seeking the debtor to transfer the funds.  I'm just not

20   willing to do it.

21         So with respect to that issue I'm abstaining.  You're

22   perfectly free — I've not decided that on the merits.  The

23   debtor is perfectly free to seek an injunction from or a stay

24   from the Eleventh Circuit, to go back to the District Court, to

25   do whatever he wants.  And if the debtor wants me to issue an

*The Court's Ruling*                                                    28

1    order denying an injunction so that the debtor can appeal that

2    order, I'm clearly doing it because I don't think it would be

3    appropriate for me to do it under the circumstances.  And — and

4    — and I don't even know whether that would be something that the

5    debtor would conceivably appeal anyway.

6            But I am willing to enjoin the receiver if the

7    receiver gets possession of the funds from transferring those

8    funds to anyone in whole or in pat absent further order of this

9    Court, the Bankruptcy Court.  And I'm going to go ahead and

10   issue my findings of fact and conclusions of law on that, and

11   then you will do whatever you do, all of you.

12           Before the Court is an order to show cause why this

13   Court should not preliminarily enjoin the continued enforcement

14   of the omnibus order entered by the Florida District Court

15   prepetition.  The Florida District Court will subsequently be

16   referred to as the Florida Court.

17           The Court, this Court hereby incorporates the findings

18   of fact and conclusions of law as set forth in this Court's

19   Memorandum Decision — Memorandum Decision filed and entered on

20   November 2nd, 2007, which I refer to as the Memorandum Decision.

21           In the Memorandum Decision this Court declined to rule

22   on the merits of a preliminary injunction as to enforcement of

23   the omnibus order since that order at that time was stayed by

24   the Eleventh Circuit.  The Eleventh Circuit lifted that stay on

25   November 5th, 2007, and this Court granted a temporary

1  restraining order, enjoining the continued enforcement of the

2  omnibus order.

3        In addition to today's oral ruling this Court

4  incorporates this Court's comments made on the record at the

5  November 16, 2007 hearing as a basis for this Court's ruling.

6  And I say in addition to today's ruling, but — and the

7  Memorandum Decision.

8        The receiver argued at the hearing on the order to

9  show cause regarding a preliminary injunction that this Court

10 determined that the Barton doctrine did not apply to receiver,

11 this Court would be sitting, in essence, in review of the

12 Florida Court because the Florida Court has already determined

13 that the subject funds are not property of the estate.

14        The Court has thoroughly reviewed the discussion of

15 the Barton doctrine as set forth in this Court's Memorandum

16 Decision at pages 38 through 49.  In the Memorandum Decision the

17 Court explained why this — why this Court concluded that the

18 Barton doctrine is not applicable to this adversary proceeding

19 and why this Court had jurisdiction to determine that the Barton

20 doctrine is not applicable under the facts of this case.

21        Nothing in the receiver's opposition to this

22 preliminary injunction or in receiver's oral argument at the

23 November 16, 2007 hearing alters this Court analysis as set

24 forth in the Memorandum Decision.

25        Moreover, other bankruptcy courts have held that the

*The Court's Ruling* 30

 1   Barton doctrine does not apply where a bankruptcy trustee seeks

 2   turnover of property of the bankrupt estate from a custodian.

 3   See *In Re Citex*, C-i-t-e-x, *Corp.*, 302 BR 144 Bankruptcy,

 4   Eastern District of Pennsylvania 2003; *In re Automotive*

 5   *Professionals, Inc.*, 2007 WestLaw 195 8595, Bankruptcy, Northern

 6   District of Illinois, July 3rd, 2007.  The facts of this case

 7   are analogous.  Here, debtor seeks to enjoin the turnover of

 8   what debtor asserts is property of the estate if compliance with

 9   the Barton doctrine is not required and a motion to compel

10   turnover of property held by a custodian, compliance with the

11   Barton doctrine is also not required to enjoin a federal

12   receiver who seeks to obtain custody over property that is very

13   likely property of the estate.

14           Should it later be determined that the Barton doctrine

15   does apply to the receiver and debtor needed to obtain

16   permission from the Florida Court to sue receiver in this Court,

17   this Court notes that it's highly likely, as argued by debtor,

18   that under *In re Crown Vantage, Inc.*, 421 F.3d 963 Ninth Circuit

19   2005, receiver would seek to — would need to seek relief from

20   this Court to proceed against debtor in the contempt proceedings

21   in the Florida Court.  This is so because debtor is the debtor-

22   in-possession of this Chapter 11 bankruptcy case, pursuant to

23   Bankruptcy Code Section 11011.  As a debtor-in-possession of

24   this bankruptcy case, Bankruptcy Code Section 1107 essentially

25   grants debtor the rights and powers of a bankruptcy trustee.

*The Court's Ruling*                                              31

1   And debtor performs the functions and duties of a bankruptcy

2   trustee serving in a case under this chapter.

3            As a bankruptcy trustee, under *Crown Vantage* debtor

4   cannot be sued in a foreign jurisdiction, in this case the

5   Florida Court, without permission of this Court appointing — of

6   the Court appointing the trustee in this case — in this case —

7   this Court.

8            So I'm going to repeat that sentence.

9            As a bankruptcy trustee, under *Crown Vantage* debtor

10  cannot be sued in a foreign jurisdiction, in this case the

11  Florida Court, without the permission of a court appointing the

12  trustee, in this case this Court.

13           *Crown Vantage* likely applies even though debtor was

14  subject to the receiver's motion to compel prepetition.  And

15  this is so because any postpetition action by the receiver

16  against debtor is also against debtor's bankruptcy estate and

17  not just against the prepetition debtor.  As such, any

18  postpetition action by receiver is against the debtor-in-

19  possession, the entity that has the rights and powers of a

20  bankruptcy trustee and performs the functions and duties of a

21  bankruptcy trustee serving in a case under this chapter.

22           The FTC argues that the receivership established by

23  the Florida Court gives Florida *in rem* jurisdiction over the

24  commingled funds to the exclusion of the bankruptcy estate.  The

25  FTC argues that the Ninth Circuit authority of *CFTC versus Co*

1  *Petro Marketing Group, Inc.*, 700 F.2d 1279 at 1281 through 1284,

2  Ninth Circuit 1983, stands for the proposition that the Florida

3  Court retained jurisdiction postpetition to order the turnover

4  of subject funds alleged to be property of debtor's bankruptcy

5  estate and such jurisdiction was not divested by this Court's

6  jurisdiction.  This Court does not agree with FTC's expanded

7  reading of *Co Petro*.

8          In *Co Petro*, as in every other case cited by the FTC

9  regarding this issue, the entity that was the subject of the

10  federal receivership was also the entity that was under

11  bankruptcy protection.  That is not the case in this instance.

12          The Ninth Circuit in *Co Petro* cited to *Collier*

13  *Bankruptcy Manual* for the proposition that the purpose of the

14  broad *in rem* jurisdiction of the bankruptcy court is, and I

15  quote:  To render authority and control of the bankruptcy court

16  paramount and all-embracing to the extent required to achieve

17  the ends contemplated by the new legislation and to exclude any

18  interferings by the acts of others or by proceedings before

19  other courts where such activities or judicial proceedings would

20  in some way frustrate the jurisdiction of the bankruptcy courts,

21  1 *Collier Bankruptcy Manual*, Section 3.01 and 3-24, Third

22  Edition 1982; *Co Petro*, 700 F.2d at 1282.

23          The Ninth Circuit went on to say:  Allowing the

24  District Court to enforce its preliminary injunction by

25  directing return of the $60,000 to the receiver would in no way

*The Court's Ruling*                                        33

1   frustrate the jurisdiction of the Bankruptcy Court.  Section 543

2   of the Act protects the Bankruptcy Court's exclusive

3   jurisdiction over property of the estate by requiring the

4   receiver to preserve it and deliver it to the bankruptcy

5   trustee, 11 USC Section 543, Supplemental 4, 1980; accord *SEC*

6   *versus First Financial Group*, 645 F.2d at 439.

7         Therefore, Section 1471(e) does not divest the

8   District Court in this case of jurisdiction to issue an order to

9   aid the receiver in collecting and preserving property of the

10  estate, *Co Petro*, 700 F.2d at 1282 to '83.

11        Accord *SEC versus First Financial Group of Texas*, 645

12  F.2d, 429 at 440, Fifth Circuit 1981.  And I quote:  To the

13  extent that the exercise of a district court's jurisdiction

14  threatens the assets of the debtor's estate, the bankruptcy

15  court may issue a stay of those proceedings, 11 USC Section

16  105(a).

17        Additionally, 11 USC Section 543 protects the

18  bankruptcy court's exclusive jurisdiction over property of the

19  estate by requiring the custodian of such property to preserve

20  it and deliver it to the bankruptcy trustee.  In light of these

21  provisions and the ancillary nature of the equitably relief of

22  appointment of a receiver for the entity in bankruptcy in

23  regulatory enforcement actions, we do not find that the District

24  Court's order was made in contravention of the

25  exclusive-jurisdiction provision of Section 1471(e) — and I've

1   eliminated a footnote.

2          The facts of *Co Petro* are not the facts of this case.

3   Here, permitting receiver to continue enforcement of the

4   turnover order is not an order to aid in collection and

5   preservation of property of the bankruptcy estate that

6   subsequently will be turned over to the Bankruptcy Court for

7   distribution.  Indeed, on the contrary, receiver and the FTC's

8   determination to proceed with the omnibus order will remove and

9   potentially dissipate over $1.7 million in what is likely

10  property of this bankruptcy estate.

11         As the Ninth Circuit pointed out in *Co Petro*, the

12  district court was not divested of jurisdiction to enforce a

13  turnover order because permitting the district court to retain

14  jurisdiction actually aided the bankruptcy estate.  That is very

15  different from the facts that are before this Court.

16         The FTC also asserts that issuing a Section 105

17  injunction as to the contempt proceeding would exceed this

18  Court's discretionary authority because the Florida Court's

19  orders preclude debtor from relitigating the issue of ownership

20  of the, quote, reserve, unquote, funds, citing *In re Reynoso —*

21  *Reynoso*, 477 F.3d, 1117, 1121, Ninth Circuit 2007.

22         However, the first criteria for issue preclusion is

23  not met here, that the issue necessarily decided at the previous

24  proceeding is identical to the one sought to be relitigated.  In

25  the omnibus order the Florida Court addressed whether the

*The Court's Ruling* 35

1   receiver had a property interest in the abstract, but did not

2   address to what particular asset that interest attached.  The

3   question of whether receiver could trace his asserted property

4   interest into any specific funds held by the debtor was not

5   litigated before the Florida Court.

6         The question here is whether any interest receiver had

7   at the time of debtor's bankruptcy filing attached to specific

8   funds or assets now held by the debtor.  Thus debtor is not

9   relitigating the identical issue previously litigated before the

10  Florida Court.

11        Moreover, this Court is not deciding today whether the

12  debtor or the receiver owns the subject funds.  The Court is

13  making no decision today as to who owns those funds.  Rather,

14  this Court is only deciding that debtor has a substantial

15  likelihood of success on the merits of debtor's position that

16  the subject funds are property of the debtor's bankruptcy

17  estate.  The debtor definitely has a likelihood of success on

18  the merits of that position.  And that would be true regardless

19  of whether this Court, the Eleventh Circuit, the Ninth Circuit,

20  or the Supreme Court were ultimately to decide that issue.

21        Receiver finally asserts that debtor has not met the

22  standards for injunctive relief under Section 105.  And, as this

23  Court will set forth in greater detail, the Court finds that

24  debtor has met its burden for a Section 105 preliminary

25  injunction.

*The Court's Ruling*                                             36

1        The standard for injunctive relief in the Ninth

2   Circuit is well settled.  A party must show either:  One, a

3   likelihood of success on the merits and the possibility of

4   irreparable injury or, two, the existence of serious questions

5   going to the merits and the balance of hardships tipping in its

6   favor, the required showing of harm varies inversely with the

7   required showing of meritoriousness, *Miss World U.K. Ltd. versus*

8   *Miss America Pageants, Inc.*, 856 F.2d 1445 at 1448, Ninth

9   Circuit 1988.

10       In the reorganization context the Ninth Circuit has

11  said that a debtor seeking a stay against a nondebtor must show

12  a reasonable likelihood of successful reorganization.  As set

13  forth in detail in the Memorandum Decision at pages 19 through

14  21, debtor has definitely demonstrated that debtor has and had a

15  reasonable likelihood of successful reorganization.

16       In addition to those findings, on November 2, 2007,

17  the committee agreed to an additional two weeks for debtor's use

18  of cash collateral while debtor and the committee continued

19  discussions for a plan of reorganization.

20       At the November 2, 2007 hearing no creditor opposed

21  debtor's use of cash collateral based on the viability or lack

22  of viability of the debtor's business.  No creditor did that.

23       In addition, the Creditors' Committee has consented to

24  debtor's continued use of cash collateral through November 30,

25  2007.  Only in the — only the FTC and the receiver oppose

*The Court's Ruling*                                                    37

1  debtor's use of cash collateral, and that objection was only on

2  the basis that both parties objected to debtor using the funds

3  in the blocked account.  No creditor opposed debtor's use of

4  cash collateral based on the viability of debtor's business.

5          For the reasons stated in the Memorandum Decision and

6  the additional information brought to the Court's attention at

7  the November 2, 2007 and November 16, 2007 cash collateral

8  hearings, debtor has demonstrated that debtor has a reasonably

9  likelihood of a successful reorganization sufficient for the

10 issuance of a preliminary injunction.

11         Additionally, as set forth in great detail in the

12 Memorandum Decision at pages 38 to 58, debtor has demonstrated a

13 strong likelihood of success on the merits that the property the

14 receiver seeks to have the debtor turnover pursuant to the

15 omnibus order is in fact property of the estate.  The omnibus

16 order does not require debtor to pay any specific amount of

17 funds to the receiver.  Rather, in order to comply with the

18 omnibus order debtor would have to pay receiver out of debtor's

19 general commingled funds the so-called, quote, reserves,

20 unquote, the Florida Court determined debtor held on behalf of

21 the prior customers, the Florida Court describes such reserves,

22 but certainly did not quantify them.

23         Prepetition debtor did not turn over any funds to the

24 receiver and debtor did not segregate any such funds in any

25 fashion.  As of the petition date, the debtor retained an

*The Court's Ruling*                                                      38

1   interest in all of the funds in debtor's general bank account

2   and receiver asserted an interest in some as-yet unquantified

3   portion of those funds.

4           On the petition date this Court obtained exclusive

5   jurisdiction over all funds in debtor's general bank account,

6   under Section 1334(e) of Title 28, accord *In re Simon*, 153 F.3d

7   991 at 996, Ninth Circuit 1998.

8           Now the receiver argues at length that this Court is

9   purporting to decide whether the $1.7 million in commingled

10  funds constitutes property of debtor's bankruptcy estate, it is

11  correct that this Court is of the opinion that as of the filing

12  of the bankruptcy petition this Court obtained exclusive

13  jurisdiction to determine what is or is not property of the

14  estate.

15          However, it is not necessary for this Court to decide

16  one way or the other whether the 1.7 million is property of the

17  debtor's estate in order to issue a preliminary injunction

18  against enforcement of the contempt proceeding against debtor

19  and the omnibus order, in particular, vis-a-vis the distribution

20  of any such funds.  Rather, this Court need only find that there

21  are serious questions going to the merits, of whether the 1.7

22  million in commingled funds is property of the debtor's estate.

23          The irreparable harm to debtor of having to turn over

24  those funds to the receiver, who could then dissipate them, is

25  so great that this Court need only find that there are serious

*The Court's Ruling* 39

1    questions going to the merits on that issue.  In granting debtor

2    a preliminary injunction, this Court is not reviewing the

3    decision of the Florida Court.  Instead, this Court is deciding

4    debtor's likelihood of success on the merits and, alternatively,

5    that there are serious questions going to the merits in the

6    context of ruling on debtor's request for a preliminary

7    injunction.

8         In evaluating debtor's likelihood of success on the

9    merits, this Court also needs to consider the circumstances

10   under which the Florida Court entered the omnibus and

11   clarification orders.  The bankruptcy estate did not exist at

12   the time the omnibus order was entered.  The bankruptcy estate

13   was not given any opportunity to brief or argue the merits of

14   the FTC's emergency motion prior to the Florida Court issuing

15   the, quote, clarification order, unquote, postpetition.

16        In the clarification order, the Florida Court

17   purported to determine what interest the bankruptcy estate had

18   in the approximately $1.7 million ordered to be turned over to

19   the receiver in the omnibus order, although there's no

20   quantification in the omnibus order whatsoever, without the

21   bankruptcy estate having the opportunity to argue or brief that

22   issue in any way.

23        This is an additional significant reason debtor is

24   likely to prevail on the merits.  Alternatively, debtor

25   certainly has demonstrated a substantial question going to the

*The Court's Ruling* 40

1   merits of the procedure underlying the issues of the

2   clarification order.

3          In issuing this preliminary injunction, this Court is

4   not issuing an order that is in conflict with any issue that is

5   presently before the Eleventh Circuit.  Indeed the parties, that

6   is debtor, receiver, and the FTC, have all agreed to pursue the

7   litigation before the Eleventh Circuit and nothing in this

8   Court's preliminary injunction precludes the parties from doing

9   so.  Plus, debtor's bankruptcy case is moving very rapidly.  By

10  December 7th or before, the parties and this Court may know much

11  more about what debtor's reorganization plans will be and

12  whether the debtor even needs the $1.7 million that are — that

13  are in dispute.

14          Thus the parties and this Court may also have

15  additional information regarding the status of the appeals in

16  the Eleventh Circuit and the FTC's appeal of this Court's

17  Memorandum Decision.

18          The debtor will be seriously and irreparably harmed if

19  the receiver and FTC are permitted to enforce the omnibus order

20  and to possibly dissipate the $1.7 million.  First, they're

21  already being harmed by — if the FTC or the receiver are able to

22  force the debtor to transfer funds out of the debtor's estate,

23  and debtor certainly has possession of those funds, and preclude

24  the possibility the debtor will be able to use them in the

25  context of debtor's reorganization.

*The Court's Ruling* 41

1    This Court is not enjoining that, but I do find that

2    the debtor will be seriously harmed if that occurs.  But even if

3    the funds are transferred, the debtor would be very

4    substantially and irreparably harmed as well if the receiver has

5    the right to dissipate those funds, particularly at this point

6    in debtor's reorganization efforts.

7    If the funds are dissipated the debtor's estate will

8    lose the over $1.7 million that appears very likely to be

9    property of this estate.  Those funds will not be available to

10   debtor or secured or unsecured or other creditors if they are

11   turned over to the receiver and then dissipated.

12   Moreover, if the debtor is required to turn over the

13   commingled funds, the debtor will be preferring receiver over

14   all similarly-situated creditors.  Debtor is a debtor-in-

15   possession is a fiduciary to all of debtor's creditors, *inter*

16   *alia*, secured creditors, unsecured creditors, customers, the —

17   excuse me — the FTC, and the receiver.

18   The receiver certainly does not represent all

19   creditors of debtor's estate.  At most, receiver represents the

20   receivership estates of the prior customers and the FTC.

21   Receiver does not seek to have the commingled funds turned over

22   to him to protect those funds for all creditors of debtor's

23   bankruptcy estate.  Rather, receiver seeks possession of those

24   funds for the benefit of the receivership estates of the prior

25   customers to the exclusion of debtor's other secured and

*The Court's Ruling*                                                                    42

1    unsecured creditors.

2              Permitting receiver to implement the omnibus order

3    would irreparably harm the debtor's bankruptcy estate by

4    preferring one creditor, the receiver, over similarly-situated

5    creditors of the debtor since most if not all service contracts

6    provide for the same reserves.  And I put the term "reserves" in

7    quotes.

8              Additionally, as set forth in great detail in the

9    Memorandum Decision at pages 29 to 35, this is a critical time

10   in debtor's reorganization.  Permitting the receiver to continue

11   his enforcement of the omnibus order and possibly dissipate the

12   funds would terribly divert the debtor's president and other

13   personnel from the critical reorganized efforts.  The debtor

14   continues actively to pursue a successful organization and is

15   working closely with the Creditors' Committee toward that end.

16   Diverting debtor's management at this critical juncture with

17   time and attention that would be devoted to addressing the

18   enforcement of the omnibus order would threaten debtor's

19   reorganization.

20             Finally, in addition to the diversion of debtor's

21   management from the reorganization process, debtor will be

22   harmed by incurring substantial legal fees and costs the debtor

23   could ill afford at this juncture if enforcement of the omnibus

24   order is not enjoined, at least in terms of any possible

25   distribution of such funds.

*The Court's Ruling* 43

1    Debtor estimates that the debtor will incur an

2    additional 50,- to $150,000 in fees related to the receiver's

3    request for the turnover of commingled funds.  Receiver argues

4    that the contempt proceedings are largely complete and the

5    orders are self-executing.  However, the omnibus order is now on

6    appeal.  If the enforcement of the omnibus order is not

7    enjoined, the debtor will have to comply with the order to turn

8    over the funds or show cause why the debtor should not be held

9    in contempt and then deal with any subsequent appeals of the

10   Florida Court's decision.

11   Now this Court, as I say, is limiting its injunction.

12   Although I think that the debtor will be harmed by all of those

13   things, because of comity I am limiting my decision to

14   prohibiting the receiver and the FTC from dissipating any funds

15   that are turned over to them that are presently in the debtor's

16   estate.

17   As set forth in greater detail in the Memorandum

18   Decision at pages 49 to 52, receiver asserts that enjoining the

19   contempt proceeding will harm the receiver by inferring with the

20   administration of a receivership, relitigating the parties'

21   disputes that have already been addressed by the Florida Court

22   in the omnibus and clarification orders, and the dissipation of

23   1.7 — $1,762,762.56 that the Florida Court required debtor to

24   turn over to the receiver.  This Court has already addressed why

25   enjoining the receiver does not unduly interfere with the

*The Court's Ruling*                                                                    44

1    administration of the Florida Court receivership and why the

2    preliminary injunction is not a relitigation of the omnibus and

3    clarification orders.

4          The alleged harm to the receiver of not being able to

5    dissipate the funds does not outweigh the enormous threat of

6    irreparable injury to the debtor should the Court not issue a

7    preliminary injunction.

8          As I say, the Court has found that the debtor has

9    demonstrated a likelihood of success on the merits, but that the

10   Court need only find in this context that there are serious

11   questions going to the merits because the debtor has made such a

12   strong showing of a likelihood of irreparable injury if this

13   preliminary injunction would not issue.

14         Alternatively, this Court finds the debtor has made a

15   very strong showing of irreparable injury and debtor has

16   demonstrated without a question that there are serious questions

17   going to the merits.

18         Thus, based on the facts of this case in consideration

19   of the relative hardship of the parties and the public interest

20   concerns, the Court finds that continued enforcement of the

21   omnibus order severely threatens the integrity of the bankruptcy

22   process and debtor's prospects for reorganization and a

23   preliminary injunction of continued enforcement of the omnibus

24   order against debtor through March 14 is warranted — at least

25   insofar as enjoining the receiver's ability to do anything but

1   hold any funds that are now in the debtor's estate in an

2   interest-bearing account, if the receiver gets possession of

3   them.

4              On March 7, 2008 at 1:00 p.m. the Court will hold a

5   further hearing on whether the preliminary injunction of the

6   continued enforcement of the omnibus order should be continued

7   beyond March 14, 2008.  Any party may request that the

8   preliminary injunction be modified or listed — I'm sorry — or

9   lifted before March 7, 2008 for good cause shown based on facts

10  that are not currently before the Court.

11             So, as a matter of comity, I am not issuing the

12  injunction to block the receiver from seeking to have possession

13  of the funds turned over to him.  I certainly think that the

14  debtor has made a case for a preliminary injunction on that

15  regard; but, as a matter of comity, I am not issuing that

16  injunction.

17             The District Court has ordered the debtor to turn

18  funds over to the receiver and my order today does not stop

19  that.  My order says, though, that if they are turned over to

20  the receiver, that the receiver or the FTC, or anyone else,

21  cannot do anything but keep them in a blocked, interest-bearing

22  account absent further order from this Court.  And the debtor

23  should prepare a form of order after review by the FTC and the

24  receiver.

25             Are there any questions?

*The Court's Ruling* 46

1          MR. OETZELL:  Yes, Your Honor.  I'm sorry.  This is

2    Walter Oetzell.  I'm sorry.  Your injunction means that the

3    receiver can go to the District Court in an attempt to get the

4    funds turned over, even though that would constitute the

5    enforcement of the contempt order, correct?

6          THE COURT:  My injunction does not enjoin that.

7          MR. OETZELL:  Right.

8          THE COURT:  That may be a violation of the stay, and I

9    caution you that; —

10         MR. OETZELL:  I understand.

11         THE COURT:  — but this injunction today does not block

12   that.

13         MR. SACKS:  Your Honor, this —

14         THE COURT:  So I'm not saying you may.  I'm just

15   saying that the injunction that I've issued today does not block

16   that action.

17         MR. SACKS:  Your Honor, Steven Sacks.  It seems to me

18   it's correct that the Court has ruled that the Barton doctrine

19   prohibits the receiver from taking action in the Florida Court

20   without the permission of the Bankruptcy Court.

21         THE COURT:  That wasn't sought.  You never sought that

22   relief.  It was just an argument that you put in that I agreed

23   with.  That if the Barton doctrine is applicable, that the

24   Barton doctrine is applicable both ways.

25         MR. SACKS:  But —

*The Court's Ruling*                                                47

1          THE COURT:  That's all that happened.  You didn't come

2    in here seeking an injunction based on the application of the

3    Barton doctrine.  In fact, you said that the Barton doctrine

4    didn't apply.  And I say if the Barton doctrine applies it would

5    apply to this Court.  That's all that's happened, Mr. Sacks.

6          MR. SACKS:  Well, Your Honor, normally one doesn't

7    seek an injunction based on the Barton doctrine, but it still

8    applies.  And the Court's holding —

9          THE COURT:  I don't know what you just said, but I've

10   tried to make myself clear.

11         MR. SACKS:  Your Honor, the further relief we would

12   request is that the Court hold a hearing on or about Friday,

13   November 30th, to consider our motion to amend the complaint and

14   that the Court further consider issuing an order shortening time

15   hearing on a motion for summary judgment with respect.

16         THE COURT:  Do we have other hearings on November 30?

17   Why are you picking that day?

18         MR. SACKS:  Because it's quite soon.

19         MR. FIERO:  Your Honor, it's the date of the continued

20   cash collateral —

21         THE COURT:  I can't hear.  Whoever's talking, I can't

22   hear you.

23         MR. FIERO:  I'm sorry, Your Honor.  It's John Fiero.

24   It's the date of the continued cash collateral hearing.

25         THE COURT:  Oh, I see.

*The Court's Ruling*                                           48

1          Well, what's the FTC and the receiver's position?

2          MR. MORA:  Your Honor, Michael Mora for the

3   Commission.  I think we've stated our position previously.

4          THE COURT:  I'm talking about the timing, Mr. Mora.

5   It's not — I'm not talking about the merits.  I'm just talking

6   about —

7          MR. MORA:  Your Honor, we — we would like to see a

8   motion from them to amend their complaint and have sufficient

9   time to respond because, again, —

10         THE COURT:  Okay.  When will they see the motion, Mr.

11  Sacks?

12         MR. SACKS:  We can file a motion by tomorrow, Your

13  Honor.

14         THE COURT:  Then why do I need to do this on two days'

15  notice?

16         MR. SACKS:  Because, Your Honor, I think the sooner

17  that we have a final ruling with respect to what is and what

18  isn't property of the estate with regard to the funds, —

19         THE COURT:  Mr. Sacks, you're not talking directly and

20  distinctly into the phone.

21         MR. SACKS:  I'm sorry, Your Honor.  I think it's

22  important to the Court's jurisdiction that it act immediately to

23  issue a final ruling that is not just based on probability of

24  success on the merits, but in fact is a ruling with respect to

25  its jurisdiction over property of the estate.  And so we would

*The Court's Ruling*                                                49

1  like to get to that ruling as soon as reasonably possible,

2  particularly —

3          THE COURT:  And how would allowing you to amend your

4  complaint give you a final ruling on that?

5          MR. SACKS:  Well, it doesn't, Your Honor.  But it's an

6  interim step towards filing a motion that would resolve that

7  issue and ultimately would produce a finally dispositive ruling

8  with respect to that issue from the Bankruptcy Court.

9          THE COURT:  And how is this briefing going to — how do

10 you propose this briefing is going to occur?

11         MR. SACKS:  Well, Your Honor, I can't imagine how they

12 reasonably could have opposition to a motion to amend the

13 complaint at this early stage, but I have no objection to them

14 filing a opposition brief, if they so choose.

15         THE COURT:  When, Mr. Sacks?

16         MR. SACKS:  Well, Your Honor, it's probably more for

17 the convenience of the Court.  We can give them a motion by noon

18 tomorrow.  And if they can file a response two days later,

19 that's certainly all right with me.  But if —

20         THE COURT:  But then you don't get a reply and I don't

21 get to read it.

22         MR. SACKS:  Well, obviously you should get to read it.

23 So I don't need a reply.  We can argue it.

24         THE COURT:  All right.  We'll go off the record.

25 We'll take a five-minute recess.

*The Court's Ruling*                                                          50

1          Do you want to respond to that, Mr. Mora, or Mr.

2    Oetzell?

3          MR. OETZELL:  I just don't see what a couple weeks is

4    going to hurt the debtor in respect of filing the motion to

5    amend and giving everybody a chance to take a look at it.

6          THE COURT:  Okay.  There's —

7          MR. OETZELL:  I understand Mr. Sacks has been talking

8    about a summary judgment, but, you know, let's get serious.

9    This is an evidentiary —

10          THE COURT:  I can't hear you, Mr. Oetzell, because

11   you're — you're not talking directly into the phone and —

12          MR. OETZELL:  I'm sorry.  I said I —  I do not see

13   what a couple of weeks is really going to matter for the debtor

14   in respective of getting this — this motion before the Court.  I

15   know Mr. Sacks has been talking about summary judgment and

16   almost immediate ruling.  But, let's face it, this is an

17   adversary proceeding and a trial.  That's not going to happen

18   right away.

19          MR. FIERO:  Your Honor, this is John Fiero.  How could

20   that possibly be?  They've already gotten essentially the mirror

21   image relief without any hearing of any kind.  Certainly this

22   Court could on a summary judgment basis issue a ruling which

23   would support a finding that this is property of the estate.

24          THE COURT:  I don't understand, Mr. Fiero, it's

25   certainly in the possession of the estate.  But whether it

1    ultimately will be property of the estate, are you saying I

2    could make a decision more than the debtor has possession of it,

3    on shortened time on summary judgment?

4           There's no question the debtor has possession of it

5    now, although by ten days from now the debtor may not have

6    possession of it.  So what are you thinking that I can do on

7    summary judgment?

8           MR. FIERO:  Well, Your Honor, I think the first

9    question is simply whether or not the debtor should be allowed

10   to amend its complaint.  Had the FTC not filed a motion to

11   dismiss, it could be done as of right —

12          THE COURT:  That's right.

13          MR. FIERO:  Everyone knows what the claim is going to

14   be and I believe that the debtor has actually circulated an

15   amended complaint which reflects the changes.  So there is no

16   sandbagging of any adverse party here.

17          With regard to summary judgment, Your Honor, I think

18   you could find that any moneys held by the debtor on the date of

19   bankruptcy which were the subject of commingling were, in fact,

20   property of the estate.

21          THE COURT:  I see.  Okay.  We will take a five-minute

22   recess.  Thank you, ladies and gentlemen.

23          THE CLERK:  Please rise.

24       (Recess taken from 3:35 p.m. to 3:53 p.m.)

25          THE CLERK:  Please rise.

1    THE COURT:  Please be seated.

2    Counsel, — Mr. Sacks, I have to tell you I'm a little

3    uncertain as to what your position is and let me see if I can

4    lay it out for you.

5    Ms. Diemer is very concerned, Mr. Fiero is very

6    concerned about letting the money out of this Court's

7    jurisdiction.  And I understand that concern.  But I can't

8    conceive under the circumstances here of allowing the debtor to

9    use those funds, given the pendency of the Eleventh Circuit

10   action.

11   So as long as you want the option to come here and ask

12   me to release those funds, then holding these funds in a blocked

13   account here may hurt you, because I don't think I'm going to do

14   that.  So if I abstain, then you can make whatever arguments you

15   want outside of this Court.

16   MR. SACKS:  This is Steven Sacks.  Your Honor is going

17   to a different question than I think we raised.  We want to get

18   a ruling from this Court on a matter —

19   THE COURT:  No, no.  I'm not.  I understand you want a

20   briefing on the summary judgment and the property-of-the-estate

21   issue, which is problematic in terms of timing for a different

22   reason.  But that — we can talk about that, but I'm saying I'm

23   still considering the possibility of doing what Ms. Diemer and

24   Mr. Fiero want, and that is keeping the funds here.  But not if

25   what you're going to want me to do is release them to the

1    debtor; I don't see myself doing that.  So...

2          MR. SACKS:  Your Honor is addressing a question that's

3    not before the Court with respect to whether the funds would be

4    released, which at present we would need to file papers with you

5    tomorrow seeking a hearing on December 7th with respect to

6    release on December 14th.

7          THE COURT:  Right.  But the receiver said that if

8    you'd agree to keep the funds until the Eleventh Circuit rules,

9    and without prejudice to whatever you do with respect to filing

10   your adversary here, at least the receiver would not have

11   opposed an order blocking distribution of the funds.  The FTC

12   would, but you said no to that.  And that no means that you want

13   the ability before the Eleventh Circuit rules to come here and

14   ask me to release the funds.

15         MR. SACKS:  Well, Your Honor has...  We may want that

16   ability, Your Honor.  We're not asking for it today.  What we

17   asked for today that was denied was with respect to whether we

18   were subject to contempt proceedings in the Southern District of

19   Florida, and I —

20         THE COURT:  And the receiver said —

21         MR. SACKS:  — I admit that's a substantially

22   different —

23         THE COURT:  And the receiver said if you agree not to

24   — not to dissipate the funds until the Eleventh Circuit rules,

25   he's not going to do that.

1      MR. SACKS:  And it seems to me that that is still

2  potentially on the table then, though —

3      THE COURT:  It is.

4      MR. SACKS:  But though does — the FTC didn't agree, so

5  conceivably they could —

6      THE COURT:  I would have to enjoin the FTC but not the

7  receiver.

8      MR. SACKS:  If —

9      THE COURT:  I'm not asking you to agree to something

10  you don't want to agree to, Mr. Sacks.  I'm just trying to lay

11  it out for you.

12      My concern, the thing that troubles me is that if I

13  grant — if I issue an order keeping the funds here with the

14  intention internally, if you will, I mean it's advisory to a

15  certain extent I guess, but it's also the concern about whether

16  I should abstain, whether — whether I should keep them here if I

17  don't intend to release them.

18      MR. SACKS:  Your Honor, I submit that there are two

19  different questions.  One is whether you should release the

20  funds and one is whether the Court has exclusive jurisdiction

21  over property of the estate and that the funds in the debtor's

22  account as of the petition date were property of the estate and

23  the Court could adjudicate that without regard to whether it's

24  holding the funds or not.

25      THE COURT:  Yes.  But I'm not concerned about that at

1   this point, the second.  The second we can put on a schedule and

2   you can — you can put up before me, the issue as to whether

3   they're funds properly in the estate — whether they're estate

4   funds or not estate funds.

5           But my concern is that you're talking about wanting

6   potentially a hearing on December 14th where you're going to ask

7   me to release the funds and come in with some emergency

8   situation for the debtor.  And if that's on the table, even if

9   it's not December 14th, then I'm very concerned about that.

10          MR. SACKS:  Well, Your Honor, I'm concerned as well.

11  I think our position at this point, which is subject to change

12  because things have changed in terms of what we expected from

13  the Court today, but I think our position is that we don't need

14  the funds as of December 14th and that we were serious when we

15  said to the Court last week that we were willing to have them

16  remain in the account that they're in subject to a motion to

17  release them on notice when we do need them.  But I do think

18  that we are going to need them long before we get a ruling from

19  the Eleventh Circuit, which could be a year from now, two years

20  from now, we don't know.

21          And the reason the debtor filed for bankruptcy was

22  not, as the FTC suggests, to avoid its enforcement proceeding,

23  but because we needed the money that was otherwise going to have

24  to be paid to the receiver.  And so the point of this bankruptcy

25  was to preserve that money for all creditors, not to have it

*The Court's Ruling*                                                    56

1    held indefinitely or paid to the receiver.  And so we may be

2    faced with the necessity to ask the appropriate court, which

3    we've always thought was this one, to let us use the funds in

4    our bank account to preserve the estate.

5            THE COURT:  Okay.  Does anybody else want to say

6    anything?  There are some papers in another room I need to get.

7            Okay.  We'll be in a recess for a couple minutes. go

8    off the record.  Don't rise, please.

9        (Recess taken from 4:01 p.m. to 4:05 p.m.)

10           THE CLERK:  Please rise.

11           THE COURT:  I have a question for the FTC.

12           MR. MORA:  Yes, Your Honor.  Michael Mora here.

13           THE COURT:  As you can see, this is a very difficult

14   issue and we're struggling with it because I sincerely believe

15   that these are likely property of the estate, these funds.

16           If I require by order the debtor to keep the funds

17   here in a blocked account and don't specifically enjoin your

18   contempt proceeding, do you have any basis to go after the

19   debtor for contempt?

20           In other words, do I have to enjoin you in order — in

21   order for you to leave the funds in the blocked account here?

22           MR. MORA:  I'm sorry, Your Honor.  I'm not sure I

23   follow.

24           THE COURT:  Well, let's say I issue an order ordering

25   the debtor to maintain the funds in a blocked account here and I

1  don't specifically enjoin anything in Florida?  Do you have a

2  basis to pursue contempt, given that the debtor is merely

3  following the order of this Court?

4         MR. MORA:  Well, Your Honor, the — I think the only

5  way I can answer that is the basis for the civil contempt action

6  before the Florida District Court is Integretel's failure to

7  turn over funds that they were originally required to turn over,

8  you know, almost a year and a half ago now.  So that contempt

9  would still exist.

10         THE COURT:  What do you mean it would still — you mean

11  the historical contempt would still exist, but the future

12  contempt prospectively, they'd be under an order from this Court

13  not to transfer the funds.

14         MR. MORA:  Well, the contempt is their original and

15  ongoing failure to turn over the money as required by the

16  District Court's order.

17         THE COURT:  Yeah.  But you haven't addressed my

18  question.  My question is if I enjoin them from transferring the

19  funds anywhere, then what?

20         MR. SINGER:  Your Honor, this is John Singer from the

21  Federal Trade Commission.  I'm not a hundred percent certain,

22  but I know that generally civil contempt, as I understand it, is

23  usually prospective.

24         THE COURT:  Mr. Singer, I'm sorry.  I — I understood

25  part of what you said, but not the rest.  If you could — are you

*The Court's Ruling* 58

1  on some kind of a speaker —

2          MR. SINGER:  I'll —

3          THE COURT:  Are you on a speaker?

4          MR. SINGER:  I'll start over again, Your Honor, and

5  try to speak up.  I think I faded out.  I apologize.  My voice

6  faded.

7          Your Honor, the point which I'm simply saying is this:

8  I think — I think if we — if anyone were to move for contempt

9  against Integretel at this point to compel them to pay the $1.7

10  million over to the receiver, and Your Honor had entered an

11  order that said:  You cannot — Integretel, that money has to

12  stay here under — has to stay here in California, I would

13  presume if I were in Integretel's shoes, I would say:  Your

14  Honor, Judge Ryskamp in Florida, it's impossible for us out

15  comply with any contempt order because Judge Weissbrodt in

16  California has said we can't transfer the funds to you, —

17          THE COURT:  Right.

18          MR. SINGER:  — even if you wanted to.

19          THE COURT:  Right.

20          MR. SINGER:  And I think — I think your order keeping

21  it in California would essentially negate your order permitting

22  us to go forward with the contempt proceeding.  I think it's an

23  either or attachment —

24          THE COURT:  It would negate?  Wait, Mr. Singer, here's

25  the question.  If I issue an order requiring the debtor to keep

*The Court's Ruling*                                                     59

1   the funds here, is it your position that you would still have

2   the right to seek contempt against the debtor?

3           Because if you say to me that you agree with me or

4   that you agree that you wouldn't have the right to seek contempt

5   if I order the funds here, until my order is reversed, if it is,

6   if it's overturned then, you know, that's a different story, but

7   as long as my order were in effect, that I don't have to

8   specifically enjoin you from doing anything.  I can merely order

9   the debtor to keep the funds here based on the debtor's request

10  for a preliminary injunction.  If I can do that and not enjoin

11  you, I would prefer to do that.

12          MR. SINGER:  Your Honor, I — I — I'm not sure of the

13  answer to that, Your Honor, because, as I said, I think they — I

14  think, and I don't claim expertise in this whole area, the

15  receiver may have a comment as well since he brought the motion,

16  but I would have concerns as to whether there would be an

17  impossibility defense.

18          THE COURT:  Right.

19          MR. SINGER:  Having said that, —

20          THE COURT:  And so — but the receiver is easier is

21  because the receiver has said if I block the funds the receiver

22  isn't going to oppose keeping the funds here.  But you're a

23  little more difficult, and so the question is if I block the

24  funds are you then going to go after the debtor for contempt.

25  If you say no, then — then that would be helpful.  Then I don't

*The Court's Ruling*                                              60

1   have to enjoin you.

2        MR. SINGER:  Your Honor, I don't know that we — I

3   don't — I would have to speak to the receiver about that, but I

4   think the answer may be we may seek contempt, but they may have

5   a defense.  And that would be something that Judge Ryskamp would

6   have to determine.  So, no, I can't — I cannot assure Your Honor

7   that unless you — that if you don't enjoin us to keep the funds

8   in California, we would not seek — we would not seek a contempt

9   finding against Integretel in the Florida District Court.

10       MR. GOLDFARB:  Your Honor, Neal Goldfarb.  If I could

11  just say one thing —

12       THE COURT:  Yes.  But, Mr. Goldfarb, you need to speak

13  much more loudly and much more directly into your phone.

14       MR. GOLDFARB:  I'm sorry.  Is that better?

15       THE COURT:  Yes.

16       MR. GOLDFARB:  Yes.  Just — I wanted to just point out

17  one thing that happened in the Florida litigation when we moved

18  before Judge Ryskamp for a stay pending appeal, the motion was

19  what Judge Ryskamp, quote, conditionally granted, the condition

20  being that we pay the money to the receiver but then the

21  receiver hold it in a segregated account pending the Eleventh

22  Circuit's decision.  So that's — I just wanted to make the Court

23  aware.  I don't know if the Court's aware of that aspect of the

24  procedural history, that the Court, you know, apparently was

25  willing to stay, you know, other enforcement efforts and other

1    contempt proceedings, apparently, if the funds were — were held

2    by the receiver, you know, pending the decision.

3              THE COURT:  All right.  Okay.

4              MR. SINGER:  Your Honor?

5              THE COURT:  Yes.

6              MR. SINGER:  I would simply like to say that actually

7    the order was essential on September 14th to pay the $1.7

8    million to the receiver or be held in contempt.  And that is

9    correct — what Mr. Goldfarb says is correct but not especially

10   remarkable, because essentially by paying the money to the

11   receiver to be held by the receiver is what — was a choice:

12   Contempt or pay the money over.  I'm not quite sure what — I'm

13   not sure Mr. Goldfarb made a particularly remarkable point

14   there, but if Your Honor feels differently, that's your —

15             THE COURT:  I don't understand what you just said.

16             MR. SINGER:  Okay.  Well, —

17             THE COURT:  You sort of went round and about with

18   that, and I don't understand what you just said.

19             MR. SINGER:  I apologize, Your Honor.

20             THE COURT:  Can you explain what you just said?

21             MR. SINGER:  I'll try.  What I'm saying is, Your

22   Honor, that that was the — that's exactly what the September

23   14th order was, was pay the money to the receiver or — within

24   ten days — or say why you shouldn't be held in contempt.  I

25   don't think that — that's what contempt — what a show-cause

1    order is.  And I'm not quite sure what point Mr. Goldfarb was

2    making.

3            MR. GOLDFARB:  I'm also not sure that's exactly what

4    the Court said, meant by the show-cause order.  It's not — it's

5    not that clear to me.

6                    THE COURT'S RULING, FURTHER

7            THE COURT:  Okay.  All right.  Ladies and gentlemen,

8    I'm not going to let the funds out of California.  The debtor is

9    enjoined from, based on all the findings of fact and conclusions

10   of law, which may make sense for me to repeat, the debtor is

11   enjoined from letting the funds out of California.  He has to

12   keep them in a blocked — the debtor has to keep them in a

13   blocked, interest-bearing account.  If they're not in an

14   interest-bearing account they should be moved to an interest-

15   bearing account.

16           The — and the receiver, I guess, under the

17   circumstances has to be enjoined from proceeding with the

18   contempt proceedings because the receiver wants to take action

19   which would force the debtor to transfer the funds, which this

20   Court is ordering to be retained.  And so I'm not limiting the

21   findings of fact and conclusions of law to distribution by the

22   receiver.  I'm enjoining the debtor from — I'm enjoining the

23   receiver from pursuing the contempt proceedings and I'm

24   directing the debtor to maintain the funds in the blocked

25   account.

*The Court's Ruling, Further*                                    63

1        MR. OETZELL:  Your Honor, are they to remain there

2   until the Eleventh Circuit rules?

3        THE COURT:  They're to remain there pending further

4   order of the Court.

5        MR. OETZELL:  Your Honor, —

6        MR. SACKS:  Your Honor, this is Steven Sacks.  Are you

7   enjoining both the receiver and the FTC from proceeding with

8   contempt —

9        THE COURT:  Yes, both.  Both.

10       MR. OETZELL:  Your Honor, —

11       THE COURT:  Is this Mr. Oetzell?

12       MR. OETZELL:  Yes.  Yes.  Does this — is this the

13   broad language that we had in the TRO including suggesting, et

14   cetera?  Because this —

15       THE COURT:  Yes.

16       MR. OETZELL:  — this makes it quite impossible for us

17   to operate as a receiver and fulfill our duties as receiver — as

18   the Court has —

19       THE COURT:  Well, in terms of the terms of the order,

20   Mr. Oetzell, you'll have to — we'll have to have a separate

21   hearing on that.  I'm not capable of reconstructing what

22   arguments make sense in the context of a preliminary injunction.

23   You'll have — we'll work with that on the order.

24       The answer is that the order has to be such that —

25   that you're — that you're enjoined.  And — and I don't see any

*The Court's Ruling, Further*                                           64

1    reason why we wouldn't go back to the TRO order, which I

2    adjudicated with you present and — when I say "present," on the

3    phone, and the counsel for the debtor present.  I went through

4    the two orders and made decisions.  If — if things have changed

5    in the context of a preliminary injunction and you want to argue

6    that in the context of the order, that's fine.  But the order

7    goes into effect immediately, meaning today, even though we're

8    going to go through the ministerial task of preparing a written

9    order and — in order for me to give you an opportunity, if you

10   want that, to discuss it.

11          I'm concerned, Mr. Oetzell, that you'll see a window,

12   and I don't mean this in any way critically of you, but you'll

13   see a window, there won't be a written order and therefore you

14   can go do something.  If you tell me that you understand that

15   the order is effective immediately, then if it takes us a day or

16   two to work out the language, I'm willing to do that.

17          MR. OETZELL:  We understand that, Your Honor.

18   However, we need some assurance, particularly in respect of Mr.

19   Sacks' comments just a few minutes ago that that money is in

20   danger of being dissipated.

21          It was made clear in his comments beyond argument that

22   they intend to come in here and attempt to spend that money.

23   That's exactly what we have been fighting about.

24          THE COURT:  Well, but, Mr. Oetzell, I tried to work

25   this out consensually.  And I'm not — I don't know whether the

1   Eleventh Circuit's going to take two years to rule.  I — I

2   wanted to work this out consensually with you and the FTC,

3   giving you a very strong window of time before anything could

4   happen.  But the FTC said absolutely no.  The FTC wants a

5   decision.  Here's the decision.  If I could — if I could have

6   worked something out consensually with you, Mr. Oetzell, I would

7   have done that, as you can well tell from my behavior in this

8   context.

9           MR. OETZELL:  I understand, Your Honor.  But I of all

10  people in this courtroom have been cooperative throughout —

11          THE COURT:  But you —

12          MR. OETZELL:  — this — this situation.  You had a very

13  — a solution with this thing prior, and now we are being put in

14  the position where we had said we would not object to is not

15  happening.

16          THE COURT:  I understand, but you —

17          MR. OETZELL:  The money is now subject —

18          THE COURT:  But the FTC says they're the real

19  party-in-interest and they don't agree to anything.  So, Mr.

20  Oetzell, I have no criticism of you as a lawyer.  You're welcome

21  in my Court any time.  I understand what you want.  And you'll

22  just have to trust the situation to the extent you want to.  But

23  there's going to be appeal — an appeal anyway today — or I don't

24  mean the appeal's going to come today.  But I mean there's going

25  to be an appeal of my order today; the FTC has made that

1  perfectly clear.  Even if I had limited the order, the FTC made

2  it perfectly clear that they would appeal.  So —

3          MR. OETZELL:  Well, enjoin the FTC.

4          THE COURT:  Well, —

5          MR. OETZELL:  And let us go into the Florida Court

6  and, as — as Your Honor —

7          THE COURT:  But the FTC says that you're not the real

8  party-in-interest, that they're the real party-in-interest in

9  your suit.  I mean that's — that's what the FTC's position is,

10  Mr. Oetzell.

11          And so as — and I agree with you, that your positions

12  have been more cooperative in trying to work something out than

13  the FTC's.  I don't mean that by criticizing the FTC.  I'm not

14  criticizing the FTC.  They've taken a harder line.  They're less

15  willing to try to work something out.  And so there it is.

16          MR. OETZELL:  Okay.  Your Honor, I — I will have to

17  ask for a stay of — of the injunction.

18          THE COURT:  I understand and the stay is denied,

19  otherwise it would defeat the purpose of the injunction.

20          MR. MORA:  And we join that request, Your Honor.

21          THE COURT:  And I understand, Mr. Mora, and the stay

22  is denied, otherwise it would defeat the purpose of the

23  injunction.

24          MR. OETZELL:  Your Honor, —

25          THE COURT:  Now, Mr. Mora, the one thing I need from

1   you, so — I would just — Mr. Oetzell wants to talk to me about

2   the form of the order.  But I want you to agree that the order

3   is effective immediately so that I have time to work out

4   language with the parties.  If you don't, then perhaps the

5   solution would be to issue a preliminary injunction in the exact

6   form as the TRO so at least I have a written order in effect

7   immediately.

8           MR. MORA:  And we — we would much prefer the latter,

9   Your Honor, because we need to — we need to preserve our appeal

10  rights as well.

11          THE COURT:  I don't know why you wouldn't preserve

12  your appeal right if we got an order out in two days.  You would

13  prefer that I issue a PI in the form of the TRO?

14          MR. MORA:  Yes, Your Honor.

15          THE COURT:  All right.  So, Mr. — and so that's

16  inconsistent with what the receiver requests, but given that

17  that's what you want, then, Mr. Sacks, you should fax me

18  immediately the PI, having said that I issued my findings of

19  fact and conclusions of law, including the decisions today.

20          MR. SACKS:  This is Steven Sacks.  I can do that, Your

21  Honor.

22          THE COURT:  As well as the hearings on the 16th and

23  the 19th.

24          Now let me tell you that I would have preferred

25  another route to this if we possibly could have agreed to it.

1    And — but we obviously haven't been able to, so that's the

2    situation.

3            So you fax me a preliminary injunction today, Mr.

4    Sacks, in the next few minutes, and I'll issue it.

5            MR. OETZELL:  Your Honor, what are we going to do

6    about the December 7th hearing in respect of these — of these

7    funds?  This is going to be off calendar.

8            THE COURT:  Well, I assume that the debtor has told me

9    — the debtor has told me it doesn't need the December 7th

10   hearing, so we don't need a December 7th hearing.

11           Is that right, Mr. Sacks?

12           MR. SACKS:  Steven Sacks speaking.  That's correct,

13   Your Honor.  I do still want to proceed with amending the

14   complaint, however.

15           THE COURT:  All right.  Hold on a second.  I have to

16   consult about scheduling.

17        (Pause in the proceedings.)

18           THE COURT:  I was just corrected.  The comments that I

19   made that I'm incorporating are on the 16th and the 21st, not on

20   the 19th.  I apologize.

21           Now, Mr. Sacks, under the circumstances I don't really

22   see the emergency.  Why don't you use the December 7th time to

23   argue this amending-the-complaint business and why don't you set

24   it for summary judgment in January?

25           MR. SACKS:  Steven Sacks speaking.  December 7th would

1    be fine for amending the complaint, Your Honor, and we can

2    figure out a time from there for further proceedings.

3               THE COURT:  Fine.  I have —

4               MR. MORA:  But, Your Honor, we don't — the FTC does

5    not consent to a motion to amend the complaint, though.

6               THE COURT:  I understand.

7               MR. OETZELL:  And also, Your Honor, as far as the

8    summary judgment motion goes, we expect full discovery,

9    particularly since they've raised this issue of tracing.

10              THE COURT:  Right.  I'm not going to set it now.

11   We'll talk about it on the 7th.

12              MR. OETZELL:  All right.

13              THE COURT:  I would request that the parties get

14   together and file a joint status conference sheet by December 5,

15   telling me what your respective positions are regarding

16   scheduling of the summary judgment.  And to the extent you can

17   agree, great; to the extent you can't agree, lay it all out, so

18   when I come in on the 7th I'm fully prepared.  I'd actually like

19   it by the 5th at noon.

20              Okay.  And with respect to — so with respect to

21   summary judgment, we'll be talking about that at a later time.

22              With respect to the FTC's nonconsent to scheduling a

23   hearing on December 7th, I understand.  And the — the objection

24   is noted for the record.

25              Now, Mr. Sacks, you said you can get your papers out

*The Court's Ruling, Further* 70

1    tomorrow.  That'll be fine.  Get your papers out tomorrow.  And

2    the FTC can have till the 30 — till the 3rd to respond.  And any

3    reply will come by the debtor by the 4th.

4            MR. MORA:  Thank you, Your Honor.

5            MS. DIEMER:  Your Honor?

6            THE COURT:  Yes.

7            MS. DIEMER:  Could I just ask that if the FTC and the

8    receiver do take any action related to appeal of this order that

9    they include POL on any service list?

10           THE COURT:  Could you do that, please, Mr. Oetzell and

11   Mr. Mora?

12           MR. OETZELL:  Sure.

13           THE COURT:  Thank you very much.

14           MR. MORA:  Yes, Your Honor.

15           THE COURT:  All right.  Well, thank you.  Court is

16   adjourned.

17           And, Mr. Sacks, get me your injunction.

18           Mr. Oetzell, I understand your concern.  And if you

19   want to move to amend the order because the order is a

20   restriction in a way that you feel like you can't live with,

21   I'll consider it at the time.

22           MR. OETZELL:  I understand, Your Honor.  My concern is

23   also that this does not —

24           THE COURT:  I can't hear you.  You've got to talk more

25   loudly and into the mic.

1          MR. OETZELL:  I understand Your Honor.  Thank you.

2   But my concern is also that this does not in any way address the

3   problems of inconsistent results as between the District Court,

4   the Eleventh District and this Court.

5          THE COURT:  The Eleventh Circuit.  Yes, well, I — the

6   only thing I'm doing is deciding likelihood of success on the

7   merits and, you know, the standards for an injunction in order

8   to keep the funds blocked.  And I understand that it's your

9   position that that's somehow inconsistent with the District

10  Court or — or the Eleventh Circuit's nonaction.  The Eleventh

11  Circuit has only denied a stay but hasn't issued findings of

12  fact or conclusions of law in terms of why it did that.  Isn't

13  that correct, Mr. Oetzell?

14         MR. OETZELL:  That is correct, Your Honor.

15         THE COURT:  Okay.

16         MR. OETZELL:  But it also has taken upon itself a

17  rather large raft of issues.

18         THE COURT:  I understand.  Thank you, sir, very much.

19         MR. OETZELL:  Thank you, Your Honor.

20         THE COURT:  Court is adjourned.

21         [COUNSEL]:  Thank you, Your Honor.

22      (The hearing was adjourned at 4:27 o'clock p.m.)

23                         —o0o—

24

25

```
State of California              )
                                 )    SS.
County of San Joaquin            )
```

        I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

        I further certify I am not a party to nor in any way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber through the American Association of Electronic Reporters and Transcribers, Certificate No. 00124. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.

```
                              Susan Palmer
                              Palmer Reporting Services

                              Dated December 10, 2007
```