SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
STEVEN B. SACKS, Cal. Bar No. 98875
JEFFREY K. REHFELD, Cal. Bar No. 188128
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947
Email:        mahrens@sheppardmullin.com
              ssacks@sheppardmullin.com
              jrehfeld@sheppardmullin.com


Attorneys for The Billing Resource, dba
Integretel

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| THE BILLING RESOURCE, dba Integretel, a California corporation,<br><br>Debtor-Plaintiff-Appellee<br><br>v.<br><br>FEDERAL TRADE COMMISSION, et al.<br><br>Defendant-Appellant | Case No. 07-CIV-5758-JW<br><br>Date:      Not Set<br>Time:<br>Place:     280 S. First Street<br>           San Jose, CA<br>Judge:     Hon. James Ware |

On Appeal from the United States Bankruptcy Court for the Northern District of California,
No. 07-52890-ASW, Adversary Proceeding No. 07-5156

**PLAINTIFF-APPELLEE THE BILLING RESOURCE, dba INTEGRETEL's MEMORANDUM IN OPPOSITION TO FTC'S MOTION FOR STAY PENDING APPEAL RE INJUNCTION ISSUED NOVEMBER 27, 2007**

Case No. 07-CIV- 5758-JW

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................ 1

II.  FACTUAL STATEMENT ........................................................................... 2

     A.   Overview............................................................................................ 2

     B.   The Florida Action and the Debtor's Bankruptcy Filing. .................. 3

     C.   The Adversary Proceeding and Injunction ........................................ 7

III. ARGUMENT ............................................................................................ 10

     THIS COURT SHOULD DENY A STAY PENDING APPEAL ............ 10

     A.   The Appropriate Standard for Issuing a Stay on Appeal is Whether the
          Bankruptcy Court Abused its Discretion in Denying a Stay........................ 10

     B.   The FTC Will Not Suffer Any Irreparable Injury. ........................... 11

     C.   The FTC is not Likely to Succeed on the Merits in this Appeal. .................. 13

     D.   Integretel Will Suffer Substantial Harm if a Stay is Granted.......................... 16

     E.   The Merits of the Receiver's Claim to Collect Money from Integretel
          Do Not Dictate that the Preliminary Injunction was Erroneous. .................... 17

     F.   The Preliminary Injunction Does Not Violate Any Principle
          Disfavoring Stays of Law Enforcement Actions. .............................................. 23

IV.  CONCLUSION .......................................................................................... 25

1

TABLE OF AUTHORITIES

2

<u>Page</u>

3

FEDERAL CASES

4

In re Allison,
   182 B.R. 881 (N.D. Ala. 1995) ......................................................................24

5

In re Atkins,
6   176 B.R. 998 (D. Minn. 1994) ......................................................................24

7

In re Berr,
   172 B.R. 299 (9th Cir. B.A.P. 1994) ...........................................................19

8

Bessette v. W.B. Conkey Co.,
9   194 U.S. 324, 24 S. Ct. 665 (1904) .............................................................25

10

Canter v. Canter (In re Canter),
   299 F.3d 1150 (9th Cir. 2002) ......................................................................12

11

In re Cherry,
12   78 B.R. 65 (E.D. Penn. 1987) .......................................................................24

13

Citizens to Preserve Overton Park, Inc. v. Volpe,
   401 U.S. 402, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971) ................................13

14

Clark v. Bear Stearns & Co., Inc.,
15   966 F.2d 1318 (9th Cir. 1992) ......................................................................20

16

Commodity Futures Trading Commission v. Co Petro Marketing Group, Inc.,
   700 F.2d 1279 (9th Cir. 1983) ......................................................................21

17

Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora,
18   805 F.2d 440 (1st Cir. 1986) ........................................................................24

19

In re Deep,
   288 B.R. 27 (N.D.N.Y. 2003) ......................................................................11

20

FTC v. Verity Int'l,
21   443 F.3d 48 (2nd Cir. 2006) ...........................................................................2

22

In re Flanagan,
   2007 U.S. App. LEXIS 23622 (2d Cir. Oct 9, 2007) ..................................13

23

In re Fullmer,
24   323 B.R. 287 (Bankr. D. Nev. 2005) ...........................................................10

25

Gilchrist v. General Electric Capital Corp.,
   262 F.3d 295 (4th Cir. 2001) ........................................................................18

26

In re Graphics Technology, Inc.,
27   306 B.R. 630 (8th Cir. BAP) .......................................................................21

28

Gruntz v. County of Los Angeles (In re Gruntz),
    202 F.3d 1074 (9th Cir. 2000)................................................................24

In re Irwin,
    338 B.R. 839 (E.D. Cal. 2006)..............................................................11

In re Johnson,
    960 F.2d 396 (4th Cir. 1992)................................................................23

Jones v. Louisiana State Bar Ass'n,
    602 F.2d 94 (5th Cir. 1979)................................................................25

Knauer v. Jonathon Roberts Financial Group,
    348 F.3d 230 (9th Cir. 2003)..............................................................12

In re Koch,
    116 F.2d 243 (2nd Cir. 1940)..............................................................22

Littlejohn v. United States,
    321 F.3d 915 (9th Cir. 2003)..............................................................19

In re Maloney,
    204 B.R. 671 (E.D.N.Y. 1996).............................................................24

In re Modern Boats, Inc.,
    775 F.2d 619 (5th Cir. 1985)..............................................................18

NRLB v. Sawulski,
    158 B.R. 971 (E.D. Mich. 1993)...........................................................24

Oakland Tribune, Inc. v. Chronicle Publishing Co.,
    762 F.2d 1374 (9th Cir. 1985)........................................................ 11, 13

In re Omegas Group, Inc.,
    16 F.3d 1443 (6th Cir. 1994)..............................................................13

In re Rare, LLC,
    298 B.R. 762 (Bankr. D. Colo. 2003) .....................................................23

Sampson v. Murray,
    415 U.S. 61, 94 S. Ct. 917 (1982)........................................................12

Schwartz v. Covington,
    341 F.2d 537 (9th Cir. 1965)..............................................................11

In re Simon,
    153 F.3d 991 (9th Cir. 1998)..............................................................18

Skinner v. White,
    505 F.2d 685 (5th Cir. 1974)..............................................................25

Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.),
    502 F.3d 1086 (9th Cir. 2007).....................................................13-15, 23

Sports Form, Inc. v. United Press Intern., Inc.,
    686 F.2d 750 (9th Cir. 1982)..................................................................................13

State of Missouri v. U.S. Bankruptcy Court,
    647 F.2d 768, 774 (8th Cir. 1980) ...................................................................18, 21

Texas v. Donoghue,
    302 U.S. 284, 58 S. Ct. 192, 82 L. Ed. 264 (1937).................................................22

In re True,
    285 B.R. 405 (Bankr. W.D. Mo. 2002).................................................................23

In re U.S. Brass Corp.,
    110 F.3d 1261 (7th Cir. 1997)...............................................................................18

United States v. Lasky,
    600 F.2d 765 (9th Cir.) ..........................................................................................19

Universal Well Services, Inc. v. Avoca Nat. Gas Storage,
    222 B.R. 26 (W.D.N.Y. 1998) ...............................................................................23

Virginia Petroleum Jobbers v. FPC,
    259 F.2d 921 (D.C. Cir. 1958) ...............................................................................12

Walling v. Crane,
    158 F.2d 80 (5th Cir. 1946)....................................................................................25

Walsh v. West Virginia (In re Security Gas & Oil, Inc.),
    70 B.R. 786 (Bankr. N.D. Cal. 1987).....................................................................24

In re White,
    851 F.2d 170 (6th Cir. 1988) .................................................................................18

In re Wiley,
    315 B.R. 682 (E.D. La. 2004) ................................................................................24

In re Wymer,
    5 B.R. 802 (Bankr. 9th Cir. 1980) .........................................................................10

FEDERAL STATUTES

11 U.S.C.
    generally................................................................................................... 14, 16
    § 105 .................................................................................8, 12, 14, 23-24
    § 105(a) .........................................................................................13-14, 19
    § 362(a) ..........................................................................................................13
    § 362(b) ..........................................................................................................19
    § 541(a) ..........................................................................................................18
    § 543 ...............................................................................................................21

28 U.S.C.
    § 157(b)(2) .......................................................................................................7
    § 1334(e) .........................................................................................................18
    § 1471(e) .........................................................................................................21

1

LEGISLATIVE HISTORY

2   S.Rep.No. 989, 95th Cong., 2d Sess. 82 ................................................................. 18

3   H.R.Rep.No. 595, 95th Cong., 1st Sess. 367 (1977) ....................................... 18, 24

4

MISCELLANEOUS

5
*Collier Bankruptcy Manual* § 3.01, at 3-24 (3d ed. 1982) ..................................... 21
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## INTRODUCTION

The Billing Resource, dba Integretel ("Integretel" or "Debtor"), opposes the Federal Trade Commission's ("FTC") motion for a stay pending appeal with regard to the preliminary injunction issued on November 27, 2007 by the bankruptcy court against the FTC and David R. Chase, the federal receiver ("Receiver"), to prevent enforcement of the orders issued by a district court in the Southern District of Florida (the "Florida Court") that the Debtor pay $1.7 million to the Receiver.

The FTC's motion should be denied because the FTC once again wholly fails to demonstrate that it has met the standards for a stay pending appeal. The FTC does not attempt to show that the bankruptcy court abused its discretion in denying the requested stay. The FTC will not suffer any irreparable injury if the injunction continues.

The preliminary injunction does no more than preserve the status quo for the benefit of all of Integretel's creditors and other parties in interest. Issuing a stay would change the status quo instead of preserving it. Integretel has segregated the amount of money claimed by the Receiver in a blocked account to which Integretel has no access without a court order. If the injunction is lifted, the FTC can subject Integretel to contempt proceedings in the Florida Court, needlessly causing a conflict between the federal courts. The bankruptcy court's injunction preserves its jurisdiction and the bankruptcy process can take account of all parties' claims. The FTC's effort to compel collection from Integretel in the Florida Court would improperly favor one creditor's interests.

The bankruptcy court properly concluded after exhaustive consideration of this matter that removing funds from the Debtor's possession would threaten the integrity of the bankruptcy process. As the Debtor established that it was likely to succeed in reorganizing, that it would suffer irreparable injury from contempt proceedings in Florida, and that this harm outweighed any harm to the Receiver or the FTC, the bankruptcy court appropriately issued the preliminary injunction at issue here.

## II.

## FACTUAL STATEMENT

The bankruptcy court made comprehensive findings concerning the factual circumstances pertinent to the preliminary injunction ultimately issued herein in its Memorandum Decision re Order to Show Cause Regarding Preliminary Injunction, entered on November 2, 2007 (the "Memorandum Decision" (FTCX 13)), and at the subsequent hearings on the Debtor's motion, which the FTC largely ignores.

**A.    Overview.**

The Memorandum Decision describes Debtor's business operations, stating:

> Debtor provides billing-related and other services for smaller private telecommunications companies that compete with large local exchange carriers ("LECs") in niche areas such as public pay phones, hotels and prisons ("Alternative Operator Services").  Private telecommunications companies that provide Alternative Operator Services have difficulty billing for "collect" and other types of calls, since most individuals do not pay invoices  from these unknown companies and those companies cannot bill the individuals through the individual's normal telephone bill.  Debtor was created in 1988 to address this void in the marketplace.

(FTCX 13, at 3-4).  The evidence before the bankruptcy court demonstrates that the Debtor is not a fraudulent enterprise, but a legitimate business that provides service to customers who require its expertise and resources.[1]  The Debtor has not been held liable for a violation of the FTC Act in the Florida Action and the FTC has not obtained any provisional relief against it.  Instead, the Receiver appointed to gather assets of two of the Debtor's former customers has claimed that the Debtor holds such assets.  Without benefit of any adjudication of the former customers' contract rights, or any tracing of funds

---

[1]    The FTC implies that the Debtor was involved in the fraudulent scheme alleged to have been carried out by certain defendants in the action pending in the Florida Court, telling the Court that "the Debtor has a history of involvement in similar schemes."  FTC Motion at 4 n.2.  The FTC misleadingly cites *FTC v. Verity Int'l*, 443 F.3d 48 (2nd Cir. 2006) as if that decision addressed any liability of the Debtor.  Contrary to the FTC's implication, this Court should not assume that Integretel is a bad company because it was named as defendant in a previous lawsuit and agreed to settle.

received for the benefit of the former customers, the Receiver claimed that the Debtor holds the former customers' money and is subject to a "turn over" order.  The Florida Court agreed in the Omnibus Order, discussed below, adopting the Receiver's theory that amounts shown on the Debtor's books as "reserves" were an asset of the receivership estate.  The Debtor was not holding reserves for the benefit of the former customers, had numerous current customers that had similar bookkeeping entries for reserves, had secured creditors, and needed its funds to operate its business.  Accordingly, the Debtor filed for bankruptcy protection, which allowed it to continue operations and preserve its assets pending determination of all creditors' rights.  The Debtor intends to address the rights of all of its creditors through a plan of reorganization in the bankruptcy court.  In addition, the Debtor brought an adversary proceeding against the Receiver and the FTC to establish that their rights were appropriately addressed in the context of the bankruptcy case, and that the Receiver's claims on behalf of the former customers were no greater than those of any other customers of the Debtor.  (FTCX 9).  The FTC seeks to short-circuit this process by enforcing the pre-bankruptcy Omnibus Order before the bankruptcy proceedings can run their course.

## B.    The Florida Action and the Debtor's Bankruptcy Filing.

On February 27, 2006, the FTC commenced a lawsuit (i.e., the Florida Action) in the Florida Court against three companies, including Access One Communications, Inc. ("Access One") and Network One Services, Inc. ("Network One"), as well as their principals, alleging deceptive and unfair practices for unauthorized billing of charges on phone bills – referred to as "cramming" – in violation of the Federal Trade Commission Act (the "FTCA").  (FTCX 1).  Access One and Network One had previously been customers of the Debtor (the "Prior Customers").  The Florida Court entered a temporary restraining order ("TRO") and later a preliminary injunction.  (FTCX 2, 4).  The Florida Court appointed the Receiver as the receiver for the defendants and their affiliates.  An "Amended Preliminary Injunction Order" was filed on September 25, 2006.  (FTCX 5).

On or about September 21, 2006, the FTC filed an amended complaint which included claims against the Debtor.  (FTCX 6).

The FTC stretches the facts here in an effort to portray Integretel as having flouted the injunctions issued by the Florida Court.  That characterization is based entirely on the FTC's misrepresentation of the record in the Florida Court, as well as the FTC's insistence that Integretel was holding actual funds that belonged to the Prior Customers, when it was not.[2]  Integretel did not "blatantly violate" any court orders-- it was not subject to any order until the Amended Preliminary Injunction was served on it, at about the same time as the Receiver brought his motion to enforce that injunction.  Once the Receiver made his claim, Integretel asserted that the injunction could not and did not compel Integretel to pay the Receiver the amount carried on Integretel's books as "reserves" for the Prior Customers.

There has been no finding that the Debtor violated the FTCA.  (FTCX 22, ¶ 13).  Nor has the FTC ever sought a preliminary injunction against Integretel seeking to stop any alleged ongoing violations.  In fact, the FTC has presented no evidence either here or

---

[2]      Contrary to the FTC's claim (Motion at 3), the TRO only ordered the original defendants to turn over assets. (FTCX 2 at 15-16: TRO ¶ X).  Integretel was not named as a defendant until well after the TRO had expired.  In addition, while the FTC quotes the cooperation provision of the TRO, the FTC fails to disclose that Integretel was never asked to turn over any funds while the TRO was in effect.  Moreover, Integretel responded honestly when served with the TRO, telling the FTC in the letter misleadingly quoted by the FTC here that the Former Clients "would be entitled to certain proceeds" but no amounts were due and owing because they were in default on their agreements with Integretel.  (FTCX 3).

The FTC also fails to mention that when the TRO was superseded by a preliminary injunction on March 8, 2006 (FTCX 4), the injunction (which contains the turnover language that the FTC falsely claims was in the TRO) was not served on Integretel. Nor does the FTC disclose that it was not until October 2006—more than seven months after the TRO expired—that Integretel again became subject to an injunction in the Florida Action, when it was served with an amended preliminary injunction that had been issued shortly before. (FTCX 5).  Thus, for those seven months when Integretel was supposedly defying the Florida Court's injunction, the fact is that Integretel was not even subject to the injunction.

1  in the Florida Court suggesting that Integretel is engaged in any conduct that violates the

2  FTCA.

3      The Debtor voluntarily stopped providing services for the Prior Customers over a

4  year prior to the FTC's filing of its Amended Complaint.  At the time that it stopped

5  providing services, the Debtor stopped making payments to the Prior Customers and

6  instead made a determination under the contracts with the Prior Customers that all further

7  amounts received from LECs on account of the Prior Customers' billings should be booked

8  as reserves.  This was done because of the Debtor's possible exposure to claims for refunds

9  of the Prior Customers' Billing Transactions and the Debtor's own claims against these

10  funds.  The Debtor asserted that the Prior Customers (and now their receivership estate)

11  were liable to the Debtor because of their wrongful conduct.  The Debtor's damages

12  include any liability it has in the Florida Action and the fees and expenses incurred to

13  defend that suit.  (FTCX 22, ¶¶ 14, 16).

14      Whenever the Debtor allocated an amount to the reserves for the Prior Customers,

15  the Debtor made a bookkeeping entry for that amount.  However, the Debtor does not have

16  a corresponding asset, such as a bank account, that contains the monies that were allocated

17  as reserves from the Prior Customers.  Moreover, there is no segregated account containing

18  the reserves of any customer, including either of the Prior Customers.   The Debtor

19  withholds reserves for its other customers but it does not have enough monies to cover the

20  full amount of reserves for all of the Debtor's customers.  (FTCX 22, ¶15).  Thus, the

21  Debtor's other customers and former customers were similarly situated to the Prior

22  Customers for whom the Receiver was appointed.  Even assuming that all of Integretel's

23  customers were entitled to have the amounts shown on Integretel's books as reserves paid

24  over to them, Integretel would not be able to do so.  Paying money to any customer or the

25  Receiver on account of a reserve obligation would leave less money for the others.

26      The Receiver is seeking to collect all assets of the Prior Customers.  Toward that

27  end, the Receiver sought relief in the Florida Action by motion against the Debtor.  The

28  Receiver asserted that the Debtor owes the Prior Customers the amount that the Debtor

1   booked as reserves for the Prior Customers, which the Receiver alleged was an asset of the

2   Prior Customers.  (FTCX 22, ¶ 17).

3       The Debtor filed a response opposing such relief on numerous grounds, including

4   that it had offsetting claims against the Prior Customers which exceeded the amount of the

5   Prior Customers' alleged reserves.  These costs and fees, and the liability asserted against

6   the Debtor in the Florida Action, far exceed the amount of any sums withheld from the

7   Prior Customers as reserves.  (FTCX 22, ¶ 18).[3]

8       The Florida Court entered an order on September 14, 2007 (the "Omnibus Order")

9   requiring that the Debtor pay over the amounts sought by the Receiver into a segregated

10  receivership account.  (FTCX 7).  Under the Florida Court's ruling, the accounting entries

11  made by the Debtor constituted assets of the receivership estate.  The Florida Court was

12  unconcerned with whether the Debtor in fact had any actual funds that were reserves of the

13  Prior  Customers,  segregated  or  otherwise,  dismissing  as  "a  distinction  without  a

14  difference" the Debtor's contention that there were no actual funds.  The Florida Court's

15  indifference to the existence of identifiable or traceable funds of the Prior Customers in the

16  Debtor's possession amounted to a conclusion that the Debtor was ordered to use whatever

17  funds it had available in its bank accounts to satisfy the Receiver's claim regardless of

18  whether other parties had perfected security interests in these funds or whether satisfying

19  the  Prior  Customers'  claims  preferred  one  creditor  over  the  Debtor's  other  similarly

20  situated  customers.   In  addition,  the  Debtor  could  not  pay  the  money  sought  by  the

21  Receiver  and  still  continue  its  normal  operations.   The  Debtor  therefore  filed  for

22  bankruptcy protection.  (FTCX 22, ¶¶ 21, 22).  The Debtor also filed an appeal to the

23  Eleventh Circuit and sought a stay pending appeal.

24

25

_____

26  [3]     The Florida Court issued the Omnibus Order five months after the hearing on the
    Receiver's motion for an order to show cause with regard to Integretel's liability to the
27  receivership estate, which was the first order entered by the Florida Court with respect to
    Intgretel's purported reserves.
28

1    **C.**    **The Adversary Proceeding and Injunction.**

2        On September 19, 2007, Integretel initiated an adversary proceeding by filing a

3    complaint in the bankruptcy court in order to obtain injunctive relief against the FTC and

4    the Receiver to stay the continuation of the Florida Action and the enforcement of the

5    Omnibus Order.  (FTCX 9).  The complaint alleges that Integretel's claims are core matters

6    pursuant to 28 U.S.C. §157(b)(2)(A), (G), and (O) on which the bankruptcy court has

7    jurisdiction to enter a final judgment.

8        Before the bankruptcy court could act in that proceeding, the FTC faxed to the

9    Florida Court's chambers on September 20, 2007, an emergency motion for clarification

10   with the Florida Court claiming that it should be entitled to continue to enforce collection

11   from Integretel under the Omnibus Order regardless of the Debtor's bankruptcy filing.

12   That day, before Integretel could file a response, and without a hearing, the Florida Court

13   issued its Order Granting Motion for Clarification as to Scope of Stay ("Clarification

14   Order").  (FTCX 11).  In concluding that the automatic stay did not apply to the FTC's

15   prosecution of the Florida Action against Integretel nor to the Receiver's effort to collect

16   money from Integretel for the Prior Customers, the Florida Court said it had "ruled that the

17   reserve funds are the property of the receivership estate" and "are neither the property of

18   the 'bankruptcy estate' nor Integretel."

19       At a hearing on September 26, 2007, the bankruptcy court suggested that Integretel

20   could obtain use of the monies in its bank accounts if Integretel and the Receiver entered

21   into a stipulation under which Integretel placed the amount of money claimed by the

22   Receiver ($1,762,762.56) into a segregated, blocked, debtor in possession bank account in

23   the Debtor's name (the "Blocked Account") and these parties agreed to do so.  (Integretel

24   Exhibit ("IGTX") 1).  No party has the ability to remove funds from the Blocked Account

25   without a prior order of the bankruptcy court.  The Blocked Account was established under

26   an agreement under which all parties reserved their rights and agreed that the placement of

27   the money in the Blocked Account would not affect the merits of any party's claims.

28   Pursuant to the stipulation the Debtor and the Receiver obtained the entry of an agreed

1  order in the Florida Action providing that the Omnibus Order and proceedings to enforce it

2  were stayed through October 17, 2007.  (IGTX 2).

3      Integretel filed a motion for a temporary restraining order and a preliminary

4  injunction under Bankruptcy Code section 105, requesting that the Court enjoin

5  continuation of the Florida Action against Integretel and the enforcement of the Omnibus

6  Order.   The bankruptcy court issued an order to show cause for issuance of  a preliminary

7  injunction.  After further briefing and hearings, the bankruptcy court took the matter under

8  submission  and  on  November  2,  2007,  it  issued  the  Memorandum  Decision

9  comprehensively  addressing  the  motion,  but  declining  to  issue  an  injunction  against

10  enforcement of the Omnibus Order only because the Eleventh Circuit Court of Appeals

11  had temporarily stayed that Order pending a decision on Integretel's motion for a stay

12  pending appeal of that Order.  (FTCX 13).

13      On November 5, 2007, the next business day, the Eleventh Circuit lifted the

14  temporary stay, and Integretel asked the bankruptcy court to thereupon issue the injunction

15  that it had previously declined to issue or to issue a temporary restraining order and hold a

16  further hearing to consider the preliminary injunction.  The bankruptcy court took the latter

17  course.  The parties submitted further briefs and the Court held hearings on November 16,

18  21, 26 and 27 to address the issues and make findings and conclusions that supplemented

19  those in the Memorandum Decision.[4]

20

21  ────────────────
[4]      The FTC describes in detail its view of what occurred at the hearings before the
22  bankruptcy court.  Integretel views much of this as irrelevant, but notes that the transcripts
of these hearings reflect that the bankruptcy court did its utmost to avoid exercising the
23  court's equitable powers unnecessarily, properly asserting that in view of the fact that
funds in the amount claimed by the Receiver were in the Blocked Account and that the
24  Debtor had not asked for the use of those funds the FTC and the Receiver had ample basis
to voluntarily agree not to pursue contempt proceedings against Integretel without the need
25  for an injunction.  While the FTC claims that the bankruptcy court vacillated as to whether
to issue the injunction, the record shows that the bankruptcy court was persuaded to do so
26  not just by the effect of enforcement proceedings on Integretel but also because Integrel's
secured and unsecured creditors pointed out that one of the purposes of a bankruptcy
27  proceeding is to centralize in a single forum all matters relating to the debtor's assets and
liabilities, and that a decision that could allow the Receiver to collect money from the
28  Debtor would interfere with that purpose by requiring creditors to seek relief from a court

1    The FTC asked that the court stay the injunction pending appeal and the court

2  rejected that request, saying that it "would defeat the purpose of the injunction."  DE 29 at

3  66:16-19.

4    On November 28, 2007, the bankruptcy court signed an amended preliminary

5  injunction order to reflect the findings and conclusions entered at the hearing on November

6  27, 2007 (the "Order").  (DE 22).  Under the Order, the FTC and the Receiver are enjoined

7  from seeking, directly or indirectly, to enforce the Omnibus and Clarification Orders

8  against Integretel.  Integretel is directed by the Order to maintain the Blocked Account.  In

9  order to prevent the Receiver from bringing about enforcement proceedings through means

10  other than filing a formal motion, the bankruptcy court required that the Receiver file any

11  reports on this matter jointly with Integretel.  At the Receiver's request, the parties filed

12  one such joint report without incident.

13    Integretel's most recent budget filed in the bankruptcy court shows that it has

14  adequate cash balances to continue operations through the end of April without recourse to

15  the Blocked Account.  (IGTX 3).  Integretel has obtained a ruling from the bankruptcy

16  court allowing Integretel leave to amend its adversary complaint to seek a determination of

17  the interest, if any, held by the Receiver in the funds in Integretel's accounts.

18    On December 3, 2007, Integretel filed its opening brief in the pending appeal in the

19  Eleventh Circuit Court of Appeals.  (IGXT 4).

20

21

22

23

24

25

26

27  in a distant state that was not familiar with the claims of any other creditors.  *See* Hearing
   Transcript of hearing on November 26, 2007, DE 29.

28

**III.**

**ARGUMENT**

**THIS COURT SHOULD DENY A STAY PENDING APPEAL**

A.    **The Appropriate Standard for Issuing a Stay on Appeal is Whether the Bankruptcy Court Abused its Discretion in Denying a Stay.**

As a stay pending appeal is an extraordinary remedy, this Court should only grant the FTC's motion for a stay if the bankruptcy court abused its discretion in not staying its order. In re Fullmer, 323 B.R. 287, 293 (Bankr. D. Nev. 2005) ( "[A] discretionary stay pending appeal is viewed as an extraordinary remedy."); In re Wymer, 5 B.R. 802, 806-07 (Bankr. 9th Cir. 1980) (stay to be reserved for exceptional situation; stay should only be granted if the bankruptcy court abused its discretion in not doing so); In re Irwin, 338 B.R. 839, 843 (E.D. Cal. 2006) ("When a bankruptcy court has ruled on the issue of a stay of its order pending appeal, the district court, sitting as an appellate court, reviews that decision for abuse of discretion.").

Here, the bankruptcy court did not abuse its discretion in denying a stay pending appeal.  The purpose of the injunction was to halt contempt proceedings against Integretel under circumstances where the bankruptcy court has exclusive jurisdiction over Integretel's property and has taken appropriate steps to safeguard all parties' interests pending a resolution of the entitlement to the monies in dispute.  Staying the Order pending the FTC's appeal would, as the bankruptcy court found, prevent the injunction from accomplishing its purpose, as Integretel would then be subjected to contempt proceedings even though it has followed the bankruptcy court's directive to maintain monies in a Blocked Account.

This is not a situation where a stay pending appeal is necessary to preserve the status quo pending appellate review.  Rather, the Order properly preserves the status quo, avoids conflicting rulings from different federal courts, and is appropriate while the merits of the parties' claims are determined.

Integretel's discussion below shows that the bankruptcy court appropriately concluded that the FTC could not meet the long-standing test in this circuit for a stay pending appeal:

1. Appellant is likely to succeed on the merits of the appeal.
2. Appellant will suffer irreparable injury.
3. No substantial harm will come to appellee.
4. The stay will do no harm to the public interest.

In re Wymer, 5 B.R. at 806 (citing Schwartz v. Covington, 341 F.2d 537, 538 (9th Cir. 1965)).  "'Movant's failure to satisfy one prong of the standard for granting a stay pending appeal dooms the motion.'" In re Irwin, 338 B.R. at 843 (quoting In re Deep, 288 B.R. 27, 30 (N.D.N.Y. 2003).

Here, the FTC fails to satisfy any of the necessary elements, as set forth below.

**B.     The FTC Will Not Suffer Any Irreparable Injury.**

While the FTC focuses on the merits of the bankruptcy court's determination, the Court need not even reach that issue in order to decide this Motion, as the FTC utterly fails to demonstrate that it will suffer any irreparable injury as a consequence of the preliminary injunction and Integretel therefore addresses this issue first.

In order to obtain a stay pending appeal, the FTC must, but cannot, prove that it will suffer irreparable injury absent a stay.  Without such injury, the Court need not consider other factors but should deny a stay on this basis alone.  Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir. 1985) ("plaintiff must demonstrate that there exists a significant threat of irreparable injury").  Here, the sole basis for the FTC's claim of irreparable injury is the purported need to vindicate the FTC's enforcement authority to demonstrate to future defendants that they ought not seek bankruptcy protection to avoid the FTC's enforcement efforts.  This speculative concern about future cases hardly constitutes irreparable injury so as to justify issuance of a stay pending appeal that would change the status quo and subject Integretel to contempt proceedings.  The injunction at issue does not prevent the FTC from carrying out its consumer protection functions.  Rather, the Receiver is acting on behalf of the Prior

1   Customers to gather their property.[5]  The Receiver is not a law enforcement entity and is

2   not pursuing that function.  Whether the Receiver does or does not collect an additional

3   $1.7 million for the estate is not a consumer protection issue.

4          In addition, the injunction does not permanently prohibit the Receiver from

5   collecting the money at issue-- it only prevents contempt proceedings while the bankruptcy

6   reorganization and litigation between the Receiver and Integretel proceeds.   Mere delay

7   does not constitute irreparable injury.  "The possibility that adequate compensatory or

8   other corrective relief will be available at a later date, in the ordinary course of litigation,

9   weighs heavily against a claim of irreparable harm."  Sampson v. Murray, 415 U.S. 61, 90,

10  94 S.Ct. 917, 953 (1982), quoting Virginia Petroleum Jobbers v. FPC, 259 F.2d 921, 925

11  (D.C. Cir. 1958).

12         Nor does the Order facilitate any effort by Integretel to "game the legal system."

13  Integretel and the bankruptcy court are legitimately concerned about the rights of all

14  creditors and thus take actions with a broader view than a court simply examining a single

15  creditor's claims.  The fact that courts applying different statutes and considering different

16  questions come to different results does not mean that a litigant is gaming the system.  The

17  bankruptcy court did not "reverse" the Eleventh Circuit's decision to deny a stay pending

18  appeal of the Omnibus Order.  Rather the bankruptcy court granted an  injunction under

19  Section 105 of the Bankruptcy Code to protect the integrity of the bankruptcy estate, which

20  is "precisely" the instance in which "Section 105 contemplates injunctive relief."   Canter

21  v. Canter (In re Canter), 299 F.3d 1150, 1155 (9th Cir. 2002).   As the Second Circuit

22  recently noted, the "'equities of bankruptcy are not the equities of the common law.'"

---

5       Receivers are subject to the same equities with respect to the receivership entity's
wrongdoing as the entity itself.  For example, if the receiver seeks to recover from a
defendant based on the defendant's participation in the underlying fraud, the receiver is
generally subject to the defense of in pari delicto to the same extent as the entity itself
would be.  Knauer v. Jonathon Roberts Financial Group, 348 F.3d 230, 235-38 (9th Cir.
2003) (applying state law, which the court says governs this issue).

1    In re Flanagan, 2007 U.S. App. LEXIS 23622, *18 (2d Cir. Oct 9, 2007), quoting In re

2    Omegas Group, Inc., 16 F.3d 1443, 1452 (6th Cir. 1994).

3        As the FTC has not and cannot demonstrate any irreparable injury stemming from

4    this preliminary injunction, its request for a stay pending appeal must be denied.

5        **C.    The FTC is not Likely to Succeed on the Merits in this Appeal.**

6        In this appeal the FTC will be required to show that the bankruptcy court's decision

7    to issue a preliminary injunction should be overturned.  It faces a very heavy burden in

8    doing so.  "Review of a ruling on a motion for a preliminary injunction is very limited.

9    (Citation). The decision to grant or deny is within the discretion of the trial court and will

10   only be reversed if that discretion has been abused or if the decision is based on erroneous

11   legal standards or clearly erroneous findings of fact. (Citations)."  Oakland Tribune, Inc. v.

12   Chronicle Pub. Co., Inc., 762 F.2d 1374, 1376 (9th Cir. 1985) (internal quotations

13   omitted).  The limited review of a preliminary injunction does not allow the reviewing

14   court to substitute its judgment for that of the trial court based on making a different

15   application of the law to the facts.  Citizens to Preserve Overton Park, Inc. v. Volpe, 401

16   U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); Sports Form, Inc. v. United Press

17   Intern., Inc., 686 F.2d 750, 752 (9th Cir. 1982).  The FTC cannot show the use of an

18   erroneous legal standard nor any clearly erroneous factual findings.

19       In making its decision, the bankruptcy court followed the applicable law in this

20   Circuit as set out in the very recent decision of the Ninth Circuit in Solidus Networks, Inc.

21   v. Excel Innovations, Inc. (In re Excel Innovations, Inc.), 502 F.3d 1086, 1093 (9th Cir.

22   2007) ("Excel") where the court held:  "Section 105(a) gives the bankruptcy courts the

23   power to stay actions that are not subject to the 11 U.S.C. § 362(a) automatic stay but

24   'threaten the integrity of a bankrupt's estate.'"  (Citations omitted; emphasis added).  Here

25   the bankruptcy court properly concluded that it was appropriate to enjoin the enforcement

26   of the Omnibus Order in the Florida Action as it pertains to Integretel so that the

27   bankruptcy court's exclusive jurisdiction over the Debtor's assets is not threatened by

28   contempt proceedings in another court.  Moreover, that court was amply justified in

Case No. 07-CIV- 5758-JW                    -13-

1    concluding that all parties' rights are preserved through the Order and Integretel should not

2    be enmeshed in contempt proceedings while it seeks to reorganize and while litigation that

3    would resolve the matters in dispute between the parties is ongoing.

4         The bankruptcy court also applied the holding in Excel that "The usual preliminary

5    injunction standard applies to stays of proceedings under 11 U.S.C. § 105(a)."

6    Memorandum Decision at 18:18-20.  As applied to a Chapter 11 case, that standard means

7    that "a bankruptcy court must consider whether the debtor has a reasonable likelihood of a

8    successful reorganization, the relative hardship of the parties, and any public interest

9    concerns if relevant."  Excel, 502 F.3d at 1096.  The bankruptcy court amply considered

10   each of these factors in detail and concluded that "continued enforcement of the omnibus

11   order severely threatens the integrity of the bankruptcy process and Debtor's prospects for

12   reorganization" and has also said that "permitting Receiver to implement the Omnibus

13   Order would irreparably harm Debtor's bankruptcy estate by preferring one creditor--

14   Receiver-- over other similarly situated creditors of Debtor."    Hearing Transcript,

15   November 27, 2007, DE 24, at 24:15-17; Memorandum Decision at 57:21-24.

16        With regard to the Debtor's likelihood of success in reorganizing, the experienced

17   bankruptcy judge has repeatedly expressed confidence that the Debtor is on the right track.

18   In the Memorandum Decision, the court pointed out that in a "short period of time, Debtor

19   has obtained the confidence of its creditors that Debtor is a viable business. . .."

20   Memorandum Decision at 20:11-12.  The court noted that, among other things, Integretel's

21   creditors have consented to use of cash collateral, that the LECs have continued to forward

22   funds to Debtor, and that Integretel has obtained the Committee's support for its

23   prepayment plan and for continued use of cash collateral.[6]  Id. at 20-21.  More recently, the

---

25   [6]    In its motion, the FTC makes much of the fact that cash collateral use has been
     allowed on an interim basis on several occasions as purportedly showing that the Debtor's
26   business is shaky.  But the bankruptcy court found that "it is not unusual in a chapter 11
     bankruptcy case for a debtor to seek multiple interim requests for use of cash
27   collateral. . . ."  Memorandum Decision at 31.

28

1  Court noted that the Debtor has continued to receive consent from the Creditors'

2  Committee and other creditors to use of cash collateral.  DE 24, at 14:7-15:5.

3      The FTC cannot demonstrate that any of these factual findings are clearly

4  erroneous.  It does not even try to make such a showing.  Instead, the FTC reargues the

5  facts and asserts that they do not demonstrate a likelihood of a successful reorganization.

6  In Excel, the Ninth Circuit found that requiring a debtor to show a reasonable likelihood of

7  success in reorganizing if the requested injunctive relief is granted "is not a high burden"

8  to meet.  502 F.3d at 1097.  Here, where the bankruptcy court found that the Debtor was

9  likely to be able to reorganize based on factual findings that are not clearly erroneous, this

10  Court has no basis to overturn that conclusion on appeal.

11      Moreover, the FTC's argument that the Debtor may not be able to reorganize is

12  wholly self-defeating.  Even if the Debtor was likely to collapse that would not justify

13  subjecting the Debtor to contempt proceedings at a time when the Blocked Account

14  protects the Receiver's interest in the Debtor's funds.  The bankruptcy court properly

15  enjoined such proceedings in light of the lack of any purpose to coercive sanctions against

16  the Debtor when the bankruptcy court is already overseeing its affairs, receiving regular

17  budget reports, obtaining input from a Creditors' Committee and other interested parties,

18  and maintaining funds in a Blocked Account.

19      Similarly, the bankruptcy court made factual findings as to the relative harms to be

20  suffered by Integretel and the FTC and the Receiver in the event the Omnibus Order was

21  or was not stayed as to Integretel.  Rather than demonstrate that any of these findings are

22  clearly erroneous, the FTC merely repeats the same arguments that the bankruptcy court

23  carefully considered and rejected.  The bankruptcy court found serious and irreparable

24  injury to the Debtor  would occur from enforcement of the Omnibus Order, such as the

25  Debtor's loss of over $1.7 million that would otherwise be available for all creditors but

26  would instead be used to prefer the Receiver even though he is similarly situated to the

27  other unsecured creditors because the Debtor's other contracts also provide for the Debtor

28  to retain "reserves."  DE 24, at 19:19-20:25.  In addition, the contempt proceedings would

1   divert the Debtor's attention away from reorganization and cause the Debtor to incur

2   substantial fees and costs it can ill afford.  DE 24 at 21:1-22:3.  In contrast, the bankruptcy

3   court found that there was no immediate threat of irreparable injury to the Receiver or the

4   FTC.  DE 24 at 22:18-24:1.

5       In sum, Integretel established the elements of proof necessary to enjoin the FTC

6   from proceeding with the Florida Action for a brief period.  Debtor is reasonably likely to

7   reorganize and will be significantly harmed if the injunction is vacated.

8       **D.    Integretel Will Suffer Substantial Harm if a Stay is Granted.**

9       Granting a stay pending appeal under these circumstances would cause the harm to

10  Integretel that the bankruptcy court sought to avoid by entering the preliminary injunction.

11  Integretel would then have to defend itself in Florida against contempt proceedings even as

12  it litigates whether the Receiver claim is valid and enforceable against Integretel's assets.

13  The FTC asserts no reason why these contempt proceedings are necessary or appropriate at

14  this time in light of the ongoing supervision of the Debtor's affairs by the bankruptcy court.

15      In addition, the bankruptcy court properly pointed to the fact that if the Debtor turns

16  over $1.7 million to the Receiver, it is no longer available to the Debtor or any of its

17  secured and unsecured creditors.  The Receiver would be under no obligation to preserve

18  these funds for the benefit of the Debtor or its creditors, but would do with them what the

19  Florida Court decides.  The Debtor's creditors would be harmed because the Receiver

20  would have the benefit of money that the other creditors would not, even though the

21  Receiver is similarly situated to many creditors in making a claim for return of "reserves"

22  withheld by the Debtor.

23      Contempt proceedings would increase the Debtor's litigation costs, divert its

24  management to managing and participating in the litigation, and prevent the Debtor from

25  concentrating on its opportunity to reorganize the business that is intended to be afforded

26  by a filing under Chapter 11.  The harm to Integretel is likely to be fatal.  The injury to

27  Integretel arising from a stay pending appeal far outweighs any harm claimed by the FTC

28  arising from delay in proceeding to enforce the Omnibus Order against Integretel.

**E.    The Merits of the Receiver's Claim to Collect Money from Integretel Do Not Dictate that the Preliminary Injunction was Erroneous.**

The FTC attacks the bankruptcy court's conclusion that the Receiver does not have a perfected claim to collect the "reserves" allegedly owed to the Prior Customers under the Omnibus Order.  Not only is the FTC wrong, but the standard for issuance of a preliminary injunction did not require the bankruptcy court to adjudicate the merits of the Receiver's claim.   Rather, the court properly issued an injunction based on finding that the enforcement of the Omnibus Order would threaten the integrity of the bankruptcy process, would cause irreparable injury to the Debtor and that this harm outweighed any harm to the Receiver or the FTC.  The bankruptcy court correctly stated that "it is not necessary for this Court to decide one way or the other whether the 1.7 million dollars is property of Debtor's estate in order to issue a preliminary injunction against enforcement of the contempt proceeding against Debtor and the omnibus order in particular.  Rather this Court need only find that there are serious questions going to the merits of whether the 1.7 million dollars in commingled funds is property of Debtor's estate." DE 24, at 16:9-17.

There are such questions here and the bankruptcy court followed applicable law in expressing its doubt that the Omnibus Order was anything "more than a money judgment determining Debtor's purported liability to the receiver."  Memorandum Decision at 46:12-14.  The FTC's argument is based on a fiction—that there are any "Reserve Funds" that the Florida Court decided the ownership of.  In fact, the Omnibus Order is merely a money judgment because there are no "Reserve Funds," only bank accounts containing commingled monies received long after any relationship with the Prior Customers had ended.

The Florida Court never obtained jurisdiction over any of Debtor's funds or other assets—it issued a pre-bankruptcy order requiring Debtor to pay the Receiver and Debtor has appealed the question of whether it has any liability to the Receiver to the Eleventh Circuit.  As the bankruptcy court said, the "Omnibus Order requiring Debtor to pay over to

1    Receiver an amount denominated on Debtor's books as 'reserves' cannot create a property

2    interest where none exists."  Memorandum Decision at 54:25-27.

3        Rather, once the Debtor filed for bankruptcy protection, the Debtor's bankruptcy

4    estate was created, consisting of "all legal or equitable interests of the debtor in property as

5    of the commencement of the case."  11 U.S.C. § 541(a).  "The debtor's interest in property

6    also includes. . .a possessory interest. . .for example." (H.R.Rep.No. 595, 95th Cong., 1st

7    Sess. 367 (1977), reprinted in (1978) U.S. Code Cong. & Ad. News 5963, 6323; S.Rep.No.

8    989, 95th Cong., 2d Sess. 82, reprinted in (1978) U.S. Code Cong. & Ad. News 5787,

9    5868, (quoted in State of Missouri v. U.S. Bankruptcy Court, 647 F.2d 768, 774 (8th Cir.

10    1980).  In State of Missouri, the court held that the filing of a bankruptcy petition by a

11    grain storage operator who had possession of the grain of others gave the bankruptcy court

12    exclusive jurisdiction to determine the property rights in the grain as against a claim that a

13    state agency as receiver should determine these rights under state law.  Id.  The same

14    principle applies here to give the bankruptcy court the right to determine what interest the

15    parties have in the funds in the Debtor's possession as of the time of filing bankruptcy.

16        Under 28 U.S.C. §1334(e), the bankruptcy court's jurisdiction over this property

17    was exclusive and ousted any prior in rem jurisdiction asserted by the Florida Court, even

18    if that court had exercised in rem jurisdiction over the property.  Gilchrist v. General

19    Electric Capital Corp., 262 F.3d 295, 303 (4th Cir. 2001) ("Congress intended that the

20    bankruptcy process be favored in circumstances such as these. Section 1334(e) of Title 28

21    is unequivocal in its grant of exclusive jurisdiction to the bankruptcy court"); In re Simon,

22    153 F.3d 991, 996 (9th Cir. 1998) ("exclusive in rem jurisdiction over all of the property in

23    the estate"); In re U.S. Brass Corp., 110 F.3d 1261, 1268 (7th Cir. 1997); In re White, 851

24    F.2d 170, 172-73 (6th Cir. 1988); In re Modern Boats, Inc., 775 F.2d 619, 620 (5th Cir.

25    1985) (admiralty court's jurisdiction over vessel yielded once bankruptcy filed).  As the

26    Florida Court never had the Debtor's funds under its jurisdiction before bankruptcy and

27    had no post-bankruptcy jurisdiction to rule on the ownership of these funds, the bankruptcy

28    court is the appropriate decision-maker with regard to the Debtor's property interest in its

1   bank accounts.  Again, State of Missouri is illustrative, as there the Court noted that even if

2   the proceeding was excepted from the automatic stay the bankruptcy court still had

3   jurisdiction over the property in the debtor's possession that it could enforce under Section

4   105, saying:

5           The bankruptcy court could take appropriate steps to protect its
            jurisdiction over the estate, regardless of whether a proceeding
6           falls within the section 362(b)(4) exception. For example, the
            court may "issue any order, process, or judgment that is
7           necessary or appropriate to carry out the provisions of this
8           title." 11 U.S.C. § 105(a).

9           Thus, even if the automatic stay provisions did not apply to the
            Missouri proceedings, the bankruptcy court possesses power in
10          its discretion to enjoin state courts, officials, and agencies from
            interfering with assets in custody of the bankruptcy court.
11

12   647 F.2d at 776-77 (footnotes omitted).

13          These facts and circumstances demonstrate that the bankruptcy court proceedings

14   do not constitute relitigation of the Omnibus Order that is precluded by collateral estoppel.

15   As the parties asserting a claim of collateral estoppel, the Receiver and the FTC have the

16   burden of proving all the elements of that doctrine, i.e., showing that:  "(1) the issue at

17   stake is identical to an issue raised in the prior litigation; (2) the issue was actually litigated

18   in the prior litigation; and (3) the determination of the issue in the prior litigation must

19   have been a critical and necessary part of the judgment in the earlier action." Littlejohn v.

20   United States, 321 F.3d 915, 923 (9th Cir. 2003) (holding "issue preclusion is

21   inappropriate where the parties have not had a full and fair opportunity to litigate the

22   merits of an issue").  See In re Berr, 172 B.R. 299, 306 (9th Cir. B.A.P. 1994).  As the

23   Ninth Circuit held:

24          The party asserting preclusion bears the burden of showing
            with clarity and certainty what was determined by the prior
25          judgment. United States v. Lasky, 600 F.2d 765, 769 (9th Cir.),
            cert. denied, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405
26          (1979). 'It is not enough that the party introduce the decision of
            the prior court; rather, the party must introduce a sufficient
27

28

1  record of the prior proceeding to enable the trial court to
   pinpoint the exact issues previously litigated.' Id.
2

3  Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1321 (9th Cir. 1992).

4       The FTC's collateral estoppel arguments were specifically rejected by the

5  bankruptcy court in the Memorandum Decision.  The bankruptcy court found that the

6  Omnibus Order did not eliminate the bankruptcy court's jurisdiction to determine the

7  bankruptcy estate's interest in commingled funds, saying  "the pre-petition determination

8  that Receiver held an interest in the Commingled Funds did not eliminate any interest

9  Debtor's bankruptcy estate had in the same funds. . ."  Memorandum Decision at 49:6-8.

10  The bankruptcy court also said:

11          In the omnibus order, the Florida Court addressed whether the
            Receiver had a property interest in the abstract.  It did not
12          address as to what particular asset that interest attached.  The
            question of whether the Receiver could trace his asserted
13          property interest into any specific funds was not litigated
            before the Florida Court.  The question here is whether any
14          interest the Receiver had at the time of Debtor's bankruptcy
            filing attached to specific funds or assets now held by the
15          Debtor.  Thus, Debtor is not re-litigating the identical issue
            previously litigated before the Florida Court.
16

17

18  DE 24, at 12:25-13:11.  The FTC disputes this conclusion based on a fiction that there are

19  "Reserve Funds" in the Debtor's possession when in fact the Receiver had nothing other

20  than a claim against commingled funds in the Debtor's bank account.  The accounting

21  entries tracking the amount of the reserves claimed by the Prior Customers are no different

22  than accounting entries tracking the "reserves" of every other customer.  The ability to

23  calculate an amount of reserves does not turn them into an item of property.

24       Having claimed a property interest for the Receiver in non-existent property, the

25  FTC takes a further leap to claim that this "property" did not become part of the

26  bankruptcy estate and merely belongs to the Receivership estate.  While the FTC can cite

27  numerous cases that hold that the debtor's property interests are not enhanced upon the

28  filing of bankruptcy, that concept has no application here because the Debtor still had full

Case No. 07-CIV- 5758-JW                    -20-

W02-WEST:5SS1\400609581.4                    PLAINTIFF-APPELLEE'S MEMORANDUM IN OPPOSITION
                                             TO FTC'S MOTION FOR STAY PENDING APPEAL
                                             RE INJUNCTION ISSUED NOVEMBER 27, 2007

1  ownership and control over all the funds in its accounts when it filed for bankruptcy

2  protection.  It was the Receiver that had at best an inchoate interest in property, not the

3  Debtor.

4        The property interest adjudicated in the Omnibus Order is not enforceable as a

5  matter of collateral estoppel in bankruptcy.  "To reclaim money or property from a

6  bankruptcy estate on the basis that the property belongs to the reclaiming party and not to

7  the debtor, the reclaiming party must be able to definitively trace its property."  In re

8  Graphics Technology, Inc., 306 B.R. 630, 635 (8th Cir. BAP), aff'd, 113 Fed.Appx. 734 (8th

9  Cir. 2004).[7]

10

11  _____

7        The FTC relies on the Ninth Circuit's decision in *Commodity Futures Trading*
12  *Commission v. Co Petro Marketing Group, Inc.*, 700 F.2d 1279 (9th Cir. 1983) as
    supposedly holding that a district court retains jurisdiction after a bankruptcy petition is
13  filed over the assets that are part of a receivership estate.  *Co Petro* stands for the principle
    urged by Debtor here, that the Bankruptcy Code cannot be circumvented by pre-petition
14  receivership orders that would divest the bankruptcy court of jurisdiction over property of
    the estate, as that case distinguished *State of Missouri* on the ground that, unlike the
15  situation in *State of Missouri*, "allowing the district court to enforce its injunction against
    transferring Co Petro assets does not conflict with the administration of the estate in the
16  bankruptcy court."  *Id*. at 1284.  The *Co Petro* court said:
17
        Section 1471(e) [now 1334(e)] makes explicit that under the new Act,
18      all property of the debtor, wherever located, is in *custodia legis* of the
        bankruptcy court.  *Id.*
19
        The essential purpose is, basically, to render the authority and control
20      of the bankruptcy court paramount and all-embracing to the extent
        required to achieve the ends contemplated by the new legislation and
21      to exclude any interference by the acts of others or by proceedings
        before other courts where such activities or judicial proceedings
22      would in some way frustrate the jurisdiction of the bankruptcy courts.
23      1 *Collier Bankruptcy Manual* § 3.01, at 3-24 (3d ed. 1982).

24      Allowing the district court to enforce its preliminary injunction by
25      directing return of the $60,000 to the receiver would in no way
        frustrate the jurisdiction of the bankruptcy court.  Section 543 of the
26      Act protects the bankruptcy court's exclusive jurisdiction over
        property of the estate by requiring the receiver to preserve it and
27      deliver it to the bankruptcy trustee.

28

1    Similarly, claims like those asserted by the Receiver have long been rejected by the

2  federal courts, which have recognized that receivership claims that have not attached to

3  specific property must give way to a bankruptcy court's jurisdiction.  See In re Koch, 116

4  F.2d 243, 245-46 (2nd Cir. 1940), cert. denied, 313 U.S. 565 (1941).  In Koch, the court

5  said:

> The appellant contends that the state court judgment vested in
> him title to the property obtained by the debtor through
> fraudulent practices and thereby removed it from the summary
> jurisdiction of the bankruptcy court, which . . . administers
> only property of the debtor. If it were true that prior to the
> institution of the debtor's arrangement petition, the state court
> had determined that specific property in the debtor's possession
> belonged not to her but to a defrauded purchaser of stock, the
> appellant's position would be unassailable. But the premise that
> the state court judgment ex proprio vigore vested the receiver
> with title to all or any of the debtor's property will not
> withstand scrutiny. . . .The state court judgment did not purport
> to decide what property of the debtor had been derived by
> means of her fraudulent practices, nor to vest the receiver with
> title to all of her property. . . .Without identification of property
> no title thereto can vest in the receiver; and until the receiver or
> some intervening victim of the defendant's fraud makes claim
> in the action to some specific property in the defendant's
> possession, we do not think that it can be deemed a suit in rem,
> and as such have precedence over the bankruptcy proceedings.
> [Citations].
>
> The appellant relies strongly on Texas v. Donoghue, 302 U.S.
> 284, 58 S.Ct. 192, 82 L.Ed. 264 [1937], which recognizes the
> rule that where title has vested in an adverse claimant prior to
> the bankruptcy his title cannot be disturbed by summary
> proceedings in bankruptcy. But such rule [is] plainly
> inapplicable if, as we believe, no title was vested in the
> receiver by the state court judgment and the action was not a
> suit in rem because no one had made claim therein to any
> specific property.

_____

*Id*. at 1282-83.

1    Thus, the Florida Court's Omnibus Order was not with regard to an issue identical

2    to that presented in the bankruptcy court.  The bankruptcy court similarly and properly

3    rejected the effort to assert a bar based on the post-petition Clarification Order:

4    > The bankruptcy court has exclusive in rem jurisdiction post-petition over property of the estate, as well as jurisdiction to
5    > determine what constitutes property of the estate.

6    Memorandum Decision, at 52:5-7.  Any decision the Florida Court purported to make as to

7    "property of the estate" was made without jurisdiction because that jurisdiction resides in

8    the bankruptcy court.[8]  In addition the ruling cannot be given collateral estoppel effect

9    because it was rendered without a full and fair opportunity to litigate, as it was in the

10   context of an emergency motion decided without a hearing or briefing.

11   In sum, while the bankruptcy court was not required to decide the Debtor's rights as

12   to the Receiver's claims in order to rule on the preliminary injunction, there is no basis to

13   set aside the findings it made as to the likelihood of the Debtor prevailing in the dispute

14   with the Receiver, as the Omnibus Order is not conclusive as to the parties' rights to

15   ownership of funds in the Debtor's possession.

16
       **F.    The Preliminary Injunction Does Not Violate Any Principle Disfavoring**
17          **Stays of Law Enforcement Actions.**

18   The FTC asks this Court to apply a standard more to its liking than the one set out

19   for Section 105 injunctions in Excel, claiming that law enforcement proceedings can only

20   be enjoined if there are "exceptional circumstances," a holding adopted by no court.  The

21   FTC's claim is irrelevant here because, as discussed above, the contempt proceedings are

22   not for law enforcement purposes but would rather vindicate a purported interest of the

23   Prior Customers in property.[9]

24   _____

25   [8]    E.g., In re Johnson, 960 F.2d 396, 402 (4th Cir. 1992); Universal Well Services, Inc.
     v. Avoca Nat. Gas Storage, 222 B.R. 26, 30 (W.D.N.Y. 1998); In re Rare, LLC, 298 B.R.
26   762, 764 (Bankr. D. Colo. 2003); In re True, 285 B.R. 405, 412 (Bankr. W.D. Mo. 2002).

27   [9]    The lone circuit court case cited for that proposition by the FTC uses that phrase in
28   dicta after finding the issue was moot in the case before it and did not offer any analysis or

1    Even if the Omnibus Order implicated law enforcement principles, there is no

2   question but that Congress intended to give bankruptcy courts the power to enjoin

3   prosecution of governmental actions that are not subject to the automatic stay:

4           There [is] a procedural avenue to forfend state actions that are
            not subject to the automatic stay but that threaten the
5           bankruptcy estate:  a request for an injunction under 11 U.S.C.
            § 105.  The bankruptcy court's injunctive power is not limited
6           by the delineated exceptions to the automatic stay . . .

7

8   Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1087 (9th Cir. 2000) (en

9   banc).  See H.R. Rep. No. 95-595, at 342 (1977), reprinted in 1978 U.S.C.C.A.N. 5963,

10  6298 ("The effect of the [police powers] exception is not to make the action immune from

11  injunction.  The court has ample other powers to stay actions not covered by the automatic

12  stay.  Section 105 . . .grants the power to issue [such an injunction].");  Walsh v. West

13  Virginia (In re Security Gas & Oil, Inc.), 70 B.R. 786, 792 (Bankr. N.D. Cal. 1987) ("well

14  established that the bankruptcy court may . . . affirmatively enjoin acts against a debtor that

15  are not prohibited by the automatic stay").

16    The FTC asserts that the Order interferes with the "dignity" of the Florida

17  Court in enforcing its orders.  But contempt proceedings are not exempt from the

18  automatic stay and several courts have held categorically that civil contempt

19  proceedings are stayed.[10]

20    To be sure, some cases hold that civil contempt proceedings are not stayed if their

21  purpose is to uphold the dignity of the court.[11]  But it is a contradiction in terms to describe

22

23  explanation for its use of that phrase.  *Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora*, 805 F.2d 440, 449 n.14 (1st Cir. 1986).  The remainder of the FTC's

24  string-cited cases are equally irrelevant, generally suggesting that Section 105 is to be used to promote the goals of the Bankruptcy Code, a proposition not in dispute here.

25  [10]    *E.g., In re Wiley*, 315 B.R. 682, 687 (E.D. La. 2004); *In re Maloney*, 204 B.R. 671,

26  674 (E.D.N.Y. 1996); *In re Allison*, 182 B.R. 881, 886 (N.D. Ala. 1995); *In re Atkins*, 176

27  B.R. 998, 1005-06 (D. Minn. 1994); *In re Cherry*, 78 B.R. 65, 70 (E.D. Penn. 1987).

28  [11]    *NRLB v. Sawulski*, 158 B.R. 971, 975 (E.D. Mich. 1993).

1    civil contempt as serving such a purpose.  Upholding the court's dignity is the function of

2    criminal contempt, not civil.[12]  Integretel did not do anything that offended the Court's

3    dignity.  It was entitled to litigate the dispute with the Receiver over the Prior Customer's

4    reserve claims and it has never been held to be in contempt of the Florida Court's orders.

5          The FTC's arguments offer no basis to overturn the bankruptcy court's

6    preliminary injunction, as the facts and circumstances here demonstrate that the Order

7    serves a valid purpose and was issued pursuant to the applicable standard.

8                        **IV.**

9                  **CONCLUSION**

10      The FTC has failed to offer any basis for a stay pending appeal.  The bankruptcy

11    court did not abuse its discretion in declining to stay its preliminary injunction.  Nor has

12    the FTC demonstrated that it will be irreparably injured if the Omnibus Order is stayed as

13    to Integretel.  The bankruptcy court properly concluded that continuing contempt

14    proceedings against Integretel would threaten the integrity of the bankruptcy estate by

15    removing funds that are likely the Debtor's property and would deprive the Debtor of

16    personnel and funds necessary for reorganization.

17    Dated:  December 19, 2007

18                    Respectfully submitted,

19                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

20

21                  By             /s/ Jeffrey K. Rehfeld

22                           JEFFREY K. REHFELD

23                Attorneys for Debtor THE BILLING RESOURCE, dba INTEGRETEL

24

25

26    ———————————

   [12]    *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 328, 24 S. Ct. 665, 666 (1904); *Jones v.*

27    *Louisiana State Bar Ass'n*, 602 F.2d 94, 97 (5th Cir. 1979); *Skinner v. White*, 505 F.2d 685,

   689 (5th Cir. 1974); *Walling v. Crane*, 158 F.2d 80, 83 (5th Cir. 1946).

28