### Summary of Argument

**I.** As interpreted by the district court, the provisions of the TRO and amended preliminary injunction underlying the Omnibus Order are invalid as applied to Integretel because they exceed the district court's power.

Specifically, they exceed the court's power to impose liabilities and obligations on nonparties. (For purposes of this analysis, Integretel should be regarded as a nonparty because that is the only capacity in which the orders applied to it). The provisions at issue apply to anyone served with the orders, even those acting independently of the enjoined defendants. In that respect, the orders go beyond what Fed. R. Civ. P. 65(d) allows.

That defect cannot be cured by pointing to the district court's *in rem* jurisdiction over receivership property. A court cannot exercise such jurisdiction without a specific *res* to which the jurisdiction can attach, and there was no such *res* here. Furthermore, a court's *in rem* jurisdiction does not reach property in the hands of a third party who holds it under a substantial claim of right, as Integretel does with respect to the money the Receiver is seeking.

**II.** In requiring Integretel to pay the amount of the reserves to the Receiver, the district court erred in several respects. The most important of these—because it affected many of the court's other conclusions—was the holding that the Receiver's claim did not derive from the Former Clients' pre-existing contract rights, but instead arose directly from the court's injunctions. That holding conflicts with the rule that a

-20-

receiver stands in the shoes of the receivership entities and may only assert claims that the receivership entities could have asserted.

Instead of following this rule, the district court invoked vague notions of equitable power and *in rem* jurisdiction. As discussed above, this is not an appropriate case for the exercise of *in rem* jurisdiction. Neither is it a case in which the court's decision can be justified as an exercise of inherent equitable power. A district court's receivership powers are remedial, not substantive; they do not extend to giving the receiver rights or property interests beyond those of the receivership entity.

Because the Receiver was limited to asserting rights under the Former Clients' contracts, the district court should not have decided the merits of the Receiver's claim. Rather, it should have given effect to the contracts' arbitration and forum-selection clauses, which bind the Receiver as the Former Clients' successor in interest. Moreover, if the Receiver's claims were to be litigated rather than arbitrated, Integretel was entitled to trial by jury because the Receiver's claim was, in substance, a claim at law to collect an alleged debt.

Finally, the district court's decision about the reserves was wrong on the merits. The court erred in concluding that the reserve amounts were due and payable under the contracts. The receivership entities (and therefore the Receiver) had only con-tingent, unmatured claims. Moreover, the Receiver's claim was unsecured because the contracts did not give the Former Clients a lien or other property interest. And in any

event, the district court failed to identify the *res* in which the Receiver supposedly has an interest.

**III.** Once Integretel went into bankruptcy, the automatic stay under the Bankruptcy Code operated to suspend enforcement of the Omnibus Order and the bankruptcy court was vested with exclusive jurisdiction to decide what property is or is not part of the bankruptcy estate. The district court erred when it held that the Omnibus Order was not subject to the automatic stay and that the reserve "funds" are not property of the bankruptcy estate.

The district court's premise that the automatic stay only protects property of the bankruptcy estate ignored the Bankruptcy Code's plain language. And the statement that the Omnibus Order had held that the reserve amounts were not property of the bankruptcy estate was also wrong: the Omnibus Order could not possibly have reached that conclusion because it was handed down before Integretel went into bankruptcy.

When the Clarification Order was entered, moreover, the district court had no power to decide whether any property in Integretel's possession should be excluded from the bankruptcy estate. That question was within the bankruptcy court's exclusive jurisdiction. And even if the district court had the power to decide the property-of-the-estate issue, its decision was wrong because the Receiver had not traced his alleged property interest into any specific piece of property in the bankruptcy estate's possession.

Contrary to the district court's decision, the "regulatory exception" to the automatic stay is inapplicable. The Receiver was asserting a pecuniary claim based on the Former Clients' private contract rights, not a regulatory enforcement claim based on public policy.

Finally, the civil contempt proceedings contemplated by the Omnibus Order are stayed. The Bankruptcy Code does not exempt such proceedings from the automatic stay, and the overwhelming weight of authority holds that the stay applies to contempt proceedings that are remedial in nature. There is no basis for concluding that the contempt proceedings here are anything other than remedial.

## Argument

### I.    As applied to Integretel, portions of the TRO and amended preliminary injunction—including those the Omnibus Order was intended to enforce—are invalid.

We start by discussing the defects in the TRO and amended preliminary injunction, not merely because that issue comes first chronologically, but also because the district court viewed the Omnibus Order as a measure to enforce the two earlier orders. To the extent that the TRO and amended preliminary injunction are invalid, therefore, the foundation for the Omnibus Order is undermined.[74]

---

74. This applies not only to the order requiring the payment to the Receiver but also to the order requiring Integretel to show cause why it should not be held in contempt. Civil contempt sanctions may not be imposed if the order that was allegedly violated is invalid. *United States v. United Mine Workers*, 330 U.S. 258, 294 (1947); *ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351, 1356 (5th Cir. 1978). The purpose of civil contempt is purely remedial. *E.g., Martin v. Guillot*, 875 F.2d

-23-

Several provisions of the TRO and amended preliminary injunction purport to impose duties on anyone who is served with the orders, even where the person served is acting independently of the enjoined defendants and there has been no finding that injunctive relief against that person is appropriate. The amended preliminary injunction (though not the TRO) require such persons to turn over to the Receiver any assets belonging to the receivership entities.[75] And both orders require such persons to cooperate with the Receiver and the FTC, including transferring funds at the Receiver's request.[76] As applied here, these provisions exceed the district court's injunctive power.

## A. The provisions at issue must be evaluated under the standards governing the application of injunctions to nonparties because they do not purport to bind Integretel in its capacity as a party and because the requirements for enjoining a party were not satisfied.

Integretel was not a party while the TRO was in effect, so the validity of the TRO's provisions must obviously be judged by the standards for applying injunctions against nonparties. However, the situation regarding the amended preliminary injunction requires more discussion because Integretel had been named as a party by

---

839, 845 (11th Cir. 1989). "The right to remedial relief falls with an injunction which events prove was erroneously issued." *United Mine Workers*, 330 U.S. at 294.

75. R223 at 17.

76. R18 at 14-15, 17; R223 at 15-17, 18.

-24-

the time the amended preliminary injunction was entered (but had not yet been served with the summons and amended complaint).

Despite Integretel's current status as a party, the amended preliminary injunction's validity must be measured against same standards as the TRO: those governing the application of injunctions to nonparties. The amended preliminary injunction does not purport to bind Integretel in its capacity as a party; the provisions directed at "the Defendants" do not apply to Integretel because the injunction defines the phrase "the Defendants" to mean the Nationwide Defendants.[77] Integretel is bound only as a person on whom the injunction was served; for this purpose, its status as a party is entirely fortuitous therefore and irrelevant.

Further, the FTC did not even try to satisfy the requirements for obtaining an injunction directed at Integretel in its capacity as a defendant. It never tried to make the sort of evidentiary showing that would have been required to obtain such an injunction. And the amended preliminary injunction was issued without complying with the notice and opportunity to be heard that would have been required to enjoin Integretel as a party.[78]

---

77. R223 at 3-4.

78. Fed. R. Civ. P. 65(a)(1) ("[n]o preliminary injunction shall be issued without notice to the adverse party"); *Granny Goose Foods, Inc.*, 415 U.S. at 438-39 (1974); *Four Seasons Hotsls & Resorts, B.V. v. Consorcio Barr, S.A.C.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003).

**B. The TRO and amended preliminary injunction exceeded the bounds of Fed. R. Civ. P. 65(d).**

Under Fed. R. Civ. P. 65(d), injunctions are binding only on "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with [an enjoined party] who receive actual notice of the order by personal service or otherwise." Thus, injunctions may not be "so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law."[79]

By imposing duties on anyone served with a copy of the order, the TRO and amended preliminary injunction go beyond what Rule 65(d) allows, both on their face and as applied to Integretel. Integretel was not an officer, agent, servant, employee, or attorney of any of the Nationwide Defendants. And by the time the TRO was entered, Integretel had stopped providing services to the Former Clients and had no ongoing relationship with them.[80]

The district court was mistaken in holding that Integretel could be bound on the basis of the FTC's allegation "that Integretel participated and acted in concert with Access One and Network One in the alleged fraud."[81] Allegations are not evidence. And more importantly, the concerted-action requirement cannot be satisfied

79. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945).

80. R296 (Dawson Decl.) at 4.

81. R610 at 7.

based solely on conduct predating the injunction. The issue under Rule 65(d) is not whether the nonparty participated with the defendant in the conduct that gave rise to the lawsuit. Rather, it is whether the nonparty aided or abetted an enjoined party *in violating the injunction.*

Rule 65(d) codifies the common-law rule "that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors[.]"[82] Thus, persons acting in concert with an enjoined party may be held in contempt "only for assisting the enjoined party in violating the injunction[.]"[83] In fact, one of the cases cited by the district court rejected the theory that the district court adopted here—that concerted action can be shown based solely on a contractual relationship predating the injunction.[84] Yet the district court based its decision regarding this issue solely on that discredited theory.

---

82. *Regal Knitwear Co*, 324 U.S. at 14.

83. *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996); *see also G & C Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 35 (1st Cir. 1980) ("a nonparty, if not legally identified with a party, can be found in contempt only if in active concert or participation with a party in postinjunction activity").

84. *FTC v. Productive Marketing, Inc.*, 136 F. Supp. 2d 1096, 1103-04 (C.D. Cal. 2001).

**C. The TRO and amended preliminary injunction cannot be justified as exercises of the district court's in rem jurisdiction over receivership property.**

The district court held that the TRO and injunction could validly be applied to Integretel based on the court's *in rem* jurisdiction over receivership property.[85] That conclusion begs question; whether Integretel possessed any receivership assets is precisely the issue in dispute. And more importantly, the court's conclusion that it could rely on its *in rem* jurisdiction was wrong as a matter of law.

"*In rem*" means "against a thing."[86] The first prerequisite of *in rem* jurisdiction is therefore a thing—a specific, identifiable *res* to which the court's jurisdiction can attach.[87] *In rem* jurisdiction does not exist when the claimant seeks merely "to recover a sum of money, not 'particular dollars[.]'"[88] No such *res* exists here. There have never been any segregated funds attributable to the reserves,[89] and nobody has ever contended (much less proved) that money generated by the Former Clients' trans-

---

85. R610 at 7-8.

86. *Black's Law Dictionary* 797 (7th ed. 1999).

87. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 38, 112 S. Ct. 1011, 1017 (1992).

88. *Id.*

89. R296 (Dawson Decl.) at 3; *The Billing Resource v. Federal Trade Commission (In re the Billing Resource)*, 2007 WL 3254835 at *22-23.

actions can be traced into Integretel's current bank balances. The Receiver's claim was therefore one simply to recover a sum of money, not to recover particular dollars.[90]

The district court used vague terms such as "the reserves" and "the funds" as if they referred to identifiable assets, but it was undisputed that they are just bookkeeping entries. Contrary to the district court's suggestion, this is not "a distinction without a difference[.]"[91] A bookkeeping entry is not a piece of property over which a court can exercise *in rem* jurisdiction

Furthermore, even when a specific *res* exists, *in rem* jurisdiction attaches only if the *res* is within the court's actual or constructive possession.[92] It has long been settled that a court has no such possession over assets in the hands of a third party who holds them under a substantial claim of right.[93] In reaching the opposite conclusion, the district court ignored the decisions by the Supreme Court and courts of appeals

---

90. *In rem* jurisdiction also does not apply to orders imposing personal duties, such as the provisions of the TRO and amended preliminary injunctions commanding nonparties to cooperate with and assist the Receiver. (R18 at 14-15, 17; R223 at 15-17, 18.) Those provisions do not operate *in rem* upon property. Rather, they are mandatory injunctions that operate *in personam*.

91. R610 at 3.

92. *See, e.g., Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935); *L'Invincible*, 14 U.S. 238, 246-47 (1816); *The Brig Ann*, 13 U.S. 289, 291 (1815); *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999).

93. *E.g., Taubel-Scott-Kitzmiller Co. v. Fox*, 264 U.S. 426, 432-34 (1924); *In re Reading Co.*, 711 F.2d 509, 515-16 (3d Cir. 1983); *In re Kansas City Journal-Post Co.*, 144 F.2d 812, 813 (8th Cir. 1944); *Wheaton v. Daily Telegraph Co.*, 124 F. 61, 62 (2d Cir. 1903).

that we had cited and instead relied on a district-court decision[94] that is inapposite

because the receiver's right to the funds there was undisputed.[95]

In this case, however, the Receiver's claim to funds in Integretel's possession is

very much in dispute. It is to that dispute that we now turn.

## II. The district court erred in holding that the reserve amounts were due and owing to the Receiver and that Integretel was holding them for the Former Clients' benefit or on their behalf.

Although the Omnibus Order discussed the Former Clients' contracts briefly,

the decision ultimately was not based on the contracts. The court held that the

Receiver's claim "is not a claim at law governed by pre-receivership contracts, . . . but

one governed by this Court's jurisdiction over receivership property based on the

TRO and Amended Preliminary Injunction."[96] Thus, the court indicated that the

Receiver could assert substantive rights beyond (and in conflict with) the rights and

property interest of the Former Clients, which he succeeded to upon his

appointment.

That conclusion was profoundly wrong. Receivers step into the shoes of the

receivership entity. They have no substantive rights the receivership entity itself would

not have had. And the federal courts lack the power to give them any such rights.

---

94. *Productive Marketing, Inc.*, 136 F. Supp. 2d at 1106 (cited in R610 at 7).

95. *Productive Marketing, Inc.*, 136 F. Supp. 2d at 1107, 1108.

96. R610 at 4.

This means that the district court should not have even decided the merits of the Receiver's claim. It should have required the Receiver to follow the arbitration process required by the Former Clients' contracts. Failing that, it should have required the Receiver to assert his claims in California, as required by the contracts' forum-selection provisions. And if the court nevertheless retained the case, it should have granted Integretel a jury trial.

This Court therefore need not reach the merits of the Receiver's claim in order to hold that the Omnibus Order cannot stand. If it does reach that issue, however, it should still reverse, for the Receiver does not have a presently enforceable right to be paid the amount of the reserves. Moreover, whatever claim he has is unsecured. The contracts do not give the Former Clients any property interest, and in any case Integretel was not shown to be holding any specific property to which the Receiver's claimed property interest applies.

## A.   *Whatever rights the Receiver may have are based solely on Integretel's contracts with the receivership entities.*

A receiver stands in the shoes of the receivership entity and may not assert any claims the entity itself could not have asserted.[97] For example, a receiver may not assert claims that belong only to the creditors or other claimants for whose ultimate

---

97. *E.g., White v. Ewing,* 159 U.S. 36, 39 (1895); *Javitch v. First Union Securities, Inc.,* 315 F.3d 619, 625 (6th Cir. 2003); *Jarrett v. Kassel,* 972 F.2d 1415, 1426-27 (6th Cir. 1992); *Fleming v. Lind-Waldock & Co.,* 922 F.2d 20, 25 (1st Cir. 1990).

benefit the receivership was imposed.[98] This rule applies not only in commercial

receiverships, but also in receiverships arising from governmental enforcement

actions.[99] Moreover, the rule represents a limitation on the court's power, so that an

order purporting to grant the receiver broader property or contract rights than the

receivership entity had is invalid.[100] This means that determine whether the Receiver

was owed the reserve amounts and whether he had an enforceable interest in any of

Integretel's property, one must determine what rights the Former Clients had under

their contracts.

As the justification for its conclusion to the contrary, the district court relied on

its *in rem* jurisdiction over receivership property and its inherent equitable power. We

have already shown that the court's reliance on its *in rem* jurisdiction was misplaced.

So, too, was its reliance on the notion of inherent power.

The equity power of a receivership court, though broad, is purely remedial. As

the Supreme Court has explained, "[T]he appointment of a receiver is merely an

---

98.  *E.g., Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 429 (1972); *Jarrett*, 972
     F.2d at 1427 (6th Cir. 1992); *Scholes v. Schroeder*, 744 F. Supp. 1419, 1421-23 (N.D.
     Ill. 1990).

99.  *E.g., United States v. Goodman*, 182 F.3d 987, 991-92 (D.C. Cir. 1999) (FTC enforce-
     ment action); *Jarrett*, 972 F.2d at 1415; (CFTC enforcement action).

100.  *E.g., Liberte Capital Group, LLC v. Capwill*, 2007 WL 2733335 at *5-8 (6th Cir.
      Sept. 20, 2007); *Jarrett*, 972 F.2d at 1418, 1425, 1426; *Marwil v. Farah*, 2003 WL
      23095657 at *5-6 (S.D. Ind. 2003); *Scholes v. Tomlinson*, 1991 WL 152062 at *2 (N.D.
      Ill. 1991); *Scholes v. Schroeder*, 744 F. Supp. 1419, 1421-23 (N.D. Ill. 1990).

ancillary and incidental remedy. . . . The appointment determines no substantive right, nor is it a step in the determination of such a right."[101] This Court has similarly noted that receivership is "an ancillary remedy which does not affect the ultimate outcome of the action."[102] But the court here went beyond merely granting a remedy based on existing rights and property interests. It gave the Receiver new rights and interests that the Former Clients had not enjoyed.

In doing so, the district court went far beyond the limits of its equitable power. More than a century ago, the Supreme Court held that "wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances, the maxim *'equitas sequitur legem'* [equity follows the law] is strictly applicable." [103] That principle remains valid. "Equity may not be used to create new substantive rights."[104]

The district court's reliance on the concept of inherent equitable power is especially inappropriate here because the Receiver's claim involves private contract

---

101.  *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497, 43 S. Ct. 454, 456 (1923).

102.  *National Partnership Inv. Corp. v. National Housing Development Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1991).

103.  *Hedges v. Dixon*, 150 U.S. 182, 192 (1893) (internal quotation marks omitted).

104.  *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 823 (4th Cir. 2004). *See, e.g.,* *In re Southmark Corp.*, 49 F.3d 1111, 1116 (5th Cir. 1995); *Johnson v. First National Bank*, 719 F.2d 270, 273-75 (8th Cir. 1983).

and property rights, which are governed by state law.[105] There is no relevant statute

displacing state law and no national policy on billing aggregators that might authorize

the creation of new judge-made rules as a matter of federal common law.[106]

### B. By resolving the Receiver's claim on the merits, the district court violated Integretel's rights under the contracts' ADR/arbitration and forum-selection provisions and under the Seventh Amendment.

Because the Receiver stood in the Former Clients' shoes, whatever rights he

may have had against Integretel were based solely on the Former Clients' contracts.

That being so, the dispute should have been decided through the ADR/arbitration

process that the contracts mandated, not by the district court. And even if the

Receiver could somehow have avoided that process, (1) the contracts designated

California as the forum for any litigation and (2) Integretel was entitled to a jury trial.

---

105. *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 127 S. Ct. 1199, 1205 (2007); *Butner v. United States*, 440 U.S. 48, 54-56 (1979); *In re Southeast Banking Corp.*, 156 F.3d 1114, 1121 (11th Cir. 1998). These cases, which were decided under bankruptcy law, are applicable here because a bankruptcy trustee is 'a statutory successor to the equity receiver[.]" *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000) (internal quotation marks and citation omitted). Bankruptcy cases therefore provide "particularly informative" guidance in receivership proceedings. *Office & Professional Employees Intern. Union, Local 2 v. FDIC*, 962 F.2d 63, 68-69 (D.C. Cir. 1992).

106. *See, e.g., In re Southeast Banking Corp.*, 156 F.3d at, 1121 n.8.

1. *The district court should have stayed litigation pending completion of the arbitration process.*

Each contract contains an ADR/arbitration provision that applies to "any claim, dispute, or other controversy arising out of or relating to this Agreement or its breach."[107] These provisions require the parties to try to resolve any disputes through negotiation and if they cannot agree to submit the dispute to arbitration. With two inapplicable exceptions (discussed below), this is the "sole remedy" for disputes arising out of the contracts.

These provisions are valid and enforceable under the Federal Arbitration Act ("FAA"), which establishes a strong federal policy favoring arbitration.[108] The FAA applies to written arbitration provisions in agreements "evidencing a transaction involving commerce."[109] It is undisputed that the Former Clients' contracts fall within that category. [110] And because the Receiver stands in the Former Clients' shoes, his

---

107. R296 (Dawson Decl.) at 12ecf, 38ecf, 39ecf.

108. 9 U.S.C. § 2. *See, e.g., Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 225-261 (1987).

109. 9 U.S.C. § 2.

110. R363 (Dawson Decl.) at 2 (contracts are between parties in different states and contemplated the transmission of payments and billing data across state lines); *see Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-77 (1995) (use of phrase "involving commerce" evidences intent to exercise full extent of commerce power).

claim is subject to any defenses that would have been good against the Former Clients.[111] As a result, the arbitration provisions are binding on him.[112]

The district court gave two reasons for disregarding the ADR/arbitration provisions. The first was that the Receiver's rights were not contractual, but derived entirely from the Court's orders. We have shown that premise to be unfounded. The second was that the Receiver is not bound by contracts he has not affirmatively adopted. However, the cases holding receivers to be bound by arbitration provisions do not refer to any such limitation, and the premise that the Receiver may unilaterally disavow the contracts' terms is dubious under this Court's precedent.[113] And in any event the Receiver tacitly adopted the contracts here by asserting claims that arose, if at all, only under the contracts. A receiver may not try to obtain payments under a contract and at the same time avoid the provisions he does not like.[114]

---

111. *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86, 114 S. Ct. 2048, 2054 (1994).

112. *See, e.g., Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624-27 (6th Cir. 2003); *Capitol Life Ins. Co. v. Gallagher*, 839 F. Supp. 767, 769 (D. Colo. 1993). *Cf. In re Electric Machinery Enterprises, Inc.*, 479 F.3d 791, 795-99 (11th Cir. 2007) (bankruptcy trustee asserting contract claims under state law is bound by contract's arbitration clause).

113. *See Liggio v. FDIC*, 847 F.2d 1499, 1502 (11th Cir. 1988) (FDIC as receiver is liable on failed bank's contracts).

114. *See, e.g., Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1323 (11th Cir. 2001); *FDIC v. Ernst & Young LLP*, 374 F.3d 579, 584 (7th Cir. 2004); *Skelton v. General Motors Corp.*, 860 F.2d 250, 259 (7th Cir. 1988); *Gross v. Regnor Fin. Co.*, 96 F.2d 37, 38 (5th Cir. 1938); *Menke v. Willcox*, 275 F. 57, 58 (S.D.N.Y. 1921) (L. Hand, J.).

Neither of the ADR/arbitration provisions' exceptions applies here. The first allows suits to compel compliance with the contractual dispute-resolution process (which is obviously inapposite). The second allows actions "seeking a temporary restraining order or injunction related to the purposes of this Agreement[.]"[115] That exception is similarly inapplicable.

To begin with, he Receiver did not seek a TRO or injunction. Instead, he moved for a show-cause motion seeking to enforce the TRO and amended preliminary injunction that the district court had previously entered. Thus, the focus here is on those orders, not on the Receiver's motion or the Omnibus Order. And given that focus, it is clear that the exception to the arbitration clause does not apply. Neither the TRO nor the amended preliminary injunction granted relief "related to the purpose" of the contracts. Both of them were issued at the request of the FTC, not of the Former Clients. Their purpose was to enforce the FTC Act against the Nationwide Defendants, not to enforce the Former Clients' alleged rights against Integretel. And neither the contracts nor any contractual claims were before the district court when the orders were entered.

In short, because the arbitration provisions, apply to the Receiver's claims, the FAA requires that any litigation on those claims be stayed.[116]

---

115. R296 (Dawson Decl.) at 12ecf, 39ecf.

116. 9 U.S.C. § 3.

-37-

2.   *If litigation was permitted, the agreed-upon venue was California.*

The contracts provide that to the extent litigation is permitted, it must be brought in Santa Clara County, California.[117] Such forum-selection clauses are presumptively valid under the law of both the forum state (Florida) and the state whose law is contractually designated as controlling (California).[118] The Receiver did not attempt to overcome this presumption and the district court did not find that it had been overcome. And forum-selection clauses—like arbitration clauses—are binding on receivers.[119] Integretel properly raised this issue below.[120] The court therefore should have held that any litigation must take place in California.

3.   *If litigation was permitted, Integretel was been entitled to trial by jury.*

Because the only rights the Receiver may assert are those of the Former Clients, his claim was in substance for payment of a contractual debt. Such a claim is legal, not equitable, and as a result Integretel was entitled under the Seventh Amendment to trial by jury.[121] This is true even though the Receiver's claim was brought in the context of an equitable receivership proceeding. "Legal claims are not

117. R296 (Dawson Decl.) at 12ecf, 38ecf.

118. *E.g., America Online, Inc. v Booker*, 781 So. 2d 423, 424 (Fla.. App. 2001); *Lu v. Dryclean-U.S.A. of California, Inc.*, 14 Cal. Rptr. 2d 906, 907-08 (Ct. App. 1992).

119. *See, e.g., Hodgson v. Gilmartin*, 2006 WL 2707397 at *8-17 (E.D. Penn. 2006). *Cf. In re Mercurio*, 402 F.3d 62 (1st Cir. 2005) (bankruptcy trustee).

120. R296 at 34-36.

121. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962).

magically converted into equitable issues by their presentation to a court of equity[.]"[122] For example, even though bankruptcies are equitable proceedings, the Supreme Court has held that a claim at law remains a claim at law even when it is asserted by a bankruptcy trustee.[123] The same principle applies to receiverships.[124]

Integretel preserved its jury-trial rights by asserting them when it opposed the Receiver's motion.[125] By deciding the claims itself, the district court violated the Seventh Amendment.

## C. The reserve amounts were not due and owing and in any event the Former Clients had no property interest that the Receiver could have asserted.

Because the district court was not the appropriate forum for deciding the Receiver's claim, this Court need not address the merits of the district court's decision in order to conclude that the Omnibus Order should be reversed. But if the Court does reach the merits, the result should be the same.

---

122. *Ross v. Bernhard*, 396 U.S. 531, 538 (1970); *see also Dairy Queen*, 369 U.S. at 470-74.

123. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 49-64, 109 S. Ct. 2782, 2794-2802 (1989); *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94-95 (1932); *Kelley v. Gill*, 245 U.S. 116, 120-22 (1917).

124. *Hart v. Wiltsee*, 19 F.2d 903, 914-15 (1st Cir. 1927); *Carey v. McMillan*, 289 F. 380, 383, 385-87 (8th Cir. 1923); *Robinson v. Mutual Reserve Life Ins. Co.*, 175 F. 629, 629 (S.D.N.Y. 1909); *Whelan v. Enterprise Transp. Co.*, 164 F. 95, 98 (D. Mass. 1908).

125. R296 at 24 n.98.

The district court's decision conflated two distinct questions: whether the reserve amounts represented matured and noncontingent debts to the Former Clients, and if so, whether the Receiver has a property interest in any of Integretel's assets. The answer to both questions is no.

1.    *The reserve amounts were not due and owing.*

   **a.** The district court erred in holding that Integretel owed the amount of the IGT Reserves to the Former Clients. The contracts provide unambiguously that amounts withheld on account of the IGT Reserve are by definition *not* owed to the client. In the provision specifying what Integretel is required to pay the Former Clients, the contracts state, "Client shall be entitled to all collected amounts, up to and including the gross value of the Billing Transactions remitted to the Telcos, *less any amount due and owing to [Integretel] hereunder, including, without limitation, . . . IGT Reserves . . . .*"[126] Moreover, the contracts define the IGT Reserve as "an amount withheld, from the amount *otherwise* owed to Client[.]"[127] As used in this definition, "otherwise" means "in different circumstances" or "under other conditions."[128] The phrase "amounts otherwise owed to Client" therefore means amounts that *would be* owed to the client if they were not withheld to cover the reserve.

---

126. R296 (Dawson Decl.) at 19ecf, § 6 & 51ecf, § 6 (emphasis added).

127. R296 (Dawson Decl.)at 14ecf, 43ecf (emphasis added).

128. *Webster's Third New International Dictionary* 1598 (1986).

Under the contracts, the Former Clients' entitlement to payment on account of the reserves is limited to "any *excess* IGT Reserve as determined from time to time[.]"[129] And Integretel may adjust the level of the IGT Reserve in its reasonable discretion.[130] This means that sums allocated to the IGT Reserve do not become owed to the client unless and until Integretel decides in its discretion to lower the reserves' level after accounting for costs, expenses, and other charges.

In order to hold that the reserve amounts were owed under the contracts, it would have been necessary for the district court to find that it was unreasonable for Integretel to decide in its discretion not to pay the reserve amounts to the Receiver. But the court made no such finding and there was no evidence that could have supported such a finding. On the contrary, the evidence indicates that Integretel acted reasonably and within the permissible bounds of its discretion. It was (and still is) faced with the risk of being held liable to the FTC, to consumers, or to LECs. Any money paid to the Receiver would not necessarily be used to reduce that potential liability. It would be available to pay the Receiver's administrative expenses (which are considerable) and to pay other claims against the various defendants in receivership. Integretel is therefore exposed to the risk of multiple liability, and that risk justified its rejection of the Receiver's demand.

---

129. R296 (Dawson Decl.) at 19ecf § 6, 51ecf § 6 (emphasis added).

130. R296 (Dawson Decl.) at 19ecf § 5(b), 51ecf § 5(b)

The district court was wrong to rely on the absence of an applicable liquidated-damages provision. Integretel has never said that it was entitled to liquidated damages. The court was similarly mistaken in concluding that the contracts do not "give Integretel the right to make an independent, unilateral decision about [the Former Clients'] breach of the agreements without court involvement."[131] The law does not require explicit contractual authorization before one contracting party can declare the other in default without first obtaining judicial approval. The court's suggestion to the contrary is out of touch with business reality.

**b.** The district court was also mistaken in holding that Integretel could not use the reserve amounts to satisfy its claims against the Former Clients under the contracts' indemnification provisions. The court gave two reasons for that conclusion, neither of which withstands scrutiny. [132]

The first reason is that the contracts supposedly "do not give [Integretel] the right so use the reserves to fund the indemnity."[133] But under the contract funds may be allocated to the IGT Reserve "to cover other reserves *or offsets*[.]"[134] Integretel's

---

131. R610 at 4.

132. R610 at 3-4. And the court failed to even mention Integretel's argument that if it had any liability to the Receiver, it was entitled to offset that liability against its claims against the Former Clients for fraud in the inducement.

133. R610 at 3.

134. R296 at 14ecf, 43ecf (emphasis added).

-42-

claims under the indemnification provisions constitute offsets against whatever claims the Former Clients (and derivatively, the Receiver) may have against Integretel. Indeed, because the right to offset mutual debts is based on considerations of equity,[135] it does not depend on the terms of the parties' contract.

The district court's second reason was that that the FTC has sued Integretel for its own alleged "independent violations" of the FTC Act and that as a result Integretel "will not be able to look to [the Former Clients] for indemnification[.]"[136] However, Integretel's alleged violations are not independent of the Former Clients'. On the contrary, the FTC's claim against Integretel is based on Integretel's having processed the Former Clients' transactions, and the FTC contends that Integretel can be held liable without any showing that it knew or reasonably could have known that the Former Clients' billing transactions were fraudulent.

Furthermore, the district court had previously held that Integretel *could* assert claims for indemnification against the individuals who were involved in for the Former Clients' fraud.[137] The court rejected the FTC's argument that allowing indemnification for liability under the FTC Act would undermine the Act's policies. It held that while a defendant may not obtain indemnification for disgorgement of

---

135. *See Fassberg Const. Co. v. Housing Authority*, 60 Cal. Rptr. 3d 375, 411-12 (Ct. App. 2007).

136. R610 at 3-4.

137. R536 at 2-3.

unlawfully obtained profits, indemnification would be available with respect to any liability exceeding that amount. If such indemnification is allowed against the individuals associated with the Former Clients—with whom Integretel had no contract—indemnification under the Former Clients' contracts should be allowed *a fortiori*.

2.  *The Former Clients had no property interest in the reserve amounts.*

Even if the reserve amounts were due and owing, that alone would not give the Receiver an interest in any of Integretel's property. Unless a creditor has been granted a lien, it is a general unsecured creditor with no interest in the debtor's assets unless and until it reduces its claim to judgment and levies on the debtor's property.[138] There is no basis for finding that the Receiver had a lien or comparable property interest.[139]

Nothing in the contracts gives the Former Clients any sort of property interest. The contracts do not give the Former Clients a security interest or make them beneficiaries of a trust or other fiduciary relationship. Indeed, the contracts expressly

138. *See, e.g., Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308, 330 (1999); *Delaney Producing & Refining Co. v. Crystal Petroleum Prods. Corp.*, 264 P. 521, 522 (Cal. 1928); *381651 Alberta, Ltd. v. 279298 Alberta, Ltd.*, 675 So. 2d 1385, 1387-88 (Fla. App. 1996).

139. We are dealing here only with the Omnibus Order's flaws under nonbankruptcy law, not with the question of what property is or is not included in Integretel's bankruptcy estate. As discussed below, the latter issue is within the bankruptcy court's exclusive jurisdiction.

rule out the existence of a fiduciary relationship by stating that Integretel is not the client's "agent, partner, joint venturer, trustee, fiduciary, or legal representative[.]"[140]

Despite this definitive language, the district court said that the reserves were "held on behalf of, or for the benefit of, " the Former Clients.[141] That unexplained conclusion is at odds with the contracts' description of the IGT Reserve as being intended "to protect IGT[.]"[142] ("IGT" is the abbreviation for "Integretel."[143]) It is also inconsistent with the provision in the contract of one of the Former Clients (Access One) transferring the client's interest in its billing transactions to Integretel.[144]

Further, as discussed above, the district court failed to identify the specific property the Receiver supposedly has an interest in. In fact, it not only failed to identify any property that was in Integretel's possession at the time of its order, but it also failed to identify any such property that was *ever* subject to an interest in favor of the Former Clients. Property interests do not exist in the abstract; they exist only in relation to specific identified (or at least identifiable) pieces of property. The district court disregarded that fundamental point.

---

140. R296 (Dawson Decl.) at 13ecf ¶ k, 41ecf ¶ k.

141. R610 at 3.

142. R296 (Dawson Decl.) at 14ecf, 43ecf.

143. R296 (Dawson Decl.) at 10, 33.

144. R296 (Dawson Decl.) at 20ecf § 9.

-45-

### III. Even if the Omnibus Order were correct, its enforcement would be suspended by the Bankruptcy Code's automatic stay.

In holding that the automatic stay does not apply to the Omnibus Order, the district court acted without allowing Integretel an opportunity to be heard. But because the issues here are legal rather than factual, this Court can and should decide them itself rather than simply remanding to allow the district court to decide the matter anew after hearing from Integretel. As we will now show, the district court's decision that the Omnibus Order is not subject to the automatic stay is mistaken, as is its related decision that the reserve "funds" are not property of Integretel's estate.

### A. The Omnibus Order is covered by the stay as defined by 11 U.S.C. § 362(a).

Under § 362(a) of the Bankruptcy Code, the filing of a bankruptcy petition "operates as a stay, applicable to all entities," of the following:

> (1) the . . . continuation. . . of a judicial . . .action or proceeding against the debtor that was . . . commenced before the commencement of the case under this title . . .;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; [and]
>
> (3) any act to obtain possession of property of the estate or of property from the estate . . . .[145]

Enforcement of the Omnibus Order is stayed under each of these provisions. Specifically, enforcement would constitute the continuation of a proceeding commenced against Integretel before its bankruptcy (§362(a)(1)), the enforcement against Integ-

---

145. 11 U.S.C. § 362(a).

retel and against property of the estate of a pre-bankruptcy judgment (§ 362(a)(2)), and an act to obtain possession of property of Integretel's estate and property from Integretel's estate (§ 362(a)(3)).

In concluding that the automatic stay does not apply, the district court said that the stay applies "only to protect property of the bankruptcy estate or property of the debtor" and that the court "has already held that the reserve funds are neither the property of the 'bankruptcy estate' nor Integretel."[146] This conclusion was mistaken for several reasons.

First, the stay's protections are not limited to property of the estate or of the debtor. The provisions we rely on apply even in situations not involving such property. Subsection (a)(1) applies to the continuation of judicial actions or proceedings against the debtor; it does not even use the terms "property of the estate" or "property of the debtor." Subsection (a)(2) applies to judgment-enforcement not only against the bankruptcy estate, but also against the debtor. And subsection (a)(3) extends the stay not only to acts to obtain possession of "property of the estate" but also to acts to obtain possession "of property *from* the estate[.]" This means that the stay protects property that is merely in the debtor's possession, regardless of who owns it.[147] The district court disregarded the plain language of these provisions.

---

146. R619 at 4.

147. *E.g., In re Atlantic Business and Community Corp.*, 901 F.2d 325, 328 (3d Cir. 1990); *In re Turbowind, Inc.*, 42 B.R. 579, 585 (Bankr. S.D. Cal. 1984).

Second, the district court erred in declaring that the funds claimed by the Receiver were not property of the estate or of the debtor. The court was of course mistaken in its underlying finding that the Receiver had a property interest, but even if that had not been the case, its conclusion could not be sustained.

Contrary to what the court said, it had *not* "already held that the reserve funds are neither the property of the 'bankruptcy estate' nor Integretel."[148] The Omnibus Order had said nothing about Integretel's bankruptcy estate, and could not possibly have done so, having been issued before Integretel went into bankruptcy. And of course the Omnibus Order did not address the bankruptcy-law issues involved in deciding whether a particular asset is property of the bankruptcy estate.

Furthermore, all the Omnibus Order held as a matter of nonbankruptcy law was that the Receiver had some sort of undefined interest in an abstraction that the district court referred to as "the reserve funds" but that was not embodied in any specific *res* in the real world. That is a far cry from a holding that Integretel no longer had any interest in some defined portion of its property. Thus, the situation immediately before the bankruptcy was, as the bankruptcy court held, that Integretel retained ownership of all of its funds, albeit subject to whatever interest the Receiver may have been granted.[149]

---

148. R619 at 4.

149. *See The Billing Resource v. FTC (In re The Billing Resource)*, 2007 WL 3254835 at *24.

That should be the end of the matter because the Clarification Order merely stated a conclusion that the district court mistakenly believed the Omnibus Order had previously reached; it did not purport to decide the property-of-the-estate issue de novo. But even if the Clarification Order is regarded as having itself decided that issue, it was still erroneous. Determining what assets are or are not part of a bankruptcy estate is exclusively within the province of the bankruptcy court.[150] Under 28 U.S.C. § 1334(e), exclusive jurisdiction over property of the debtor and of the estate is vested in the district where the bankruptcy is pending. That jurisdiction supersedes the assertion by any other court of *in rem* jurisdiction over property in the debtor's possession.[151]

This case vividly demonstrates why the exclusivity of the bankruptcy court's jurisdiction is so important. A district-court judge on the opposite side of the country ruled on a vital bankruptcy issue without considering the governing bankruptcy law, without considering the interests of pre-existing secured creditors, without taking account of the interests bankruptcy is supposed to serve, and without even giving the

---

150. *E.g.*, *In re Johnson*, 960 F.2d 396, 402 (4th Cir. 1992); *The Billing Resource v. FTC (In re The Billing Resource)*, 2007 WL 3254835 at *20, *24; *Universal Well Services, Inc. v. Avoca Nat. Gas Storage*, 222 B.R. 26, 30 (W.D.N.Y. 1998); *In re Rare, LLC*, 298 B.R. 762, 764 (Bankr. D. Colo. 2003); *In re True*, 285 B.R. 405, 412 (Bankr. W.D. Mo. 2002).

151. *Gilchrist v. General Electric Capital Corp.*, 262 F.3d 295, 303-04 (4th Cir. 2001); *In re U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997); *In re White*, 851 F.2d 170, 172-73 (6th Cir. 1988).

debtor an opportunity to be heard. As a result, Integretel has been burdened with costly litigation in the bankruptcy court that would have been avoided if the district court had stayed within the limits of its authority and left property-of-the-estate determinations to the bankruptcy court.

Because the district court had no authority to decide what is or is not part of Integretel's bankruptcy estate, its ruling on that issue should be vacated. Given the bankruptcy court's exclusive jurisdiction, this Court need not and should not go further and address the merits of the property-of-the-estate issue. But if the Court nevertheless reaches that issue, it should hold that the district court was mistaken.

Anyone who claims ownership of property held by a debtor in bankrtuptcy must show that it has an interest in "particular dollars" in the debtor's possession or control.[152] "To reclaim money or property from a bankruptcy estate on the basis that the property belongs to the reclaiming party and not the debtor, the reclaiming party must be able to definitively trace its property."[153] Commingled funds in an account under the debtor's unrestricted control are presumed to be property of the estate,[154] and to overcome that presumption the Receiver had the burden of "specifically and directly" tracing money in Integretel's bank accounts back to funds received by

---

152. *Begier v. IRS*, 496 U.S. 53, 62, 110 S. Ct. 2258, 2264 (1990).

153. *In re Graphics Technology*, 306 B.R. 630, 635 (9th Cir. B.A.P. 2004).

154. *In re Bullion Reserve of North America*, 836 F.2d 1214, 1217 (9th Cir. 1988).

Integretel on account of the Former Clients' transactions.[155] If the property in which he asserts an interest cannot be "positively identified," he "is relegated to the status of a general unsecured creditor, regardless of the equities."[156]

The district court failed to conduct the tracing analysis required under the Bankruptcy Code. Indeed, there was no evidence on which a tracing analysis could have been based. Since the burden of proof was on the Receiver,[157] the district court's decision regarding property of the bankruptcy estate cannot be sustained.

### B.  The "regulatory exception" does not apply.

In addition to its mistaken property-of-the-estate analysis, the district court relied on the "regulatory exception" to the automatic stay, under which the relevant provisions of § 362(a) do not apply to proceedings "by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment[.]"[158] This holding, too, was incorrect.

---

155. *In re Advent Corp.*, 104 F.3d 293, 296 (9th Cir. 1997); *see, e.g., Begier*, 496 U.S. at 62, 110 S. Ct. at 2264-65; *In re Financial Federated Title & Trust, Inc.*, 347 F.3d 880, 891 (11th Cir. 2003); *In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 965-66 (5th Cir. 1980).

156. *Graphics Technology*, 306 B.R. at 635.

157. *E.g., Financial Federated Title & Trust, Inc.*, 347 F.3d at 891; *In re Advent Corp.*, 104 F.3d at 296.

158. 11 U.S.C. § 362(b)(4).

The regulatory exception applies only if the Receiver's claim against Integretel was asserted in order to carry out public policy rather than adjudicate private rights, or if it was asserted for regulatory as opposed to pecuniary purposes.[159] Neither of those tests is satisfied. As discussed above, the Receiver stands in the shoes of the Former Clients and he asserts what are, in substance, claims for money allegedly owed under the Former Clients' contracts—quintessential private rights. And the purpose of his claims is merely to recover the money that he claims is owed, not to enforce any sort of public policy against Integretel.

Even if the regulatory exception otherwise applied, it does not extend to the enforcement of the order requiring Integretel to pay the amount of the reserves to the Receiver.[160] As stated above, the exception allows the enforcement of a regulatory judgment "other than a money judgment[.]"[161] Although the Omnibus Order takes the form of an injunction rather than a judgment at law,[162] the form of the order is not controlling.[163] For purposes of § 362(b)(4), an order constitutes a "money judgment" if (1) it is intended to remedy a past alleged harm rather than to prevent

---

159. *E.g.*, *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997); *Edelman v. United States Dep't of Labor*, 923 F.2d 782, 791 (10th Cir. 1991).

160. *SEC v. Brennan*, 230 F.3d 65, 71-72 (2d Cir. 2000).

161. 11 U.S.C. § 362(b)(4).

162. See Statement of Jurisdiction, above.

163. *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 275-76 (3d Cir. 1984).

harm in the future and (2) it can be satisfied by the payment of a sum certain.[164] The Omnibus Order qualifies on both counts.

### C.  Contempt proceedings are stayed.

The district court erred in ruling that civil contempt proceedings against Integretel were not subject to the stay. The Bankruptcy Code does not exclude such proceedings from the scope of the stay, and several courts have held categorically that civil contempt proceedings are stayed.[165] Other courts have held that the stay applies to contempt proceedings whose primary purpose is to enforce the opposing party's entitlement to a remedy rather than to punish the contemnor.[166] That is much the same as saying that the stay applies to all civil contempt proceedings, because the hallmark of civil contempt is that it is remedial rather than punitive.[167]

---

164. *Penn Terra Ltd.*, 733 F.2d at 276-77, 278.

165. *In re Wiley*, 315 B.R. 682, 687 (E.D. La. 2004); *In re Maloney*, 204 B.R. 671, 674 (E.D.N.Y. 1996); *In re Allison*, 182 B.R. 881, 886 (N.D. Ala. 1995); *In re Atkins*, 176 B.R. 998, 1005-06 (D. Minn. 1994); *In re Cherry*, 78 B.R. 65, 70 (E.D. Penn. 1987), *cited with approval in In re Myers*, 491 F.3d 120, 128 (3d Cir. 2007); *In re Birchall*, 2007 WL 1992089 at *6, *8-9 (Bankr. D. Mass. 2007).

166. *Serio v. Black, Davis & Shue Agency, Inc.*, 2006 WL 176983 at *1-2 (S.D.N.Y. 2006); *In re Haas*, 2004 WL 3132027 at *3-4 (Bankr. E.D. Va. 2004); *In re Daniels*, 316 B.R. 342, 348-49 (Bankr. D. Idaho 2004); *In re Dill*, 300 B.R. 658, 667-68 (Bankr. E.D. Va. 2003); *In re Goodman*, 277 B.R. 839, 842 (Bankr. M.D. Ga. 2001).

167. *E.g.*, *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006).

To be sure, some cases hold that civil contempt proceedings are not stayed if their purpose is to uphold the dignity of the court.[168] But it is a contradiction in terms to describe civil contempt as serving such a purpose. Upholding the court's dignity is the function of *criminal* contempt, not civil.[169]

Assuming there nevertheless are cases where civil contempt need not be regarded as purely remedial, this is not one of them. When the Supreme Court distinguished remedial contempt orders from those that "vindicate the law's authority," it gave as an example of remedial contempt a situation on all fours with this case: a contempt order directed at someone who "refused . . . to surrender property ordered to be turned over to a receiver[.]"[170] As to such orders, "[u]nless there [are] special elements of contumacy, the refusal to pay or to comply with the order is treated as being rather in resistance to the opposite party than in contempt of court."[171]

Even apart from that, there is no basis for saying that the contempt proceedings here are intended to uphold the district court's dignity. Integretel did not thumb

---

168. *NRLB v. Sawulski*, 158 B.R. 971, 975 (E.D. Mich. 1993).

169. *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 328, 24 S. Ct. 665, 666 (1904); *Jones v. Louisiana State Bar Ass'n*, 602 F.2d 94, 97 (5th Cir. 1979); *Skinner v. White*, 505 F.2d 685, 689 (5th Cir. 1974); *Walling v. Crane*, 158 F.2d 80, 83 (5th Cir. 1946).

170. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442, 31 S. Ct. 492, 498 (1911).

171. *Id.*

its nose at the court or act in bad faith. It had reasonable grounds for believing that it was not violating the district court's orders and it showed the court no disrespect. Moreover, because there has not yet been any finding of contempt, it would be premature to characterize the contempt proceedings here as anything but remedial. Although the Clarification Order makes a conclusory reference to the dignity of the court,[172] that is not determinative.[173] Indeed, it is entitled to no weight because the Order was entered without allowing Integretel an opportunity to be heard.

## Conclusion

For the foregoing reasons, the Court hold the challenged portions of the Injunctions invalid  and should vacate or reverse the Omnibus Order (insofar as it applies to Integretel) and the Clarification Order. The Court should remand with instructions to deny the Receiver's show-cause motion and to grant Integretel's motion to modify the district court's prior injunctive orders and Integretel's motion for a stay pending arbitration. The district court should be instructed to modify the prior injunctive orders in order to cure their invalidity.

---

172. R619 at 4.

173. *E.g.*, *Goodman*, 277 B.R. at 842.

Respectfully submitted,

*/s/ Neal Goldfarb*

Laurie Webb Daniel (GA Bar # 204225)     Neal Goldfarb (DC Bar # 337881)
Cynthia G. Burnside (GA Bar # 097107)    Richard H. Gordin (DC Bar # 727925)
Holland & Knight LLP                      Tighe Patton Armstrong Teasdale PLLC
1201 West Peachtree Street, NE            1747 Pennsylvania Ave., NW, Suite 300
One Atlantic Center, Suite 2000           Washington, D.C. 20006
Atlanta GA 30309                          (202) 454-2800
(404) 817-8500

*Attorneys for Appellant/Movant*
*The Billing Resource dba Integretel*

December 3, 2007

**Certificate of Compliance
with Fed. R. App. P. 32**

I HEREBY CERTIFY that the foregoing brier complies with the requirements of Fed. R. App. P. 32 regarding type style, type size, and word-volume limitations. The brief contains 13425 words (as computed by the word-count function of Word 2002), excluding those portions that may be excluded under 11th Cir. R. 32-4. The typeface is 14-point Garamond.

/s/ Neal Goldfarb
Neal Goldfarb

## Certificate of Service

I HEREBY CERTIFY that on this 3rd day of December, 2007, the original

and six copies of the foregoing brief were sent to the Clerk by first-class mail, postage

prepaid that two copies of the brief were served on the following by first-class mail,

postage prepaid:[174]

        John Andrew Singer, Esq.
        Marilyn Kerst, Esq.
        Lawrence Wagman, Esq.
        John F. Daly, Esq.
        Federal Trade Commission
        600 Pennsylvania Ave., N.W., Room 582
        Washington, D.C. 20580

        Laura M. Kim, Esq.
        Collot Guerard, Esq.
        Richard McKewen, Esq.
        Robert Schoshinksi, Esq.
        Federal Trade Commission
        600 Pennsylvania Ave., N.W., Room 286
        Washington, DC  20580

        Jeffrey C. Schneider, Esq.
        Patrick Rengstl, Esq.
        Tew Cardenas LLP
        Four Seasons Tower—15th Floor
        1441 Brickell Avenue
        Miami, FL  33131

---

174.  Service is not being made on (a) counsel who have consented in writing to
     being removed from the service list, (b) counsel for the BSG defendants other
     than lead counsel, with the written consent of the BSG defendants' lead counsel,
     (c) defendant Mary Lou Farr, against whom a consent judgment has been entered
     and who is therefore no longer actively involved in thelitigation, and (d) third-
     party Jesse Mendoza, who is in default for failure to appear in the district court.

Andrew G. Berg, Esq.
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-4704

Mark Douglas Johnson, Esq.
Mark D. Johnson, P.A.
10 Central Parkway, Suite 210
Stuart, Florida 34994

Michael David McDonough, Esq.
12794 Forest Hill Blvd., Suite 19D
Wellington, FL 33414

Willoughby Farr, Inmate No. 653974
Avon Park Correctional Institution
PO Box 1100
County Road 64 East
Avon Park, FL 33926-1100

John W. Chapman, Jr., Esq.
Norton Hammersley Lopez & Skokos
1819 Main Street, Suite 610
Sarasota, FL 34236

Thomas G. Long, Esq.
Hildegund P. Wanders, Esq.
Barnett Bolt Kirkwood & Long
601 Bayshore Boulevard, Suite 700
Tampa, FL 33606

Theodore J. Leopold, Esq.
Ricci Leopold
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410


_/s/ Neal Goldfarb_
Neal Goldfarb

## Addendum

United States Constitution:
    Fifth Amendment (due-process clause) ....................................................................A1
    Seventh Amendment...............................................................................................A1

Federal Arbitration Act:
    9 U.S.C. § 1...........................................................................................................A2
    9 U.S.C. § 2...........................................................................................................A2
    9 U.S.C. § 3...........................................................................................................A2

11 U.S.C. § 362(a)(1)-(3), -(b)(4) ..............................................................................A3

28 U.S.C. § 1334(e)..................................................................................................A5

Federal Rules of Civil Procedure
    Rule 65(a)(1), (d) ..................................................................................................A6

Excerpt from transcript of telephonic hearing,
*The Billing Resource v. FTC* (*In re the Billing Resource*), Adv. Pro. No. 07-5156
(Bankr. N.D. Cal. Nov. 5 2007)..................................................................................A7

Preliminary injunction, *The Billing Resource v. FTC* (*In re the Billing Resource*),
Adv. Pro. No. 07-5156 (Bankr. N.D. Cal. Nov. 5 2007) .................................................A17

## United States Constitution

### Fifth Amendment

No person shall . . . be deprived of life, liberty, or property, without due process of law . . . .

### Seventh Amendment

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

United States Code
Title 9. Arbitration
Chapter 1. General Provisions

## § 1.    "Maritime transactions" and "commerce" defined; exceptions to operation of title

"Maritime transactions", as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

## § 2.    Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

## § 3.    Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

United States Code
Title 11. Bankruptcy
Chapter 3. Case Administration
Subchapter IV. Administrative Powers

§ 362.    Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . .

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

. . .

(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental

-A3-

unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

...

. . .

United States Code
### Title 28. Judiciary and Judicial Procedure
### Part IV. Jurisdiction and Venue
### Chapter 85. District Courts; Jurisdiction

### § 1334.    Bankruptcy cases and proceedings

. . .

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

    (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

    (2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

United States Code
Federal Rules of Civil Procedure for the United States District Courts
VIII. Provisional and Final Remedies

**Rule 65. Injunctions**

**(a) Preliminary Injunction.**

> *(1) Notice.* No preliminary injunction shall be issued without notice to the adverse party.
>
> . . .

. . .

**(d) Form and Scope of Injunction or Restraining Order.** Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

. . .

075�2-A
TRANSCRIPTS:
11/5/07

1

1        UNITED STATES BANKRUPTCY COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3            (SAN JOSE DIVISION)

4

5    In re:

6    THE BILLING RESOURCE,              Case No. 07-52890-ASW

7                                        Chapter 11

8                                        San Jose, California
                                         November 5, 2007
9                                        4:34 p.m.
             Debtor.
10   _____/

11   THE BILLING RESOURCE, dba
     INTEGRETEL, a California
12   corporation,

13           Plaintiff,

14       v.                              A.P. No. 07-5156

15   DAVID R. CHASE, et al.,

16           Defendants.
17   _____/

18          TRANSCRIPT OF TELEPHONIC PROCEEDINGS
         EMERGENCY HEARING RE MOTION FOR RESTRAINING ORDER
19       TO STAY ENFORCEMENT OF OMNIBUS ORDER BY PLAINTIFF
             THE BILLING RESOURCE, dba INTEGRETEL,
20               A CALIFORNIA CORPORATION

21
             BEFORE THE HONORABLE ARTHUR WEISSBRODT
22               UNITED STATES BANKRUPTCY JUDGE

23

24

25

16

1  before the Court rules?

2          MR. MORA: Your Honor, this is Michael Mora for

3  the Federal Trade Commission.

4          THE COURT: Yes, sir.

5          MR. MORA: Your Honor, the Federal Trade

6  Commission joins in all the arguments raised by the

7  Receiver --

8          THE COURT: Thank you, Mr. Mora.

9          MR. MORA: And I think, as the other parties have

10  said, we have fully argued our position on all of the

11  underlying issues, and clearly the Debtor is not entitled

12  to the relief that they're asking for today.

13          THE COURT: Thank you, Mr. Mora.  Does anybody

14  else wish to say anything before I rule?  Was somebody else

15  talking?

16          MR. KOLLITZ: Yes, Your Honor, I'm sorry.  This is

17  Howard Kollitz.  One final comment, and that is in looking

18  at the Eleventh Circuit order on page 2, it's fairly clear,

19  I would submit, Your Honor, that the Eleventh Circuit is

20  considering all the issues, not just the issue of whether

21  the automatic stay in the bankruptcy case for Integretel

22  somehow applies to the Receiver or the Federal Trade

23  Commission.

24          THE COURT: Thank you.

25          Before the Court is Debtor's request for a

-A8-

17

1  temporary restraining order against the continued

2  enforcement of the omnibus order entered by the Florida

3  District Court pre-petition. I'll refer to the Florida

4  District Court as the Florida Court. This Court hereby

5  incorporates all of the findings of fact and conclusions of

6  law as set forth in this Court's memorandum of decision

7  filed and entered on November 2, 2007. I'll refer to that

8  as the memorandum decision.

9       In the memorandum decision, this Court did not

10  discuss -- I'm sorry -- this Court discussed but did not

11  rule on the merits of a temporary restraining order as to

12  enforcement of the omnibus order since that order was at

13  that time stayed by the Eleventh Circuit. The Court has

14  been advised that the Eleventh Circuit lifted that stay

15  today. The Debtor now requests such a temporary

16  restraining order.

17       The standard for injunctive relief in the Ninth

18  Circuit is well settled. A party must show either one, a

19  likelihood of success on the merits and the possibility of

20  irreparable injury or two, the existence of serious

21  questions going to the merits and the balance of hardships

22  tipping in its favor. The required showing of harm varies

23  inversely with the required showing of meritoriousness.

24       Here, there's no question that the Debtor has

25  demonstrated the existence of serious questions going to

-A9-

18

1    the merits.  The Debtor has demonstrated the balance of

2    hardships tipping in its favor.  The Debtor has definitely

3    demonstrated the possibility of irreparable injury, and

4    this Court believes the Debtor has demonstrated a

5    likelihood of success on the merits.  But with respect to

6    the possibility of irreparable injury, there seems to be no

7    doubt that the Debtor has demonstrated that, that there are

8    serious questions going to the merits.  There seems to be

9    no possible doubt about that, and the balance of hardship

10   the Court finds strongly favors the Debtor.

11          In a reorganization context, the Debtor seeking a

12   stay against a non-debtor must show a reasonable likelihood

13   of successful reorganization as set forth in detail in the

14   memorandum of decision at pages 19 to 21.  Debtor has

15   demonstrated that the Debtor has and had a reasonable

16   likelihood of a successful reorganization.

17          In addition to those findings on November 2,

18   2007, the Committee agreed to an additional two weeks for

19   Debtor's use of cash collateral while Debtor and the

20   Committee continued discussions with respect to a Plan of

21   Reorganization.

22          In addition, Mr. Fiero, you provided some new

23   information.  Can you tell us what that was?  It was with

24   respect to a possible Plan.

25          MR. FIERO: Yes, Your Honor.  We reported to the

19

1 | Court that it was clear that a term sheet was in progress.

2 | That term sheet was distributed by Mr. Ahrens this morning

3 | to the interested parties, and we expect that it will turn

4 | into either a sale motion or something leading up to a Plan

5 | by a week from Friday at the latest.

6 | THE COURT: Okay. Thank you for that

7 | clarification.

8 | At the November 2 hearing, no creditor opposed

9 | Debtor's use of cash collateral based on the viability of

10 | Debtor's business. For the reasons stated in the

11 | memorandum of decision and the additional information

12 | brought to the Court's attention at the November 2, 2007

13 | cash collateral hearing and again today, Debtor has

14 | demonstrated that the Debtor has a reasonable likelihood of

15 | a successful reorganization sufficient for the issuance of

16 | a temporary restraining order.

17 | Additionally, as set forth in great detail in the

18 | memorandum of decision at pages 38 to 58, Debtor has

19 | demonstrated the strong likelihood of success on the

20 | merits, that the property that the Receiver seeks to have

21 | the Debtor turn over pursuant to the omnibus order is

22 | indeed property of the estate. The omnibus order does not

23 | require Debtor to pay any specific amount of funds to the

24 | Receiver, rather, in order to comply with the omnibus

25 | order, Debtor would have to pay the Receiver out of

20

1   Debtor's general account the so-called reserves the Florida

2   Court determined Debtor held on behalf of the prior

3   customers.  The Florida Court described such reserves but

4   did not quantify them.

5         Pre-petition, Debtor did not turn over any

6   commingled funds to the Receiver, and the Debtor did not

7   segregate any such funds in any fashion.  As of the

8   petition date, Debtor certainly retained an interest in all

9   of its commingled funds and Receiver asserted an interest

10  in some as yet unquantified portion of those funds.  On the

11  petition date, this Court obtained exclusive jurisdiction

12  over all of the commingled funds under Section 1334(e) of

13  Title 28.  Accord In re Simon, 153 F3d, 991 at 996, 9th

14  Circuit (1998).

15        Debtor will clearly be irreparably harmed if

16  Receiver and the FTC are permitted to enforce the omnibus

17  order.  First, Debtor's business will suffer very

18  substantially and irreparably and possibly irremediably if

19  Debtor is required to turn over $1,762,762.56 to the

20  Receiver under the omnibus order, particularly at this

21  critical, crucial point in the Debtor's reorganization

22  efforts.

23        Debtor's estate will lose the over 1.7 million

24  dollars that appears to this Court, to the Creditors'

25  Committee, and to the Debtor to be property of the estate.

21

1   And there's certainly serious questions with respect to

2   that issue.  At a minimum, there are serious questions with

3   respect to that issue, although the Court thinks that the

4   Debtor has a likelihood of success on that point.

5           Those funds will not be available to the Debtor

6   or its creditors if they're turned over to the Receiver.

7   Moreover, if the Debtor is required to turn over the

8   commingled funds, the Debtor will be preferring the

9   Receiver over all similarly situated creditors.  The Debtor

10  is a debtor in possession, and is a fiduciary to all of

11  Debtor's creditors, inter alia, secured creditors,

12  unsecured creditors, customers, the FTC and the Receiver.

13  The Receiver certainly does not represent all creditors of

14  the Debtor's estate.  At most, Receiver represents the

15  receivership estates of the prior customers and the Federal

16  Trade Commission.

17          Receiver does not seek to have the commingled

18  funds turned over to it or to him to protect those funds

19  for all creditors of the Debtor's bankruptcy estate,

20  rather, Receiver seeks possession of those funds for the

21  benefit of the receivership estates of the prior customers

22  to the exclusion of Debtor's other secured and unsecured

23  creditors.

24          Permitting the Receiver to implement the omnibus

25  order would irreparably harm Debtor's bankruptcy estate by

1   preferring one creditor, the Receiver, over other similarly

2   situated creditors of the Debtor, since most, if not all,

3   service contracts provide for the same, quote, "reserves,"

4   unquote.

5          Additionally, as set forth in great detail in the

6   memorandum of decision at page 29 to 35, this is a critical

7   time in Debtor's reorganization. Permitting the Receiver

8   to continue his enforcement of the omnibus order would

9   divert Debtor's president and other personnel from the

10  critical reorganization efforts. Specifically in the next

11  ten days, the Debtor will be negotiating with the Committee

12  over a Plan of Reorganization finalizing its schedules and

13  statement that must be filed by November 15, 2007 and

14  preparing for the final hearing on cash collateral set for

15  November 16, 2007, plus, as Mr. Fiero points out, this is

16  an absolute critical juncture in the Debtor's

17  reorganization efforts in terms of its term sheet and plans

18  for the future.

19         Finally, in addition to the diversion of Debtor's

20  management from the reorganization process, Debtor will be

21  harmed by incurring legal fees and costs Debtor can ill

22  afford at this juncture if enforcement of the omnibus order

23  is not enjoined. Debtor estimates that Debtor will incur

24  an additional 50 to $150,000 in fees related to Receiver's

25  request for the turnover of commingled funds. Receiver

23

1  argues that the contempt proceedings are largely complete

2  and the orders are self-executing. However, the omnibus

3  order is on appeal even though the Eleventh Circuit has

4  lifted its stay. If the enforcement of the omnibus order

5  is not enjoined, Debtor will have to comply with the order

6  to turn over the funds or show cause why Debtor should not

7  be held in contempt.

8           Receiver will be protected during the limited

9  duration of this temporary restraining order. Indeed the

10 Receiver will be completely protected by this Court's

11 orders. The Court continues to hold $1,762,762.56 -- the

12 Court isn't holding it; the Debtor is holding it -- in a

13 blocked account. The Debtor is holding it pursuant to an

14 order of the Court that was agreed to by the Debtor and by

15 the Receiver and by the FTC, and the Debtor will continue

16 to hold those funds, at least until December 14, 2007,

17 unless there's a request from the Debtor prior to that time

18 and then, that will be on notice to the Receiver and the

19 FTC with opportunity to respond.

20          Thus, the Court finds that there is cause to

21 issue a temporary restraining order and an Order to Show

22 Cause why a preliminary injunction should not be issued to

23 enjoin the Receiver and the FTC from taking action to

24 obtain the turnover of the approximately 1.7 million

25 dollars the Florida Court required Debtor to turn over to

1 | Washington, D.C.   20580

2 | Proposed Counsel for the Official Unsecured Creditors Committee
John Fiero, Esq.
3 | Maxim Litvak, Esq.
Pachulski, Stang, Ziehl & Jones
4 | 150 California Street
15th Floor
5 | San Francisco, CA 94111-4500

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:5SS1\400529214.3

AMENDED ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION RE: ENFORCING OMNIBUS
ORDER

1  the Receiver in the omnibus order.  The Court will issue an
2  Order to Show Cause as to why a preliminary injunction
3  should not issue.  First, counsel for the Debtor -- the
4  order is effective immediately, this temporary restraining
5  order, even though the Debtor is instructed to prepare a
6  form of order and have it reviewed by counsel for the FTC
7  and the Receiver, but now we need to talk about when we
8  should have our hearing on the preliminary injunction.

9         Since I've had a hearing, I can issue this
10 injunction, the temporary restraining order that is, for 20
11 days and I'd like to know when you want a hearing on the
12 preliminary injunction.  Now we're all going to be together
13 on November 16th at 10:30.  I don't know whether that's --
14 that's not much time.  So I'd like the suggestions of the
15 Debtor and then the other parties as to when this hearing
16 should take place.

17        MR. SACKS: Your Honor, Steven Sacks.  I would
18 suggest we do it on the 16th.  The following week is the
19 Thanksgiving week.

20        THE COURT: Well, that's fine with me except that
21 means that your papers have to go out very soon and I need
22 a response very soon.  Now how soon can your papers go out?
23 I can't have papers coming in the day before.

24        MR. SACKS: I understand, Your Honor.  I would
25 think we could have papers out by Thursday, the 8th.

Entered on Docket
November 30, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  SHEPPARD, MULLIN, RICHTER &
   HAMPTON LLP
2    A Limited Liability Partnership
     Including Professional Corporations
3  MICHAEL H. AHRENS,
   Cal. Bar No. 44766
4  STEVEN B. SACKS,
   Cal. Bar No. 98875
5  JEFFREY K. REHFELD,
   Cal. Bar No. 188128
6  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4106
7  Telephone:    415-434-9100
   Facsimile:    415-434-3947
8
   Attorneys for The Billing Resource, dba
9  Integretel

The following constitutes the
Order of the Court. Signed    11 28    20 0 7

HON. ARTHUR S. WEISSBRODT
United States Bankruptcy Judge

NOV 2 7 2007

10         UNITED STATES BANKRUPTCY COURT
              NORTHERN DISTRICT OF CALIFORNIA
11                  [SAN JOSE DIVISION]

12  In re

13  THE BILLING RESOURCE, dba
    INTEGRETEL, a California corporation,
14
                Debtor.
15

16

17  THE BILLING RESOURCE, dba
    INTEGRETEL, a California corporation,
18
                Plaintiff,
19
         v.
20
    FEDERAL TRADE COMMISSION, and
21  DAVID R. CHASE, not individually, but
    solely in his capacity as receiver for
22  Nationwide Connections, Inc., Access One
    Communications, Inc., Network One Services,
23  Inc., 411TXT, Inc., CELL-INFO-USA, INC.,
    Enhanced Billing Services, Inc., Toll Free
24  Connect, Inc., Cripple Creek Holdings, LLC,
    Built to Last, LLC, Not Fade Away, LLC, He's
25  Gone, LLC, The Other One, LLC, Turn on
    Your Love Light, LLC, China Cat Sunflower,
26  LLC, Lazy River Road Holdings, LLC,

27                Defendant.

28

Case No. 07-52890

Chapter 11

Adv. Proc. No. 07-05156

**AMENDED ORDER GRANTING
MOTION FOR PRELIMINARY
INJUNCTION**

Date:   November 26, 2007
Time:   2:00 p.m.
Court:  Room 3020, Hon. Arthur Weissbrodt

W02-WEST:5SS1\400529214.3

AMENDED ORDER GRANTING MOTION FOR PRELIMINARY
INJUNCTION RE: ENFORCING OMNIBUS ORDER

102030

1        On November 26, 2007, the Court having previously issued a temporary restraining order

2  and an order to show cause re preliminary injunction, held a hearing in connection with the motion

3  filed by The Billing Resource, dba Integretel ("Integretel"), for a preliminary injunction against

4  the Federal Trade Commission ("FTC") and David R. Chase, not individually, but solely in his

5  capacity as receiver (the "Receiver"), preventing them from enforcing as to Integretel that certain

6  Omnibus Order entered on the docket on September 14, 2007 (the "Omnibus Order") in that

7  certain action captioned <u>Federal Trade Commission v. Nationwide Connections, Inc., et al.</u>, Case

8  No. 06-80180-Civ-Ryskamp (the "Florida Action") pending in the United States District Court for

9  the Southern District of Florida (the "Florida Court") and that certain Order Granting Motion for

10  Clarification as to Scope of Stay entered on the docket by the Florida Court in the Florida Action

11  on September 21, 2007 (the "Clarification Order"), insofar as the Clarification Order relates to the

12  Omnibus Order. Appearances were as stated on the record. The Court incorporates herein its

13  Memorandum Decision re Order to Show Cause Regarding Preliminary Injunction filed and

14  entered on November 2, 2007 and further stated its findings of fact and conclusions of law on the

15  record at the hearings it held on November 16, 2007, November 21, 2007, November 26, 2007 and

16  November 27, 2007.

17        **GOOD CAUSE APPEARING**, it is hereby ordered as follows:

18        The FTC and the Receiver, and their officers, agents, servants, employees and attorneys

19  and upon those persons in active concert or participation with them who receive actual notice of

20  the order by personal service or otherwise, are hereby restrained and enjoined until further order of

21  this Court from seeking to implement or enforce in the Florida Court as to Integretel the Omnibus

22  Order or the Clarification Order, as it relates to the Omnibus Order, including without limitation

23  initiating, suggesting or participating in any proceedings to hold Integretel in contempt in

24  connection therewith, or otherwise seeking to compel Integretel to transfer any money or property

25  to the Receiver. The preliminary injunction issued herein does not affect or restrain the parties

26  from prosecuting and responding to appeals filed by Integretel from orders issued by the Florida

27  Court. The Court further orders that the Receiver shall submit any status reports that pertain to

28  Integretel to the Florida Court jointly with Integretel.

-1-

1      Integretel is directed that it shall continue to maintain the sum of $1,762,762.56 in the

2 blocked interest-bearing Debtor in Possession account to which they were transferred pursuant to

3 the terms and conditions of this Court's prior order entered on October 3, 2007, without prejudice

4 to the claims, rights, or defenses of any party, until further order of this Court.

5                         ** END OF ORDER **

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

AMENDED ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION RE: ENFORCING OMNIBUS
ORDER

1                   <u>COURT SERVICE LIST</u>

2 <u>Office of the U.S. Trustee</u>
   Office of the U.S. Trustee
3 Attn: John Wesolowski, Esq.
   280 South First Street, Room 268
4 San Jose, CA 95113

5 <u>The Billing Resource dba Integretel</u>
   The Billing Resource dba Integretel
6 Attn: Ken Dawson
   5883 Rue Ferrari
7 San Jose, CA 95138

8 <u>Counsel for The Billing Resource dba Integretel</u>
   Sheppard, Mullin, Richter & Hampton LLP
9 Attn: Michael H. Ahrens, Esq.
   4 Embarcadero Center, 17th Floor
10 San Francisco, CA 94111-4106

11 <u>David R. Chase, Receiver</u>
   David R. Chase, Receiver for Access One Communications,
12        Inc. and Network One Services, Inc.
   David R. Chase, P.A.
13 Wachovia Center-Penthouse
   1909 Tyler Street
14 Hollywood, FL 33020

15 <u>Counsel for the Receiver David R. Chase</u>
   Jeffrey C. Schneider, Esq.
16 Michelle T. Visiedo, Esq.
   Tew Cardenas LLP
17 Four Seasons Tower – 15th Floor
   1441 Brickell Avenue
18 Miami, FL 33131

19 <u>Counsel for the Receiver David R. Chase</u>
   Walter Oetzell, Esq.
20 Danning, Gill, Diamond & Kollitz, LLP
   2029 Century Park East, Third Floor
21 Los Angeles, CA 90067-2904

22 <u>Counsel for the Federal Trade Commission</u>
   Laura M. Kim, Esq.
23 Michael J. Davis, Esq.
   Collot Guerard, Esq.
24 Federal Trade Commission
   600 Pennsylvania Avenue, NW, Room 286
25 Washington, DC 20580

26 <u>Federal Trade Commission</u>
   Associate Director, Division of Marketing Practices
27 Federal Trade Commission, H-238
   600 Pennsylvania Avenue, N.W.
28

-3-

W02-WEST:5SS1\400529214.3
                           AMENDED ORDER GRANTING MOTION FOR
                     PRELIMINARY INJUNCTION RE: ENFORCING OMNIBUS
                                       ORDER