1  DIEMER, WHITMAN & CARDOSI, LLP
   JUDITH L. WHITMAN, #103385
2  KATHRYN S. DIEMER, #133977
   75 East Santa Clara Street, Suite 290
3  San Jose, California   95113
   Telephone:  (408) 971-6270
4  Facsimile: (408) 971-6271

5  ATTORNEYS FOR
   Enhanced Long Distance, Residential Voice Mail
6  Optimum Voice Mail, Nationwide Voice Mail,
   United Voice Messaging, and Nationwide Voice
7  Messaging

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  In re:                                )    Case No. 07-52890
                                          )
12  The Billing Resource dba Integretel, a )         CHAPTER 11
    California Corporation,               )
13                                        )
                                          )    Complaint
14              Debtor.                   )
                                          )
15                                        )
                                          )
16  _____  )
                                          )    Adversary Proceeding
17  Enhanced Long Distance, Inc., a Nevada )
    Corporation, Residential Voice Mail, A )         No.
18  Nevada Corporation, Optimum Voice     )
    Mail, Inc., a Nevada Corporation,     )
19  Nationwide Voice Mail, Inc., a Delaware )
    Corporation, United Voice Messaging,  )
20  Inc., a Nevada Corporation, Nationwide )
    Voice Messaging, a Nevada Corporation, )
21  Inc.                                  )
                    Plaintiffs,           )
22                                        )
    v.                                    )
23                                        )
    The Billing Resource dba Integretel, a )
24  California Corporation , Ken Dawson, an )
    individual,                           )
25                                        )
                    Defendants.           )
26                                        )
                                          )
27                                        )
                                          )
28  _____  )

                                   1
                              Complaint                                        )

FTC Exh C

Plaintiffs, Enhanced Long Distance, Inc, Residential Voice Mail, Inc., Optimum Voice Mail, Inc., Nationwide Voice Mail, Inc., and United Voice Messaging, Inc., and Nationwide Voice Messaging, Inc., [Hereinafter cited as "Plaintiffs"] for their Complaint against Defendants, "The Billing Resource f/k/a Integretel, Incorporation [hereinafter cited as "Integretel" or "Debtor or "IGT"], Ken Dawson, and Does One through Thirty state as follows:

JURISDICTION AND VENUE

1.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. Section 1334. This is a core proceeding pursuant to 28 U.S.C. Sections 157(b)(1) and (b)(20(A), (E), and (O). Venue in this district is proper pursuant to 28 U.S.C.  Sections 1408 and 1409.

PARTIES

2.      Integretel is a California corporation having its principal place of business at 5883 Rue Ferrari, San Jose, California, 95138.  Integretel is the Debtor in the above-captioned case under Chapter 11 of Title 11 of the United States Bankruptcy Code.  Integretel, and the estate are in the business of providing billing and collection services for a wide variety of telecommunications companies.

3.      Ken Dawson is the President of Integretel, and is designated as the person most knowledgeable for the Debtor.  Plaintiffs are informed and believe that Mr. Dawson is a signatory on all bank accounts of the Debtor both pre-petition and post-petition.

4.      Enhanced Long Distance, Inc. is a Nevada corporation which provides its clients with long distance services.  Enhanced Long Distance, Inc. [hereinafter cited as "ELD"] entered into a Master Services Agreement with Debtor on October 1, 2004. A true and correct copy of the ELD Master Services Agreement is attached hereto as Exhibit A.

FTC Exh C

5.      Residential Voice Mail, Inc. is a Nevada corporation which provides its clients voice mail related services.  Residential Voice Mail, Inc. [hereinafter cited as "RVM"] entered into a Master Services Agreement with Debtor on February 4, 2004.  A true and correct copy of the RVM Master Services Agreement is attached hereto as Exhibit B.

6.      Optimum Voice Mail, Inc. is a Nevada corporation which provides its clients with a variety of voice mail related services.  Optimum Voice Mail, Inc. [hereinafter cited as "OVM"] entered into a Master Services Agreement with Debtor on January 1, 2005.  A true and correct copy of the OVM Master Services Agreement is attached hereto as Exhibit C.

7.      Nationwide Voice Mail, Inc. is a Delaware corporation.  Nationwide Voice Mail, Inc. [hereinafter cited as "NVM"] provides its clients with voice mail related services.  NVM entered into a Master Services Agreement with the Debtor on December 5, 2002.  A true and correct copy of the NVM Master Services Agreement is attached hereto as Exhibit D.

8.      Nationwide Voice Messaging, Inc., is a Nevada corporation.  Nationwide Voice Messaging, Inc. [hereinafter cited as "NVMI"] provides its clients with voice mail related services.  NVMI entered into a Master Services agreement with the Debtor on May 1, 2003.  A true and correct copy of the NVMI Master Services Agreement is attached hereto as Exhibit E.

9.      United Voice Messaging, Inc. is a Nevada corporation.  United Voice Messaging, Inc. [hereinafter cited as "UVMI"] provides its clients with voice mail related services.  UVMI entered into a Master Services Agreement with the Debtor on July 1, 2003. A true and correct copy of the UVMI Master Services Agreement is attached hereto as Exhibit F.

10.     Plaintiffs are unaware of the true names and capacities of defendants sued herein as DOES One through Thirty, inclusive, and therefore sues these defendants by such fictitious

FTC Exh C

names.  Plaintiffs will amend this complaint to show their true names and capacities when

ascertained.  Plaintiffs believe that each fictitiously sued defendant was in some way responsible

for the acts alleged in the complaint.

11.     Plaintiffs are informed and believe, and on that basis allege, that the Defendants, and each

of them, are and were the agents, servants and employees of each of the other defendants, and to

the extent of doing the acts alleged herein, each acted within the course and scope of said agency

or employment.

FACTUAL ALLEGATIONS

12.     All the Plaintiffs are in the business of providing telecommunications related services to

end users.  These services are customarily billed on the end users telephone bills, which the end

users' receive from their local exchange carrier [hereinafter referred to as "LEC" or "TELCO"].[1]

In order to place the charges on the end users telephone bills, the Plaintiffs must enter into a

contract with an entity specializing in the formatting and processing of the Billing Transactions

which contain the information recorded by Plaintiffs. Companies which perform the formatting

and processing needed to submit the Billing Transactions in the formats required by the various

LECs are referred to as a LEC Clearing House [hereinafter cited as "LEC Clearing House" or

LCH"].  Debtor is a LEC Clearing House.

13.     Debtor, like all LEC Clearing Houses, enters into a written Master Services Agreement

with each client [hereinafter referred to as "Master Services Agreement" or "MSA"].  The

Master Services Agreements set forth the specific services to be provided, as well as the general

terms of the agreement. As part of the contracting process Debtor agrees to process the Billing

---

Some LEC's are known as Regional Bell Operating Companies, or RBOC's.  The terms
LEC and RBOC and Telco are used interchangeably.

)

FTC Exh C

Transactions in accord with a specific timetable that requires Debtor to process the Billing Transactions taking certain actions on specified, agreed upon dates, compliance with such dates being material elements of the contracts, deposit the Billing Transactions in accord with that specific time table, and then remit a significant percentage of the funds which it receives from the LECs resulting from the deposit of the Billing Transactions back to the Client. The LECs do not remit the full amount of the deposit back to the LEC Clearing House for a variety of reasons. Many LECs will deduct their processing fees from the billing proceeds prior to remitting funds to the LCHs. Additionally, the LECs customarily, and when they deem appropriate, establish and maintain LEC Cash Reserves [Hereinafter referred to as the "LEC Cash Reserves" or "LCRs" or "Telco Reserves"] to protect themselves from exposure to long term credits and adjustments that are realized over longer periods of time and Bad Debt Reserves [Hereinafter referred to as the "Bad Debt Reserves"] to protect themselves against exposure to unpaid and uncollectible charges billed by Service Providers to the LEC's end user customers. At LEC specified intervals, after the period where the end users have paid their bills, the LECs customarily "true up" and then remit back to the LEC Clearing Houses any excess of funds which they withheld. In situations where there exists a deficit in a LEC reserve, the LEC requires LEC Clearing House to remit the differential. To protect itself from such an eventuality, and in order to insure that all fees are covered, the Debtor establishes and maintains its own set of reserve funds. The Debtor's reserves are supposed to be set based on the historical record for each client's end user payment percentages, and the type of traffic being processed. Debtor loosely followed this typical protocol. The Master Services Agreements provide for the adjustment of the reserves based on the actual track record of an individual client and its end

Case: 07-52890    Doc #: 413    Filed: 01/23/2008    Page 5 of 22

FTC Exh C

users and a periodic true of the reserves established and maintained by Debtor.

14.    Pursuant to the attached Master Services Agreements, Debtor is paid in several manners. Debtor is entitled to a fee which is calculated as a percentage of service rendered for processing the Billing Transactions. Debtor is also entitled to any interest on the funds that it holds in the reserves against the true up and Debtor is entitled to fees related to its providing End-User Inquiry Services to its clients.

15.    Debtor provides extensive reporting and tracking on the Billing Transactions which it processes. The reporting and tracking is identified in Exhibit II-C attached to each of the Master Service Agreements. The reports which relate to the funds being held by Debtor while awaiting true up, the funds identified by the Debtor as the "Reserve" are identified under the last category on Exhibit II-C as "Settlement" reports.

16.    The Settlement reports include the following reports: monthly performance status report, settlement statement report, settlement status report, settlement status excel spreadsheet, payment summary report, payment summary excel spreadsheet, unbill report, unbill excel spreadsheet, recourse/holdback report, recourse/holdback excel spreadsheet, true-up summary reports, telco returns detail listing spreadsheet, detail reconciliation report, true summary (actual) report.

17.    Debtor tracks each client by its own CIC code, and its own sub-CIC code. Each client has access to the settlement reports detailed above on a 24/7 basis. Each client can identify, at any point in time, the amount of funds specifically owed to it, simply by checking the computerized billboard system with a user id and a password.

18.    Each and every one of the Plaintiffs has a Master Services Agreement with Debtor.

FTC Exh C

Paragraph 7 of the ELD Master Services Agreement contains a paragraph entitled

"SETTLEMENT OF AMOUNTS DUE", identified as paragraph 7 of Schedule II.

19.     Paragraph 7 of the ELD Master Services Agreement provides that "Client Shall be

entitled to gross value of the Billing Transactions remitted to the Telcos less any applicable

Unbillables, Adjustments, Telco Holdback, excess Uncollectables (pursuant to any True-ups),

Fees, Telco Fees and IGT Reserves (the difference being the "Net Proceeds")."

20.     Paragraph 7 of the ELD Master Services Agreement also provides that "All Net Proceeds

arising from Client's Billing Transactions, as such terms are defined hereunder, are, and shall

remain at all times, the property of Client and IGT may not use any such Net Proceeds for any

purpose other than to offset or satisfy obligations rightfully due to IGT hereunder.  IGT

acknowledges that all receivables that may give rise to Net Proceeds due to Client are

beneficially the property of Client even though such receivables may be in IGT's name or

possession."

21.     Paragraph 7 of the RVM Master Services Agreement contains a paragraph entitled

"SETTLEMENT OF AMOUNTS DUE", identified as paragraph 7 of Schedule II.

22.     Paragraph 7 of the RVM Master Services Agreement provides that "Client shall be

entitled to the gross value of the Billing transactions remitted to the Telcos less any applicable

Unbillables, Adjustments, Telco Holdback, excess Uncollectables (pursuant to any True- Ups),

Fees, Telco Fees and IGT Reserves (the difference being the "Net Proceeds")."

23.     Paragraph 7 of the RVM Master Services Agreement also provides that "All Net Proceeds

arising from Client's Billing Transactions, as such terms are defined hereunder, are, and shall

remain at all times, the property of Client and IGT may not use any such Net Proceeds for any

Case: 07-52890    Doc #: 413    Filed: 01/23/2008    Page 7 of 22

FTC Exh C

purpose other than to offset or satisfy obligations rightfully due to IGT hereunder.  IGT acknowledges that all receivables that may give rise to Net Proceeds due to Client are beneficially the property of Client even though such receivables may be in IGT's name or possession."

24.     Paragraph 7 of the OVM Master Services Agreement contains a paragraph entitled "SETTLEMENT OF AMOUNTS DUE", identified as paragraph 7 of Schedule II.

25.     Paragraph 7 of the OVM Master Services Agreement provides that "Client shall be entitled to the gross value of the Billing transactions remitted to the Telcos less any applicable Unbillables, Adjustments, Telco Holdback, excess Uncollectables (pursuant to any True- Ups), Fees, Telco Fees and IGT Reserves (the difference being the "Net Proceeds")."

26.     Paragraph 7 of the OVM Master Services Agreement also provides that "All Net Proceeds arising from Client's Billing Transactions, as such terms are defined hereunder, are, and shall remain at all times, the property of Client and IGT may not use any such Net Proceeds for any purpose other than to offset or satisfy obligations rightfully due to IGT hereunder.  IGT acknowledges that all receivables that may give rise to Net Proceeds due to Client are beneficially the property of Client even though such receivables may be in IGT's name or possession."

27.     Paragraph 7 of the NVM Master Services Agreement contains a paragraph entitled "SETTLEMENT OF AMOUNTS DUE", identified as paragraph 7 of Schedule II.

28.     Paragraph 7 of the NVM Master Services Agreement provides that "Client shall be entitled to the gross value of the Billing transactions remitted to the Telcos less any applicable

FTC Exh C

Case: 07-52890      Doc #: 413      Filed: 01/23/2008      Page 8 of 22

Unbillables, Adjustments, Telco Holdback, excess Uncollectables (pursuant to any True- Ups),

Fees, Telco Fees and IGT Reserves (the difference being the "Net Proceeds")."

29.    Paragraph 7 of the NVM Master Services Agreement also provides that "All Net

Proceeds arising from Client's Billing Transactions, as such terms are defined hereunder, are,

and shall remain at all times, the property of Client and IGT may not use any such Net Proceeds

for any purpose other than to offset or satisfy obligations rightfully due to IGT hereunder.  IGT

acknowledges that all receivables that may give rise to Net Proceeds due to Client are

beneficially the property of Client even though such receivables may be in IGT's name or

possession."

30.    Paragraph 7 of the NVMI Master Services Agreement contains a paragraph entitled

"SETTLEMENT OF AMOUNTS DUE", identified as paragraph 7 of Schedule II.

31.    Paragraph 7 of the NVMI Master Services Agreement provides that "Client shall be

entitled to the gross value of the Billing transactions remitted to the Telcos less any applicable

Unbillables, Adjustments, Telco Holdback, excess Uncollectables (pursuant to any True- Ups),

Fees, Telco Fees and IGT Reserves (the difference being the "Net Proceeds")."

32.    Paragraph 7 of the NVMI master services agreement also provides that "All Net Proceeds

arising from Client's Billing Transactions, as such terms are defined hereunder, are, and shall

remain at all times, the property of Client and IGT may not use any such Net Proceeds for any

purpose other than to offset or satisfy obligations rightfully due to IGT hereunder.  IGT

acknowledges that all receivables that may give rise to Net Proceeds due to Client are

beneficially the property of Client even though such receivables may be in IGT's name or

possession."

)

FTC Exh C

33.     Paragraph 7 of the UVMI Master Services Agreement contains a paragraph entitled "SETTLEMENT OF AMOUNTS DUE", identified as paragraph 7 of Schedule II.

34.     Paragraph 7 of the UVMI Master Services Agreement provides that "Client shall be entitled to the gross value of the Billing transactions remitted to the Telcos less any applicable Unbillables, Adjustments, Telco Holdback, excess Uncollectables (pursuant to any True- Ups), Fees, Telco Fees and IGT Reserves (the difference being the "Net Proceeds")."

35.     Paragraph 7 of the UVMI Master Services Agreement also provides that "All Net Proceeds arising from Client's Billing Transactions, as such terms are defined hereunder, are, and shall remain at all times, the property of Client and IGT may not use any such Net Proceeds for any purpose other than to offset or satisfy obligations rightfully due to IGT hereunder.  IGT acknowledges that all receivables that may give rise to Net Proceeds due to Client are beneficially the property of Client even though such receivables may be in IGT's name or possession."

36.    Paragraph 7 of each of the MSA agreements requires Debtor to treat all receivables which may give rise to Net Proceeds due to Client as trust property.  Receivables which may give rise to Net Proceeds include the funds being held in the pipeline by Debtor for processing, as well as the LEC credit reserves, and the funds which are held against bad debt.[2]

FIRST CAUSE OF ACTION

(AS TO DEFENDANT INTEGRETEL)

BREACH OF MASTER SERVICES AGREEMENT

---

[2] Bad debt is the term used to describe the variety of potential charges against Billing Transactions submitted for payment.  Bad debt includes charges for end users who choose not to pay their bill, who move and fail to provide a new address, transactions where there is a problem with the data in a particular file, and similar types of chargebacks against funds owed.

FTC Exh C

36.     Plaintiffs refer to Paragraphs 1 through 35, inclusive, and reallege the same herein by incorporation.

37.     The Plaintiffs entered into Master Services Agreements with Debtor under which Debtor agreed to hold the reserve funds in trust for Plaintiffs, beneficially, and not use these funds for any purposes except for payment to Plaintiffs, or for sums owed by Plaintiffs related to settlement of Plaintiffs obligations related to the Billing Transactions submitted by Plaintiffs.

38.     Plaintiffs are informed and believe that Debtor breached the Master Services Agreements by treating these funds as Debtor's own accounts receivable free and clear of trust obligations, and used and are using the funds to pay Debtor's general expenses.

39.     Plaintiffs have performed all obligations on their part to be performed under the various contracts.

40.     Plaintiffs have been damaged by Debtor's failure to hold the Plaintiffs' funds in trust, beneficially, as the funds are now unavailable to Debtor, and Plaintiffs are unlikely to be paid in full in light of Debtor's filing bankruptcy.

41.     Plaintiffs request relief as set forth below.

SECOND CAUSE OF ACTION

(ALL PARTIES)

INTENTIONAL FRAUD AND MISREPRESENTATION

42.     Plaintiffs refer to Paragraphs 1 through 41, inclusive, and reallege the same herein by incorporation.

43.     Plaintiffs are informed and believe that at the time Debtor entered into the Master Services Agreements with the Plaintiffs, all Defendants knew that Debtor lacked sufficient funds of its

**FTC Exh C**

own to meet Debtor's obligations without using Net Proceeds, and so could not treat the funds

they held on behalf of any individual Plaintiff as being held in trust, beneficially, for the sole

purpose of payment to Plaintiffs or payment of fees to which Plaintiffs were obligated to Debtor.

44.    Debtor made specific representations to Plaintiffs that they would treat the funds held on

behalf of each and any individual Plaintiff as being held in trust, beneficially, for the benefit of

the individual Plaintiff, in order to induce the individual Plaintiffs to enter into the Master

Services Agreement with them.

45.    In 2002, after the bankruptcy filing of another LEC Clearing House named OAN, Mr.

Nelson Gross became aware that OAN, much like Debtor has, treated its reserves as accounts

receivables prior to and during its bankruptcy. In the fall of 2002, Nationwide Voice Mail, Inc.

engaged Nelson Gross to assist them in negotiating new Master Services Agreements with the

Debtor.  In response, Mr. Gross entered into negotiations with Mr. Dawson on behalf of Plaintiff

Nationwide Voice Mail.  Mr. Gross and counsel originally sought to establish a secured position

to protect Nationwide Voice Mail's funds, but Mr. Dawson and Debtor refused.  As an

alternative, and after weeks of negotiations, Mr. Dawson and Mr. Gross finally agreed the finds

be held in trust, and the trust language, including the funds, would be held solely for the

beneficial use of Nationwide Voice Mail was added to what was to be the final and executed

version of the Master Services Agreement between Debtor and Plaintiff NVM.. As a result of

these negotiations, a Master Services Agreement was executed between Debtor and NVM on

December 5, 2002.  Subsequent MSAs were executed between Debtor and Nationwide Voice

Messaging, Inc. on May 1, 2003, United Voice Messaging on July 1, 2003, Residential Voice

Mail, Inc., on February 4, 2004, Enhanced Long Distance, Inc. On October 1, 2004 and

FTC Exh C

Optimum Voice Mail, Inc. On January 1, 2005. The Master Services Agreements all contain the same basic paragraphs, and as each entity entered into the agreement with Debtor, Mr. Gross negotiated, and Mr. Dawson, on behalf of Debtor, negotiated just those aspects of the agreement which needed to be addressed. As set forth above, all the Plaintiffs' MSAs contain the same language related to the use of the Net Proceeds in Chapter 7. All such MSAs were executed by Officers of the Plaintiffs and by Mr. Dawson on behalf of the Debtor. Mr. Dawson's expressed and repeated representations that the funds were held in trust, combined with the agreed upon language incorporated into each of the 6 sets of Plaintiffs' MSAs and the reports received from Debtor identifying specific funds as being held for Plaintiffs caused Plaintiffs to believe that the funds were actually being held in trust, and not being used as part of the Debtor's general accounts. Mr. Dawson's statements, plus the reports and actions of Debtorformed the basis for Plaintiffs' continued deposits with Debtor.

46.    Plaintiffs are informed and believe that Defendants knowingly made these representations despite being aware at the time they were made, that they intended to, and did, and continue to treat the all Net Proceeds of Billing Transactions deposited under Master Services Agreements, as Debtor's own accounts receivable, Debtor did not and does not segregate Net Proceeds, does not keep Net Proceeds in trust, and makes no effort to insure that the Net Proceeds are held in such a manner as to insure that sufficient funds exist at any given time to allow Defendants to pay Plaintiff the sums held in trust on their behalf.

47.    Plaintiffs are informed and believe that Defendants treated the monies they agreed to hold beneficially for Plaintiffs as their accounts receivable, and used the funds held in trust, for Debtor's own purposes. Defendants made multiple statements to this Court that Plaintiffs' funds

FTC Exh C

are "accounts receivable" not trust funds.  Debtor made these statements in its original motion for use of cash collateral, and all subsequent filings related to Debtor's request for Preliminary Injunction.

48.    Plaintiffs are informed and believe that Defendants knowingly reported to Plaintiffs, updated on a weekly basis, that Debtor had custody of the Net Proceeds being held beneficially for Plaintiffs as set forth on the Settlement reports, and as agreed upon in paragraph 7 of Exhibit 2 to each Master Services Agreements.

49.    Plaintiffs are informed and believe that when Defendants reported on the Settlement reports the amount of Net Proceeds supposedly held for the benefit of each of the Plaintiffs, they led Plaintiffs to believe that the monies were in fact appropriately held for their benefit, as the Master Services Agreements provided for.  Plaintiffs are informed and believe that Defendants statements were false and misleading.

50.    Plaintiffs are informed and believe that Defendants made such statements with the intent to induce Plaintiffs to enter into the Master Services Agreements, and to continue to do submit Billing Transactions for processing to Defendants.

51.    Plaintiffs are informed and believe that Mr. Ken Dawson was personally responsible for some of the statements, and additionally that Mr. Ken Dawson was aware of the fact that the funds were not being held in trust as agreed, yet authorized and directed that the funds were to be used as if they were accounts receivable of Debtor.

52.    Plaintiffs are informed and believe that the representations set forth above were false, and were known by the Defendants to be false at the time that they were made.

53.    Plaintiffs entered into the Master Services Agreements based on, and relying on the

Case: 07-52890    Doc #: 413    Filed: 01/23/2008    Page 14 of 22

FTC Exh C

representations that the settlement funds would be held in trust.

54.    Plaintiffs continued to deposit additional Billing Transactions to Debtor based on, and in reliance on the representations contained in the Settlement reports, and the initial representations, which led Plaintiffs to believe that the funds were appropriately held in trust as agreed.

55.    As a result of Defendants statements, Plaintiff Enhanced Long Distance, Inc. is now at risk of being unable to collect in the aggregate $1,048,151.67.

56.    As a result of Defendants statements, Plaintiff Residential Voice Mail, Inc. is now at risk of being unable to collect in the aggregate $831,862.16.

57.    As a result of Defendants statements, Plaintiff Optimum Voice Mail, Inc. is now at risk of being unable to collect in the aggregate $572,638.94.

58.    As a result of Defendants statements, Plaintiff Nationwide Voice Mail, Inc. is now at risk of being unable to collect in the aggregate $676,157.06.

59.    As a result of Defendants statements, Plaintiff United Voice Messaging, Inc. is now at risk of being unable to collect in the aggregate $763,852.69.

60.    As a result of Defendants statements, Plaintiff Nationwide Voice Messaging, Inc. is now at risk of being unable to collect in the aggregate $907,337.22.

61.    Plaintiffs are informed and believe, and on that basis allege that the conduct of Defendants as alleged above was willful, wanton, malicious, and oppressive and justifies an award of exemplary and punitive damages in sum according to proof at trial.

THIRD CAUSE OF ACTION

(ALL DEFENDANTS)

NEGLIGENT MISREPRESENTATION

FTC Exh C

62.    Plaintiffs refer to Paragraphs 1 through 61, inclusive, and reallege the same herein by incorporation.

62.    Plaintiffs are informed and believe that at the time it entered into all of the contracts with the Plaintiffs, Defendants knew that they did not have sufficient funds at any point in time to treat the funds they held on behalf of any individual Plaintiff as being held in trust, beneficially, for the sole purpose of payment to Plaintiffs or payment of fees to which Plaintiffs were obligated to Debtor.

63.    Debtor made specific representations to Plaintiffs that they would treat the funds held on behalf of each and any individual Plaintiff as being held in trust, beneficially, for the benefit of the individual Plaintiff, in order to induce the individual Plaintiffs to enter into the Master Services Agreement with them.

64.    Plaintiffs are informed and believe that Defendants made these representations despite being aware at the time they were made, that they intended to, and did, and continue to treat the all funds deposited under Master Services Agreements, as Defendants accounts receivable, do not segregate such funds, do not keep such funds in trust, and make no effort to insure that the funds are held in such a manner as to insure that sufficient funds exist at any given time to allow Defendants to pay Plaintiff the sums held in trust on their behalf.

65.    Plaintiffs are informed and believe that Defendants treated the monies they agreed to hold beneficially for Plaintiffs as their accounts receivable, and used the funds held in trust, for Debtor's own purposes.  Defendants have made multiple statements to this Court stating that Plaintiffs funds are "accounts receivable" not trust funds.  Defendants made these statements in

FTC Exh C

its original motion for use of cash collateral, and the subsequent filings related to Debtor's request for Preliminary Injunction.

66.    Plaintiffs are informed and believe that Defendants reported to Plaintiffs, updated on a weekly basis, that they had custody of the funds being held beneficially for Plaintiffs as identified on the settlement reports, and as agreed upon in paragraph 7 of Exhibit 2 to the Master Services Agreement.

67.    Plaintiffs are informed and believe that Defendants, in reporting the funds on the Settlement reports, led Plaintiffs to believe that the monies were in fact appropriately held for their benefit, as the Master Services Agreement provided for.  Plaintiffs are informed and believe that Defendants statements were false and misleading.

68.    Plaintiffs are informed and believe that Defendants made such statements with the intent to induce Plaintiffs to enter into the Master Services Agreements, and to continue to do submit Billing Transactions for processing services to Defendants.

69.    Plaintiffs are informed and believe that Mr. Ken Dawson was personally responsible for all of the statements, and additionally that Mr. Ken Dawson was aware of the fact that the funds were not being held in trust as agreed, yet authorized and directed that the funds were to be used as if they were accounts receivable of Debtor.

70.    Plaintiffs are informed and believe that the representations articulated above were false.

71.    Plaintiffs entered into the Master Services Agreements based on, and relying on the representations that the Settlement funds would be held in trust.

FTC Exh C

72.    Plaintiffs continued to deposit additional Billing Transactions to Debtor based on, and in reliance on the representations contained in the Settlement reports, and the initial representations, which led Plaintiffs to believe that the funds were appropriately held in trust as agreed.

73.    As a result of Defendants statements, Plaintiff Enhanced Long Distance, Inc. is now at risk of being unable to collect in the aggregate $1,048,151.67.

74.    As a result of Defendants statements, Plaintiff Residential Voice Mail, Inc. is now at risk of being  unable to collect in the aggregate $831,862.16.

75.    As a result of Defendants statements, Plaintiff Optimum Voice Mail, Inc. is now at risk of being unable to collect in the aggregate $572,638.94.

76.     As a result of Defendants statements, Plaintiff Nationwide Voice Mail, Inc. is now at risk of being unable to collect in the aggregate $676,157.06.

77.    As a result of Defendants statements, Plaintiff United Voice Messaging, Inc. is now  at risk of being unable to collect in the aggregate $763,852.69.

78.    As a result of Defendants statements, Plaintiff Nationwide Voice Messaging, Inc. are now at risk of being unable to collect in the aggregate $907,337.22.

79.    Defendants as request damages in sum according to proof at trial.

FOURTH CAUSE OF ACTION

(AS TO ALL DEFENDANTS)

CONVERSION

80.    Plaintiffs refer to Paragraphs 1 through 79, inclusive, and reallege the same herein by incorporation.

81.    Plaintiffs are informed and believe that Defendants have wrongfully converted funds

18<br>Complaint

FTC Exh C

which they agreed to hold in trust for Plaintiffs, to their own use, by treating such funds as accounts receivable of the Debtor.

82.    Plaintiffs are informed and believe that Defendants have wrongfully converted funds which they agreed to hold in trust for Plaintiffs to fund and/or subsidize the purchase and operation of majority owned subsidiaries Inmate Calling Services, LLC, and Payment One.

83.    Plaintiffs are informed and believe, and on that basis allege that the conduct of Defendants as alleged above was willful, wanton, malicious and oppressive and justifies an award of exemplary and punitive damages in sum according to proof at trial.

FIFTH CAUSE OF ACTION

(AS TO DEBTOR ONLY)

DECLARATORY JUDGMENT

84.    Plaintiffs refer to Paragraphs 1 through 82, inclusive, and reallege the same herein by incorporation.

85.    An actual case or controversy has arisen and now exists between Debtor and the Plaintiffs with respect to the title in, and the existence of a trust interest in the funds identified in the Settlement reports.

86.    Plaintiffs request a judicial declaration of the rights and obligations of the parties, and a determination of whether the funds were held by Debtor in trust for Plaintiffs, pursuant to 28 U.S.C. Sections 2201, 2202 and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

SIXTH CAUSE OF ACTION

(ALL DEFENDANTS)

INJUNCTIVE RELIEF

FTC Exh C

87.     Plaintiffs refer to Paragraphs 1 through 86, inclusive, and reallege the same herein by incorporation.

88.     Plaintiffs are entitled to preliminary and permanent injunctive relief preventing Debtor from diminishing or disposing of funds in the amount which Debtor was supposed to hold in trust for Plaintiffs, pursuant to Federal Rule of Civil Procedure 65, made applicable hereto by Federal Rule of Bankruptcy Procedure 7065 and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

SEVENTH CAUSE OF ACTION

(DEBTOR ONLY)

ACCOUNTING

89.     Plaintiffs refer to Paragraphs 1 through 88, inclusive, and reallege the same herein by incorporation.

90.     Plaintiffs are entitled to an accounting with respect to their Net Proceeds which were to be held in trust in accord with paragraph 7 of Exhibit II –PhoneBill SERVICES (TELCO BILLING) to the Master Services Agreement.

91.     Plaintiffs request that such an accounting occur pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, Plaintiffs demand the following relief:

AS TO CAUSES OF ACTION ONE, TWO, THREE, FOUR

1.      For general and compensatory damages in a sum according to proof;

2.      For special damages in a sum according to proof to be established at time of trial;

3.      For costs of suit incurred; including attorney's fees as provided in the Agreement; and

20<br>Complaint

FTC Exh C

AS TO CAUSES OF ACTION TWO AND FOUR

4.      For punitive damages.

AS TO CAUSE OF ACTION FIVE

5.      A declaration of the rights and obligations of the parties with respect to the funds held by Debtor, which provides that Debtor held the funds in trust, and that Debtor did not have title to, or ownership rights in the funds in excess of the specific charges outlined by the Master Services Agreements.

6.      Plaintiffs costs and expenses of litigation, including its attorneys' fees, included herein; and

AS TO CAUSE OF ACTION SIX

7.      Preliminary and permanent injunctive relief preventing Defendants from diminishing or disposing of proceeds of Plaintiffs receivables until a determination oft he Court is made in this adversary proceeding, and requiring Debtor to deliver to Plaintiffs all funds due and owing to Plaintiffs, including all such proceeds that may hereafter come into Debtor's actual or constructive possession.

8.      Plaintiffs costs and expenses of litigation, including its attorneys' fees, included herein; and

AS TO CAUSE OF ACTION SEVEN

9.      An accounting of the funds due and owing to Plaintiffs and all proceeds thereof in the hands of Debtor as of the Petition Date or coming into Debtor's actual or constructive possession thereafter.

)

FTC Exh C

1  9.      Plaintiffs costs and expenses of litigation, including its attorneys' fees, included herein,

2  and;

3

4  10.     Such other and further relief to which Plaintiffs may be entitled.

5  Dated: January 23, 2008                    DIEMER, WHITMAN & CARDOSI, LLP

6

7
                                             By:_____/Katie Diemer/_____
8                                            Kathryn S. Diemer
                                             Attorneys for Enhanced Long Distance, Inc., a
9                                            Nevada Corporation, Residential Voice Mail,
                                             A Nevada Corporation, Optimum Voice Mail,
10                                           Inc., a Nevada Corporation, Nationwide Voice
                                             Mail, Inc., a Delaware Corporation, United
11                                           Voice Messaging, Inc., a Nevada Corporation,
                                             Nationwide Voice Messaging, Inc., a Nevada
12                                           Corporation.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22
Complaint

**FTC Exh C**