```
DIEMER, WHITMAN & CARDOSI, LLP
JUDITH L. WHITMAN, #103385
KATHRYN S. DIEMER, #133977
75 East Santa Clara Street, Suite 290
San Jose, California   95113
Telephone:  (408) 971-6270
Facsimile: (408) 971-6271

ATTORNEYS FOR
Enhanced Long Distance, Residential Voice Mail
Optimum Voice Mail, Nationwide Voice Mail,
United Voice Messaging, and Nationwide Voice
Messaging
```

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>The Billing Resource dba Integretel, a California Corporation,<br><br>            Debtor.<br><br>────────────────────────<br><br>Enhanced Long Distance, Inc., a Nevada Corporation, Residential Voice Mail, A Nevada Corporation, Optimum Voice Mail, Inc., a Nevada Corporation, Nationwide Voice Mail, Inc., a Delaware Corporation, United Voice Messaging, Inc., a Nevada Corporation, Nationwide Voice Messaging, a Nevada Corporation<br><br>            Plaintiffs,<br><br>v.<br><br>The Billing Resource dba Integretel, a California Corporation , Ken Dawson, an individual,<br><br>            Defendants. | Case No. 07-52890<br><br>CHAPTER 11<br><br>Memorandum of Points and Authorities in Support of  Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate<br><br>Adversary Proceeding<br><br>No. 08-05020<br><br>Date:  February 12, 2008<br>Time:  2:00 p.m.<br>Place: United States Bankruptcy Court<br>      280 South First Street, San Jose, CA<br>      Room 3020<br>Judge: Hon. Arthur S. Weissbrodt |

1
Memorandum of Points and Authorities in Support of  Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

Case: 08-05020   Doc #: 2   Filed: 01/23/2008   Page 1 of 13

FTC Exh. D

Plaintiffs, Enhanced Long Distance, Residential Voice Mail Optimum Voice Mail, Nationwide Voice Mail, United Voice Messaging, and Nationwide Voice Messaging [hereinafter cited as "Plaintiffs"], move for a temporary restraining order and preliminary injunction requiring Debtor, The Billing Resource, dba Integretel, Inc.[hereinafter cited as "TBR", "IGT" or "Debtor"], to refrain from using the funds which are held in trust for the benefit of Plaintiffs for any purpose, and to segregate said funds into a separate account.

### *I.*
### *PLAINTIFFS FUNDS ARE HELD IN TRUST BY DEBTOR, AND THUS ARE NOT PART OF THE BANKRUPTCY ESTATE OF DEBTOR*

Plaintiffs' each entered into a Master Services Agreement [hereinafter cited as "MSA"] with the Debtor after mid-summer of 2002[1]. In 2002, another billing and collections company, OAN, filed bankruptcy. OAN, much as Debtor has, claimed that the Billing Transactions submitted for collection by OAN's customers, were accounts receivable of OAN. Troubled by this possibility, Plaintiffs, as they entered into MSAs with Debtor negotiated for specialized treatment of all funds which could lead to payment of funds owed to Plaintiffs. Declaration of Jordan, Borstein, and Liquorish. The contracts under which Debtor conducts business with the Plaintiffs all contain special language controlling the handling of all receivables that may give

---

[1] Residential Voice Mail, Inc., [hereinafter cited as "RVM"] entered into its MSA on February 4, 2004. Enhanced Long Distance, Inc., [hereinafter cited as "ELD"] entered into its MSA on October 1, 2004. Optimum Voice Mail, Inc., [hereinafter cited as "OVM"] entered into the MSA with Debtor on January 1, 2005. Nationwide Voice Mail, Inc. [hereinafter cited as "NVM] contracted with Debtor on December 5, 2002. Nationwide Voice Messaging, Inc., [hereinafter cited as "NVMI"] entered into it's MSA on May, 1 2003. United Voice Messaging, Inc., entered into contract with Debtor on July 1, 2003. True and correct copies of the contracts are attached to the declarations of Ms. Liquorish, Mr. Borstein, and Ms. Jordan.

2
Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

**FTC Exh. D**

Case: 08-05020   Doc #: 2   Filed: 01/23/2008   Page 2 of 13

rise to Net Proceeds due to Plaintiffs generated by the processing of the Billing Transactions[2] processed by Debtor.

> All Net Proceeds arising from Client's Billing Transactions, as such terms are defined hereunder, are, and shall remain at all times, the property of Client and IGT may not use any such Net Proceeds for any purpose other than to offset or satisfy obligations rightfully due to IGT hereunder. IGT acknowledges that all receivables that may give rise to Net Proceeds due to Client are beneficially the property of Client even though such receivables may be in IGT's name or possession.

Paragraph 7 – Schedule II – PhoneBill SERVICES (TELCO BILLING)

The negotiated language creates a trust. This Court should require Debtor to segregate the funds, because the funds are not property of the bankruptcy estate.

### A. *THE FUNDS COVERED BY PARAGRAPH 7 ARE NOT PROPERTY OF THE BANKRUPTCY ESTATE*.

The Bankruptcy Code specifies that funds held in trust do not become property of the bankruptcy estate.

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and ( c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. ... ( c)(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. Section 541( c)(2).

Funds are held in an express trust when the settlor manifests an intent to create a trust, designates trust property, identifies a beneficiary, and does so for a lawful purpose. Cal. Probate Code Sections 17500 - 17505.

///

---

[2] Billing Transactions is a defined term in each MSA referring to the data records which Debtor processes.

3
Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

Case: 08-05020   Doc #: 2   Filed: 01/23/2008   Page 3 of 13

FTC Exh. D

> [a] trust may be created by any of the following methods: (a) A declaration by the owner of property that the owner holds the property as trustee.(b) A transfer of property by the owner during the owner's lifetime to another person as trustee. ...(e) An enforceable promise to create a trust.
>
> West's Ann.Cal.Prob.Code Section 17500[3].

It is black letter law in the State of California that the action of placing property in the custody of another to be held solely for the benefit of the person so placing it creates an express trust, whether the language states so, or not, so long as the intent is clear.

> When one expresses the intention to hold the legal title but that another should have the beneficial interest, the implication necessarily follows that the former intended to create a trust of defendant and that the legal title was left in the latter that he might vote the stock and manage and dispose of the property with greater facility and advantage. ...It is well settled that no set form of words is necessary to create a trust. Nor need the word "trust" or "trustee" be used. ( *Luco v. De Toro*, 91 Cal. 405, [18 Pac. 866, 27 Pac. 1082]; *Booth v. Oakland Bank of Savings*, 122 Cal. 19, [54 Pac. 370].)
>
> Taber v. Bailey , 22 Cal.App. 617, 620 (Cal.App.3.Dist.1913)

In Elliot v. Bumb, 356 F.2d 749 (9th Cir. 1996), the ninth circuit addressed the question of whether contracts placed for collection with another entity pursuant to a written agreement stating that the funds were held in trust for the benefit of the depositors, created an express trust, at the time that the funds came into possession of the Debtor.

> As to the identifiable sum of $2,014.99, the District Court made the correct determination in favor of Security's trustee. Although one may become bankrupt, property which is held by him in trust belongs to the beneficiary of the trust. 4 Collier, Bankruptcy P70.25(2) (14th ed. 1964) (hereinafter called Collier); 3 Remington, Bankruptcy § 1212 (Henderson ed. 1957). Apart from the provisions of the California Financial Code, the segregated amount is corpus of a trust. The bankrupts' written agreement was a valid trust agreement under California law. See Cal.Civ.Code §§ 2221, 2222. While no trust corpus existed as of the time of the agreement, it has been held, in equity, that if parties intend to create a trust at a future time when the corpus comes into being, the trust should take effect at such future time and the

---

[3]Probate Code Section 17200 et seq. encompass former Civil Code Sections 2221, and 2222.

4
Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

Case: 08-05020   Doc #: 2   Filed: 01/23/2008   Page 4 of 13

FTC Exh. D

equitable interest pass to the beneficiary. I Bogert, Trusts and Trustees § 113, pp. 575-76 (2d ed. 1965). Generally, the question of whether a trust is established is one to be resolved by the application of state law. See Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314, (1957). Although no California court has ruled directly upon the question in a cause involving such an explicit trust agreement as that made by the bankrupts here, the California Supreme Court has written, 'A mere promise to obtain money and thereupon hold it in trust does not create a trust until it is at least so far executed that the money has been obtained in accordance with the promise.' Molera v. Cooper, 173 Cal. 259, 262, 160 P. 231 (1916). See also 89 C.J.S. Trusts § 24, p. 741, and § 151, pp. 1064, 1068 (1955); Restatement (Second), Trusts § 30 (1959). From the quoted language, it must be inferred that California courts would hold, under the terms of the explicit agreement here, that a trust actually came to be established upon the receipt of those corpus funds which were so clearly anticipated in the agreement precisely defining their trust quality and manner of handling. Furthermore, even had there been no written agreement, the relationship of Security and Van's as principal and agent would seem to have required the impressing of a constructive trust upon funds received by the agent from the sale of his principal's property and retained by the agent in segregated identity. See Rodes v. Shannon, 222 Cal.App.2d 721, 725, 35 Cal.Rptr. 339 (1963); Spector v. Miller, 199 Cal.App.2d 87, 95, 18 Cal.Rptr. 426 (1962); Darrow v. Robert A. Klein & Co., 111 Cal.App. 310, 295 P. 566 (1931); Cal.Civ.Code § 2322. Therefore, as to the $2,014.99, in existence and clearly identified, the trustee of Security's estate is entitled to the fund.

Elliott v. Bumb 356 F.2d 749, 753 -754 (9th Cir. 1966)

Elliot, and its progeny, make clear that personal property deposited with another for collection becomes a valid trust at the time the funds come into the possession of the debtor, so long as there is a statement of intent demonstrating the intent to hold the funds in trust at the time of creation of the collection agreement. See also California-Nevada Annual Conference of United Methodist Church v. St. Luke's United Methodist Church, 121 Cal.App.4th 754, 767 (2004).

The language in this contract is express. The wording makes clear that Plaintiffs retain ownership rights in the funds at all times that the funds are in the possession of Debtor.

All Net Proceeds arising from Client's Billing Transactions, as such terms are defined hereunder, are, and shall remain at all times, the property of Client ...

5

Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )



Case: 08-05020   Doc #: 2   Filed: 01/23/2008   Page 5 of 13

FTC Exh. D

Furthermore, the second clause of the paragraph further restricts Debtor's use of the funds, such that Debtor may not use any funds which might be end up as Net Proceeds" for anything other than the benefit of Plaintiffs.

> [A]nd IGT may not use any such Net Proceeds for any purpose other than to offset or satisfy obligations rightfully due to IGT hereunder.

> Paragraph 7, MSA supra.

The last clause of the paragraph then expressly states both the intent that the agreement create a trust, identifies the funds which are the res of the trust, and identifies the beneficiary of the trust.

> IGT acknowledges that all receivables that may give rise to Net Proceeds due to Client are beneficially the property of Client even though such receivables may be in IGT's name or possession.

> Paragraph 7, MSA supra.

All Net Proceeds, as well as all funds which may give rise to Net Proceeds are, pursuant to California law, held in trust by TBR, for the benefit of all six Plaintiffs. Pursuant to 11 U.S.C. Section 541, such trust funds are not part of the bankruptcy estate. This Court should, at a minimum require Debtor to segregate those funds, to prohibit the funds from being used for non-trust purposes.

### B. DEBTOR'S REPORTS ALLOW THIS COURT, AND THE PLAINTIFFS' TO TRACE THE FUNDS OWED TO PLAINTIFFS TO DEBTOR'S MASTER ACCOUNT.

In general, bankruptcy law requires that a party who tries to impress a constructive trust on funds held by a Debtor must meet a strict tracing standard. See, Begier v. IRS, 496 U.S. 53,

6
Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

FTC Exh. D
Case: 08-05020    Doc #: 2    Filed: 01/23/2008    Page 6 of 13

62-62. (1990). However, strict tracing standards do not apply where there is an express trust agreement.

> However, unlike the cases cited by Kupetz, the present case involves an express trust relationship regarding funds kept in a discrete trust account. The tracing requirement discussed above only pertains to situations in which the would-be beneficiary seeks to impress a constructive trust upon currently commingled property of the debtor. *See Collier on Bankruptcy,* ¶ 541.13, at 541-77 to 541-79. There is no precedent supporting the proposition that restored express trust funds are also subject to this requirement, and we do not believe that Kupetz's argument is consistent with applicable principles of bankruptcy law.[FN8] As noted earlier, under California law, restorative payments to a trust account serve to reconstitute a depleted trust fund. Thus, once CTTS deposited funds into the FIB trust account by way of restitution, the restored funds became valid trust funds that were no longer the property of CTTS and, therefore, no longer subject to the tracing requirement.

In re California Trade Technical Schools, Inc. 923 F.2d 641, 647 (9th Cir.,1991)

Plaintiffs' declarations trace the Billing Transactions deposited with the Debtor, through testimony about the reports issued by Debtor's employees to the Plaintiffs' agent, Mr. Nelson Gross. See Declaration of Ms. Liquorish, Ms. Jordan and Mr. Bornstein. Those reports, produced by the Debtor, identified the amounts held in trust, for the benefit of Plaintiffs' as of the time that Debtor filed Chapter 11. Debtor holds the following amount in trust for Plaintiffs: OVM $572,638.94, RVM $831,862.16, UVMI $763,852.69, NVM $676,157.06, UVM $117,610.72, NVMI $907,337.22 and ELD $1,048,151.67. Pursuant to In Re California Trade Technical Schools, Inc., Plaintiffs are only required to trace the funds into Debtor's accounts so long as the total amount due and owing is not more than the amount held by Debtor in its accounts. The total amount owed to all Plaintiffs is $5,017,664.24 (five million, seventeen thousand, six hundred sixty four dollars and twenty four cents). The total amount of unrestricted funds shown on the most recently filed monthly operating report is $8,134,394 (eight million,

7
Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

Case: 08-05020   Doc #: 2   Filed: 01/23/2008   Page 7 of 13

FTC Exh. D

one hundred thirty four thousand, three hundred ninety four dollars), well above the amount owed to Plaintiffs.

## II.
### THIS COURT SHOULD ORDER DEBTOR TO TREAT THE FUNDS AS SEGREGATED TRUST FUNDS TO INSURE THAT DEBTOR DOES NOT DISSIPATE THE FUNDS, THUS RENDERING THEM UNAVAILABLE EITHER THROUGH OPERATION OF THE BANKRUPT ESTATE, OR THROUGH USE OF THE ASSETS TO FUND ITS PROPOSED PLAN OF REORGANIZATION.

The language of Paragraph 7 requires Debtor to treat the funds which may give rise to Net Proceeds, as separate, segregated property. Plaintiffs are requesting this Court order the Debtor to do so.

Plaintiffs face irreparable harm if Debtor fails to follow its fiduciary obligation as to the trust funds. The irreparable harm falls into two categories. First, the risk that through operations of the business while in the Chapter 11 proceeding, Debtor will reduce the available funds below the amount which is required to be held in trust, therefore rendering Plaintiffs' without an ability to recover their property. Second, Debtor's plan will create a payment scheme which will remove the funds from the control of the Debtor, such that they will be rendered unavailable to their beneficial owner: Plaintiffs.

### A.   DEBTOR'S OPERATIONS CREATE A SIGNIFICANT RISK THAT DEBTOR WILL USE THE FUNDS HELD IN TRUST IN ITS OPERATIONS AND RENDER PLAINTIFFS' UNABLE TO RECOVER.

Debtor is currently operating at a loss. The continuing lack of gross revenues, combined with Debtor's profligate administrative expense spending renders it likely that Debtor will use up

8
Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

Case: 08-05020   Doc #: 2   Filed: 01/23/2008   Page 8 of 13


FTC Exh. D

the funds which Debtor is required to hold in trust for Plaintiffs. Once those funds are spent, Plaintiffs have no route for recovery, as the funds are held in trust, and are not secured.

Debtor's filings about its financial status make the depth of the problem clear. First, Debtor's is currently operating at a loss. Debtor's most recent monthly operating report [hereinafter cited as "MOR"] identifies gross sales as $1,048,353. That same MOR identifies gross profit as $190,193. This comports with the reports received by Plaintiff's counsel, which reflect the gross deposits, which demonstrate numbers between $1,000,000 per month and $1,600,000 per month. Debtor collects approximately 10% revenue from the gross deposits, attributable to the fees it generates in the processing of the Billing Deposits. Deposits of $1,000,000 thus generate approximately $100,000 in profit per month. See Declaration of Kathryn S. Diemer. Debtor's last MOR indicates that Debtor spent $612,048 on professional fees. In essence, Debtor spent $421,855 more on its professional fees during November, 2007 than it earned in gross profit during that same month.[4] Review of the Statement of Operations demonstrates that for the last reporting period, not including any sales returns and allowances, Debtor lost $657,585.

Last month was not an anomaly. Debtor lost $784,465 the previous month, again not including any sales returns and allowances. The Debtor filed bankruptcy on September 16, 2007. In the last 3 months Debtor has lost almost two million dollars, again not taking into account any allowances for problematic traffic.[5]

---

[4] See line 5, Statement of Operations for 11/1/07 through 11/30/07, and compare it to line 37 on the same page.

[5] Debtor's failure to identify any sum due and owing for potential returns and allowances is
(continued...)

9
Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

Case: 08-05020    Doc #: 2    Filed: 01/23/2008    Page 9 of 13

FTC Exh. D

Debtor currently holds $8,134,394 (eight million, one hundred thirty four thousand, three hundred and ninety four dollars) in its unrestricted funds.  Debtor holds $5,017,664.24 (five million, seventeen thousand, six hundred sixty four dollars and twenty four cents) in trust for the benefit of Plaintiffs under the terms of the MSAs.  That leaves a balance of $3,116,730.

Debtor stipulates that POL, Inc. is a secured creditor holding a contingent claim in the amount of approximately $1,000,000. The majority of secured funds owed are contingent on a settlement with the New York State Taxing Authority.  Within the last month, Debtor has entered into a settlement agreement with the New York State Taxing Authority, which removes the contingent nature of claim as to approximately $870,671. Deducting this additional amount from the funds held by Debtor, leaves a balance of unrestricted funds in the amount of $2,246,059.

Debtor has also stipulated to a secured claim in favor of Payment One, a virtually wholly owned subsidiary of the Debtor.  Payment One claims a security position in excess of $16,616,000.  There is some dispute as to whether Payment One's security position is subject to a significant offset for preferential transfer.  However, Debtor has entered into a stipulation with Payment One as to a portion of that secured debt on the theory that Payment One has a significant defense in the form of new value and/or contemporaneous exchange.  Based upon that defense, Debtor has, throughout the case

---

[5](...continued)
worrisome given that both the LEC's and the customers have the right to demand such allowances depending on activities within the billing.

10
Memorandum of Points and Authorities in Support of  Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

FTC Exh. D
Case: 08-05020   Doc #: 2   Filed: 01/23/2008   Page 10 of 13

to date, held out Payment One as a secured creditor. Payment One and Debtor allege the amount of the new value allowances at $6,400,000. Both of the amounts alleged by Payment One are significantly in excess of the amount which is currently identified as unrestricted funds in the custody of Debtor. If Payment One were to successfully exercise its rights as a secured creditor and require adequate protection payments, or were to move for relief from stay, or otherwise exercise its secured creditor rights, significant risk exists that no unrestricted funds would exist to repay Plaintiffs the sums they are owed.

Plaintiffs expect Debtor to argue that it has sufficient operating capital to insure that Plaintiffs trust funds will be paid when processing is complete. If this Court ignores the rights of the secured creditors, Debtor may well have sufficient funds to operate for a brief period. Given that Debtor lost $1,802,143 during the 2 ½ months from filing through the date of the last filed MOR, there is significant reason to believe that the Debtor might well extinguish the cushion for the trust funds simply by operating the business for the next few months. Once Debtor dips below the amount that is owed to Plaintiffs, Plaintiffs lose their ability to recover the funds which they own, but which Debtor controls, without recourse. This Court should find that irremediable harm exists to avoid Plaintiffs property, which is not property of the bankruptcy estate being squandered.

11
Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

FTC Exh. D

Case: 08-05020   Doc #: 2   Filed: 01/23/2008   Page 11 of 13

### B. DEBTOR'S PLAN OF REORGANIZATION RISKS LOSS OF THE TRUST FUNDS, AND CONVERTS THEIR NATURE FROM TRUST FUNDS TO ORDINARY INCOME.

Debtor treats Plaintiff's claims as general unsecured claims in its plan. Debtor's plan does not purport to be a 100% payout plan. Instead the plan depends on a white knight to buy the company. There is no one currently identified as a stalking horse bidder. Nor is there any evidence that sufficient funds will be generated by the proposed sale to allow 100% payout of the unsecured creditors. Without that possibility, Plaintiffs funds are at risk under the plan for distribution to others. The hearing on the disclosure statement is currently set for February 20, 2008 at 10:00 a.m. The possibility that the relationships between the Plaintiffs, the Debtor and the funds which Debtor is holding for the beneficial use of Plaintiffs is sufficient to support a finding of irremedial harm, as once the funds are gone, Plaintiffs have no further remedy.

### III.
### CONCLUSION

Plaintiffs have requested the least restrictive possible restraining order: an order restricting use of the funds which are held in trust, until such time as the clearing process is complete, and the funds paid out. Plaintiffs' require this restraint on Debtor in order to prevent Debtor from utilizing the trust funds to fund its plan and thus rendering them unavailable for their beneficial purpose. Debtor has filed its plan of reorganization two weeks ago, and has set the hearing on the disclosure statement for February 20, 2008. In

12
Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

FTC Exh. D

Case: 08-05020   Doc #: 2   Filed: 01/23/2008   Page 12 of 13

light of the short period of time prior to the potential date for plan confirmation, Plaintiffs risk their trust funds becoming unavailable for their beneficial purpose and losing control of the funds to the other creditors of Debtor's estate.

Plaintiff respectfully request this Court grant this request for temporary restraining order.

Respectfully Submitted,

DIEMER, WHITMAN & CARDOSI, LLP

By: /Katie Diemer/
Kathryn S. Diemer
Attorney for Plaintiffs Enhanced Long Distance, Residential Voice Mail, Optimum Voice Mail, Nationwide Voice Mail, United Voice Messaging, and Nationwide Voice Messaging

13
Memorandum of Points and Authorities in Support of Ex Parte Application for Order to Segregate Funds Held in Constructive Trust by Debtor The Billing Resource from the Operating Funds of the Estate )

FTC Exh. D

Case: 08-05020    Doc #: 2    Filed: 01/23/2008    Page 13 of 13