SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
STEVEN B. SACKS, Cal. Bar No. 98875
TIMOTHY C. PERRY, Cal. Bar No. 248543
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947
Email:        mahrens@sheppardmullin.com
              ssacks@sheppardmullin.com
              tperry@sheppardmullin.com


Attorneys for The Billing Resource, dba
Integretel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | Civ. Case No.  C-08-00341-JW |
| THE BILLING RESOURCE, dba Integretel, a California Corporation, | Bk Case No. 07-52890 |
| Debtor. | |
| FEDERAL TRADE COMMISSION, | Adv. Pro. No. 07-05156 |
| Movant, | |
| v. | Date:    April 7, 2008<br>Time:    9:00 a.m.<br>Place:   280 S. First Street<br>         San Jose, CA<br>         Courtroom 8 (4th Floor) |
| THE BILLING RESOURCE, dba Integretel, a California corporation, | |
| Respondent. | Judge:   Hon. James Ware |

**THE BILLING RESOURCE, dba INTEGRETEL's
MEMORANDUM IN OPPOSITION TO FTC'S MOTION FOR
WITHDRAWAL OF THE REFERENCE UNDER 28 U.S.C. § 157(d)**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL STATEMENT ...................................................................... 2

       A.    The Florida Action ........................................................................ 2

       B.    The Adversary Proceeding and Injunction .................................... 4

       C.    The Appeals from Rulings in the Adversary Action and on the FTC's
             Motion ........................................................................................... 5

       D.    The Fourth Claim in the Amended Complaint ............................... 5

III.   ARGUMENT ........................................................................................... 6

       A.    "Cause" Does Not Exist to Withdraw the Reference as a Matter of
             Discretion ...................................................................................... 6

             1.    The Rule on Discretionary Withdrawal of the Reference ................... 6

             2.    The Underlying Case Presents Only "Core" Bankruptcy Issues .......... 7

             3.    Withdrawal Would Increase Costs and Time for the Parties and
                   this Court .............................................................................. 10

             4.    The FTC's Motion Is Mere Forum Shopping ..................................... 11

       B.    Withdrawal Is Not Mandatory ....................................................... 12

             1.    Congress Provided for a Narrow Application of Mandatory
                   Withdrawal ............................................................................ 12

             2.    The Underlying Case Presents Only Bankruptcy Issues ..................... 13

             3.    The FTC's Own Cases Demonstrate Withdrawal Is Not
                   Mandatory ............................................................................. 13

IV.    CONCLUSION ....................................................................................... 15

OPPOSITION TO FTC'S MOTION TO
WITHDRAW THE REFERENCE

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>Federal Cases</u>

In re Canter,
    299 F.3d 1150 (9th Cir. 2002)...........................................................................7, 10, 11

Daewoo Motor Am., Inc. v. Gulf Ins. Co.,
    302 B.R. 308 (C.D. Cal. 2003)........................................................................................7

In re Goodman,
    991 F.2d 613 (9th Cir. 1993)...........................................................................................8

In re Kincaid,
    917 F.2d 1162 (9th Cir. 1990).........................................................................................8

In re Ponce Marine Farm, Inc.,
    172 B.R. 722 (D. P.R. 1994)...........................................................................................7

Security Farms v. Int'l B'hd of Teamsters,
    124 F.3d 999 (9th Cir. 1997).....................................................................................7, 12

Straton v. New,
    283 U.S. 318 (1931) ........................................................................................................8

United States v. Johns-Manville Corp. (In re Johns-Manville Corp.),
    63 B.R. 600 (S.D.N.Y.1986)..........................................................................................12

United States v. Kaplan,
    146 B.R. 500 (D. Mass. 1992) .........................................................................................7

In re Vicars Ins. Agency, Inc.,
    96 F.3d 949 (7th Cir. 1996)................................................................................12, 13, 14

In re 3dfx Interactive Inc.,
    2005 WL. 1074407 (N.D. Cal. May 6, 2005) ........................................................13, 14

Betta Products, Inc. v. Distribution Systs. & Serv., Inc.,
    2007 WL. 1750211 (N.D. Cal. June 15, 2007) ...............................................................7

In re General Teamsters Warehousemen and Helpers Union Local 890,
    1994 WL. 665288 (N.D. Cal. Nov. 8, 1994)..................................................................12

Stratton v. Vita Bella Group Homes, Inc.,
    2007 WL. 1531860 (E.D. Cal. May 25, 2007)...............................................................12

In re The Billing Resource,
    2007 WL. 3254835.........................................................................................4, 5, 10, 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO FTC'S MOTION TO
WITHDRAW THE REFERENCE

1

<u>Federal Statutes</u>

2

28 U.S.C. § 1334(e) ........................................................................................................... 8

3

18 U.S.C.S.1961 et seq ............................................................................................... 13, 14

4

28 U.S.C. § 157(d) ................................................................. 1, 6, 7, 8, 9, 12, 13

5

6

<u>Miscellaneous</u>

*Collier On Bankruptcy* ¶ 3.04[1][b] (15th ed. rev. 2005) .................................................. 7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

OPPOSITION TO FTC'S MOTION TO
WITHDRAW THE REFERENCE

# I.

## INTRODUCTION

The Billing Resource, dba Integretel ("Integretel" or "Debtor"), opposes the Federal Trade Commission's ("FTC") motion for withdrawal of the reference under 28 U.S.C. § 157(d) (the "Motion").

The FTC seeks to have the reference withdrawn with respect to the fourth claim of an amended complaint for declaratory relief, temporary restraining order and preliminary injunction and to determine validity, priority and extent of interest in property (the "Amended Complaint").  The fourth claim simply seeks a determination of the extent of the Debtor's property interests in light of the claims by the Receiver that certain orders issued in a Florida action against the Debtor gave the Receiver ownership of funds in the Debtor's possession.  However, as demonstrated more fully below, the fourth claim in the Amended Complaint is based on the same facts and legal issues raised by the other claims for relief, which the FTC never sought to withdraw.

This litigation began six months ago in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") in an adversary proceeding brought in Integretel's bankruptcy case.  The court has enjoined the Florida proceedings pending a determination of whether the Receiver has an interest in Integretel's assets. Having lost in the Bankruptcy Court, the FTC now shops for a more favorable forum, notwithstanding that the fourth claim is within the Bankruptcy Court's core jurisdiction.

This Court must deny the Motion for several reasons.  First, the fourth claim for relief raises only core bankruptcy issues on which the bankruptcy court can enter a final judgment: namely, whether certain contested funds constitute property of the bankruptcy estate.  Second, for the past six months, the Bankruptcy Court has expertly and thoughtfully considered these bankruptcy issues.  To withdraw the reference now would result in forum shopping, duplication of judicial effort and an unnecessary expenditure of time, effort and money on the part of Integretel, the FTC and this Court.  Finally, there is

-1-

no need to withdraw the reference instead of allowing the Bankruptcy Court to continue its handling of the matter and enter a final judgment.  For these reasons, this Court should deny the Motion.

## II.

## FACTUAL STATEMENT

**A.    The Florida Action**

On February 27, 2006, the FTC commenced a lawsuit (the "Florida Action") in the United States District Court for the Southern District of Florida (the "Florida Court") against three companies, including Access One Communications, Inc. ("Access One") and Network One Services, Inc. ("Network One"), alleging deceptive and unfair practices for unauthorized billing of charges on phone bills—referred to as "cramming"—in violation of the Federal Trade Commission Act (the "FTCA").  Access One and Network One had previously been customers of the Integretel (the "Prior Customers").  (FTCX 1).  In response to the FTC's lawsuit, the Florida Court entered a temporary restraining order ("TRO") and later a preliminary injunction.  The Florida Court appointed David R. Chase as federal receiver (the "Receiver") to marshal the Prior Customers' assets.  (FTCX 2).

The Debtor voluntarily stopped providing services for the Prior Customers over a year prior to the FTC's filing of its Amended Complaint.  At the time that it stopped providing services, the Debtor stopped making payments to the Prior Customers and instead made a determination under the contracts with the Prior Customers that all further amounts received from the telephone carriers (the "LECs") on account of the Prior Customers' billings should be booked as reserves.  (FTCX 22, ¶ 35).  This was done because of the Debtor's possible exposure to claims for refunds of the Prior Customers' Billing Transactions and the Debtor's own claims against these funds.  The Debtor asserted that the Prior Customers (and now their receivership estate) were liable to the Debtor because of their wrongful conduct.  The Debtor's damages include any liability it has in the Florida Action and the fees and expenses incurred to defend that suit.  (FTCX 22, ¶¶ 35, 39).

OPPOSITION TO FTC'S MOTION TO
                                                                                      WITHDRAW THE REFERENCE

1    Whenever the Debtor allocated an amount to the reserves for the Prior Customers,

2 the Debtor made a bookkeeping entry for that amount.  However, the Debtor does not have

3 a corresponding asset, such as a bank account, that contains the monies that were allocated

4 as reserves from the Prior Customers.  Moreover, there is no segregated account containing

5 the reserves of any customer, including either of the Prior Customers.   The Debtor

6 withholds reserves for its other customers but it does not have enough monies to cover the

7 full amount of reserves for all of the Debtor's customers.  (FTCX 22, ¶ 25).  Thus, the

8 Debtor's other customers and former customers were similarly situated to the Prior

9 Customers for whom the Receiver was appointed.  Even assuming that all of Integretel's

10 customers were entitled to have the amounts shown on Integretel's books as reserves paid

11 over to them, Integretel would not be able to do so.  Paying money to any customer or the

12 Receiver on account of a reserve obligation would leave less money for the others.

13    The Receiver is seeking to collect all assets of the Prior Customers.  Toward that

14 end, the Receiver sought relief in the Florida Action by motion against the Debtor.  The

15 Receiver asserted that the Debtor owes the Prior Customers the amount that the Debtor

16 booked as reserves for the Prior Customers, which the Receiver alleged was an asset of the

17 Prior Customers.  (FTCX 22, ¶ 37, 38).

18    The Debtor filed a response opposing such relief on numerous grounds, including

19 that it had offsetting claims against the Prior Customers which exceeded the amount of the

20 Prior Customers' alleged reserves.  These costs and fees, and the liability asserted against

21 the Debtor in the Florida Action, far exceed the amount of any sums withheld from the

22 Prior Customers as reserves.  (FTCX 22, ¶ 39).

23    The Florida Court entered an order on September 14, 2007 (the "Omnibus Order")

24 requiring that the Debtor pay over the amounts sought by the Receiver into a segregated

25 receivership account.  (FTCX 7).  Under the Florida Court's ruling, the accounting entries

26 made by the Debtor constituted assets of the receivership estate.  The Florida Court was

27 unconcerned with whether the Debtor in fact had any actual funds that were reserves of the

28 Prior Customers, segregated or otherwise, dismissing as "a distinction without a

-3-

OPPOSITION TO FTC'S MOTION TO
WITHDRAW THE REFERENCE

difference" the Debtor's contention that there were no actual funds. The Florida Court's indifference to the existence of identifiable or traceable funds of the Prior Customers in the Debtor's possession amounted to a conclusion that the Debtor was ordered to use whatever funds it had available in its bank accounts to satisfy the Receiver's claim regardless of whether other parties had perfected security interests in these funds or whether satisfying the Prior Customers' claims preferred one creditor over the Debtor's other similarly situated customers. In addition, the Debtor could not pay the money sought by the Receiver and still continue its normal operations. The Debtor therefore filed for bankruptcy protection. (FTCX 22, ¶ 42).

**B.    The Adversary Proceeding and Injunction**

On September 19, 2007, Integretel initiated an adversary proceeding by filing a complaint in the bankruptcy court in order to obtain injunctive relief against the FTC and the Receiver to stay the continuation of the Florida Action and the enforcement of the Omnibus Order. (FTCX 9).

At a hearing on September 26, 2007, the bankruptcy court suggested that Integretel could obtain use of the monies in its bank accounts if Integretel and the Receiver entered into a stipulation under which Integretel placed the amount of money claimed by the Receiver ($1,762,762.56) into a segregated, blocked, debtor in possession bank account in Integretel's name (the "Blocked Account") and these parties agreed to do so. *In re The Billing Resource*, 2007 WL 3254835 at *1, *6 (Bankr. N.D. Cal. Nov. 2, 2007). No party has the ability to remove funds from the Blocked Account without a prior order of the Bankruptcy Court. The Blocked Account was established under an agreement under which all parties reserved their rights and agreed that the placement of the money in the Blocked Account would not affect the merits of any party's claims. Pursuant to the stipulation, Integretel and the Receiver obtained the entry of an agreed order in the Florida Action providing that the Omnibus Order and proceedings to enforce it were stayed through October 17, 2007. *Id.* at *8, n.11.

-4-

Integretel filed a motion for a temporary restraining order and a preliminary injunction under Bankruptcy Code section 105, requesting that the Bankruptcy Court enjoin continuation of the Florida Action against Integretel and the enforcement of the Omnibus Order. After further briefing and hearings, the Bankruptcy Court took the matter under submission and on November 2, 2007, it issued the Memorandum Decision Re Order to Show Cause Regarding Preliminary Injunction (the "Memorandum Decision"), *In re The Billing Resource*, 2007 WL 3254835 at *1.

On November 28, 2007, the bankruptcy court signed an amended preliminary injunction order to reflect the findings and conclusions entered at the hearing on November 27, 2007 (the "Order"). Under the Order, the FTC and the Receiver are enjoined from seeking, directly or indirectly, to enforce the Omnibus and Clarification Orders against Integretel. Integretel is directed by the Order to maintain the Blocked Account. The injunction remains in force. (FTCX 20).

**C.      The Appeals from Rulings in the Adversary Action and on the FTC's Motion**

On November 8, 2007, the FTC appealed from the Bankruptcy Court's order preliminarily enjoining the FTC from pursuing or prosecuting any claims in the Florida Action. On November 28, 2007, the FTC appealed from the Bankruptcy Court's order enjoining the FTC and the Receiver from enforcing the Omnibus Order. On December 6, 2007, the Receiver appealed from the same order. These three appeals are consolidated into the docket for *FTC v. The Billing Resource*, 07-5758-JW.

**D.      The Fourth Claim in the Amended Complaint**

The fourth claim in the Amended Complaint is part and parcel of a single effort by Integretel to obtain a determination in the Bankruptcy Court, which has exclusive jurisdiction over property of the bankruptcy estate, that the Receiver does not have an ownership or other interest in any property in Integretel's possession. The first two claims for relief sought a determination that the automatic stay applied to the Florida Action. The third claim requests a temporary restraining order and preliminary injunction against

1   prosecution of the Florida Action in the event that a court does not find that the automatic

2   stay applies to that action.  The fourth claim, the only one which the FTC seeks to remove,

3   provides as follows:

> 61.    The Receiver and the FTC claim that the Receiver has a property or other interest in funds held by the Debtor based on the Florida Preliminary Injunction and/or the Payment Orders that is enforceable in this bankruptcy case.  In fact and in law, the Florida Preliminary Injunction and the Payment Orders do not give the Receiver any interest in property that is in the possession of the Debtor.  Instead, the Debtor is the owner of the funds in its bank accounts and all of its other property from and after the Petition Date.

> 62.    This Court should determine that the Debtor's funds and other property are free of any property interest therein claimed by the Receiver or the FTC.

(FTCX 22).

13      Notably, it has always been the Receiver that asserted Integretel was required to pay

14  over the purported "reserves" attributable to the Prior Customers to him.  Because the FTC

15  has inserted itself into this dispute by filing briefs and making arguments on behalf of the

16  Receiver, Integretel thought it necessary out of an abundance of caution to ask that the

17  FTC be barred from asserting an interest in Integretel's property, but doing so did not

18  accord the FTC any right to pursue the Receiver's claims, as it has done in filing this

19  motion to withdraw the reference.

### III.

### ARGUMENT

A district court "may withdraw, in whole or in part, any case or proceeding" from the Bankruptcy Court.  28 U.S.C. § 157(d).  Withdrawal may be either discretionary or mandatory.  Here, the FTC cannot prevail under either theory.

**A.    "Cause" Does Not Exist to Withdraw the Reference as a Matter of Discretion**

**1.    The Rule on Discretionary Withdrawal of the Reference**

-6-

1    Discretionary withdrawal derives from the "first sentence" of section 157(d). That

2    sentence provides: "The District Court may withdraw, in whole or in part, any case or

3    proceeding referred under this section, on its own motion or on timely motion of any party,

4    for cause shown." 28 U.S.C. § 157(d). In the Ninth Circuit, to determine "cause," a court

5    must look to "(1) the efficient use of judicial resources; (2) delay and costs to the parties;

6    (3) uniformity of bankruptcy administration; (4) the prevention of forum shopping; and (5)

7    other related factors." *See In re Canter*, 299 F.3d 1150, 1154-55 (9th Cir. 2002) (*quoting*

8    *Security Farms v. Int'l B'hd of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997) (finding

9    district court "clearly erred" in withdrawing reference because none of the factors favored

10   withdrawal); *Betta Products, Inc. v. Distribution Systs. & Serv., Inc.*, 2007 WL 1750211

11   *1, *2 (N.D. Cal. June 15, 2007) (denying discretionary withdrawal because factors

12   favored denial). The "other related factors" include whether the issue to be adjudicated is

13   "core" or "non-core." *See Betta Products, Inc.*, 2007 WL 1750211 at *2 (*citing Daewoo*

14   *Motor Am., Inc. v. Gulf Ins. Co.*, 302 B.R. 308, 310 (C.D. Cal. 2003)). Courts tend to

15   begin their analyses with this question, since its answer tends to show the analysis as to the

16   other factors.

17       Generally, district courts are hesitant to withdraw the reference as a matter of

18   discretion. *See In re Ponce Marine Farm, Inc.*, 172 B.R. 722, 725 n.2 (D. P.R. 1994)

19   (noting "discretionary withdrawal is permitted in only a limited number of

20   circumstances."); *United States v. Kaplan*, 146 B.R. 500, 503 (D. Mass. 1992) (same); *see*

21   *also Collier On Bankruptcy* ¶ 3.04[1][b] (15th ed. rev. 2005) ("Believing that a motion to

22   withdraw smacks of forum shopping, the district courts have generally not been receptive

23   to motions to withdraw the reference."). Moreover, there is a "presumption that

24   bankruptcy matters should remain in the bankruptcy court." *Kaplan*, 146 B.R. at 504.

25       **2.    The Underlying Case Presents Only "Core" Bankruptcy Issues**

26       In 28 U.S.C. § 157, Congress defined "core proceedings" very broadly, setting forth

27   a non-exhaustive list of quintessentially bankruptcy-related issues. According to § 157,

28

-7-

1  "core proceedings include, but are not limited to . . . matters concerning the administration

2  of the estate, . . . allowance or disallowance of claims against the estate, . . . orders to turn

3  over property of the estate, . . . determinations of the validity, extent, or priority of liens, . .

4  . [and] other proceedings affecting the liquidation of the assets of the estate or the

5  adjustment of the debtor-creditor or the equity security holder relationship." 28 U.S.C. §

6  157(b)(2)(A), (B), (E), (K), and (O).

7      The Ninth Circuit has concluded that "[d]eterminations regarding the nature and

8  extent of the bankruptcy estate are fundamental functions of the bankruptcy court and

9  would be 'core proceedings.'" *In re Goodman*, 991 F.2d 613, 617 (9th Cir. 1993). *See* also

10 *In re Kincaid*, 917 F.2d 1162, 1165 (9th Cir. 1990) (action concerning whether property

11 belongs to the estate "would also be a matter 'concerning the administration of the estate,'

12 and, therefore, a core proceeding.").

13     This conclusion is practically axiomatic.  After all, Congress has provided that

14 bankruptcy courts, by referral from the district court, "have exclusive jurisdiction of all of

15 the property, wherever located, of the debtor as of the commencement" of the case," which

16 codifies the early holding in the U.S. Supreme Court that is was the very "purpose" of

17 bankruptcy law to give the bankruptcy court that jurisdiction. 28 U.S.C. § 1334(e); *Straton*

18 *v. New*, 283 U.S. 318, 320 (1931).

19     The fourth claim of Integretel's Amended Complaint raises only this core

20 bankruptcy issue.  In the Fourth Amended Complaint, Integretel alleged: "The Receiver

21 and the FTC claim that the Receiver has a property or other interest in funds held by

22 [Integretel]."  (Amended Complaint, FTCX 22 ¶ 61).  Integretel seeks a determination its

23 "funds and other property are free of any property interest" claimed by the Receiver.

24 (Amended Complaint, FTCX 22 ¶ 62).  Accordingly, Count IV of the Complaint raised

25 quintessentially "core" bankruptcy issues—whether certain assets comprised part of the

26 bankruptcy estate.

27     The FTC's contrary suggestions are unpersuasive.  In its brief, the FTC agrees

28 Integretel's Amended Complaint seeks a declaration the funds are free of any property

OPPOSITION TO FTC'S MOTION TO
WITHDRAW THE REFERENCE

1  interest claimed by the Receiver.  (Motion, at 12–13).  By characterizing the dispute in this

2  way, the FTC concedes the underlying adversary action is a core bankruptcy dispute

3  between the Receiver and Integretel.  Such disputes represent quintessentially "core"

4  bankruptcy disputes adjudicated expertly, efficiently and daily by bankruptcy courts across

5  the country on which bankruptcy judges enter final judgments subject to review on appeal

6  to the district court and the Bankruptcy Appellate Panel.  28 U.S.C. §§ 157(c)(1), 158(a),

7  (b).

8      Likewise, the FTC's suggestion that this underlying adversary action concerns the

9  applicability of the "Florida District Court's pre-petition . . . orders," also concedes the

10  existence of a "core" dispute since the function of the Bankruptcy Court is to determine

11  whether those orders affect the property in the debtor's possession at the time it sought

12  bankruptcy protection.  As demonstrated by the holdings cited above, it is up to the

13  Bankruptcy Court here to determine the extent of property of the bankruptcy estate as a

14  core bankruptcy issue.

15      The FTC's creative re-characterizations of this case as presenting non-bankruptcy

16  issues also must fail.  The FTC attempts to re-characterize an ordinary creditor-debtor

17  dispute as a matter of "government law enforcement actions," raising "significant questions

18  and unusual complexities."  (Motion, at 10, 12).  This is not so.  For the truth about the

19  fourth claim in the Amended Complaint, this Court need look no further than the text of

20  that complaint, which asks simply for a declaration that the "funds and other property are

21  free of any property interest" claimed by the Receiver.  (Amended Complaint, FTCX 22 ¶

22  62).  That request, in turn, raises only a core bankruptcy issue of the contents of the

23  bankruptcy estate.  The fact that a receiver was appointed in the FTC's enforcement action

24  before the bankruptcy case was filed cannot change the fundamental jurisdiction of the

25  Bankruptcy Court to determine property of the estate.

26

27

28

OPPOSITION TO FTC'S MOTION TO
                                                WITHDRAW THE REFERENCE

1    **3.    Withdrawal Would Increase Costs and Time for the Parties and this**
2    **Court**

3        Integretel filed the underlying adversary action nearly six months ago, on
4    September 19, 2007.  While the fourth claim was filed in December of 2007, it raised the
5    same issues as to the Receiver that had already been put before the Bankruptcy Court
6    almost from the first day of the bankruptcy case.  For the past six months, Judge
7    Weissbrodt has immersed himself in the questions of bankruptcy law in the adversary
8    proceeding, making his Court the one most "familiar with the facts and issues of the case."
9    *See In re Canter*, 299 F.3d at 1154 (denying motion to withdraw where bankruptcy court's
10   familiarity with facts and issues of case would render withdrawal inefficient allocation of
11   judicial resources).  Of note, on November 2, 2007, Judge Weissbrodt issued a 62-page
12   Memorandum Decision (available at *In re The Billing Resource*, 2007 WL 3254835 at *1)
13   in which he thoughtfully considered the very same issues the FTC seeks to now bring
14   before this Court.  Because Judge Weissbrodt already has considered these issues,
15   litigating the issues before this Court would "engender[] a series of . . . motions and
16   hearings" that would "needlessly disrupt[] the bankruptcy court's seamless processing of
17   the case."  *In re Canter*, 299 F.3d at 1154.  Withdrawal of the reference as to only one part
18   of an integrated complaint that has already been extensively considered by the Bankruptcy
19   Court and which is in its core jurisdiction would reflect an inefficient allocation of judicial
20   resources and cause a duplication of judicial effort and the waste of valuable judicial time.
21       Additionally, any consideration by the district court of the issues raised in the
22   Amended Complaint should await completion of the Bankruptcy Court's consideration and
23   decision of these matters.  If this Court withdraws the reference, the Bankruptcy Court will
24   not have fully analyzed these core bankruptcy issues on their merits.  This, in turn, would
25   deprive the District Court of the best record, as primed by a Bankruptcy Court, on which to
26   base its review.  Instead, to best serve judicial efficiency, this Court should permit the
27   Bankruptcy Court to decide the issues in the first instance.
28

-10-

OPPOSITION TO FTC'S MOTION TO
                                                      WITHDRAW THE REFERENCE

1

### 4.    The FTC's Motion Is Mere Forum Shopping

2

3        The FTC moves for withdrawal of the reference six months after this adversary

4    action began.  The FTC will argue that the motion to withdraw only involves the fourth

5    claim which was added in December 2007.  However, because the fourth claim seeks relief

6    integrated with the relief sought in the rest of the Amended Complaint, which the

7    Bankruptcy Court has extensively considered, it would be inappropriate to divide the case

8    into pieces and send one to the district court now.  The only possible reason for the FTC to

9    seek this relief is that the FTC and the Receiver are on a losing streak in the Bankruptcy

10    Court and the FTC hopes the District Court will provide a more favorable forum.  Because

11    a withdrawal of the reference here would fail to "prevent[] forum shopping," this Court

should deny the Motion.  *In re Canter*, 299 F.3d at 1154.

12        Integretel asked the Bankruptcy Court on September 24, 2007 to enjoin the FTC

13    and the Receiver from interfering with property of the bankruptcy estate by prosecuting the

14    Florida Action and enforcing its pre-petition orders.   On November 2, 2007, the

15    Bankruptcy Court issued its Memorandum Decision, under which the FTC's Enforcement

16    Action was stayed.   Then, on November 26, 2007, the Bankruptcy Court issued a

17    preliminary injunction preventing the Receiver and the FTC from enforcing the Omnibus

18    Order of the Florida Court against Integretel.   These orders came after the Bankruptcy

19    Court's Memorandum Decision found that Integretel "has demonstrated a very strong

20    likelihood of success on the merits" and that Integretel's bank accounts "are property of

21    Debtor's bankruptcy estate" over which the Bankruptcy court has "exclusive *in rem*

22    jurisdiction."   Memorandum Decision, 2007 WL 3254835, at *23.   These findings, if

23    upheld on summary judgment or trial, are dispositive of the fourth claim for relief.

24    Accordingly, the FTC hopes to have a different court take over the case so that the

25    Receiver can seek a more favorable ruling from another judge.  The circumstances expose

26    the Motion for what it is: forum shopping at its most blatant.

27

28

OPPOSITION TO FTC'S MOTION TO
WITHDRAW THE REFERENCE

**B.     Withdrawal Is Not Mandatory**

    **1.     Congress Provided for a Narrow Application of Mandatory Withdrawal**

       Mandatory withdrawal derives from the "second sentence" of section 157(d). Under the mandatory standard, a court "shall" withdraw a case if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. Although the "second sentence" is phrased somewhat broadly, "'the mandatory withdrawal provision of § 157(d) is to be construed narrowly, so that it does not become an 'escape hatch' for matters properly before the bankruptcy court.'" *In re General Teamsters Warehousemen and Helpers Union Local 890*, 1994 WL 665288 *1, *4 (N.D. Cal. Nov. 8, 1994) (*quoting United States v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 63 B.R. 600, 603 (S.D.N.Y.1986)).  The test for determining whether mandatory withdrawal is necessary is whether a "'substantial and material consideration' of federal statutes is necessary for the resolution of the issue." *Id.*  Under this standard, "[w]ithdrawal under 28 U.S.C. § 157(d) is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *Stratton v. Vita Bella Group Homes, Inc.*, 2007 WL 1531860 *1, *4 (E.D. Cal. May 25, 2007) (denying motion to withdraw where trustee pursuing core proceeding); *see In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 952 (7th Cir. 1996) (stating a matter falls within the "mandatory" provision of section 157(d) if "resolution of the dispute will require a substantial and material consideration of the non-Code statute and when that statute has more than a de minimus effect on interstate commerce."). *See Security Farms v. Int'l B'hd of Teamsters*, 124 F.3d at 1008 ("Section 157 . . . mandates withdrawal in cases requiring material consideration of non-bankruptcy federal law.")

1

### 2.    The Underlying Case Presents Only Bankruptcy Issues

2

3    The resolution of this dispute does not require substantial and material analysis of

4    non-bankruptcy federal law.    To rule on this dispute, the Bankruptcy Court need not

5    engage in "the interpretation, as opposed to mere application, of the non-title 11 statute, or.

6    . . undertake analysis of significant open and unresolved issues regarding the non-title 11

7    law." *In re Vicars Ins. Agency, Inc.*, 96 F.3d at 954. This case is a classic core bankruptcy

8    dispute between a debtor, Integretel, and a creditor, the Receiver.

### 3.    The FTC's Own Cases Demonstrate Withdrawal Is Not Mandatory

9

10    The case on which the FTC most heavily relies is *In re 3dfx Interactive Inc*., 2005

11    WL 1074407 (N.D. Cal. May 6, 2005) (Ware, J.).    In that case, chip-making company

12    nVidia Corporation ("nVidia") purchased assets, including certain rights to patents, from

13    debtor 3dfx Interactive, Inc. ("3dfx").    *Id.* at *1.  The Chapter 11 Trustee then brought suit

14    on behalf of some creditors, alleging nVidia did not pay fair value for the assets.  *Id.*  In

15    response, nVidia moved to withdraw the reference, noting that valuation of the assets

16    would require the bankruptcy court to apply principles of patent law to determine whether

17    certain of the purchased patents were enforceable.  *Id.* at *3.  These patent issues, nVidia

18    urged, were substantial and material, and thus mandated withdrawal under § 157(d).  This

19    Court denied the motion.    Even though the case required the bankruptcy court to apply

20    "standard patent infringement analysis," *id*. at *4, this nevertheless did not amount to

21    "substantial and material" consideration of non-bankruptcy law so as to mandate

22    withdrawal of the reference.

    *In re Vicars Ins. Agency, Inc*., 96 F.3d 949, also resulted in denial of a motion to

23    withdraw the reference.  In that case, a family of insurance agencies ("UNG") entered into

24    a contract with an underwriting company.    *Id.* at 950.    When UNG discovered that a

25    subsidiary of the underwriting company ("Vicars") had unlawfully diverted premiums,

26    UNG brought suit for common law fraud, conspiracy, unjust enrichment and violations of

27    the RICO statute, 18 U.S.C. s1961 et seq.  *Id.* at 951.  As part of the RICO count, UNG

28

-13-

1  alleged an "aiding and abetting" theory of liability, even though, at the time, the Seventh
2  Circuit had not yet ordained such a theory.  *Id.*

3      The lawsuit forced Vicars to file for Chapter 11 bankruptcy, and UNG sought to
4  withdraw the reference on the RICO counts.  But the district court denied the motion, and
5  the Seventh Circuit affirmed.  Even though UNG had raised novel issues of criminal law,
6  that in itself did not mandate withdrawal: "UNG may be without guidance as to which
7  circuit's law will definitively apply to the claim, but this conjectural concern by itself . . .
8  does not necessarily trigger 'substantial and material consideration.'"  *Id.* at 954.

9      The cases on which the FTC relies undermine its Motion.  Withdrawal of the
10  reference was denied in both *In re 3dfx Interactive Inc.*, 2005 WL 1074407, and *In re
11  Vicars Ins. Agency, Inc.*, even though there were non-bankruptcy issues.  In this case there
12  are no such issues at all.  Much less does this case implicate anything on par with full-
13  fledged patent validity analyses, as in *In re 3dfx Interactive Inc.*, 2005 WL 1074407 at *1,
14  or issues of first impression in criminal law, as in *In re Vicars Ins. Agency, Inc.*, 96 F.3d at
15  949.  In these two cases, § 157(d) did not mandate withdrawal; a *fortiori*, in this case,
16  withdrawal is not mandatory.

17
18
19
20
21
22
23
24
25
26
27
28

1

2                                      **IV.**

3                                 **CONCLUSION**

4          WHEREFORE, Integretel requests this Court deny the Motion to withdraw the

5    reference.

6

7    Dated:  March 7, 2008

8

9                              Respectfully submitted,

10                             SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

11

12                             By        /s/ STEVEN B. SACKS
                                          STEVEN B. SACKS
13                               Attorneys for Debtor THE BILLING RESOURCE,
                                          dba INTEGRETEL
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-