WILLIAM BLUMENTHAL
General Counsel

JOHN F. DALY
Deputy General Counsel - Litigation

LAWRENCE DeMILLE-WAGMAN
JOHN ANDREW SINGER
Attorneys - Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC  20580
Telephone:  (202) 326-3234
Facsimile:   (202) 326-2447
Email: jsinger@ftc.gov

MICHAEL MORA
JULIE MACK
Attorneys - Division of Enforcement
Bureau of Consumer Protection

ATTORNEYS FOR
FEDERAL TRADE COMMISSION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

_____
                                                      )
THE BILLING RESOURCE d/b/a INTEGRETEL,     )     No. 5:07-CIV-5758-JW
                                                      )     No. 5:08-CIV-1637-JF
                  Debtor-Plaintiff-Appellee,      )
                                                      )     Date:   June 16, 2008
                                                      )     Time:  9:00 a.m.
           v.                                          )     Place:  280 S. First Street
                                                      )              San Jose, CA
FEDERAL TRADE COMMISSION et al.,            )     Judge: Hon. James Ware
                                                      )     Courtroom: 8 - 4th Floor
                  Defendants-Appellants.         )
_____)

On Appeal from the United States Bankruptcy Court for the Northern District
of California, No. 07-52890, Adversary Proceeding No. 07-5156 (Weissbrodt)

**DEFENDANT-APPELLANT FEDERAL TRADE COMMISSION'S
OPENING BRIEF IN SUPPORT OF ITS APPEALS OF THE BANKRUPTCY COURT'S
NOVEMBER 7, 2007 (AS EXTENDED ON MARCH 18, 2008), AND
NOVEMBER 27, 2007, PRELIMINARY INJUNCTIONS**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            1. The Enforcement Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            2. Proceedings before the Bankruptcy Court . . . . . . . . . . . . . . . . . . . . . . 8

            a. Preliminary Injunction Enjoining the Enforcement Action . . . . . . . . . 8

            b. Preliminary Injunction Enjoining the Contempt Proceeding . . . . . . . . 10

ARGUMENT SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.     THE BANKRUPTCY COURT ABUSED ITS DISCRETION
       WHEN IT ENJOINED THE COMMISSION'S LAW
       ENFORCEMENT ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A. Injunctions Against Law Enforcement Actions are Highly Disfavored . . . . . 14

      B. The Bankruptcy Court Misapplied the Preliminary Injunction Standard . . . . 17

            1. The bankruptcy court misevaluated Integretel's likelihood
            of success on the merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            2. The court misassessed the injury that Integretel would
            face if the injunction were not entered. . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

3.  The Bankruptcy Court Erred in Assessing the Harms
to the Commission and the Public Interest  . . . . . . . . . . . . . . . . . 22

II.  THE BANKRUPTCY COURT ABUSED ITS DISCRETION
WHEN IT ENJOINED THE COMMISSION FROM PURSUING
A CONTEMPT ACTION AGAINST INTEGRETEL  . . . . . . . . . . . . . . . . . . . 25

A. No exceptional circumstances justify the injunction of the
Contempt Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

B. The Bankruptcy Court Abused Its Discretion in Evaluating
the Four Parts of the Preliminary Injunction Test  . . . . . . . . . . . . . . . . . . . . . . 30

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

ii

1

**TABLE OF AUTHORITIES**

2

PAGE

3

**FEDERAL CASES**

4

5    *In re American Hardwoods*, 885 F.2d 621 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 17

6    *CFTC v. Co-Petro Marketing Group*, 700 F.2d 1279 (9th Cir. 1983) . . . . . . . . . 24, 30, 31

7    *Chalk v. United States District Ct.*, 840 F.2d 701 (9th Cir.1988) . . . . . . . . . . . . . . . . . . 2

8    *In re Chapman*, 264 B.R. 565 (9th Cir. B.A.P. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

9

10   *Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora*,
       805 F.2d 440 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 25

11   *In re Dolen*, 265 B.R. 471 (M.D. Fla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12

13   *EEOC v. Consolidated Freightways Corp. of Delaware*,
       312 B.R. 657 (W.D. Mo. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

14

15   *EEOC v. Rath Packing Co.*, 787 F.2d 318 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . 21

16   *In re Emerald Casino, Inc.*, 334 B.R. 378 (N.D. Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . 21

17   *In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007) . . . . . . . . . . . 1, 2, 15, 17, 18

18   *FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . 18

19   *FTC v. Nationwide Connections, Inc.*, No. 06-CV-80180 (S.D. Fla.) . . . . . . . . . . . . . . . . 1

20

21   *FTC v. Verity International, Ltd.*, 443 F.3d 48 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 6

22   *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . 18

23   *In re First Alliance Mortgage Co.,* 264 B.R. 634 (C.D. Cal. 2001) . . . . . . . . . . . . *passim*

24   *Frank v. United Airlines, Inc.*, 216 F.3d 845 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 26

25

26   *In re Gedeon*, 31 B.R. 942 (Bankr. D. Colo. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

27   *Gilchrist v. General Electric Capital Corp.*, 262 F.3d 295 (4th Cir. 2001) . . . . . . . . . . 32

28

iii

*Guariglia v. Community National Bank & Trust Co.*,
  382 F. Supp. 758 (E.D.N.Y. 1974), *aff'd*, 516 F.2d 896 (2d Cir. 1975) . . . . . . . . . . . 25

*Hawkins v. Risley*, 984 F.2d 321 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Javens v. City of Hazel Park*, 107 F.3d 359 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 14

*Luben Industrial v. United States*, 707 F.2d 1037 (9th Cir. 1983) . . . . . . . . . . . . . . . . . 28

*In re Marini*, 28 B.R. 262 (Bankr. E.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re McMullen*, 386 F.3d 320 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mirant  Corp. v. Potomac Electric Power Co.*, 378 F.3d 511 (5th Cir. 2004) . . . . . . . . 15

*In re Montana*, 185 B.R. 650 (Bankr. S.D. Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*NLRB v. Sawulski*, 158 B.R. 971 (E.D. Mich. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re One Times Square Assocs. Ltd. P'ship*,
  159 B.R. 695 (S.D.N.Y.), *aff'd without opin.* 41 F.3d 1502 (2d Cir. 1994) . . . . . . . . . 14

*In re Oxford Mgmt, Inc.*, 4 F.3d 1329 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Reynoso*, 477 F.3d 1117 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Robi v. Five Platters, Inc.*, 838 F.2d 318 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Rodde v. Bonta*, 3576 F.3d 988 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*SEC v. Brennan*, 230 F.3d 65 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*SEC v. Elmas Trading Corp.*, 620 F. Supp. 231 (D. Nev. 1985) . . . . . . . . . . . . . . . . 30, 31

*SEC v. Wolfson*, 309 B.R. 612 (D. Ut. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Security People v. Medeco Security Locks*, 59 F. Supp. 2d 1040 (N.D. Cal. 1999) . . . . 28

*In re Simon*, 153 F.3d 991 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*U.S. Sprint Communications Co. v. Buscher*, 89 B.R. 154 (D. Kan. 1988) . . . . . . . . . . . 25

*Syverson v. IBM*, 472 F.3d 1072 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*TM Patents, LP v. IBM*, 121 F. Supp. 2d 349 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . 29

*In re Turner*, 326 B.R. 563 (Bankr. W.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. United States Gypsum Co.*, 333 U.S. 364 (1948) . . . . . . . . . . . . . . . . . 3

**FEDERAL STATUTES**

Bankruptcy Code

      11 U.S.C. § 105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

      11 U.S.C. § 362(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

      11 U.S.C. § 362(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Federal Trade Commission Act

      Section 5, 15 U.S.C. § 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

      Section 13(b), 15 U.S.C. § 53(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 158(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1334(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

28 U.S.C. § 1412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**MISCELLANEOUS**

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 . . . . . . . . . . . . . 14

# JURISDICTIONAL STATEMENT

Pursuant to 28 U.S.C. § 158, this Court may exercise jurisdiction over appeals of preliminary injunctions issued by the bankruptcy court pursuant to 11 U.S.C. § 105(a). *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1092 (9th Cir. 2007); *In re First Alliance Mortgage Co. ("FAMCO I")*, 264 B.R. 634, 644 and nn.9, 10 (C.D. Cal. 2001).

The November 7, 2007, preliminary injunction ("November 7 preliminary injunction") issued by the bankruptcy court enjoined the Federal Trade Commission ("Commission") from prosecuting a civil law enforcement action against The Billing Resource d/b/a Integretel ("Integretel") styled, *FTC v. Nationwide Connections, Inc.*, No. 06-CV-80180-Ryskamp/Vitunac (S.D. Fla.) (the "Enforcement Action" in the "Florida District Court"). (RV III, APDE 49.)  By its terms, the November 7 preliminary injunction was to expire on March 14, 2008.  But, on March 18, 2008, the bankruptcy court extended this preliminary injunction through June 12, 2008 (the "March 18 extension order"). (RV X, APDE 154.)[1]  The November 7 preliminary injunction and the March 18 extension order both contemplate further proceedings.  Accordingly, they are interlocutory, and may be appealed upon leave of this Court.  The Commission's notice of appeal may be treated as a request for leave. *See FAMCO I*, 264 B.R. 644 at n.10.  Because the bankruptcy court's injunction enjoins the Commission from enforcing a federal law, and from pursuing that action in the public interest, this Court should grant the Commission leave to pursue this appeal. *See id.* at 644.

---

[1]The Commission uses the following abbreviations in its citations in this brief:
RV: Record Volume
BDE: Bankruptcy Docket Entry
APDE: Adversary Proceeding Docket Entry
DCDI: District Court Docket Item
Tr.: Adversary Proceeding Transcript

Although the November 27, 2007, order, which enjoins the Commission and David R. Chase, P.A., a receiver appointed by the Florida District Court (the "Receiver"), from pursuing a contempt proceeding against Integretel ancillary to the Enforcement Action, is styled as a "preliminary injunction," it contemplates no further proceedings and is, therefore, reviewable pursuant to 28 U.S.C. § 158(a). *Excel*, 502 F.3d at 1092-93.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the bankruptcy court abused its discretion when it entered (and subsequently extended) a preliminary injunction order enjoining the Commission from prosecuting its Enforcement Action against Integretel.

2.      Whether the bankruptcy court abused its discretion in entering its November 27, 2007, preliminary injunction order enjoining the Commission from pursuing a Contempt Proceeding against Integretel that is ancillary to the Enforcement Action.

## STANDARD OF REVIEW

An injunction entered by a bankruptcy court pursuant to 11 U.S.C. § 105(a)[2] must be overturned if the bankruptcy court abused its discretion in entering it. An abuse of discretion occurs when a court does not apply the correct preliminary injunction standard, "misapprehend[s] the law with respect to the underlying issues in the litigation," or "rests its conclusions on clearly erroneous findings of fact." *Chalk v. United States Dist. Ct.*, 840 F.2d 701, 704 (9th Cir. 1988); *FAMCO I*, 264 B.R. at 644-45. "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a

_____

[2]Henceforth, sections of the Bankruptcy Code are referred to as "§ xxx."

mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

## STATEMENT OF THE CASE

### A.    Introduction

On September 16, 2007, Integretel filed a voluntary petition under Chapter 11 of the Bankruptcy Code, *In re The Billing Resource d/b/a Integretel*, No. 07-52890 (Bankr. N.D. Cal.) (RV IV, BDE 1.)  Three days later, Integretel commenced the adversary proceeding that led to this appeal. *The Billing Resource d/b/a Integretel v. David Chase and the Federal Trade Commission*, No. 07-AP-5156.  (BDE 27; RV I, APDE 1.)  It brought this adversary proceeding in an attempt to enjoin the Commission from prosecuting its Enforcement Action -- an action that seeks, *inter alia*, to obtain restitution for consumers who were billed by Integretel for bogus telephone charges. During the course of the Enforcement Action, the Florida District Court initiated the Contempt Proceeding, requiring Integretel to show cause why it should not be held in contempt for refusing to comply with two orders requiring it to turn over $1.7 million to the court's receivership estate.

On November 2, 2007, the bankruptcy court orally issued a preliminary injunction enjoining the Commission from prosecuting the Enforcement Action through March 14, 2008.  The court issued its written order on November 7, 2007, and the Commission's appeal was docketed on November 14.  (RV VIII, APDE 69; DCDI 1.)

On November 27, 2007, the bankruptcy court orally issued a second preliminary injunction, this time enjoining the Commission and the Receiver from pursuing the Contempt Proceeding (the "November 27 preliminary injunction"). (RV X, APDE 85, and DCDI 24 at 36:6-42:7.)  It issued its written order on November 27 (RV VIII, APDE 78), and the Commission's appeal was docketed with this Court on November 29.  (DCDI 11.)

The Commission moved for stays pending appeal regarding both the November 7 and the November 27 preliminary injunctions (DCDI 3 and 13), but on March 7, 2008, the Court denied both motions. (DCDI 71.)[3]

On March 18, 2008, the bankruptcy court entered an order granting a motion filed by Integretel, thereby continuing until June 12, 2008, the preliminary injunction that precludes the Commission from prosecuting its Enforcement Action against Integretel ("the March 18 extension order"). (RV X, ADPE 154; APDE 155 at 23:23-46:5.) The bankruptcy court scheduled a hearing for June 5, 2008, to determine whether to extend the November 7 preliminary injunction beyond the current June 12, 2008 termination date. (RV X, ADPE 154; APDE 155 at 45:14-24.)

The Commission appealed the March 18 extension order to this Court, where it was docketed at No. 08-1637-JF. The Commission, the Receiver, and Integretel jointly filed an administrative motion to consolidate the appeal of the March 18 extension order with the appeals of the November 7 and 27 preliminary injunctions. (DCDI 76.) Though this Court has not yet ruled on this motion, this brief addresses all three orders on appeal.

## B.    Statement of Facts

### 1. The Enforcement Action

The Commission filed its complaint in the Enforcement Action on February 27, 2006, pursuant to §§ 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b). (RV II, APDE 25, Bates 00176-185.)[4] In the original version of the complaint, the Commission did not name Integretel

---

[3]This Court also denied (DCDI 71) the Commission's motion to change the venue for these appeals to the Florida District Court pursuant to 28 U.S.C. § 1412. (DCDI 3.)

[4]Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

as a defendant.  Instead, the complaint alleged that, *inter alia*, two former clients of Integretel, Access One and Network One (and other defendants), engaged in a massive telephone billing scam in which phony collect call charges were "crammed" onto consumers' telephone bills.  As a result of this scheme, consumers were defrauded out of approximately $35 million.  (RV II, APDE 25, Bates 00180-181.)

The same day the Commission filed its complaint, the Florida District Court entered an *ex parte* temporary restraining order ("TRO") (RV II, APDE 25, Bates 00125-155), appointing David Chase as the receiver over, *inter alia*, Access One and Network One.  The receivership included "all assets of the Defendants as of the time this Order was entered" including funds "owned or controlled by any Defendant, in whole or in part, for the benefit of any Defendant."  (RV II, APDE 25, Bates 134-35,  TRO ¶ II.)  Upon service of the TRO, any entity holding assets of an Enforcement Action defendant was required immediately to turn over those assets to the Receiver.  (RV II, APDE 25, Bates 144-45, TRO ¶ X.)  The TRO also required "third party billing agents" to "cooperate with all reasonable requests of the FTC and the Receiver relating to the implementation of this Order, including the transfer of funds at the Receiver's direction."  (RV II, APDE 25, Bates 146, TRO ¶ XI.)

Integretel served as a third party billing agent, or "billing aggregator," for Access One and Network One.  Unlike Integretel, Access One and Network One did not have contracts with local phone companies, so they could not submit their bogus charges to phone companies for collection from consumers.  Thus, Access One and Network One relied upon Integretel to submit the bogus charges to phone companies.  The phone companies then collected the charges from consumers, and transmitted amounts collected to Integretel.  From these amounts, Integretel kept a certain portion

as its fee, retained certain amounts as reserves against various contingencies, and paid the remainder to Access One and Network One.

On March 6, 2006, in response to the TRO, Kenneth Dawson, the president of Integretel, submitted to the Commission an unsworn statement claiming that it held "no amounts [that] are currently due and owing" to defendants Access One and Network One.  (RV II, APDE 25, Bates 00157-158.)

As a result of Integretel's role in this scheme, on September 21, 2006, the Commission filed an amended complaint in the Enforcement Action adding Integretel as a defendant.  (RV II, APDE 25, Bates 00163-175.)[5]   On September 25, 2006, the Florida District Court entered an amended preliminary injunction that continued the receivership and turnover provisions originally set out in its February 2006 TRO.  (RV III, APDE 35, Bates 0004-0028.)  The amended preliminary injunction was, like the TRO, served on Integretel.

Shortly after the amended preliminary injunction was entered, the Receiver in the Enforcement Action learned that, contrary to Mr. Dawson's March 6, 2006, statement, Integretel was holding funds (the "Reserve Funds") that, pursuant to Integretel's contracts with Access One and Network One, were property of those two defendants.[6]  Pursuant to the TRO and the amended preliminary injunction, the Reserve Funds had become the property of the Enforcement Action

---

[5]Integretel has a history of involvement in similar fraudulent conduct.  In October 2000, the Commission sued Integretel for its role in a scheme that charged consumers for Internet pornography that they never purchased or authorized.  Integretel agreed to a Stipulated Final Order by which it released all claims to the $1.6 million in consumer payments that it then held and transferred these monies to the Commission for consumer redress.  *See FTC v. Verity Int'l, Ltd.,* 443 F.3d 48 (2d Cir. 2006).

[6]As provided by Integretel's contracts with Access One and Network One, the Reserve Funds were funds belonging to Access One and Network One that Integretel was entitled to retain to protect itself against various contingencies.  None of those contingencies has occurred.

6

receivership estate, and should have been turned over to the Receiver.  On October 16, 2006, after Integretel refused to turn over the Reserve Funds, the Receiver filed a motion in the Enforcement Action for an order to show cause why Integretel should not be held in contempt, due to its noncompliance with the turnover provisions of the Florida District Court's injunctive orders (the "Contempt Proceeding").

On September 14, 2007, the Florida District Court entered an Omnibus Order. (RV III, APDE 35 at Bates 0029-39 (the "September 14 Omnibus Order").)  Among other things, the September 14 Omnibus Order, which was entered prior to the filing of Integretel's bankruptcy petition, granted the Receiver's motion for an order to show cause why Integretel should not be held in contempt for failing to turn over the Reserve Funds.  The district court observed that:

> Integretel did not advise either the Receiver or FTC that it was holding reserves.  Rather its president informed the FTC on March 6, 2006 that "no amounts are currently due and owing" to Access One and Network One.  As of August 26, 2006, Integretel was holding $1,186,430.36 in reserves for Access One and $173,918.66 in reserves for Network One.  These amounts have increased, and as of June 30, 2007, the reserve amount being held by Integretel * * * is $1,762,762.56.

(RV III, APDE 35 at Bates 0030.)  The Florida District Court further held that the Reserve Funds are property of the receivership estate in the Enforcement Action because they are held by Integretel on behalf of, or for the benefit of, defendants Access One and Network One and thus were "capture[d]" by the turnover provisions of the Florida District Court's injunctive orders in the Enforcement Action.  (*Id.* at 33.)  The court ordered Integretel to turn over the Reserve Funds to the Receiver within ten days or show cause why it should not be held in contempt for its refusal to do so.  (*Id.* at 40.)

**2. Proceedings before the Bankruptcy Court**

**a. Preliminary Injunction Enjoining the Enforcement Action**

Two days after entry of the Omnibus Order, on September 16, 2007, Integretel filed a voluntary petition under Chapter 11 of the Bankruptcy Code, *In re The Billing Resource d/b/a Integretel*, No. 07-52890 (Bankr. N.D. Cal.)  (RV VIII, BDE 1.)  The next day, September 17, Integretel filed a Notice of Bankruptcy in the Enforcement Action asserting that all proceedings against it (including those before the Florida District Court) were automatically stayed.

On September 19, 2007, Integretel commenced the adversary proceeding that led to the pending appeals.  *The Billing Resource d/b/a Integretel v. David Chase and the Federal Trade Commission*, No. 07-AP-5156.  (RV I, APDE 1, BDE 27.)  Integretel filed this proceeding so that it could obtain injunctions, pursuant to 11 U.S.C. § 105(a), to prevent the Commission from prosecuting the Enforcement Action, and to prevent the Commission and the Receiver from pursuing the Contempt Proceeding.[7]

On September 21, 2007, the Florida District Court entered a Clarification Order (the "September 21 Clarification Order")  (RV III, APDE 35, pp. 45-48 (Bates 41-44)), holding that the Enforcement Action and Contempt Proceeding were not stayed by Integretel's bankruptcy petition. The September 21 Clarification Order also reiterated the holdings of the pre-petition September 14 Omnibus Order that Integretel is not the owner of the Reserve Funds and that the Reserve Funds are the property of the receivership estate:

---

[7]On December 21, 2007, the bankruptcy court granted Integretel leave to amend its complaint in this adversary proceeding.  It added a count requesting that the bankruptcy court enter a declaratory judgment holding that the Commission and the Receiver have no interest in the Reserve Funds held by Integretel.  (The Reserve Funds are, of course, the very funds whose status has already been addressed by the Florida District Court.)

Integretel was holding more than $1.35 million in reserve funds that belonged to two of the Nationwide defendants, Access One and Network One, in spite of several provisions of the Temporary Restraining Order in (sic) [Amended] Preliminary Injunction requiring it to turn said funds over to the Receiver* * * *  *On Friday, September 14, 2007, this Court issued its Omnibus Order in which it ruled that the reserve funds are the property of the receivership estate* and ordered Integretel to pay the current reserve funds, amounting to $1,762,762.56, to the Receiver.

(*Id*. at 45) (emphasis added).  The Order concluded "that *the reserve funds are neither the property of the 'bankruptcy estate' nor Integretel.*"  (*Id*. at 48) (emphasis added).[8]

On November 2, 2007, the bankruptcy court issued a Memorandum Decision (RV III, APDE 41), and announced that it was enjoining the Commission from prosecuting the Enforcement Action against Integretel.  (The court issued its written order on November 7.)  However, the court declined to issue any injunctive relief regarding the Contempt Proceeding, finding that it would be duplicative of a stay issued by the Eleventh Circuit that was then in effect.  (RV III, APDE 41 at 58:6-18.)[9]

On March 7, 2008, the bankruptcy court orally extended the terms of the November 7 preliminary injunction.  As a result, the Commission is now enjoined, until June 12, 2008, from prosecuting its Enforcement Action against Integretel.  In its oral decision, the bankruptcy court expressly adopted all of the terms of its earlier November 2 Memorandum Decision.  (RV X, ADPE 155, 24:4-8.)  At this hearing, the bankruptcy court also set a hearing for June 5, 2008, to determine whether to grant a further extension of the injunction.  (*Id*. at  45:14-24.)

---

[8]On September 24, 2007, Integretel appealed the September 14 Omnibus Order and September 21 Clarification Order.  That appeal, No. 07-14531-EE (11th Cir.), has been fully briefed, but oral argument has not been scheduled.

[9]On November 7, 2007, the bankruptcy court memorialized its November 2 oral preliminary injunction, and the Commission's appeal was docketed with this Court on November 14.  (RV VIII, APDE 69; DCDI 1.)

9

The bankruptcy court entered a written order memorializing that extension on March 18, 2008 ("the March 18 extension order"). (RV X, ADPE 154.) The Commission appealed the March 18 extension order to this Court, where it was docketed at No. 08-1637-JF.

### b. Preliminary Injunction Enjoining the Contempt Proceeding

On November 5, 2007, the Eleventh Circuit vacated its stay regarding the Contempt Proceeding. (RV III, APDE 52 at Bates 003-005.) Within four hours, the bankruptcy court conducted a telephonic hearing and issued a temporary restraining order enjoining the Commission and the Receiver from pursuing the Contempt Proceeding. (RV I, APDE Nov. 5, 2007 (unnumbered docket entry).) On November 16, the bankruptcy court *sua sponte* extended the temporary restraining order through December 6, 2007.

At a November 26, 2007, hearing, the bankruptcy court initially declined to issue a preliminary injunction with respect to the Contempt Proceeding, stating that, as a matter of comity, it would be inappropriate for it to preclude the Florida District Court from enforcing its own order. (RV X, APDE 99, and DCDI 29 at 45:11-24, APDE Nov. 26, 2007 (unnumbered).) However, subsequently during that same hearing, the court reversed itself and orally issued the preliminary injunction that it had earlier stated it would not enter. *Id.* at 62:7-25. The next day, November 27, 2007, the bankruptcy court convened yet another hearing, reissued its oral preliminary injunction, and read a "revised" decision into the record to support the issuance of the injunction. (RV X APDE 85, and DCDI 24 at 5:7- 26:1, APDE Nov. 27, 2007 (unnumbered).) On November 27, the Commission noted its appeal of the injunction, and this appeal was docketed by this Court two days later.

10

# ARGUMENT SUMMARY

This Court should overturn the bankruptcy court's November 2 injunction. That injunction derails the Enforcement Action, which seeks to put a halt to Integretel's role in a scheme to bill consumers for phone calls they never made, and to obtain restitution for those injured consumers. Section 362(b)(4) of the Bankruptcy Code expresses Congress's intent that bankruptcy not serve as a shield for those, such as Integretel, who are charged with violations of federal laws. Nonetheless, the bankruptcy court trumped § 362(b)(4) with its injunction, which it issued pursuant to its general authority to issue orders. To the extent that a bankruptcy court may use its general authority to thwart the specific protection for law enforcement, it may do so only in exceptional circumstances. The bankruptcy court identified no such circumstances, and as a result, improperly allowed Integretel to foil the Commission's law enforcement efforts. (Part I.A, *infra*.)

The district court also abused its discretion when it held that Integretel had satisfied the four-part preliminary injunction test. The first part of that test requires Integretel to show a strong likelihood of success on the merits. Because Integretel was seeking to enjoin the Enforcement Action, the bankruptcy court should have required Integretel to show that, if the Enforcement Action were to go forward, Integretel would have prevailed. But instead, the court held that Integretel satisfied this part of the test merely because Integretel was likely to succeed in reorganizing under the Bankruptcy Code. Although this might have been the appropriate test if Integretel were seeking to enjoin litigation in which it was not a party, it makes no sense here, where Integretel is the defendant in the litigation it seeks to halt. (Part I.B.1, *infra*.)

The bankruptcy court also erred with respect to the second part of the test, irreparable injury, because it saw Integretel's situation, and its "injury," as somehow unique. But Integretel is no different from any other defendant in any federal law enforcement action that seeks to use

11

1
2
3
4
5

bankruptcy to undermine law enforcement.  Again, to the extent that the Enforcement Action impedes Integretel's attempt to reorganize, that is exactly the sort of "injury" that Congress contemplated when it provided that actions such as the Enforcement Action would not be stayed by a bankruptcy filing.  (Part I.B.2, *infra*.)

6
7
8
9
10
11
12
13
14
15
16

The bankruptcy court was so focused on assisting Integretel's reorganization that it gave little weight to the public interest furthered by the Enforcement Action.  Indeed, it believed that, pending reorganization, the scrutiny of Integretel's creditors would somehow render the Enforcement Action superfluous.  As a result, the bankruptcy court has improperly supplanted the role of the Commission, the federal agency charged with enforcing the FTC Act's consumer protections.  Although the bankruptcy court claims that it is only halting the Enforcement Action during "crucial junctures" of Integretel's reorganization, the court's March 2008 three-month extension of the injunction it originally entered in November 2007 makes clear that, in its view, all "junctures" of Integretgel's reorganization are critical.  (Part I.B.3, *infra*.)

17
18
19
20
21
22
23
24
25
26
27
28

The bankruptcy court also abused its discretion when it enjoined the Commission and the Receiver from pursuing the Contempt Proceeding against Integretel, a proceeding that was made necessary by Integretel's refusal to comply with two Florida District Court orders that required it to turn over the $1.7 million Reserve Fund to the Receiver.  The bankruptcy court believed it was free to revisit ownership of that money, but, in fact, it was estopped from doing so by the doctrine of collateral estoppel.  In particular, several days prior to Integretel's bankruptcy petition, the Florida District Court issued its Omnibus Order in which it held that the Reserve Funds were the property not of Integretel, but of Enforcement Action defendants Access One and Network One.  The Omnibus Order was final, and Integretel was a party before the Florida District Court.  Thus, all the elements of collateral estoppel have been satisfied.  Accordingly, the Reserve Funds are not

12

Integretel's property, are not part of its bankruptcy estate, and the bankruptcy court is precluded from determining otherwise.  (Part II.A, *infra*.)

Just as it did with respect to the injunction of the Enforcement Action, the bankruptcy court abused its discretion when it applied the preliminary injunction test and enjoined the Contempt Proceeding.  The court concluded that Integretel was likely to prevail in the Contempt Proceeding because it mistakenly believed that Integretel's bankruptcy filing divested the Florida District Court of its *in rem* jurisdiction over the Reserve Funds.  But § 362(b)(4) preserves the right of a court in an action such as the Enforcement Action to enforce the orders it has issued.  Thus, Integretel's bankruptcy filing did not assure its success in the Contempt Proceeding by terminating the proceeding.  The bankruptcy court was also concerned that, if the Contempt Proceeding went forward, Integretel and its creditors would be irreparably harmed because they would lose access to the Reserve Funds.  But this is not the sort of harm that is cognizable by the bankruptcy court because, even before Integretel filed its bankruptcy petition, the Florida District Court had already determined that the Reserve Funds were never Integretel's property.  Thus, it was the bankruptcy court, not the Florida district court, that lacked jurisdiction over the Reserve Funds.  Finally, the bankruptcy court's balance of the equities and assessment of the public interest was flawed because it overvalued the importance of Integretel's reorganization, and undervalued the benefit to the public of the Enforcement Action.  (Part II.B, *infra*.)

## ARGUMENT

## I.    THE BANKRUPTCY COURT ABUSED ITS DISCRETION WHEN IT ENJOINED THE COMMISSION'S LAW ENFORCEMENT ACTION

The bankruptcy court abused its discretion when it enjoined the Commission from continuing the prosecution of its Enforcement Action against Integretel.  First, the court ignored that, because

the Commission's Enforcement Action against Integretel is specifically exempt from the Bankruptcy Code's automatic stay, § 362(b)(4), it may be enjoined pursuant to § 105(a) only in exceptional circumstances.  Also, the court erred with respect to the factors that it must consider prior to the entry of a preliminary injunction.

### A.    Injunctions Against Law Enforcement Actions are Highly Disfavored

Congress specifically recognized the vital nature of the Commission's consumer protection work through its enactment of § 362(b)(4), which exempts law enforcement actions from the otherwise automatic stay.  The legislative history of this provision indicates a clear Congressional intent that consumer protection law enforcement actions should not be hampered by a defendant's filing for bankruptcy.  H.R. Rep. No. 95-595, at 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299; *In re McMullen*, 386 F.3d 320, 324-25 (1st Cir. 2004) (exemption intended to discourage debtors from filing for bankruptcy "either primarily or solely" to evade a law enforcement action which would "seriously threaten the public safety and welfare," such as a consumer protection action); *In re Dolen*, 265 B.R. 471, 481 (M.D. Fla. 2001); *FAMCO I*, 264 B.R. at 645-51.  This undoubtedly is why courts have found that a § 105(a) injunction against proceedings relating to a law enforcement action is appropriate only in very limited circumstances, none of which is present here.  *E.g., Javens v. City of Hazel Park*, 107 F.3d 359, 366 (6th Cir. 1997) (§ 105(a) can be used to enjoin "enforcement of local regulation which is shown to be used in bad faith"); *FAMCO I*, 264 B.R. at 655 (law enforcement action may be enjoined under § 105(a) only if the action "severely threaten[s] the integrity of the bankruptcy process"); *In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 702  (S.D.N.Y. 1994), *aff'd without opin.*, 41 F.3d 1502 (2d Cir. 1994) ("§ 105(a) should be used sparingly and then only to supplement the Bankruptcy Code, not supplant the Code"); *In re Oxford Mgmt., Inc.*, 4 F.3d 1329, 1334 (5th Cir. 1993) ("The powers granted by"

14

§105(a) "must be exercised in a manner that is consistent with the Bankruptcy Code"). As the court explained in *Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora*, 805 F.2d 440, 449 n.14 (1st Cir. 1986), proceedings that are exempt from the automatic stay pursuant to §362(b)(4) may be enjoined only in "exceptional circumstances." *See Mirant Corp. v. Potomac Electric Power Co.*, 378 F.3d 511, 523 (5th Cir. 2004).[10]

Indeed, since 1973, when the Commission first obtained authority to bring enforcement actions in federal courts, no district court has ever upheld an injunction of a Commission law enforcement action. Other than in this case, the only court to enter a § 105 injunction against the Commission was the bankruptcy court in *FAMCO I*, and that injunction was overturned on appeal by the district court. The bankruptcy court in *FAMCO I* thought that a Commission law enforcement action was outside the scope of the § 362(b)(4) law enforcement exemption or, in the alternative, that the Commission's action could be stayed under § 105(a). 264 B.R. at 642-43. On appeal, the district court concluded that the bankruptcy court erred and abused its discretion in reaching both of these conclusions. It held that the Commission's civil law enforcement action was exempted from the automatic stay pursuant to § 362(b)(4). *Id*. at 645-51. Then, addressing the issue that is identical to the one raised here -- whether the Commission could be enjoined under § 105(a) from prosecuting an enforcement action to permit a bankruptcy proceeding to go forward without distraction -- *FAMCO I* held that such an injunction was improper and that "by creating the regulatory and police powers exception to the automatic stay, Congress expressly indicated that in

---

[10]The bankruptcy court incorrectly relied on *Excel* to justify its injunction. (RV III, APDE 41 at 17-18.) But *Excel* is not relevant because it involved a purely private claim affecting a debtor, not a law enforcement action that is exempt, pursuant to § 362(b)(4), from the automatic stay on litigation generally resulting from the filing of a bankruptcy petition.

1   most cases the concerns addressed by such actions are more important than the goals of efficiency

2   and maximizing the estate." *Id*. at 654.  There is no reason for this Court to deviate from this rule.

3        When the bankruptcy court enjoined the Commission's prosecution of Integretel, it did so

4   because it believed that the Enforcement Action would "threaten the integrity of the bankruptcy

5   process" during its "critical first few months."  (RV III, APDE 41 at 29.)  When it extended the

6   terms of the November 7 preliminary injunction for an additional 90 days, the bankruptcy court

7   explained that Integretel was still at "a critical juncture of [its] bankruptcy case."  In the court's

8   view, because Integretel was in the middle of the bankruptcy process, it needed the freedom "to

9   pursue a successful reorganization in the very near future."  (RV X, ADPE 155, at 44:7-9; *see also*

10  38:6, 12-14).  According to the bankruptcy court, "immediate continuation of the enforcement action

11  seriously threatens [Integretel's] ability to reorganize."  (*Id*. at 38:14-16.)

12       The bankruptcy court thus concluded that a law enforcement action, which would otherwise

13  go forward pursuant to the stay exemption created by § 362(b)(4), must be enjoined in favor of "the

14  integrity of the bankruptcy process" at any point that the bankruptcy court considers as a "crucial

15  juncture."  But it is clear from the bankruptcy court's November 2 Memorandum Decision and from

16  the rationale stated in the March 7, 2008, hearing that, in the court's opinion, all phases of a

17  reorganization are crucial.  This analysis, which would justify an injunction of any law enforcement

18  action, makes no attempt to identify any sort of exceptional circumstances to justify an injunction

19  of the Enforcement Action.  Further, the bankruptcy court's injunction is completely contrary to the

20  express mandate of Congress, which is, as the legislative history of § 362(b)(4) indicates, that law

21  enforcement actions generally, and consumer protection law enforcement actions specifically,

22  should not be deferred or delayed merely because a defendant chooses to file for bankruptcy.  The

16

broad brush approach taken by the bankruptcy court renders the § 362(b)(4) exemption meaningless, in direct contravention of Congress's intent.

The bankruptcy court's analysis also ignores the elementary principle of statutory construction set out in *In re American Hardwoods*, 885 F.2d 621 (9th Cir. 1989), that, where specific and general statutory provisions conflict, the specific provision controls. That case involved an attempt to enjoin actions against co-debtors under the general equitable authority of § 105(a). The Ninth Circuit held that, even though § 105 "endow[s] the court with general equitable powers, [it] does not authorize relief inconsistent with more specific law." *Id.* at 625. That is the situation that exists here -- the preliminary injunction entered by the bankruptcy court pursuant to the general authority of § 105(a) conflicts with the express provision of § 362(b)(4), a provision that directs that law enforcement actions should go forward notwithstanding a debtor's bankruptcy filing.

**B.    The Bankruptcy Court Misapplied the Preliminary Injunction Standard**

Not only did the bankruptcy court fail to identify any exceptional circumstances justifying its preliminary injunction, it also incorrectly applied the traditional preliminary injunction standard to this case. As the bankruptcy court noted (RV III, APDE 41 at 15), *Excel* states that a movant must demonstrate:

> (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). Alternatively, a court may grant the injunction if the plaintiff demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

503 F.3d at 1093. The bankruptcy court erred with respect to the first part of the test because it focused on the likelihood that Integretel would reorganize, not its likelihood of prevailing in the action it was seeking to enjoin, *i.e.*, the Enforcement Action. Second, the court incorrectly evaluated

17

the injury that Integretel would face if the injunction were not granted because it mistakenly believed that Integretel's situation was somehow unique.  Finally, the court ignored the Ninth Circuit's admonition that, in the context of injunctions relating to Commission law enforcement actions, "when a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight."  *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999), citing *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989).

**1. The bankruptcy court misevaluated Integretel's likelihood of success on the merits**

The bankruptcy court misapplied the likelihood of success portion of the preliminary injunction test because it misunderstood the Ninth Circuit's holding in *Excel*.  Based on that error, the court merely required Integretel to show that it was likely to succeed in reorganizing.  In fact, the court should have required Integretel to show that it would succeed in the Enforcement Action.

In *Excel*, the debtor, Excel, sought to enjoin an arbitration that involved its former CEO and another company.  Excel sought this injunction because it believed the arbitration could have an impact on the administration of the bankruptcy estate.  (Because Excel was not a party to the arbitration, the automatic stay of § 362(a) did not apply.)  The court held that, because Excel was seeking to enjoin an action "against a non-debtor," *i.e.*, an action in which Excel was not a party, Excel could satisfy the first part of the preliminary injunction test if it merely showed that it was likely to succeed in its reorganization.  502 F.3d at 1095.  The court noted that, normally, the party seeking a preliminary injunction to enjoin a legal proceeding must show that *it is likely to succeed at a later stage in the proceeding it is seeking to enjoin.  Id.*  But because Excel was not a party to the arbitration it was seeking to enjoin, it would not be involved in any later stage of that arbitration.  Thus, from Excel's perspective, the only relevant proceeding in which it was actually involved was

1  the reorganization, and, to satisfy the first part of the preliminary injunction test, the court required

2  Excel to show that it was likely to succeed in its reorganization.  *Id.*

3         Here, the situation is totally different.  Integretel is seeking to enjoin a legal proceeding, the

4  Enforcement Action, in which it *is* involved as a defendant.  Assuming that the Commission's

5  Enforcement Action goes forward, Integretel will be involved in later stages of that proceeding.

6  Moreover, unlike *Excel*, § 362 *does* apply to the Enforcement Action.  In particular, § 362(b)(4)

7  specifically provides that a law enforcement action, such as the one brought by the Commission

8  against Integretel, is exempt from the automatic stay.  That is, Congress has determined that law

9

10 enforcement actions should go forward, that the filing of a bankruptcy petition should not interfere

11 with such actions, and that bankruptcy is not to be used as a haven for wrongdoers.

12         Because Integretel is a party to the Enforcement Action, and because that action may have

13 an impact on Integretel's ability to reorganize, the test applied by the bankruptcy court to determine

14 likelihood of success is not the correct one.  Instead, the court should have considered the likelihood

15 that Integretel would prevail in the Enforcement Action.  That is a showing that Integretel has not

16 made, and cannot make.  Accordingly, it cannot satisfy the first part of the preliminary injunction

17 test.

18

19

20                    **2. The court misassessed the injury that Integretel would face if the injunction
                        were not entered.**

21

22         The bankruptcy court erred with respect to the second part of the preliminary injunction test

23 -- irreparable injury -- because it mistakenly believed that the harm that Integretel would incur if an

24 injunction were not granted was somehow unique.  On November 2, 2007, the court characterized

25 Integretel's potential injury as arising from "an unusual convergence -- almost a perfect storm -- of

26

27 the trial schedule in the Enforcement Action and the critical first few months of a viable chapter 11

28

                                              19

1   bankruptcy case that warrant a limited preliminary injunction at this time." (RV III, APDE 41 at

2   29.) Four months later, at the March 7, 2008, hearing, it was clear that the court believed that the

3   "perfect storm" had not abated, so it extended the preliminary injunction for three more months.

4

5   This time, the court described Integretel's situation as "very special," and "absolutely critical." (RV

6   X, APDE 155 at 38.) The bankruptcy court also asserted that its decision would not "set a precedent

7   that a defendant can escape prosecution for committing deceptive and unfair trade practices by

8   simply filing for bankruptcy." (RV III, APDE 41 at 29.)    In fact, Integretel was not facing any

9   exceptional situation or "unusual convergence." Nor did Integretel inadvertently wander into a

10  "perfect storm." Rather, because it declared bankruptcy *voluntarily*, Integretel had full control over

11  the timing of its petition -- its bankruptcy was timed so that it could elude contempt (as well as a

12  summary judgment motion). And the only "critical" or "special" circumstance that the court could

13  identify was that Integretel was attempting to sell its assets. (RV X, APDE 155 at 38.) But, of

14

15  course, this is a step that would be taken by many debtors undergoing reorganization. There is

16  nothing unique about Integretel's situation. Indeed, its bankruptcy filing, and the adversary

17  proceeding it initiated against the Commission, amount to little more than an all-too-common

18  attempt by a defendant in a law enforcement action to use its bankruptcy as leverage to "escape [or

19  at least delay] prosecution for committing deceptive and unfair trade practices [as well as the

20  Contempt Proceeding] by simply filing for bankruptcy." (RV III, APDE 41 at 29.) As a result, the

21  November 7 preliminary injunction, rather than having little precedential value as the bankruptcy

22  court suggested, *Id*., serves as a virtual road map for future defendants in Commission law

23  enforcement actions who wish to thwart the Commission's Congressionally mandated prosecutorial

24  efforts. All such defendants need do is file a well-timed voluntary bankruptcy petition, and then

25  claim that, absent a § 105(a) injunction, they would be forced to defend against a law enforcement

26

27

28

20

action during "the critical first few months of a viable chapter 11 bankruptcy case." The bankruptcy court compounded this error when it extended the injunction so that it applied as well to the apparently equally "critical" middle and end of Integretel's bankruptcy case. (RV X, APDE 154.)

The court also claimed that legal expenses associated with the Enforcement Action would be "highly injurious" to Integretel's reorganization. (RV X, APDE 155 at 41.) But Congress has specifically considered the burdens imposed on a debtor that must defend itself in another forum, and it determined that such burdens should not prevent such actions from going forward. As the court explained in *EEOC v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1986), "Congress by excepting certain actions from the automatic stay provision recognized that the debtor would likely incur litigation expenses as a result of the excepted lawsuit. Congress, therefore, implicitly recognized that litigation expenses alone do not justify a stay of a proceeding" under § 105(a) of the Bankruptcy Code.[11] Indeed, "[i]f litigation costs constituted a sufficient threat to the estate's assets to justify an injunction, the regulatory and police powers exception to the automatic stay would be, for all practical purposes, a nullity." *FAMCO I*, 264 B.R. at 654. *See also In re Emerald Casino, Inc.*, 334 B.R. 378, 390 (N.D. Ill. 2005) (since Congress gave an express priority to law enforcement actions through the enactment of § 362(b)(4), a law enforcement proceeding should not be stayed under § 105(a) even if going forward would deplete the debtor's assets). Thus, litigation costs generally cannot constitute an irreparable harm that justifies the entry of a preliminary injunction

---

[11]The bankruptcy court believed that *EEOC v. Rath* was distinguishable because, in that case, the debtor was liquidating, not reorganizing. (RV X, APDE 155 at 35.) But that distinction is irrelevant because the exemption of § 362(b)(4) applies to all debtors, regardless of whether they are liquidating or reorganizing.

against a law enforcement action, and the bankruptcy court abused its discretion when it based its injunction on the routine impact of the Commission's Enforcement Action.[12]

### 3.    The Bankruptcy Court Erred in Assessing the Harms to the Commission and the Public Interest

The bankruptcy court also erred in evaluating the final two parts of the preliminary injunction test -- balancing hardships, and assessing the public interest.[13]  *FAMCO I* is the only decision to examine the appropriateness of a § 105(a) injunction against a Commission law enforcement action.  In assessing the harm to the Commission and the public interest, *FAMCO I* noted that "the goals of public policy, punishment, and deterrence" (as embodied by Congress in the § 362(b)(4) law enforcement exemption to the automatic stay) may conflict "with the goals of

---

[12]The bankruptcy court also suggested that the burden of requiring Integretel's staff to participate in the Enforcement Action would constitute irreparable harm.  (RVIII, APDE 41 at 27-29.)  In particular, the court focused on Integretel's president, Mr. Dawson.  *Id.*  At the time the preliminary injunctions were entered, Integretel had 37 employees, 22 of whom had over five years of experience with Integretel, and 13 of whom had over ten years experience.   (RV I, APDE 6 - Att. 4, ¶ 9.)   In *EEOC v. Consolidated Freightways Corp. of Delaware*, 312 B.R. 657 (W.D. Mo. 2004), the debtor had a significantly smaller staff (only 24 people).  Nonetheless, the district court vacated a bankruptcy court injunction and required the debtor to continue its defense of a racial discrimination law enforcement action while in bankruptcy.  As the court observed in *Consolidated Freightways,* though the burden of bankruptcy "is a mighty chore, fortunately it is not one that Consolidated Freightways employees are bearing alone," since it had the considerable assistance of competent counsel.  312 B.R. at 661; *see also FAMCO I*, 264 B.R. at 657 (debtor's staff resources not overburdened sufficiently to justify enjoining a Commission law enforcement action where debtor had outside entities assisting it with the bankruptcy process).  In this case, Integretel is amply represented.  In particular, in the Enforcement Action, it is represented by Tighe Patton Armstrong Teasdale PLLC of Washington, D.C.; and by Holland & Knight LLP of Atlanta, GA.  In the bankruptcy proceeding, it is represented by Sheppard Mullin Richter & Hampton LLP of San Francisco, CA.  Integretel is also assisted by FTI Consulting, Inc., of San Francisco.  With this amount of representation, Integretel can easily handle both its reorganization and the Enforcement Action.

[13]Because the Commission acts in the public interest, 15 U.S.C. § 45(b), harm to the Commission is also harm to the public interest, and the final parts of the preliminary injunction test merge.

maximizing an individual's estate assets and efficiently processing claims." 264 B.R. at 634. The harm caused by an injunction issued under the authority of § 105(a) against a law enforcement action, while difficult to quantify, represents a very real impairment of the ability of a governmental unit to comply with its Congressional mandate to enforce the law. *Id*. *FAMCO I* further held that the overarching public interest in law enforcement proceedings must take precedence over the private interests particular to any specific bankruptcy proceeding. As a result, Commission enforcement actions should not be enjoined.

> Considering deterrence in particular, the harm to the governmental units must be measured with a broader perspective in mind than these parties [to this bankruptcy proceeding] alone. The bankruptcy court and [the debtor] are undoubtedly correct that there will be more money to distribute to [creditors] in this case if the separate actions are not allowed to proceed. However, the *governmental units are entitled to make the choice that, over time, similarly situated borrowers and consumers benefit more when companies do not violate the law in part because they know that bankruptcy will not provide a way out when their wrongs are discovered*. In any given case, reasonable minds could disagree about the marginal costs and the marginal benefits of different approaches and which will maximize the wealth and happiness of the greatest number of people. The point is that *it is the governmental units charged with enforcing consumer protection laws*, governmental units that are responsive to the political will of the people, *that should be the ones to make the choice, not the bankruptcy court*.

*Id.* at 659 (emphasis added).

By enjoining the Enforcement Action, the bankruptcy court harmed the Commission, and the public interest, by preventing the Commission from prosecuting its Enforcement Action against Integretel. Indeed, the bankruptcy court provided Integretel with a free pass allowing it to escape from prosecution. In November 2007, the bankruptcy court stated that such an injunction would be necessary only for "a few months," but it has now extended that injunction for a few months more, and the court has given no indication that, after those few more months, it would not grant yet another extension. Integretel has used the bankruptcy court to escape prosecution. This Court

should not assist it in doing so. *See CFTC v. Co-Petro Mktg. Group*, 700 F.2d 1279, 1283 (9th Cir. 1983) (bankruptcy is not to be "a haven for wrongdoers").[14]

The bankruptcy court further erred by holding that the public interest would not be harmed because, "[i]t is highly unlikely that [Integretel] is currently violating any laws". (RV X, ADPE 155 at 37:17-19.) Incredibly, however, the bankruptcy court did not base this factual conclusion on any evidence. Instead, it relied solely on its intuitive belief that, because Integretel was involved in a bankruptcy reorganization, it was no longer "likely" that Integretel was engaging in the sort of conduct that gave rise to the Commission's complaint. (*Id*. at 37:11-14.) Thus, not only did the bankruptcy court base its extension of the preliminary injunction on incorrect conclusions of law with respect to its authority under § 105, it also lacked any basis in the record for its finding that its injunction would cause no harm to the public interest. Moreover, it ignored the considerable factual record concerning Integretel's law violations that has been developed in the Enforcement Action. This is all the more reason why the bankruptcy court abused its discretion in continuing to enjoin the prosecution of the Enforcement Action.

\*    \*    \*    \*    \*

At most, injunctive relief under § 105(a) is a "rare remedy" that may be granted by bankruptcy courts in law enforcement actions only in exceptional circumstances that "severely

---

[14]The extent to which the bankruptcy court has thwarted the Commission's law enforcement efforts is well illustrated by contrasting Integretel's experience with that of BSG, the other billing aggregator that, like Integretel was named as a defendant in the Enforcement Action. Undoubtedly motivated by a pending summary judgment motion, the February 25 trial date, and assisted by Florida District Court-ordered mediation, BSG and the Commission entered into a settlement agreement on January 25, 2008. In contrast, due to the November 7 preliminary injunction, Integretel has little motivation to settle the Commission's claim and essentially has ignored the Enforcement Action since the entry of the injunction. Integretel refused to participate in any of the mediation sessions involving the Commission and BSG and has engaged in minimal settlement discussions with the Commission.

threaten the bankruptcy process." *FAMCO I*, 264 B.R. at 654 (citations omitted).  Here, there was nothing exceptional about Integretel's circumstances -- it faced the same situation and difficulties as any debtor that is seeking to reorganize while also defending a law enforcement action. Moreover, the bankruptcy court did not make adequate findings with respect to any of the parts of the four-part preliminary injunction test.  The court made no finding that Integretel was likely to prevail in the Commission's Enforcement Action.  It made no adequate finding with respect to irreparable harm.  And it erred in its assessment of harm to the Commission and the public interest. Accordingly, it abused its discretion when it enjoined the Commission's prosecution of its Enforcement Action against Integretel.

## II.  THE BANKRUPTCY COURT ABUSED ITS DISCRETION WHEN IT ENJOINED THE COMMISSION FROM PURSUING A CONTEMPT ACTION AGAINST INTEGRETEL

The Contempt Proceeding, which the bankruptcy court improperly enjoined, is ancillary to the Commission's underlying Enforcement Action -- its sole purpose is to enforce the turnover provisions of the February 2006 TRO and September 2006 amended preliminary injunctions.  Thus, just like the injunction of the Enforcement Action, an injunction of the Contempt Proceeding would be appropriate only in "exceptional circumstances."  *See Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d at 449 n.14.  But when the bankruptcy court enjoined the Contempt Proceeding, it identified no exceptional circumstances.[15]  Also, as it did when it enjoined

---

[15]Because courts must be able to "uphold their dignity," contempt proceedings must not be forestalled by a contumacious party's filing for bankruptcy.  *E.g. SEC v. Wolfson*, 309 B.R. 612,  620 (D. Ut. 2004); *NLRB v. Sawulski*, 158 B.R. 971, 975 (E.D. Mich. 1993); *In re Montana*, 185 B.R. 650, 652 (Bankr. S.D. Fla. 1995); *U.S. Sprint Communications Co. v. Buscher*, 89 B.R. 154, 157 (D. Kan. 1988); *In re Gedeon*, 31 B.R. 942, 946 (Bankr. D. Colo. 1983); *In re Marini*, 28 B.R. 262, 265 (Bankr. E.D.N.Y. 1983); *see also Guariglia v. Community Nat'l Bank & Trust Co.*, 382 F. Supp. 758, 761 (E.D.N.Y. 1974), *aff'd,* 516 F.2d 896 (2d Cir.

(continued...)

the Enforcement Action, the bankruptcy court once again abused its discretion by misapplying the

four-part preliminary injunction test.

### A.    No exceptional circumstances justify the injunction of the Contempt Proceeding

In *FAMCO I*, the court held that exceptional circumstances justifying an injunction of a law

enforcement proceeding may exist if that proceeding threatens the assets of the bankruptcy estate.

*FAMCO I*, 264 B.R. at 652.  The bankruptcy court here mistakenly believed that the Reserve Funds

were the property of Integretel's bankruptcy estate, and that, by enjoining the contempt action, it was

making sure that those funds would be included in the bankruptcy estate.  But the bankruptcy court

ignored that, on September 14, three days *before* Integretel filed its bankruptcy petition, the Florida

District Court in the Enforcement Action held that the Reserve Funds are the property of

Enforcement Action defendants Network One and Access One, and thus, had to be included within

the receivership estate in the Enforcement Action.  Thus, those funds could not be the property of

Integretel, and, *a fortiori*, could not be part of Integretel's bankruptcy estate when it subsequently

filed its bankruptcy petition.

The bankruptcy court failed to acknowledge that it could not revisit the status of the Reserve

Funds because it was collaterally estopped from doing so.  Collateral estoppel precludes the

"'relitigation of issues that have been actually and necessarily decided in earlier litigation.'"  *In re

Reynoso*, 477 F.3d 1117, 1122 (9th Cir. 2007), quoting *Frank v. United Airlines, Inc.,* 216 F.3d 845,

850 n. 4 (9th Cir. 2000); *see In re Turner*, 326 B.R. 563, 570 (Bankr. W.D. Pa. 2005) (a bankruptcy

court cannot "ignore [the] existence and effect" of a prior order that finally adjudicated the identical

legal issue).  Collateral estoppel applies where three requirements are met:  (1) the issue necessarily

---

[15](...continued)
1975) (decided under the former Bankruptcy Act of 1898).

decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom preclusion is asserted was a party in the first proceeding. *Reynoso*, 477 F.3d at 1122. Here, all three requirements are easily met.

The first part of the collateral estoppel test is met because the September 14 Omnibus Order issued by the Florida District Court in the Enforcement Action, and the November 27 Preliminary Injunction issued by the bankruptcy court, address the identical issue -- Who owns the Reserve Funds?  In its Omnibus Order, *entered prior to Integretel's bankruptcy petition*, the Florida District Court expressly decided that the Reserve Funds are the property of Network One and Access One, *not* the property of Integretel, and that, as a result, those funds must be turned over to the receivership estate.[16]  The September 21 Clarification Order reiterated this holding.  In the adversary proceeding, the bankruptcy court addressed precisely the same issue of who owns the Reserve Funds in order to determine if they were part of Integretel's  bankruptcy estate.  (RV III, APDE 41 at 47.)

The bankruptcy court apparently believed it could evade the preclusive impact of the September 14 Omnibus Order by recharacterizing it -- it claimed that the Omnibus Order merely held that the Receiver had an "abstract" property interest in the Reserve Funds.  That is, in the bankruptcy court's view, the Omnibus Order could not have a preclusive effect because it did not require Integretel to pay a specific amount to the Receiver.  (RVX, APDE 100 and DCDI 23 15:11-18, 17:15-16.)  Even if, as a matter of law, an "abstract" order were not entitled to collateral estoppel

---

[16]The bankruptcy court mistakenly believed that the September 14 Omnibus Order was "a money judgment determining [Integretel's] purported liability to the receiver."  (RV III, APDE 41 at 46).  It was not.  It merely required Integretel to turn over the Reserve Funds to the Receiver.  The Florida District Court has not yet entered a money judgment that would resolve the ultimate disposition of those funds.

effect, the bankruptcy court erred as a matter of fact because, in the Omnibus Order, the Florida District Court precisely determined the amount of Reserve Funds that Integretel improperly failed to turn over to the Receiver pursuant to its prior orders:

> As of August 26, 2006, Integretel was holding $1,186,430.36 in reserves for Access One and $173,918.66 in reserves for Network One. These amounts have increased, and as of June 30, 2007, the reserve amount being held by Integretel . . . is $1,762,762.56.

(RV III, APDE 35, at Bates 0030.)  Thus, the September 14 Omnibus Order plainly provided that $1,762,762.56 of the funds in Integretel's accounts were the property of Access One and Network One (and *not* the property of Integretel).[17]

The Omnibus Order is also "final" for purposes of the second part of the collateral estoppel test. "To be 'final' for collateral estoppel purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291." *Luben Indus. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983). *See also Syverson v. IBM*, 472 F.3d 1072, 1077 (9th Cir. 2007); *Security People v. Medeco Security Locks*, 59 F. Supp. 2d 1040, 1045 (N.D. Cal. 1999). In the collateral estoppel context "finality" means "little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Syverson*, 472 F.3d at 1079 (citation omitted). Here, Integretel filed extensive memoranda and participated in the oral argument preceding the entry of the Omnibus Order resolving the ownership of the Reserve Funds. The September 14 Omnibus Order and the September 21 Clarification Order make clear that the Florida District Court "sees no really good reason for permitting [this issue] to be litigated again." The

---

[17]Because the Reserve Funds were not Integretel's property, it matters not that Integretel believed that it (*i.e.*, Integretel) would be destroyed if it could not have access to these funds by December 14, 2007.  (RV III, APDE 41 at 51.)

September 14 Omnibus Order, therefore, creates collateral estoppel as to the ownership of the Reserve Funds issue.[18]

Finally, the September 14 Omnibus Order passes the third part of the collateral estoppel test because Integretel was a party to that order just as it is a party before the bankruptcy court. As a result, the Omnibus Order collaterally estops the bankruptcy court from reconsidering the ownership and status of the Reserve Funds. Because the Omnibus Order determined that the Reserve Funds are not Integretel's property, the Contempt Proceeding does not threaten any asset of the bankruptcy estate and there is no exceptional circumstance justifying the bankruptcy court's injunction of that proceeding. By ignoring the preclusive effect of the Omnibus Order, and the express statutory prescription of § 1334(e)(2), the bankruptcy court erred by improperly extending its limited jurisdiction to property (the Reserve Funds) that is not the debtor's property. *In re Simon*, 153 F.3d 991, 996 (9th Cir. 1998); *see TM Patents, LP v. IBM*, 121 F. Supp. 2d 349, 361 (S.D.N.Y. 2000) ("[t]he filing of a bankruptcy case does not, and cannot, give a debtor * * * greater rights in property than the debtor had prior to bankruptcy" and a bankruptcy court's jurisdiction "does not extend to property that is not part of a debtor's estate").[19]

---

[18]In its November 5, 2007, Order, the Eleventh Circuit, in directing the parties to file briefs concerning Integretel's appeals of both the September 14 Omnibus Order and the September 21 Clarification Order, said nothing that contradicted Integretel's position that they are final, appealable orders. (RV III, APDE 52 at Bates 003-005.) The pendency of the appeal of these Orders does not affect their collateral estoppel effect. *Hawkins v. Risley,* 984 F.2d 321, 324 (9th Cir. 1993); *Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir. 1988).

[19]It is, of course, irrelevant that the bankruptcy court disagreed with the Omnibus Order. *See* RV III, APDE 40 at 20:17-20 ("And I now have this district court order which you know, in my *personal opinion* is incorrect in that these appear to be funds that belong to the [bankruptcy] estate. But now what do I do with that?") (emphasis added).

**B.   The Bankruptcy Court Abused Its Discretion in Evaluating the Four Parts of the Preliminary Injunction Test**

As it did when it entered the November 7 Order, the bankruptcy court incorrectly applied the preliminary injunction test when it enjoined the Contempt Proceeding.  First, as explained above, Integretel is not entitled to a preliminary injunction unless it can show that it is likely to succeed on the merits.  Because it is seeking to enjoin the Contempt Proceeding, it must show that, if that proceeding were to go forward, it would be likely to prevail and would not be held in contempt.  The bankruptcy court's holdings with respect to this part of the test were clearly erroneous.  In particular, the court mistakenly believed that the contempt action could not go forward before the Florida District Court because, as a result of Integretel's bankruptcy filing, that court had been divested of its *in rem* jurisdiction over the Reserve Funds.[20]  (RV III, APDE 41 at 39.)  However, the court in *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 240-41 (D. Nev. 1985), which relied on the Ninth Circuit's decision in *Co-Petro Mktg. supra*, made clear that the filing of a bankruptcy petition by an entity involved in a securities law enforcement action did not preclude the district court in the law enforcement action from including the debtor's assets within the receivership estate.  Because the SEC's regulatory action was exempted from the automatic stay, the *Elmas Trading* court rejected as "wholly without merit" the defendant's argument that, as result of its bankruptcy filing, the

___

[20]The bankruptcy court also suggested that the Florida District Court lacked *in rem* jurisdiction over the Reserve Funds because they were mere "commingled funds" with no definite *res*.  (RV III, APDE 41 at 8.)  In fact, as the Florida District Court found, (RV III, APDE 35 at 3 (0031)), and the bankruptcy court conceded, (RV III, APDE 41 at 8), the amount of the Reserve Funds that are the property of the receivership is "tracked via an internal accounting entry" in Integretel's accounting system.  The Florida District Court held that whether the Reserve Funds were maintained as an accounting entry on Integretel's books or in a separate bank account is "a distinction without a difference," (RV III, APDE 35, pp. 31-41 (0029-39)), because, either way, Integretel at all times maintained precise track of the amount of monies that constitute the Reserve Funds that are the property of the receivership estate.

predecessor of 28 U.S.C. § 1334(e)(1) divested the law enforcement court of jurisdiction over the receivership estate.   The argument rejected by the *Elmas Trading* court is precisely the same argument that Integretel made and the bankruptcy court erroneously adopted.   *See also Co-Petro Mktg.*, 700 F.2d at 1283 (law enforcement exception permits a district court to retain jurisdiction to enforce pre-petition injunctive relief obtained in a law enforcement proceeding).

Moreover, § 362(b)(4) makes clear that the Florida District Court retained jurisdiction to compel Integretel to turn over the Reserve Funds to the Receiver.   In particular, the 1998 amendments to the Bankruptcy Code expanded § 362(b)(4) to permit actions by law enforcement entities (that would otherwise be stayed under § 362(a)(3)), "to obtain possession" or "exercise control over property of the [bankruptcy] estate" other than for the purpose of enforcing a money judgment.   *In re Chapman*, 264 B.R. 565, 570 (9th Cir. B.A.P. 2001), citing *SEC v. Brennan*, 230 F.3d 65, 74 (2d Cir. 2000).   Thus, the 1998 amendments authorize law enforcement actions that seek possession of property that would otherwise be part of the bankruptcy estate so long as the actions do not seek to enforce a money judgment.   Of course, the Commission has not yet obtained a judgment against Integretel in the Enforcement Action.   Thus, it cannot possibly be attempting to enforce a money judgment.   Since Congress made the policy choice to permit certain law enforcement actions that may impinge on property in a bankruptcy estate, the courts are bound to enforce the legislation according to its terms.   *In re Chapman*, 264 B.R. at 570-71 (holding that the expansion of § 362(b)(4) exempted an asset forfeiture action from the automatic stay even though, if successful, the action would diminish the bankruptcy estate).   Accordingly, the bankruptcy court

misassessed Integretel's likelihood of success because it incorrectly believed it had exclusive jurisdiction over the Reserve Funds.  (RV III, APDE 41 at 39-43, 51.)[21]

The bankruptcy court also abused its discretion because it mistakenly believed that Integretel was somehow deprived of an opportunity to participate in proceedings before the Florida District Court prior to that court's issuance of the September 21 Clarification Order.  (RV IX, APDE 296 at 15.)  But the bankruptcy court misunderstood the significance of the Clarification Order.  That order merely reiterated what the Florida District Court had previously determined when it issued the Omnibus Order one week earlier.  That is, on September 14, the court determined that the Reserve Funds were the property of Access One and Network One.  The September 21 Clarification Order repeated that fact, and explained the significance of what the court had determined on September 14.  In particular, because the Reserve Funds were the property of Access One and Network One, those funds could not possibly be part of the bankruptcy estate.  Integretel had ample opportunity to participate prior to the entry of the September 14 Omnibus Order.  Thus, there is absolutely no merit to the bankruptcy court's concerns that Integretel was somehow deprived of due process.[22]

---

[21]The single case the bankruptcy court cited in its Memorandum Decision for its claim of "exclusive jurisdiction," *Gilchrist v. General Elec. Capital Corp.*, 262 F.3d 295 (4th Cir. 2001), is inapposite.  *Gilchrist* involved assets that indisputably were the property of Gilchrist.  Here, the Florida District Court held the Reserve Funds are *not* the property of Integretel.

[22]The bankruptcy court observed that, to grant a preliminary injunction, Integretel need not necessarily demonstrate a strong likelihood of success on the merits, but could get by with a showing of "serious questions going to the merits" if it can also show "strong irreparable injury." (RV IX, APDE 296 at 14.)  In fact, this misstates the proper test.  As the Ninth Circuit has explained, in lieu of the traditional four-part test, a preliminary injunction may be granted if the plaintiff "demonstrate[s] *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in [its] favor." *Rodde v. Bonta*, 3576 F.3d 988, 994 (9th Cir. 2004) (emphasis in original; internal quotation marks omitted).  In fact, as explained by the Ninth Circuit, this alternate formulation requires the court to assess not merely the hardship the plaintiff might
(continued...)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Second, the bankruptcy court committed clear error in finding that Integretel would have been substantially harmed absent the November 27 preliminary injunction. Most important, as discussed above, the Florida District Court's September 14 Order conclusively determined that the Reserve Funds were *not* Integretel's property, and accordingly, as the court recognized one week later in the September 21 Clarification Order, not part of Integretel's bankruptcy estate. Thus, Integretel could not be harmed by not having access to funds that were not its property. And, to the extent that the Florida District Court's control over the Reserve Funds harms Integretel, that "harm" is contemplated by the exemption set forth in § 362(b)(4).[23]

Finally, the bankruptcy court again misevaluated the harm to the Commission and the public interest. The Reserve Funds were paid to Integretel by tens of thousands of consumers who were deceived or unfairly duped through the inclusion on their telephone bills of charges for collect phone calls they never made. As the Commission has argued in the Enforcement Action, those funds should be used to provide redress to those consumers. Also, the public interest is furthered if the Florida District Court is able to vindicate its authority and enforce, through the Contempt Proceeding, the turnover provisions in its March 2006 TRO and September 2006 amended preliminary injunction, provisions that Integretel has flagrantly ignored. The situation here is similar

---

[22](...continued)
suffer if the injunction is denied, but instead requires the plaintiff to show that the *balance* of hardships tips *sharply* in its favor. In any event, however the test is formulated, Integretel did not make the requisite showing, and the bankruptcy abused its discretion by enjoining the Contempt Proceeding.

[23]The bankruptcy court also erred as a matter of fact because it believed that, if the Reserve Funds became part of the receivership estate in the Commission's Enforcement Action, "they can be dissipated and lost to the [bankruptcy] estate forever." (RV IX, APDE 296 at 14.) However, the September 14 Omnibus Order precludes such dissipation because it requires the Reserve Funds to be placed in a segregated receivership account. (RV III, APDE 35, p. 41.)

33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to *SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.D.C. 2001). In that case, the defendant Bilzerian (as has

Integretel here) had not even minimally complied with the Court's prior orders. The court found

that Congress could not have intended to "permit a party to blatantly violate direct orders of a court

and then seek shelter" through a bankruptcy stay. Thus, the court held that a "court must retain the

ability to compel compliance with its orders," and bankruptcy is not a "free [pass] to run rampant

in flagrant disregard to the powers of the court." *Id*. at 15 (citation omitted). The bankruptcy court

simply ignored this important public interest.

## CONCLUSION

For the reasons set out above, the bankruptcy court's November 7 and November 27, 2007,

preliminary injunctions, as well as the March 18, 2008, extension order, should all be vacated.

Respectfully submitted,

_____/s/_____

JOHN ANDREW SINGER
Attorney - Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Telephone: (202) 326-3234
Facsimile: (202) 326-2447
Email: jsinger@ftc.gov
COUNSEL FOR FEDERAL TRADE COMMISSION